UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA RECEIVED
NORTHERN DIVISION

2015 AUG 20  A 9: 25

| | | |
|---|---|---|
| **JOHN DOES # 1-8,** | ) | |
| | ) | DEBRA P. HACKETT, CLK |
| *Plaintiffs,* | ) | U.S. DISTRICT COURT |
| | ) | Case No. 2:15-cv-606 |
| v. | ) | |
| | ) | |
| **LUTHER STRANGE III**, Attorney General | ) | |
| of the State of Alabama in his Official Capacity, | ) | (Class Action) |
| and **JOHN RICHARDSON**, Secretary of the | ) | |
| Alabama Law Enforcement Agency, in his | ) | |
| official and individual capacities, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## COMPLAINT

### PRELIMINARY STATEMENT

1. Plaintiffs John Does #1-#8 are adult Alabama residents who have been retroactively required to comply with the Alabama Sex Offender Registration and Community Notification Act for the rest of their lives. *See* Ala. Code § 15-20A-1 et seq. (ASORCNA, effective July 1, 2011).

2. Under ASORCNA, the plaintiffs have been and will be subjected to the "most comprehensive and debilitating [sex offender] scheme in the land." *See McGuire v. Strange*, 2:11-cv-1027, doc. 283 at 2 (M.D. Ala. February 5, 2015). Specifically, the plaintiffs are banned from living and working in the vast majority of areas where housing and jobs exist; hindered from maintaining intimate familial relationships; publicly and falsely identified as dangerous; required to carry a state-issued branded drivers' license with the inscription "CRIMINAL SEX OFFENDER" printed in bold-red letters on the

front; restricted as to when they are allowed to travel; and subjected to an array of state-imposed restrictions — under threat of felony penalties unparalleled in the United States in volume — which collectively encompass virtually every facet of their lives. The Plaintiffs must comply with these debilitating restrictions and obligations for as long as they live.

3. The plaintiffs ask this Court to recognize what other courts across the country have increasingly found: that the nature of sex offender registration has fundamentally changed since 2003, when the U.S. Supreme Court upheld a registration scheme that imposed registration and internet notification *only* with effects that were "minor and indirect" restraints on registrants. *See Smith v. Doe*, 538 U.S. 84, 100 (2003).

4. Many provisions of ASORCNA are void for vagueness. The plaintiffs must comply with sweeping and complex restrictions and requirements under threat of a multitude of felonies, even though the language of the law does not provide clear notice of what is prohibited or required, either for those subject to it or for those who enforce it, making full compliance with the law impossible.

5. ASORCNA violates the plaintiffs' fundamental rights to travel, to work, to speak and to be free from arbitrary and oppressive laws without being lawfully tailored in a manner to meet Alabama's interest.

6. Despite the July 1, 2011 effective date of ASORCNA, the statute's unprecedented strictures apply limitlessly both retroactively and prospectively, regardless of the "qualifying" offense.

7.   The plaintiffs seek declaratory and injunctive relief barring the application law to them and similarly situated registrants. The plaintiffs seek limitation of the application of ASORCNA to those individuals who pose discernable threats to the public and children.

## JURISDICTION

8.   Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because the plaintiffs seek redress for the deprivation of rights secured by the U.S. Constitution. The plaintiffs' federal claims are brought pursuant to 42 U.S.C. § 1983.

9.   The plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

10.  State claims may be heard by virtue of this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.  Venue is proper in the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS: HISTORICAL EVOLUTION OF ASORCNA

1.   Alabama passed its first sex offender registration law in 1967. Ala. Act 507 (1967).

2.   The 1967 Act required one-time registration of adult sex offenders with the sheriff of their home county within 30 days after release from legal custody or upon arrival in Alabama from another state. The registration information was only available to law enforcement and was exempt from all public disclosure. Ala. Act 507 §§ 1-3.

3.   In 1996, Alabama passed the Community Notification Act (ACNA), its first version of a more "modern" sex offender law. *See* Ala. Act 96-793 (1996).

4.   The 1996 ACNA was not retroactively applied, and required only written notification upon an offenders change in address. There was no requirement for in-person registration.

The ACNA required distribution of sex offender information to the community within certain distances of the offender by way of mail and postings at city hall and the police department closest to the registrant. Registrant violations were Class A misdemeanors. Ala. Act 96-793 § 2 (a); § 3 (a)-(e).

5. Prior to March 1, 2002, the ACNA provided that with the exception of registrants who had been convicted of a sex offense on more than one occasion or an offense involving multiple victims, adult registrants were subject to the provisions of the statute for 25 years. After March 1, 2002, all adult registrants became subject to the statute for life.

6. On July 1, 2011, ASORCNA became effective and repealed all prior iterations of Alabama's sex offender registration and notification laws. 2011 Ala. Acts, No. 640.

7. ASORCNA's provisions apply to adult offenders convicted of one of thirty-one offenses defined as a sex offense under Alabama law, as well as those convicted in another jurisdiction of a crime that, "if it had been committed in [Alabama] under the current provisions of law, would constitute" one of the enumerated offenses. Ala. Code § 15-20A-5(33).

8. The entire scheme is retroactive, capturing any enumerated or similar offense regardless of when it was committed. Ala. Code § 15-20A-3.

9. ASORCNA restricts where a registrant may live and work, Ala. Code §§ 15-20A-11, -13, and requires the distribution of community-notification flyers to those living near a registrant's residence, Ala. Code § 15-20A-21. The community notification flyers provide the criminal history, home and work address and vehicle information of registrants.

10. A public registry website is maintained by the Department of Public Safety. Ala. Code § 15-20A-8. The website is required to include specific information regarding each registrant

11. The provisions of ASORCNA require the Alabama Law Enforcement Agency to maintain a public registry website. The website must include information regarding each registrant under the law. Ala. Code § 15-20A-8.

12. ASORCNA also prohibits registrants from working or volunteering "at any school, childcare facility, or mobile vending business that provides services primarily to children, or any other business or organization that provides services primarily to children." Ala. Code § 15-20A-13(a). This provision applies regardless of whether

13. No ASORCNA registrant may "apply for, accept or maintain employment or volunteer for any employment or vocation" "within 2,000 feet of the property on which a school or childcare facility is located" or "within 500 feet of a playground, park, athletic field or facility, or any other business having a principal-purpose of caring for, educating, or entertaining minors." Ala. Code § 15-20A-13(c). The employment provisions – like most of the residency restrictions outlined above – apply with equal force regardless of whether the registrant's former victim was a minor.

14. Registrants must "appear in person to verify all required registration information" quarterly. Ala. Code § 15-20A-10(f). The law also requires each registrant to "obtain, and always have in his or her possession... a driver's license or identification card bearing a designation that enables law enforcement officers to identify the licensee as a sex offender." Ala. Code §§ 15-20A-18(a), (d). A State official has chosen the inscription "CRIMINAL SEX OFFENDER" in bold, red letters of the face of the required

identification. The only other red letters on Alabama-issued identification is the State's name.

15. Additionally, ASORCNA requires registrants who intend to be away from their county of residence for three or more consecutive days to "report such information in person immediately prior to leaving" and to complete a travel permit form providing "the dates of travel and temporary lodging information." Ala. Code §§ 15-20A-15(a), (b). The permit form explains the duties of the registrant regarding travel, and registrants must sign the form, acknowledging their duties, or "the travel permit shall be denied." Ala. Code § 15-20A-15(d). When a registrant obtains a permit, the registrant's local sheriff must "immediately notify local law enforcement" in the registrant's destination. Ala. Code § 15-20A-15(e).

16. ASORCNA's provisions apply for life and without regard to the nature of the offense, the age of the victim, or the passage of time since the underlying sex offense. Ala. Code § 15-20A-3.

17. A violation of ASORCNA's requirements potentially subjects the offender to one of 115 Class C felonies. *See, e.g.,* Ala. Code § 15-20A-15(h). Class C felonies in Alabama carry a sentence from one to ten years. Ala. Code § 13A-5-6.

18. There are certain exceptions to the residency restrictions: First, certain offenders are eligible for relief from the residency restrictions if they can convince a state circuit court that they are terminally ill or permanently immobile. Ala. Code § 15-20A-23. Second, certain offenders convicted of relatively minor offenses can obtain circuit court relief from ASORCNA's registration and notification requirements. Ala. Code § 15-20A-24. A

6

similar provision allows for circuit court relief from ASORCNA's employment restrictions for a set of less serious crimes. Ala. Code § 15-20A-25.

19. ASORCNA's registration scheme requires offenders to register in-person four times a year, both with "[t]he sheriff of the county and the chief of police if the location subject to registration is within the corporate limits of any municipality." Ala. Code §§ 15-20A-4, -10. The county and city forms to be completed by homeless registrants are substantively identical.

20. ASORCNA registrants are required to pay a $10 fee to each agency to which they are required to register. Ala. Code § 15-20A-22 (a)-(b).

21. For homeless offenders, the registration requirement is enhanced to once a week. Ala. Code §§ 15-20A-12(b).

22. The City of Montgomery, Alabama currently has three homeless offenders out of roughly 430 registrants. Birmingham has 27 homeless out of roughly 560 registrants.

23. The Alabama Legislature delegated rule-promulgating authority for ASORCNA to the Secretary of the Alabama Law Enforcement Agency. Ala. Code § 15-20A-44.

## THE PLAINTIFFS[1]

### John Doe #1

24. Plaintiff John Doe #1 resides in the Northern District of Alabama.

25. Mr. Doe #1 has a significant history of alcohol dependency.

26. In 1992, while in a public location in Milwaukee Wisconsin, Mr. Doe #1 was observed by officers committing an act which exposed his genital area.

27. In 1993, Mr. Doe #1 was arrested and charged for a similar act.

---

[1] The plaintiffs' verifications attesting to the facts alleged in the complaint are attached as Exhs. 1-8.

28.  Both charges were Wisconsin misdemeanors and Mr. Doe #1 pled guilty to each.

29.  Mr. Doe #1 was sentenced to a 6-month suspended sentence and 18-months of probation for the 1992 conviction and a 6-month suspended sentence on the 1993 conviction.

30.  He was never required to register as a Wisconsin sex offender as a result of his guilty plea.

31.  Mr. Doe #1 arrived in Alabama to live with his family in 1994. At that time, there was no requirement that he register as a sex offender.

32.  In 2005, Mr. Doe #1 was convicted of a crime that had no sexual component.

33.  Mr. Doe #1 spent over three years in prison for the conviction and was released in 2008.

34.  Because of his 2005 re-entry into the criminal justice system, Mr. Doe #1 was required to register as a sex offender under the Alabama Community Notification Act upon his release in 2008.

35.  Mr. Doe #1 registered a friend's address in a relatively rural part of his county.

36.  Local law enforcement approved Mr. Doe #1's address and he lived there for a lengthy period of time after his release from prison.

37.  Mr. Doe #1 does not believe himself to be a sex offender. His misdemeanor conviction did not involve a victim and had no violent component.

38.  Mr. Doe #1 vehemently denies that he is a "CRIMINAL SEX OFFENDER."

39.  Mr. Doe #1 eventually moved away from the friend's home, found housing of his own and moved to a new location. He properly reported his new address to law enforcement.

40.  In May 2012, Mr. Doe #1 had grown frustrated with what he felt was illegal activity near his new residence. In order to avoid trouble, he moved back to the address where he had previously resided, which had been previously approved by law enforcement.

41. In June 2012, Mr. Doe #1 was arrested by law enforcement and charged with failing to immediately report his change of address pursuant to Ala. Code § 15-20A-10(c).

42. About July of 2012, Mr. Doe #1 had grown weary of the humiliation he experienced each time he showed his identification branded by the state with the inscription "CRIMINAL SEX OFFENDER" in bold, red letters on the front.  The humiliating inscription was redacted, leaving the rest of the information on his identification unmarked.

43. In August 2012, Mr. Doe #1 was arrested by law enforcement and charged with mutilating his branded state-issued identification pursuant to Ala. Code § 15-20A-18(e).

44. Mr. Doe #1 is scheduled for trial on both the in-person reporting violation and for mutilating his identification charges on August 24 2015.

45. Mr. Doe #1 is currently required to comply with all adult provisions of ASORCNA, including residency, employment and travel restrictions; state-issued branded identification and lifetime adherence requirements. He registers quarterly with a single law enforcement agency.

### John Doe #2

46. John Doe #2 is an adult who resides in the Middle District of Alabama.

47. Mr. Doe #2 is the father of four children.

48. Mr. Doe #2 is a truck driver who mostly drives overnight and sleeps during the day.

49. In connection to 2005 allegations involving a minor, the State offered Mr. Doe #2 a plea agreement in which he would plead to assault in the third degree, harassing communication, indecent exposure and criminal trespass, all misdemeanor offenses.

50. Mr. Doe #2 accepted the plea offer.  He was given 3 years of probation.

9

51. Mr. Doe #2 originally registered a single time in 2006. However, in March of 2015, Mr. Doe #2 began registering quarterly.

52. Prior to 2011, Mr. Doe #2 resided within city limits, which required him to register with both city and county law enforcement. In 2011, he move outside of the city and now registers with only the county law enforcement agency.

53. Mr. Doe #2 is anticipating a new truck driving assignment in September of 2015, which will require him to move back into the city. This move will again subject Mr. Doe #2 to dual reporting and the payment of dual fees required for registration with the local and county law enforcement.

54. Mr. Doe #2 has committed no crimes since his 2005 conviction.

55. Mr. Doe #2 is subject to the registration provisions of ASORCNA only. Mr. Doe #2 is not subject to the residency, employment, travel, and branded identification requirements of ASORCNA.

**John Doe #3**

56. John Doe #3 is an adult resident who lives in the Middle District of Alabama.

57. In 1968, John Doe #3 was years old, over 6 feet tall and weighed nearly 200 pounds.

58. During that year, he had been living with his grandmother because both of his parents had died.

59. Mr. Doe #3 was arrested in 1968 and charged with the murder of a local woman.

60. Mr. Doe #3 was taken to the police station and interrogated. He was confused and disoriented by the arrest and denied all allegations.

61. Mr. Doe #3 was taken to a local cemetery where he was severely beaten by officers.

62. After Mr. Doe #3's confession and conviction, he was sentenced to 50 years in prison.

63. Because of his youth, Mr. Doe #3 was initially sent to a mental institution. Upon reaching age 15 or 16, he was sent to a State prison where he spent approximately the next 40 years.

64. Due to his youth, Mr. Doe #3 became the target of many inmates in prison who sought to take advantage of his youth and fear.

65. In order to survive in prison, Mr. Doe #3 had to seek the protection of a prison gang who accepted and protected him in the years to come.

66. As the decades passed, Mr. Doe #3 gained skills as a boxer and graphic artist. He learned to perform custom paint work – a skill he felt he could use when he got out of prison.

67. In 1985, Mr. Doe #3 along with other inmates were questioned about an allegation of payment to Mr. Doe #3 and others in exchange for protection of another inmate.

68. The specific allegation was Mr. Doe #3 had accepted money from a 30 year-old inmate in exchange for using his elder status in prison to prevent sexual harm to the inmate.

69. Mr. Doe #3 was charged with Sodomy in the first degree.

70. A prosecutor offered Mr. Doe #3 a plea agreement that provided for a 25-year sentence that was to run concurrent with his original sentence in exchange for his guilty plea to the Sodomy charge.

71. Mr. Doe #3 was not required to serve additional time in prison beyond his original sentence because of his acceptance of the plea agreement.

72. Mr. Doe #3 was released from prison in 2010. Mr. Doe #3 has committed no crimes since his 2010 release.

73. He is now subject to ASORCNA adult provisions for life because of the 1985 sodomy plea while in prison.

74. Mr. Doe #1 is currently required to comply with all adult provisions of ASORCNA, including residency, employment and travel restrictions; state-issued branded identification and lifetime adherence requirements. He registers quarterly with both city and county law enforcement.

## John Doe #4

75. John Doe #4 is an adult resident who lives in the Middle District of Alabama.

76. John Doe #4 was convicted of rape in 1972, and spent six years in State prison.

77. Between 1983 and 1995, Mr. Doe #4 spent additional time in prison on drug-related and property crimes.

78. Mr. Doe #4 moved to his current city in the fall of 1998, where he sought employment and housing at a local church.

79. Mr. Doe #4 has become a resident and member of the church, and a trusted employee of the church to this day.

80. Mr. Doe #4 was originally issued a state-issued identification card in 1997. However, his state-issued identification card does not contain the inscription of "CRIMINAL SEX OFFENDER."

81. Prior to 2008, Mr. Doe #4 was not registering as a sex offender. At that time, Mr. Doe #4 was notified by law enforcement that he was required to register as an Alabama sex offender. Law enforcement also informed Mr. Doe #4 that he was living in and working in a non-compliant location and would have to move.

82. One of the church leaders, on behalf of Mr. Doe #4, requested that local law enforcement allow an exception to the residency and employment restrictions for Mr. Doe #4. Law

enforcement granted the exception and allowed Mr. Doe #4 to continue to live and work at the church, which houses one daycare and is situated within 300 feet of another.

83. Mr. Doe #4 has committed no crimes since 1990.

84. Mr. Doe #4 is currently required to comply with all adult provisions of ASORCNA, including residency, employment and travel restrictions; state-issued branded identification[2] and lifetime adherence requirements. He registers quarterly with both city and county law enforcement.

### John Doe #5

85. John Doe #5 is an adult resident who lives in the Middle District of Alabama.

86. John Doe #5 is a highly-decorated retired Air Force helicopter pilot. He has flown rescue missions in various theatres in the world including during the Korean and Vietnam Wars.

87. After 27 years of military service, Mr. Doe #5 returned to his hometown where he was active in civic organizations and military veterans' organizations.

88. Mr. Doe #5 and his wife have children, grandchildren and great-grandchildren.

89. In 1994, his 12 year-old granddaughter was experiencing some life difficulties and living on the streets.

90. When Mr. Doe #5 and his wife learned of his granddaughter's difficulties, they offered to have her in their home. Over the next three years, Mr. Doe #5 and his wife offered their granddaughter structure, support and safety from life on the streets.

91. One evening in 1997, the granddaughter had some difficulties with the police department and was facing criminal charges.

---

[2] Mr. Doe #4 has been compliant with his registration since 2008, but has never been issued a branded state identification card.

92. The next day, law enforcement came to John Doe #5's home and arrested him. He was charged with sexual abuse in the first degree and sodomy in the first degree of his granddaughter, who by then was 15 years old.

93. Mr. Doe #5 denied all allegations of the crimes for which he was charged.

94. Over the next several months, Mr. Doe #5's family was in turmoil. The criminal case with his granddaughter was a stressful matter for his entire family.

95. Mr. Doe #5 was approaching the age of 65 at the time. His wife's health was failing and Mr. Doe #5 was diagnosed with thyroid and colon cancer.

96. Mr. Doe #5 avers that he did not want his family to continue to suffer, so he decided to take a plea that had been offered earlier in lieu of the trauma his family would experience over the course of a trial. The agreement allowed him to plead guilty to a second degree sodomy charge.

97. Mr. Doe #5 entered into the plea agreement. He was sentenced to 3 years of probation.

98. Mr. Doe #5 had no criminal history in the 64 years prior to his guilty plea, and has committed no crimes since.

99. Mr. Doe #5 is currently required to comply with all adult provisions of ASORCNA, including residency, employment and travel restrictions; state-issued branded identification and lifetime adherence requirements. He registers quarterly with county law enforcement.

### John Doe #6

100. John Doe #6 is an adult resident who lives in the Middle District of Alabama.

101. John Doe #6 registers as a sex offender with both city and county law enforcement.

102. In 1994, John Doe #6 was in the midst of a bitter divorce from his wife.

103. Law enforcement arrived at Mr. Doe #6's home and requested that he come to the police station to speak with them.

104. When Mr. Doe #6 arrived they told him that his wife had reported that he had improper sexual contact with his five-year-old son.

105. Mr. Doe #6 denied any such allegations and explained to the officers that the relationship with his wife was very strained due to the divorce.

106. After the conversation with law enforcement, Mr. Doe #6 was jailed. No charges had been filed.

107. Later that day, the police department from another city transported him to the largest county in Alabama, where Mr. Doe #6 sat for three weeks.

108. After it was discovered that Mr. Doe #6 was transported to the large county jail in error, he was brought down to the booking area, booked and sent back to a jail cell.

109. Shortly after, Mr. Doe #6 was provided a hearing in which he and the 5-year-old testified.

110. Over the next three years, Mr. Doe #6 sat in county jail awaiting trial.

111. Every few weeks, Mr. Doe #6 would receive a visit from the prosecutor asking him if he was ready to take a plea.

112. Mr. Doe #6 refused to take a plea.

113. In the fall of 1996, Mr. Doe #6 was still in jail and had not had a trial when his mother suddenly died.

114. Law enforcement transported Mr. Doe #6 to his mother's funeral in his jail uniform, handcuffs and leg shackles.

115. Mr. Doe #6 was broken after that day and had given up hope for a trial.

116. When the prosecutor came to him a few months later and told him "If you take the plea, you can get out of jail today," he decided to enter into a plea agreement.

117. Mr. Doe #6's agreement included a plea of the charge of Sodomy in the first degree. After approximately three years in jail, he was released the same day he entered into the agreement.

118. Mr. Doe #6 had no criminal history prior to his 1997 guilty plea, and has committed no crimes since.

119. Mr. Doe #6 is currently required to comply with all adult provisions of ASORCNA, including residency, employment and travel restrictions; state-issued branded identification and lifetime adherence requirements. He registers quarterly with both city and county law enforcement.

### John Doe # 7

120. John Doe #7 is an adult resident who lives in the Middle District of Alabama.

121. John Doe #7 was arrested in 1986 on an armed robbery charged.

122. Mr. Doe #7 was 27 years old at the time of his arrest and had no criminal history prior to the robbery charge.

123. Mr. Doe #7 was an ironworker who had a job constructing air hangers at the local Air Force Base at the time.

124. In 1985, Mr. Doe #7 was earning $15 per hour as an iron worker.

125. In July of 1986, a man who Mr. Doe #7 had known very briefly asked Mr. Doe #7 for a ride to pick up a car part. One the way, the man asked Mr. Doe #7 to stop to pick up lunch.

126. When they entered the restaurant, the man pulled a gun in an attempt to rob the establishment.

127. After being arrested on the robbery charge, Mr. Doe #7 was held in county jail with several other inmates, all in the same cell.

128. Mr. Doe #7 denied any involvement in the armed robbery and explained to law enforcement what happened that day.

129. Mr. Doe #7 was brought to an interrogation room several months after his arrest. An investigator told him that he was being charged with the rape of a jail inmate the day before.

130. Mr. Doe #7 explained that there were multiple people in the same cell and they all could vouch for his innocence.

131. Law enforcement told Mr. Doe #7 that with the new charge, he would be facing life in prison without the possibility of parole.

132. Law enforcement provided an alternative for Mr. Doe #7 in the form of a plea agreement. They proposed to Mr. Doe #7 that if he pled guilty to the armed robbery charge, they would reduce his rape charge to sodomy in the second degree and only sentence him to 25 years in prison. Law enforcement offered to run his sodomy sentence concurrent with the robbery sentence.

133. Mr. Doe #7 entered into the plea agreement and was sentenced to 25 years in prison. Due to an "administrative error," Mr. Doe #7 got out of prison one year after his 25-year sentence was complete.

134. Mr. Doe #7 was recently convicted of a felony for violating ASORCNA's in-person reporting requirements.

135. Mr. Doe #7 is currently required to comply with all adult provisions of ASORCNA, including residency, employment and travel restrictions; state-issued branded

identification and lifetime adherence requirements. He registers quarterly with county law enforcement.

## John Doe #8

136. John Doe #8 is an adult resident who lives in the Middle District of Alabama.

137. Mr. Doe #8 and his wife have 6 children and 22 grand and great-grandchildren.

138. In 2001 Mr. Doe #8 and his wife were involved in a bitter custody battle over two of their grandchildren. The grandchildren's other set of grandparents were attempting to gain custody as well.

139. On a report to law enforcement from the other grandmother, Mr. Doe #8 and his wife were initially charged with sexual abuse of one of the granddaughters.

140. Mr. Doe #8 denied all allegations of sexual abuse.

141. Charges against Mr. Doe #8's wife were dropped.

142. Mr. Doe #8 had no criminal history prior to the sexual abuse allegations.

143. Mr. Doe #8 decided to pursue his case at trial.

144. He was convicted of sexual abuse and sentenced to 5 years in prison.

145. Mr. Doe #8 was released from prison in 2008.

146. Mr. Doe #8 has committed no crimes since his release from prison.

147. Mr. Doe #8 is currently required to comply with all adult provisions of ASORCNA, including residency, employment and travel restrictions; state-issued branded identification and lifetime adherence requirements. He registers quarterly with both city and county law enforcement.

18

## THE DEFENDANTS

148. Defendant Luther Strange III, a better denomination of whom is presently unknown to the Plaintiffs, is a natural person believed to be over the age of 19 years, is or was at all times material hereto the Attorney General, an officer or agent of the State of Alabama. He is sued in his official capacity. The Attorney General's primary office is located in the Middle District of Alabama and he is an appropriate defendant in a case challenging the constitutionality of a state statute.

149. Defendant John Richardson is the Secretary of the Alabama Law Enforcement Agency. The Alabama legislature has granted him exclusive authority to promulgate rules as are necessary to implement and enforce ASORCNA, including but not limited to, how the drivers' licenses of registrants of ASORCNA are branded. Defendant Richardson's primary office is in the Middle District of Alabama. He is sued in his official capacity and is an appropriate defendant in a case challenging the constitutionality of a state statute. He is properly sued in his individual capacity as a person whose conduct proximately and directly caused harm to the Plaintiffs and the class of similarly situated registrants of ASORCNA.

## FACTUAL ALLEGATIONS: IMPACT OF ASORCNA ON THE PLAINTIFFS

150. ASORCNA imposes obligations, disabilities, and restraints that are unprecedented in number and scope. It is more expansive in its strictures than any statute regulating sex offenders in the United States.

151. By way of summary, ASORCNA contains onerous in-person registration, registration fees, residency and employment restrictions, and community-notification measures with additional provisions creating a scheme that regulates sex offenders far beyond the scheme

in any other state. For example, excluding legislation aimed at sexually violent predators, no other state has a scheme whereby sex offenders are retroactively regulated for life through residency, employment, and travel restrictions. In fact, only one other state – Tennessee – employs residency, employment, and travel restrictions, and it tempers the effects of these provisions, providing for partial retroactivity and allowing offenders who have successfully complied with the act for ten years to petition for termination of participation in the registration program. T.C.A. § 40-39-207.

152. No other state requires dual registration for in-town sex offenders, instead all other states allow registrants to report to any single local law enforcement agency – whether municipal or county. *See, e.g.*, Colo. Rev. Stat. § 16-22-102(4.5); 739 Ill. Comp. Stat. 150/1 § 2(d); Kan. Stat. Ann. § 22-4902(m). Only five other states – Arizona, Delaware, Hawaii, Idaho, and South Carolina – join Alabama in applying sex-offender regulations retroactively for the entirety of a registrant's life, but not one of those five states imposes travel restrictions, and only one of the five imposes residency and employment restrictions. *See* Ariz. Rev. Stat. Ann. § 13-3821 *et seq.*; Del. Code Ann. § 4120 *et seq.*; Haw. Rev. Stat. § 846E-1 *et seq.*; Idaho Code Ann. § 18-8301 *et seq.*; S.C. Code. Ann. §23-3-400 *et seq.* ASORCNA provides for no risk assessment of adult offenders in applying the requirements of: lifetime application, retroactive application for all-time, felony enforcement by the gross, border-to-border (rather than parcel-to-parcel), Ala. Code § 15-20A-11(g), residential and employment restrictions, and the chosen method of printing "CRIMINAL SEX OFFENDER" in red lettering on the face of state-issued identification.

153. ASORCNA severely limits registrants' ability to: maintain intimate associations with family; find housing and employment; travel; engage in free speech activities or refrain

from speaking; be free from shame, embarrassment, humiliation and stigma; and understand what is required of them under the statute.

154. Registration under ASORCNA triggers an unprecedented level of additional obligations, coupled with affirmative disabilities and restraints under other federal state and local laws as well as private policies barring or limiting registrants from access to goods or services available to the public.

### A. ASORCNA and Additional Alabama Residency Restrictions

155. ASORCNA severely limits plaintiffs' access to housing.

156. ASORCNA bars Plaintiffs from "establishing" or "maintaining" a residence within 2,000 feet of a school or childcare facility, including private in-home daycares. Ala. Code § 15-20A-11 (a). The plaintiffs are also prevented from living with family members if those family members live within 2,000 feet of a school or childcare facility.

157. ASORCNA's residency restrictions apply with limitless retroactivity and allow registrants to "maintain" a residence within 2,000 feet of a school or childcare facility *only if* the registrant established residence prior to the existence of the school or childcare facility. Ala. Code § 15-20A-11 (a), (c). Registrants who were convicted and released from custody or parole prior to the enactment of ASORCNA, and who live within 2,000 feet of a school or childcare facility shall not "maintain" their homes if a school or childcare facility pre-dates their conviction and release — even though prior Alabama sex offender law did not require those registrants to move.

158. ASORCNA assigns felony penalties for registrants who spend even a single night in any residence with a minor who is not a child, grandchild or sibling of the registrant. Felony penalty attaches even if the overnight visit with the minor is a niece, nephew or other

relative and the overnight stay is in an ASORCNA-compliant residence. Ala. Code § 15-20A-11 (d).

159. Any violation of the residency restrictions is a Class C felony. Ala. Code §§ 15-20A-11 (h).

160. John Doe #7 was released from prison after 26 years.

161. He was unable to locate or afford any housing available outside of ASORCNA's residency zones of exclusion.

162. He has family that lives in the Montgomery, Alabama area, however their homes are situated within ASORCNA's zones of exclusion.

163. Mr. Doe #7 has one family member who lives is a compliant zone per ASORCNA and would gladly have him live there, but the relative has minor children which prohibits Mr. Doe #7 from establishing residence at the home.

164. Mr. Doe #7 heard about a ministry in another county that allowed ASORCNA registrants to reside on-site in a "trailer park" setting. He called and inquired and was accepted as a resident. He lived there peaceably for over 30 months, with no criminal activity and no trouble with law enforcement.

165. Mr. Doe # 7 became very active in the ministry in his new home county, including befriending members of other churches.

166. In 2014, Alabama then passed a new law which when combined with ASORCNA's debilitating residency restrictions, made it impossible for ASORCNA registrants to live within 300 feet of one another in Mr. Doe # 7's current home-county. Ala. Code. § 45-11-82 (effective July 1, 2014).

22

167. Mr. Doe #7 was relegated to homelessness for a few days, but was able to find a rural lot which he was able to rent and park his motor home. He properly registered his new lot with local law enforcement as his new address.

168. Mr. Doe #7's motor home fell into disrepair and he had it towed to a mechanic's shop in a remote area of his home county.

169. He slept under a tent on his registered lot while his motor home was being repaired, but was allowed by the mechanic to access the motor home each evening to take a shower prior to returning to his tent.

170. On or about June 2015, Mr. Doe #7 had just gotten out of the shower in his motor home when several county law enforcement officers arrived at the door of the vehicle.

171. They banged on Mr. Doe #7's door and demanded entry and Mr. Doe #7 complied.

172. A sheriff's investigator, Mr. Bone, asked Mr. Doe #7 why he was at the location. Mr. Doe #7 explained he was there to take a shower before returning to his tent.

173. Mr. Doe #7 was arrested and charged with a violation of ASORCNA.

174. Mr. Doe #7 was told by Investigator Bone that he was required to be at his residence between the hours of 9:00 p.m. and 5:00 a.m., and that it was a crime for him not to do so.[3]

175. After being arrested by the investigator, Mr. Doe #7 was taken to county jail and released on bond after several days.

176. Mr. Doe #7's attorney told him that he would not win his case and he should "take a plea deal."

---

[3] This is not and has never been a requirement under ASORCNA.

177. On the advice of his attorney, John Doe #7 took a plea and was convicted of a felony for violating Ala. Code § 15-20A-10.  He was sentenced to a two-year suspended sentence and 14-months probation.

178. Another ASORCNA registrant who lived on the Triumph Church grounds as John Doe #7, Mr. Cleveland Allen, was ousted from his residence. *See* Exhs. 9 (Allen Verification), 10 (Martin Decl.).

179. Mr. Allen moved the church grounds in 2012 after his release from prison.  He was forced to move out of his father's home and from Jefferson County because it was within an ASORCNA zone of exclusion.

180. There was nowhere for him to live in compliance with ASORCNA in Jefferson County because of an Alabama law that places additional residency restrictions on Jefferson County registrants. *See* Ala Code § 13A-204.

181. Mr. Allen was rendered homeless and registered as such the first week after his ouster from the church grounds.

182. He moved to the woods of Chilton County and reported the woods as his address as required.

183. When he walked to the Chilton County Sheriff's Office to register after his second week of homelessness, he was ordered to get in the county investigators vehicle.

184. The investigator ordered Mr. Allen to show him where he lived in the woods.  Mr. Allen complied, showing the investigator his spot in the woods, along with his tent and self-made pallet.

185. The county investigator then took Mr. Allen to the Chilton County jail, where Mr. Allen was arrested.  When Mr. Allen inquired as to why he was being arrested, the investigator

told him that he had "checked the woods earlier that week between the hours of 9:00 p.m. and 5:00 a.m." and Mr. Allen was not there.

186. The investigator told Mr. Allen that he violated ASORCNA's residency reporting requirements because he was not there between 9:00 p.m. and 5:00 a.m.

187. Mr. Allen sat in jail for 10 months.

188. Mr. Allen's attorney similarly told him "I don't think I can win your case. You should take a plea deal."

189. Mr. Allen had three prior felonies and was subject to the Alabama Habitual Offender Act.

190. His attorney told him that as part of his plea, he would get a 15-year sentence but would serve only two with the rest suspended. His attorney told him that he would be credited for the time he had already spent in jail and would be out of prison the same day given the accumulated "good time" served.

191. When Mr. Allen arrived at prison, he was told that his sentence was split and he would be serving an additional 14 months in prison. Mr. Allen is still incarcerated at the time of this filing.

192. Mr. Doe #4 has lived and worked at a local church in his community for the past 17 years.

193. The church is in an ASORCNA-restricted zone and has been established at that location since 1947. The church maintains services to children.

194. There is another privately owned daycare located less than 300 feet from the church where Mr. Doe #4 lives and works.

195. Mr. Doe #4 was first required to register under Alabama sex offender law in 2008.

196. About 2008, Mr. Doe #4 was informed by local law enforcement that he was living in a non-compliant zone and would have to move.

197. A church leader, Mr. Doe #4's landlord and employer, went to local law enforcement and asked that Mr. Doe #4 be allowed an exception and to continue to live and work at the church.

198. Law enforcement granted the church leader's request.

199. Mr. Doe #4 lives and works there currently and is grateful, but is afraid that if law enforcement personnel changes, he may be required to leave the only home he has known since arriving in his current community.

200. Mr. Doe #5 is a pre-ASORCNA registrant.

201. At the time of his conviction sentence of probation, he and his wife had lived in their home for over 20 years. Alabama sex offender law did not require him to vacate his home after his conviction. Ala. Code § 15-20-26 (a), (e) (repealed).

202. In spite of this fact, local law enforcement officer came to his home one day and told him that he lived too close to a home daycare and would have to move within 7 days.

203. Because of this incorrect statement of law by law enforcement, Mr. Doe #5 and his wife were required to leave a home they had owned for over 20 years.

204. Mr. Doe #5 and his wife left children and grandchildren behind in their old community – – children and grandchildren that visited frequently.

205. Mr. Doe #5 had no idea where he could live lawfully after being told he had to move, so he decided to move to a rural county, where he knew there were no schools.

206. Upon arrival in his new county, local law enforcement required Mr. Doe #5 to attend a community meeting so that "members of the community could identify and question him and his wife and approve of his presence."

207. Since Mr. Doe #5 had to leave his home county for a new one, his ability to see his children and grandchildren have diminished due to the distance from their homes, and he and his wife's health and age.

208. John Doe #1 is scheduled for trial on August 24, 2015 for violating the residency reporting requirements of ASORCNA.

209. The address where Mr. Doe #1 currently lives is an address located in a very rural community and is compliant per ASORCNA.

210. The address he had previously registered with law enforcement prior to relocating briefly.

211. In an effort to avoid surrounding illegal activity, Mr. Doe #1 moved back to the home he had previously registered. He did not believe he had to report the home immediately, since he had already lived there previously with law enforcement approval.

212. Mr. Doe #1 knew that no new schools or daycares had re-located to the area, since there was only forestry located within 2000 feet of the rural family property.

213. John Doe #6 and his wife have lived in their ASORCNA compliant home for 10 years. They have 17 nieces and nephews, 12 of whom are minors.

214. They have a very close family who get together often for family functions.

215. Many times family members stay overnight with other family members. However, John Doe #6 is always required to leave because his minor nieces and nephews live in the homes. However, he does not want to ruin his wife's family experience, so he often leaves her there with family overnight while he returns home alone.

## B. ASORCNA Employment Restrictions

216. ASORCNA prohibits registrants from "applying, accepting, maintaining or volunteering" for any employment within 2,000 feet of a school or childcare facility. Ala. Code § 15-20A-13 (a), (b).

217. Any violation of the employment restrictions is a Class C felony. Ala. Code §§ 15-20A-13 (g).

218. As a result employment opportunities for registrants of the statute are decreased. The decrease in employment opportunities is a general effect arising from the explicit text of the statute – an effect that is necessarily faced by all offenders.

219. John Doe # 6 has tried for years to find gainful employment. For years, he worked as an equipment delivery-truck driver. But after one of his supervisors saw his identification with "CRIMINAL SEX OFFENDER" branded on it one day, he was fired on the spot.

220. For over three years since being fired, Mr. Doe #6 tried numerous times to find employment. Mr. Doe #6 has checked at least 50 different employer locations over the past three years, only four of them being compliant per ASORCNA's employment zones of exclusion. He was unsuccessful in gaining employment at any of the four compliant employer locations.

221. Mr. Doe #6 wants to work, but feels he is trapped in a "catch-22" because he doesn't know where he can lawfully work, law enforcement does not give him information about where he can work, and he cannot randomly apply without the possibility of committing a felony.

222. John Doe #8 does lawn service work from March through October each year and approximately six total times per month.

223. Mr. Doe #8 only takes work at two residences because he believes they are not located close to schools or childcare facilities. He earns $55.00 each time he works, totaling approximately $330.00 per month.

224. Mr. Doe #8's wife is a housekeeper, earns minimum wage and brings home about $1000.00 per month after deductions.

225. Mr. Doe #8 estimates that he can earn at least four times the amount he currently earns doing lawn service based on inquiries he gets for his service. Mr. Doe #8 wants to and has the opportunity to take on more lawn service work but fears arrest if he works around an ASORCNA restricted area. He and his wife struggle each month to make ends meet as a result.

226. John Doe # 3 is a highly-skilled auto painting artist. He specializes in custom painting of automobiles and trucks. He developed these skills during his 40 years in Alabama prison.

227. Mr. Doe # 3 has inquired about working at several auto body and paint location in his city. None of them are ASORCNA compliant because of the zones of exclusion.

228. Mr. Doe #3 is relegated to doing ad hoc "odd jobs" such as loading and unloading trucks or cleaning up trash sites when temporary employers come to his residence looking for "day laborers."

229. Mr. Doe #3 estimates that his skill could earn him at least $30,000 in annual salary in his city. However he is unable to work at any of the potential employers — employers who covet his skills — because of ASORCNA's employment zones of exclusion.

### C. ASORCNA's Travel Restrictions

230. ASORCNA's travel restrictions require 3-day advance notice prior to registrant out-of-county travel, if the registrant will be traveling for more than two days. Ala. Code § 15-20A-15 (a), (d).

231. Any violation of the travel restrictions is a Class C felony. Ala. Code §§ 15-20A-15 (h).

232. John Doe #5 is a military veteran and an avid traveler.

233. Prior to the enactment of ASORCNA, he and his wife each year would take trips in their motor home across the United States. They would travel as far as Nevada to see family and friends. Each year, they would visit family in Georgia and enjoy an annual festival for several days. Mr. Doe #5 would park his motor home at the festival location and stay for as long as a week.

234. Since ASORCNA, Mr. Doe #5 and his wife has stopped traveling as frequently. It is demeaning for him to have to ask permission to do what he and his wife have done freely over their more than 50 years of marriage. Further, it causes embarrassment to the family and friends they visit due to the contact with the visiting city's law enforcement alerting them to John Doe #5's visit.

235. In 2012, John Doe #8's brother passed away. He learned of his brother's death on a Monday, and the funeral service was set for the upcoming Saturday.

236. He informed law enforcement of the funeral and got permission to travel. He was asked by the city law enforcement agency how long he would be gone. He stated to them he was not sure.

237. A city law enforcement officer told Mr. Doe #8 that if he would be gone for more than two days, his residence would change to California.

238. Mr. Doe #8 was confused, as he only planned to attend the funeral, support his family for the period of time necessary, and return to Alabama.

239. Mr. Doe #8 did not want to break the law, or move to California, so he knew he could not drive to his brother's funeral because the round-trip drive would take him more than two days.

240. Instead, he borrowed money from family to purchase plane tickets for him and his wife. They arrived in California on Friday night. The funeral was Saturday morning. For fear of violating ASORCNA, he and his wife flew back Saturday night — just hours after his brother's burial.

241. A few short months later, Mr. Doe #8's sister died. She lived in Florida. Recalling his experience with local law enforcement when his brother's died, Mr. Doe #8 risked the felony conviction for failing to seek a travel permit and went to his sister's funeral. He and his wife stayed for five days to offer support to his family members. He did not report his trip to law enforcement.

### D. ASORCNA's Branded Identification Requirement

242. To the exclusion of all other identification, ASORCNA requires registrants to carry state-issued identification that "enables law enforcement to identify" the licensee as a "sex offender." Ala. Code 15-20A-18 (a), (c), (d). Registrants are required to "always have in his or her possession" the state issued identification. Ala. Code 15-20A-18 (a).

243. Additionally, registrants shall not "mutilate, mar, change, reproduce, alter, deface, disfigure, or otherwise change" the branded identification. Ala. Code 15-20A-18 (e).

244. Any violation of the branded identification requirement is a Class C felony. Ala. Code §§ 15-20A-18 (f).

245. The Alabama Legislature delegated rule-promulgating authority for ASORCNA to the Secretary of the Alabama Law Enforcement Agency (formerly titled Director of the Alabama Department of Public Safety) Ala. Code § 15-20A-44.

246. Defendant Richardson has made a conscious decision to have "CRIMINAL SEX OFFENDER" inscribed on the identification of as many as 17,000 registrants.

247. The designated inscription is in bold, red letters on the face of the identification.

248. The only other red letters on the face of the state-issued identification is the State's name.

249. This was Defendant Richardson's decision and not a requirement of the statute as passed by the Alabama Legislature.

250. John Doe #1 is humiliated each time he shows his branded identification.  He does not consider himself a sex offender because he was not convicted of a crime involving a victim.

251. He vehemently disagrees with the State's branding of his driver's license, labeling him as a "CRIMINAL SEX OFFENDER."

252. Mr. Doe #1 has experienced shame and humiliation multiple times, but particularly whenever he patronizes stores and other retail merchants.  He gets stares and harsh treatment many times when presenting his branded identification.

253. Mr. Doe #1 grew weary of carrying the branded identification because of the humiliating ostracism he experienced on a constant basis.

254. The branded inscription was scratched out on his driver's license, making the brand "CRIMINAL SEX OFFENDER" illegible.

255. When he was arrested for not reporting his old and ASORCNA-compliant family residence as his new residence when he moved back, local law enforcement asked for his identification.

256. Upon law enforcement noticing that Mr. Doe #1 had redacted the brand "CRIMINAL SEX OFFENDER" from the license, he was charged with a felony for violating Ala. Code 15-20A-18 (e). His trial on this charge along with charge for failure to report a change of his residency is August 24, 2015.

257. John Doe #8 renewed his branded driver's license in August of 2015. It is branded with "CRIMINAL SEX OFFENDER."

258. Mr. Doe #8 is embarrassed and humiliated when he has to show his identification.

259. He uses his identification in normal daily activities such as shopping at convenience stores.

260. Mr. Doe #8 recently visited a local home improvement store. The store clerk looked at his branded identification, dropped it on the counter and had someone else to assist Mr. Doe #8 with check-out instead.

261. John Doe #3 enjoys shopping with his friends, but avoids doing so as much as possible because he is ashamed to show his branded identification.

262. John Doe #4 does have a branded identification. Although he was convicted of rape, local law enforcement has not enforced this provision. His State identification card was issued in 1997 after his 1972 rape conviction and he shows his identification each time he goes to his quarterly double-registration.

263. John Doe #5 is a retired military veteran. He proudly carries his military identification, although he is violating ASORCNA for doing so.

264. Mr. Doe #5 refuses to use his state-issued branded identification unless it is the only identification he is allowed to present.

265. Mr. Doe #5 is ashamed to present the branded identification and is willing to risk a felony conviction before giving up his retired military identification.

266. Mr. Doe #6 was recently at a local clinic for medical services. Initially, he was engaged in a cordial conversation with the person who was working the intake window.

267. After requesting to see Mr. Doe #6's identification and viewing it, the intake worker told him "You need to go somewhere else! We can't serve you here!" Mr. Doe #6 left the clinic humiliated and distraught.

### E. Vagueness and Impossibility of Compliance

268. The plaintiffs have been further harmed because the restrictions and obligations of ASORCNA are so vague that the plaintiffs are unable to know whether or not they are in violation of the law, or are so extensive and pervasive that the plaintiffs are literally unable to comply with the law. Moreover as discussed supra, different law enforcement agencies in different places apply the requirements of ASORCNA differently.

269. ASORCNA's residency zones of exclusion are so vague that keeping track of housing options for registrants is an unresolvable nightmare administrative problem for law enforcement. For registrants who face felony penalties should they make the wrong choice, keeping track is impossible and the fear of failing to keep track is ever-present.

270. For example, registrants may not establish a residence within 2000 feet of a daycare or childcare facility.

271. It is impossible for registrants and law enforcement to measure the 2000 foot distances from every school or childcare facility while navigating the daily changes in real estate.

272. Registrants are baffled about what truly constitutes establishing and maintaining housing. Registrants can live anywhere they wish, compliant or not for 9 non-consecutive nights per month, as long as they return to the compliant home every two days. Otherwise, they establish a new residence. Ala. Code § 15-20A-11 (e)(3).

273. Registrants have no way of knowing and law enforcement cannot explain what the term "overnight" means and the statute does not provide a definition. Some officers don't know if it means registrants may be in a non-compliant residence between 12:01 am and 11:59 p.m., only leaving for one minute. Others operate under the unwritten law of 9 p.m. and 5 a.m. as the definition of "overnight."

274. As exhibited by John Doe #4's situation, law enforcement officers allow registrants to live in non-compliant zones whenever they decide to simply "look the other way" on the violation. Others, exhibited by the treatment of John Doe #7 and Clarence Allen, target registrants for strict enforcement.

275. The same problems with vagueness occur with the employment zones of exclusion. After becoming subject to ASORCNA, registrants shall not "maintain" their jobs if a school or childcare facility predates registrant employment. Ala. Code § 15-20A-13.

276. Defendant Strange admits that he doesn't know if sending out resume's constitutes "applying" for a job. . *See McGuire v. Strange, et al.*, 15-10958 (11th Cir. 2015), Cross-Appeal Opening Br., p. 13 (Defendant Strange admitting "It is unclear, for example, whether 'apply[ing]' for employment includes 'sending out resumes.'")

277. Travel requires 3-day permission, but only when law enforcement offices are open. See *McGuire v. Strange*, Trial Tr. Vol XX at x; id. Vol. XX at X.

278. Emergency and spontaneous travel is prohibited, unless officers decide to grant the travel.

279. ASORCNA's prohibitions on loitering make it impossible for the plaintiffs to determine if and when they are breaking the law.  Law enforcement applies the law in an arbitrary and uneven fashion because of the vagueness of the loitering provisions. *See infra* at ¶¶ 284-285; *see also*, *McGuire v. Strange*, doc. 166-18, Murphy Dep. at 59.

### F. ASORCNA's State-Mandated Active Distribution of Notification Flyers

280. ASORCNA requires law-enforcement officers to notify every resident within a specific distance that a registrant has moved into the neighborhood, as well as every school and childcare facility in a three-mile radius of the registrant's residency. Ala. Code 15-20A-21.

281. The flyers contain truthful information about registrants' registerable offense.

282. The flyers provide every resident with the registrants' picture, address, and a physical description.

283. John Doe #6 had community notification flyers distributed in the neighborhood around his home.

284. Mr. Doe #6 recalls at least five of his neighbors coming to his home, each of them expressing concerns that Mr. Doe #6 may be a danger to children in the neighborhood.

285. As Mr. Doe #6 and his wife were leaving home on Saturday afternoon, one community resident walked to the middle of the street in front of Mr. Doe #6's home and yelled to them, several times, "We don't need no baby rapers around here!"

286. John Doe #5 and his wife's experience demonstrates the vitriol that flyers can create. *See infra* at ¶ 206.

## G. ASORCNA's Loitering Restrictions

287. For registrants who were convicted of crimes against minors, ASORCNA prohibits registrants from "loitering" within 500 feet of the "property line of a school, childcare facility, playground, park, athletic field or facility, school bus stop, college or university, or any other business or facility, having a principle purpose of caring for, educating, or entertaining minors." Ala. Code § 15-20A-17 (a).

288. ASORCNA defines "loitering" to mean "to enter or remain on a property while having no legitimate purpose or, if a legitimate purpose exists, remaining on that property beyond the time necessary to fulfill that purpose." Ala. Code § 15-20A-17 (b).

289. John Doe #6 was recognized by local law enforcement while he was attending a family reunion in a park.

290. Amidst scores of family member and friends, the law enforcement officer stated to Mr. Doe #6 without explanation, "I know who you are, and it is time for you to go!" Mr. Doe #6 was required to leave his family reunion simply because an officer identified him and ordered him to do so.

## COUNT I: VIOLATION OF THE DUE PROCESS CLAUSE (Residency)

291. The right to maintain intimate associations is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

292. ASORCNA substantially interferes with the plaintiff's ability to maintain intimate associations with family though its residency zones of exclusion.

293. ASORCNA does not provide for any individualized consideration before restricting the plaintiff's ability to associate with close family members.

294. ASORCNA violates the plaintiff's fundamental right to intimate family associations because it is not narrowly tailored to serve a compelling state interest.

### COUNT II: VIOLATION OF THE DUE PROCESS CLAUSE (Employment)

295. The right to engage in the common occupations of life is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment.

296. ASORCNA substantially interferes with the plaintiff's ability to engage in the common occupations of life through the statues employment zones of exclusion.

297. ASORCNA creates a wholesale barrier to employment. That barrier is not based on the plaintiffs' fitness or capacity to work in the jobs from which they have been excluded.

298. ASORCNA does not provide for any individualized consideration before restricting the plaintiff's ability to engage in the common occupations of life.

299. ASORCNA violates the plaintiff's fundamental right to engage in the common occupations of life because it is not narrowly tailored to serve a compelling state interest.

### COUNT III: VIOLATION OF THE DUE PROCESS CLAUSE (Travel)

300. The right to maintain travel is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

301. ASORCNA substantially interferes with the plaintiff's ability to travel.

302. ASORCNA does not provide for any individualized consideration before restricting the plaintiff's right to travel.

303. ASORCNA violates the plaintiff's fundamental right to travel because it is not narrowly tailored to serve a compelling state interest.

## COUNT IV: VIOLATION OF THE DUE PROCESS CLAUSE
### (Vagueness and Impossibility)

304. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess at their meaning and will not differ as to their application.

305. ASORCNA contains provisions that are invalid under the vagueness doctrine because those provisions fail to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute, making it impossible for the plaintiffs to conform their conduct to the statutory requirements, and making it likely that the statute will be enforced in different ways in different places or against different persons, as exhibited by allegations *supra*.

306. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws with which it is impossible to comply. ASORCNA contains provisions with which compliance is impossible.

307. The provisions of ASORCNA that are void for vagueness, or are impossible to comply with include but are not limited to:

   a. the prohibitions on residing in ASORCNA's residency exclusion zones, Ala. Code § 15-20A-11.
   b. the prohibitions on employment in ASORCNA's employment exclusion zones, Ala. Code § 15-20A-13.
   c. the requirement to maintain state-issued identification with a "sex offender" designation. Ala. Code § 15-20A-18.
   d. the restrictions on travel created by ASORCNA's travel permission requirements, Ala. Code § 15-20A-15.
   e. the public venue exclusion zones created by ASORCNA's loitering restrictions, Ala. Code § 15-20A-17.

## COUNT V: VIOLATION OF THE FIRST AMENDMENT

308.  The First Amendment prohibits abridgment of the freedom of speech.  The guarantees of the First amendment include citizens' affirmative speech and expression through family associations and one's chosen occupation.  The First Amendment also guarantees the right not to speak and to be free from government compulsion of speech.  The Fourteenth Amendment incorporates the First Amendment against the states.

309.  Through its geographic zones of exclusion, ASORCNA infringes the plaintiffs' ability to express themselves through intimate family associations and participation in the common occupations of life. *See supra* Comp. ¶¶ 208-215.

310.  Through its requirement that registrants carry state-issued identification with the branded inscription of "CRIMINAL SEX OFFENDER" in bold, red letters on the face, ASORCNA infringes on the plaintiffs' and the class of similarly situated registrants' right to refuse to foster, in the way Alabama commands, a government brand they find objectionable. *See supra* Comp. ¶¶ 250-253.

311.  The branding of registrants' identification, coupled with the requirement that registrants relinquish to the state all other identification not bearing a designation, is proscriptive of registrants' First Amendment right to tailor their own message during normal daily activities.

312.  ASORCNA's residency and employment exclusion zones chill registrants' right to intimate expression through family associations and chill registrant expression through their chosen work.  The exclusion zone provisions are invalid under the First Amendment because the restrictions are not narrowly tailored to serve a compelling state interest.

313. ASORCNA's branded identification requirement is invalid under the First Amendment because the requirement is not narrowly tailored to serve a compelling state interest and because it prohibits a substantial amount of protected speech.

## COUNT VI: VIOLATION OF THE FIFTH AMENDMENT

314. The Fifth Amendment prohibits the compulsion of a citizen to be a witness against himself in any criminal case; the deprivation of life, liberty and property without due process of the law; and takings of private property for public use, without just compensation. The Fourteenth Amendment incorporates the Fifth Amendment against the states.

315. ASORCNA's requirement that registrants carry state-issued branded identification, to the exclusion of all other violates the plaintiffs' Fifth Amendment right to remain silent during law enforcement investigation or interrogation.

316. ASORCNA's branded identification and residency requirements are invalid under the Fifth Amendment because the requirements are not narrowly tailored to serve a compelling state interest.

## COUNT VII: VIOLATION OF THE DUE PROCESS CLAUSE (Privacy)

317. The right to privacy is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

318. ASORCNA substantially interferes with the plaintiffs' ability to maintain privacy through unwarranted dissemination of public and private registrant information.

319. ASORCNA requires that registrants carry state-issued identification with the inscription "CRIMINAL SEX OFFENDER" in bold, red letters on its face. Registrants must present

this branded identification during normal daily activities such as patronizing a grocery store.

320. ASORCNA mandates that law enforcement officers actively distribute community notification flyers whenever a registrant seeks to establish a residence in an Alabama community.

321. The notification flyers contain private information such as home addresses and physical descriptions of the registrants.

322. ASORCNA does not provide for any individualized consideration prior to the disclosure of public and private information.

323. ASORCNA violates the plaintiff's fundamental right to privacy because the required disclosure of information is unwarranted and is not narrowly tailored to serve a significant state interest.

## COUNT VIII: VIOLATION OF THE DUE PROCESS CLAUSE
### (Arbitrary and Oppressive Dual Reporting and Dual Fee Requirements)

324. The Due Process Clause of the Fourteenth Amendment imposes limits on legislation that is harsh or oppressive or that violates principles of fundamental fairness.

325. The requirement that registrants who live in Alabama cities and towns with police departments ("in-town" registrants) report at twice the frequency as registrants who are not in-town residents is an arbitrary and oppressive restraint on in-town registrant liberty.

326. The requirement that registrants who live in Alabama cities and towns with police departments ("in-town" registrants) pay twice the amount in fees as registrants who are not in-town residents is an undue deprivation that is arbitrary and oppressive.

327. ASORCNA does not provide for individualized assessments to make determinations if in-town registrants pose a greater threat to the community than other registrants.

328. ASORCNA violates the plaintiff's Fourteenth Amendment rights because the "in-town" double-registration, "in-town" double fee provisions are not narrowly tailored to serve a significant state interest.

## COUNT IX: FIRST and FIFTH AMENDMENT VIOLATIONS
## (DEFENDANT RICHARSON IN HIS INDIVIDUAL CAPACITY)

329. The First Amendment prohibits abridgment of the freedom of speech. The guarantees of the First amendment include citizens' affirmative speech, the right not to speak and to be free from government compulsion of communications.

330. Defendant Richardson has made a conscious decision to require registrants to always have in their possession a state-issued identification with the branded inscription of "CRIMINAL SEX OFFENDER" in bold, red letters on the face. By doing so Defendant Richardson infringed on the plaintiffs' and the class of similarly situated registrants' right to refuse to foster, in the way Alabama commands, a government brand they find objectionable.

331. The branding of registrants' identification, coupled with the requirement that registrants relinquish to the state all other identification not bearing a designation, is proscriptive of registrants' First Amendment right to tailor their own message during normal daily activities.

332. Defendant Richardson choice to brand ASORCNA registrant identification in the manner in which he is, violates the plaintiffs' and the class of similarly situated registrants' Fifth Amendment right against self-incrimination — the right to remain silent when encountering law enforcement.

333. The Alabama Legislature delegated the policy-making function of ASORCNA to Defendant Richardson, the Secretary of the Alabama Law Enforcement Agency. Ala. Code 15-20A-44.

334. In exercising his authority, Defendant Richardson, from the various alternative and less intrusive methods, made a conscious decision to inscribe "CRIMINAL SEX OFFFENDER" on the drivers' licenses and identification cards of as many as 17,000 registrants of ASORCNA.

335. Defendant Richardson admitted that he chose to inscribe "CRIMINAL SEX OFFENDER" on all registrants' state-issued identification. *See McGuire v. Strange*, doc. 255 at 34-35 ("[Richardson] chose to implement' the imprinting 'CRIMINAL SEX OFFENDER on the affected identification cards."), and doc. 258 at 1 ("Defendant [Richardson] hereby gives notice of his intent to adopt Luther Strange's Post Trial Brief (Doc. #255).).

336. Defendant Richardson made it unlawful for any ASORCNA registrant to carry any other state-issued identification without his chosen inscription. As a result, the branded registrant identification became official state-wide policy enforced in all 67 counties and scores of municipalities in Alabama.

337. By branding ASORCNA registrants' state-issued identification card, Defendant Richardson violated the First Amendment rights of the plaintiffs and the class of similarly situated registrants of ASORCNA by proscribing their right to speak, and to refrain from speaking — to express their own views and be free from compulsory endorsement of the State's views.

338. Supreme Court and Eleventh Circuit decisions clearly establish that infringement of speech through proscriptive measures carry a strong presumption of unconstitutionality. *See e.g.*, *Wooley v. Maynard*, 430 U.S. 705 (1977); *Cooper v. Dillion*, 403 F.3d 1208 (11th Cir. 2005). Our courts have invalidated state laws that serve to proscribe speech in the manner that Defendant Richardson chose when branding ASORCNA registrants' identification. *Id.*

339. Defendant Richardson had years of prior warning through prior litigation and a federal court's explicit warning about the potential unlawfulness of his decision to place the humiliating brand on registrant identification.

340. No reasonable official would find legal, the forcing of its citizens — most of them free Americans with no custodial relationship with the State — to carry state-branded identification inscribed with a state message which humiliates, shames and embarrasses them and subjects them to daily ostracism.

341. The defendant chose the particularly harsh and unconstitutional means under the statutory guise of "enabling officers to identify" ASORCNA registrants. Yet Richardson excluded so many less-offensive and constitutionally palatable alternatives.

342. Because of the constitutional harm he caused registrants of ASORCNA to experience, Defendant Richardson is liable in his individual capacity pursuant to 42 U.S.C. § 1983.

343. The Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on Defendant Richardson under 42 U.S.C. § 1983. Nor is Defendant Richardson absolutely immune from personal liability under 42 U.S.C. § 1983 solely by virtue of the official nature of his acts.

344. Defendant Richardson, sued in his individual capacity, is a "person" within the meaning of 42 U.S.C. § 1983.

## Lack of Legal Remedy

345. The plaintiffs' harm is ongoing, and cannot be alleviated except by injunctive relief.

346. No other relief is available at law.

## Request For Relief[4]

Wherefore, the Plaintiffs request that this Court:

a. Issue a judgement pursuant to 28 U.S.C. §§ 2201-2202, declaring that ASORCNA unconstitutionally infringes upon the plaintiffs' fundamental rights to maintain intimate familial associations, to travel, to engage in the common occupations of life, to privacy, to engage in free speech, and to remain silent, and issue a preliminary and permanent injunction restraining the defendants from enforcing against the plaintiffs those provisions of ASORCNA that interfere with those rights.

b. Issue a judgement pursuant to 28 U.S.C. §§ 2201-2202, declaring that ASORCNA is void under the Due Process Clause of the Fourteenth Amendment due to vagueness and impossibility and issue a preliminary and permanent injunction restraining the defendants from enforcing against the plaintiffs those provisions of ASORCNA that are unconstitutional.

c. Issue a judgement pursuant to 28 U.S.C. §§ 2201-2202, declaring that ASORCNA requirements that John Does #3, #4, #6, and #8, who are "in-town" registrants, report to two law enforcement agencies and pay dual fees violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and issue a preliminary and permanent injunction restraining the defendants from enforcing ASORCNA against them.

d. Issue a judgement pursuant to 28 U.S.C. §§ 2201-2202, declaring the Defendant Richardson, individually, violated the Constitutional rights of the Plaintiff's and similarly situated class members and is liable pursuant to 42 U.S.C. § 1983.

e. Certify this case as a class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure with the class and sub-class as defined above.

f. Award damages to the plaintiffs and similarly situated class members.

---

[4] The Plaintiffs will file a Motion for and Memorandum in support of Preliminary Injunctive relief contemporaneous to the filing of this Complaint.

g.  Award the plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

Respectfully submitted this 20th day of August, 2015.

J Mitch McGuire (MCG044)
*McGuire & Associates, LLC*
31 Clayton Street
Montgomery, Alabama 36104
334-517-1000 (voice)
334-517-1327 (fax)
jmcguire@mandabusinesslaw.com
*Attorney for Plaintiffs*