IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN DOE 1, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-606-WKW |
| | ) | [WO] |
| LUTHER STRANGE, III, | ) | |
| Attorney General of the State of | ) | |
| Alabama in his official capacity, *et* | ) | |
| *al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In the interest of the safety and wellbeing of its citizenry, Alabama implements a comprehensive scheme regulating the activities of sex offenders. The threat that sex offenders pose to the most vulnerable among us cannot be gainsaid. No matter the magnitude of that threat, however, the means by which the state addresses it must comport with the principles of liberty and dignity inherent in our constitutional tradition.

The Alabama Sex Offender Registration and Community Notification Act ("ASORCNA") constitutes one of the most "comprehensive, debilitating" sex offender statutes in the country. *McGuire v. Strange*, 83 F. Supp. 3d 1231, 1236 (M.D. Ala. 2015). Among its features are a system of sex offender registration, a protocol for notifying the public of sex offenders' presence in the community, and

various means of restricting sex offenders' access to potential victims.  *See* Ala. Code § 15-20A-1 *et seq.*  Plaintiffs in the instant action, all Alabama citizens subject to ASORCNA's requirements, filed a complaint challenging portions of the statute under the First and Fourteenth Amendments to the United States Constitution.

Before the court is the Motion to Dismiss First Amended Complaint or For More Definite Statement or to Strike (Doc. # 43) filed by Defendants Luther Strange III and John Richardson.  The motion has been fully briefed.  Upon consideration of the pleadings, the arguments of counsel, and the relevant law, the motion is due to be granted in part and denied in part.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint against the legal standard articulated by Rule 8 of the Federal Rules of Civil Procedure.  Rule 8 provides that the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged

in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). The court need not, however, accept mere legal conclusions as true. *Id.* at 1325.

To survive a 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A party may "move for a more definite statement" under Rule 12(e) of the Federal Rules of Civil Procedure when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). To the extent the complaint contains any "redundant, immaterial, impertinent, or scandalous matter," the court may strike it. Fed. R. Civ. P. 12(f).

### III.  BACKGROUND

Though this case is in its procedural infancy, much has transpired since Plaintiffs filed the initial complaint. Because a basic understanding of the circumstances is necessary to the resolution of the instant motion, some discussion of the statutory framework, parties involved, and procedural history will be helpful.

A.    **Statutory Framework**

The statutory provisions at issue in this case did not appear in Alabama's early sex offender statutes.  The state's first sex offender registration law, which took effect in 1967, required a qualified offender to register once with the sheriff of his or her home county.  1967 Ala. Acts, No. 507, codified at Ala. Code § 13A-11-200.  The statute made this registration information available only to law enforcement.  Ala. Code § 13A-11-201.  The state implemented a more sophisticated scheme in 1996 with the enactment of the Alabama Community Notification Act ("ACNA").  Ala. Act 96-793 (1996).  It expanded the state's regulation of sex offenders by a modest measure, merely requiring distribution of sex offender communication to the community.  *Id.*  ASORCNA took effect on July 1, 2011, ushering in a new era of sex offender legislation.[1]  *See* Ala. Code § 15-20A-3.

1.    *ASORCNA's Scope*

The current version of ASORCNA applies to adult offenders convicted of any of thirty-one infractions designated as sex offenses under Alabama law.  Ala. Code § 15-20A-5.  It also makes its provisions applicable to any adult offender convicted in another jurisdiction of a crime that, "if it had been committed in [Alabama] under the current provisions of law, would constitute" an enumerated

---

[1]  The legislature amended certain ASORCNA provisions in early 2015.  These amendments have been in effect since September 1, 2015.  Ala. Acts 2015-463 (2015).

offense.  Ala. Code § 15-20A-5(33).  The statute applies retroactively such that it sweeps offenders under its control regardless of when the conviction occurred or the duty to register arose.  Ala. Code § 15-20A-3(a).  Unless they are relieved from its requirements due to medical need, qualified offenders are subject to the statute's requirements for life.  Ala. Code § 15-20A-3(b).

### 2.   *Duty to Register*

At the time a sex offender is convicted or released from incarceration, he must register with certain law enforcement agencies.  Ala. Code § 15-20A-10.  ASORCNA requires an in-person appearance before the local law enforcement of the county in which the sex offender resides, accepts employment, or attends school.  *Id.*  Registrants have an enduring obligation to update their registration at the time of any change in residence, employment, or educational enrollment.  *Id.*  Homeless registrants are required to report to local law enforcement on a weekly basis.  Ala. Code § 15-20A-12.

Law enforcement uses this information to establish a registry, which it makes available to the public.  Ala. Code § 15-20A-8.  ASORCNA also requires local law enforcement to notify the community of a sex offender's presence by distributing flyers to nearby residents.  Ala. Code § 15-20A-21.  If a registrant intends to leave his or her county of residence for a period of three or more

consecutive days, he must complete a travel permit request and provide the details of his travel plans.  Ala. Code § 15-20A-15.

### 3. *Residency and Employment Restrictions*

ASORCNA strictly limits the areas in which sex offenders may live and work.  The residency provision proscribes the establishment or maintenance of a residence or "other living accommodation" within 2,000 feet of a school, childcare facility, or resident camp.  Ala. Code § 15-20A-11(a).  ASORCNA also prohibits sex offenders from establishing or maintaining a residence within 2,000 feet of the property on which a victim's immediate family members reside.  Ala. Code § 15-20A-11(b).  The 2,000-foot exclusion zone is measured in a straight line from nearest property line to nearest property line.  Ala. Code § 15-20A- 11(g).  Those sex offenders who were released or convicted and established a residence within an exclusion zone prior to ASORCNA's effective date were not required to relocate. *See, e.g.*, Ala. Code § 15-20A-11(a) (No adult sex offender shall . . . maintain a residence after release or conviction . . . within 2,000 feet of the property . . . .).  Plaintiffs contend that the geographical residency restrictions preclude registrants from residing in over eighty percent of the available housing in Montgomery, Alabama.

In addition to imposing geographical limitations on living arrangements, ASORCNA prevents sex offenders from residing with certain minor children.  No

sex offender may "establish or maintain a residence or any other living accommodation with a minor." Ala. Code § 15-20A-11(d). Shedding light on the meaning of "living accommodation," the statute provides that sex offenders may not conduct an "overnight visit" with a minor. *Id.* The statute does not define "overnight." The minor children limitation generally does not apply if the sex offender is the parent, stepparent, sibling, or stepsibling of the minor. *Id.* But under certain circumstances in which the sex offender's victim was a child, even these familial exceptions do not apply. Ala. Code § 15-20A-11(d)(1)–(5).

Deciphering the statutory meaning of "residence" is no small feat. The definition is an exercise in circularity. *See* Ala. Code § 15-20A-4(20) (defining "residence" as "each *residence* or other place where a person *resides*, sleeps, or habitually lives or will *reside*, sleep, or habitually live.") (emphasis added). The residency provision further explains that an adult sex offender will be deemed to have established residence wherever or whenever he or she: (1) "resides for three or more consecutive days;"[2] (2) "resides following release, regardless of whether the adult sex offender resided at that same location prior to the time of conviction;" (3) "spends 10 or more aggregate days at any locations during a calendar month other than his or her registered address;" (4) "vacates his or her residence or fails to spend three or more consecutive days at his or her residence without previously

---

[2] Again, the statute employs a circular definition.

notifying local law enforcement or obtaining a travel permit." Ala. Code § 15-20A-11(e).

The statute does allow for a limited reprieve from these muddled restrictions. Registrants may petition a state circuit court for relief based on terminal illness, permanent immobility, or other debilitating medical condition. Ala. Code § 15-20A-23(a). To grant this relief, the state court must find that the petitioner does not pose a substantial risk of engaging in future sexual misconduct. Ala. Code § 15-20A-23(g).

The employment provision, like the residency provision, imposes a geographical limitation on sex offender activity. No sex offender may "apply for, accept, or maintain employment or volunteer for any employment" within 2,000 feet of a school or childcare facility. Ala. Code § 15-20A-13(b). Registrants also may not seek or maintain employment within 500 feet of a playground, park, or athletic facility with a principal purpose of serving children. Ala. Code § 15-20A-13(c). The exclusion zone is measured from nearest property line to nearest property line. Ala. Code § 15-20A-13(g). The statute does not define "apply."

This provision further precludes sex offenders from working at any facility or organization that provides services primarily to children. Ala. Code § 15-20A-13(a). Plaintiffs allege, with respect to the Montgomery area, that ASORCNA's employment restrictions render eighty-five percent of jobs unavailable to sex

offenders.   These employment restrictions apply regardless of whether the sex offender's victim was a minor child.

### 4.    *Branded Identification Requirement*

To ensure easy identification of registrants, ASORCNA requires that all sex offenders carry branded identification cards.   Specifically, the statute provides that a sex offender must "obtain, and always have in his or her possession . . . a driver's license or identification card bearing a designation that enables law enforcement officers to identify the licensee as a sex offender."   Ala. Code § 15-20A-18(a), (d). The Alabama Law Enforcement Agency (the "ALEA") has chosen to brand the face of these identification cards with the inscription "CRIMINAL SEX OFFENDER" in bold, red letters.   Registrants also must relinquish any other identification previously issued to them not bearing the sex offender inscription. Ala. Code § 15-20A-18(d).

### 5.    *Penalties for ASORCNA Violations*

ASORCNA's various duties and limitations are enforced under penalty of criminal prosecution.   A violation of its requirements may constitute a Class C felony.   *See, e.g.*, Ala. Code § 15-20A-11(h).   The statute does impose a scienter requirement, however, such that registrants are only liable for knowing violations of any provision.   *See id.*

**B.**     **The Parties**

Plaintiffs John Doe 1, John Doe 3, John Doe 7, and John Doe 9, wish to proceed anonymously in this action.  (*See* Doc. # 41.)  Their assumed names will be used for purposes of resolving the instant motion.  In their amended complaint, Plaintiffs contend that the provisions of ASORCNA deprive them of their constitutional rights to due process and freedom of speech.  Each Plaintiff's experience as an ASORCNA registrant will be discussed.

**1.**     ***John Doe 1***

John Doe 1 ("Doe 1") is an ASORCNA registrant residing within the Northern District of Alabama.  In 1992 and 1993, he pleaded guilty to separate Wisconsin misdemeanor charges.  On both occasions he exposed his genitals in a public place,[3] leading to charges of lewd and lascivious behavior.  Doe 1 served a six-month suspended sentence for each charge, but was never required to register as a Wisconsin sex offender.  In 1994, when Doe 1 moved to Alabama, he likewise was not required to register as a sex offender.  He was convicted of vehicular manslaughter in 2005, however, which triggered a criminal history review.  At the time of his release from imprisonment in 2008, he became subject to ASORCNA's duties and limitations.

---

[3] Plaintiffs suggest that these charges relate to Doe 1's issues with alcohol dependency.

Since his initial registration in 2008, Doe 1 has been convicted twice of violating ASORCNA's provisions.  The first conviction related to his residency status.  Doe 1 first established residence at the home of a friend, where he lived until he found a home of his own.  Law enforcement approved this new home, and Doe 1 lived there until 2012.  In May of 2012, due to frustrations with illegal activity in the vicinity of his new home, Doe 1 moved back to the home of his friend, which law enforcement had previously approved as ASORCNA-compliant. He did not report this change of address, leading to his eventual arrest.

His second charge arose from his frustration with ASORCNA's branded identification requirement.  Due to the nature of his qualifying convictions, which he contends did not directly involve any victims of sexual assault, Doe 1 feels that he is not a criminal sex offender.  For this reason, he disagrees with the label ascribed to him on his branded identification card.  He experiences frequent shame and humiliation when he patronizes stores and is asked to present his identification. He caused the inscription to be redacted.  Upon discovering the redaction, law enforcement charged Doe 1 with an ASORCNA violation.

Doe 1 entered conditional pleas of guilty on both of his ASORCNA-related charges in exchange for a suspended sentence of five years on each count, to run concurrently.  Doe 1 is currently required to comply with ASORCNA's residency,

employment, registration, and identification requirements.  He registers quarterly with county law enforcement.

### 2.    *John Doe 3*

In 1968, at the age of 13, John Doe 3 ("Doe 3") faced a murder charge.  He alleges that, in the confusion of his arrest, and after being beaten by interrogating officers, he gave a coerced confession to the murder.  His confession led to a sentence of fifty years of imprisonment, the first few years of which he spent in a mental institution.  When he arrived at the state penitentiary, he was only fifteen or sixteen years old.

As a young man incarcerated in an adult facility, Doe 3 became the frequent target of inmate abuse.  He sought protection from a prison gang and ultimately fell into the wrong crowd.  In 1985, correctional authorities questioned Doe 3 about payments he allegedly received in exchange for protecting a fellow inmate from sexual abuse.  As a result of this investigation, authorities eventually charged Doe 3 with sodomy.  To avoid extending his already lengthy sentence, Doe 3 pleaded guilty to this charge.  He received a sentence of twenty-five years of imprisonment to run concurrently with his original sentence.

When correctional authorities released Doe 3 from prison in 2010, he immediately became subject to ASORCNA's residency restrictions.  He currently resides within the Middle District of Alabama in a communal facility with

approximately thirty other ASORCNA registrants.  He has a girlfriend and an adult niece with whom he would like to live, but both the girlfriend and the niece live within ASORCNA's residency zones of exclusion.  His niece's residence is also unavailable because a minor child lives there, but his niece has indicated that she would like for Doe 3 to be able to live in her home.  Doe 3 registers quarterly with both city and county law enforcement.

During his incarceration, Doe 3 developed his skills as an automotive painter.  Though he has researched several auto body shops in his city, none of the shops he has identified is in an ASORCNA-compliant zone.  He is relegated to intermittent odd jobs and earns minimum wage.  Under ASORCNA's employment provisions, Doe 3 faces criminal prosecution for even applying for a job at an auto body shop within an employment zone of exclusion.  Doe 3 estimates that he could earn up to $30,000 a year working as an auto painter, but he is unable to do so.

Doe 3 enjoys shopping with friends, but he avoids this activity because of ASORCNA's branded identification requirement.  He is required to show his identification each time he cashes a check at the bank, goes to the pharmacy to fill prescriptions, and purchases alcohol.

### 3.    *John Doe 7*

John Doe 7 ("Doe 7") resides within the Middle District of Alabama.  His legal troubles began in 1986 when law enforcement charged him with armed

robbery.  As for his involvement in the robbery, he represents that he merely gave a ride to the perpetrator without any knowledge of the perpetrator's felonious intentions.  While Doe 7's charges were pending, authorities held him in the county jail, where he shared a cell with several other inmates.  Some months after Doe 7's arrest, law enforcement accused him of raping another inmate.  He initially denied involvement, but, according to Doe 7, he eventually caved under the pressure of a potential sentence of life imprisonment.  He agreed to plead guilty to the armed robbery charge, and in exchange the state reduced his rape charge to a sodomy charge.  After pleading guilty to armed robbery and sodomy, Doe 7 began serving a twenty-five year sentence of imprisonment.

Upon his release from prison, Doe 7 became subject to ASORCNA's provisions.  He has family members with whom he would like to live, but most of them reside within the ASOCRNA zones of exclusion.  His sibling lives in an ASORCNA-compliant area, but the sibling has minor children with whom Doe 7 is not allowed to reside.  Doe 7 eventually came to reside in an ASORCNA registrant community established by Triumph Church in Chilton County.  Alabama passed a law preventing the maintenance of this Chilton County community,[4] and Doe 7 was forced to leave.

---

[4] The law affecting this settlement prevents ASORCNA registrants from living with 300 feet of each other within Chilton County.  *See* Ala. Code § 45-11-82.

Though Doe 7 was homeless for a time after being forced to vacate the Chilton County community, he eventually found a rural lot on which to park his mobile home. When his mobile home fell into disrepair, he had it towed to a repair shop. He slept in a tent in an ASORCNA-registered area while mechanics repaired his mobile home. He ventured to the repair lot each evening so he could shower in the mobile home before returning to his tent. In June of 2015, law enforcement visited Doe 7's mobile home as he was finishing his nightly shower. They arrested him for not being at his registered residence in violation of ASORCNA. Law enforcement officials told Doe 7 that ASORCNA required him to be at his registered residence between the hours of 9:00 p.m. and 5:00 a.m.

After this arrest, Doe 7 pleaded guilty to a violation of ASORCNA's residency provision. He served a two-year sentence plus fourteen months of probation. He registers quarterly with county law enforcement and alternates between sleeping in a tent and a motor home on a piece of rural property that is outside the zones of exclusion. He rents this property at a cost of approximately $200 per month.

Though Doe 7 has substantial skill as a housing construction worker, he is unable to take advantage of many work opportunities. ASORCNA's employment provisions preclude him from taking part in many construction projects. He

currently is able to work about one day per week, earning little more than he needs to rent his ASORCNA-compliant property.

Because of the branded inscription on his state identification, Doe 7 feels humiliated each time he is asked to prove his identity. He has been summarily rejected from potential places of residency as a result of the inscription on his identification card. Doe 7 also contends that employers have refused to hire him for this reason.

### 4.    *John Doe 9*

The fourth Plaintiff, John Doe 9 ("Doe 9"), currently resides within the Northern District of Alabama. In 2005, Doe 9 was convicted in another state of sexual battery of an adult female. As part of his plea agreement, he was not required to register as a sex offender in the state of his conviction. He did serve a term of imprisonment and was paroled to his home state of Alabama.

Immediately upon his return to Alabama, Doe 9 was required to register as a sex offender under ASORCNA. He lived with his ailing mother from approximately 2006 to 2008, providing her with home care and financial support. In 2008, Doe 9's mother purchased a new home. She did not learn until after closing on the property that it was located within a short distance of an unmarked, in-home daycare facility. When Doe 9 attempted to register his mother's new

home as his residence, law enforcement informed him that it was not ASORCNA-compliant.

Doe 9's grandmother, who lives in an ASORCNA-compliant home, initially offered to open her home to him.  But when she discovered that law enforcement would distribute notification flyers to her neighbors and make unannounced home visits, she withdrew her offer.  Doe 9 was, for a time, forced into homelessness due to the high cost of living in ASOCRNA-compliant areas.  He is currently unable to live with his wife, who shares a home with her uncle within an ASORCNA zone of exclusion.  A generous friend has allowed Doe 9 to reside temporarily on his land in an ASORCNA-compliant area.

Doe 9 has experience managing a team of salespeople.  The employment zones of exclusion make it difficult for him to continue with this or any other occupation.  When Doe 9 has applied for various jobs, potential employers have required him to show his branded identification.  Doe 9 contends that he has been denied employment as a result of the sex offender inscription on his identification.  He registers quarterly with county law enforcement and is subject to all of ASORCNA's adult provisions.

Much like the other Plaintiffs, Doe 9 describes the humiliation associated with presenting his branded identification card.  He avoids shopping at local stores, relying on his wife to shop for him instead.

5.    *Defendants*

Plaintiffs raise their claims against two Defendants.  First, they have named Luther Strange III in his official capacity as Attorney General of the State of Alabama.  Second, they have named John Richardson in his official capacity as Secretary of the ALEA.

## C.    Procedural History

This action commenced on August 15, 2015, with the filing of the original complaint.  (Doc. # 1.)  Plaintiffs moved for a preliminary injunction (Doc. # 17), but that motion was denied (Doc. # 32).   In response to the original complaint, Defendants filed a motion to dismiss.  (Doc. # 27.)  Plaintiffs then sought and were granted leave to file an amended complaint, rendering moot Defendants' initial motion to dismiss.  (*See* Doc. # 38.)

Only three of the eight original Plaintiffs joined in the amended complaint. These include Doe 1, Doe 3, and Doe 7.  (*See* Doc. # 39.)  Doe 9, who was not a party to the original complaint, also joined in the amended pleading.  (*See* Doc. # 39.)  Defendants responded with a motion to dismiss or, in the alternative, for a more definite statement or to strike portions of the complaint, filing a contemporaneous brief in support of the motion.  (Docs. # 43 and 44.)  Plaintiffs filed a response (Doc. # 46), and Defendants filed a reply (Doc. # 47).  Plaintiffs

sought but were denied an opportunity to file a surreply.  (*See* Docs. # 48 and 50.) The merits of Defendants' motion will be addressed in Part IV.

## IV.  DISCUSSION

Defendants primarily seek dismissal of the amended complaint (Doc. # 39) in its entirety.  Defendants also seek, in the event this relief is not granted, a more definite statement or an order striking extraneous material from the pleading.  The parties' arguments regarding dismissal will be addressed first.  Defendants' alternative motions for a more definite statement or to strike impertinent material will be addressed as they relate to claims that survive the motion to dismiss.

### A.    <u>Motion to Dismiss</u>

In their motion, Defendants seek dismissal under Rule 12(b)(6) as to all counts raised in the amended complaint.  Count I alleges that ASORCNA's residency restrictions run afoul of the due process clause of the Fourteenth Amendment as applied to all Plaintiffs.  Count II alleges that ASORCNA's employment restrictions offend notions of due process under the Fourteenth Amendment as applied to Doe 3, Doe 7, and Doe 9.  Count III attacks ASORCNA's residency, employment, and branded identification provisions as unconstitutionally vague under the due process clause of the Fourteenth Amendment.  Count IV challenges the constitutionality of the branded identification requirement under the free speech clause of the First Amendment.

19

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, primarily seeking declaratory relief under 28 U.S.C. § 2201.  They also seek injunctive relief preventing Defendants from enforcing the provisions of ASORCNA that Plaintiffs contend are unconstitutional.  Defendants' motion to dismiss these claims will be addressed first as it relates to Plaintiffs' due process claims.  The motion will then be discussed as it relates to Plaintiffs' free speech claim.

    **1.**    *Due Process Claims*

Among the fundamental constitutional protections is the concept of due process.  The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S.  Const. amend. XIV, § 1.  Courts have interpreted this provision to include two varieties of due process protections:  procedural and substantive.  *Doe v. Moore*, 410 F.3d 1337, 1342 (11th Cir. 2005).  The procedural component provides that a state may not deprive a person of life, liberty, or property without notice and an opportunity to be heard.  *Id.*  The substantive component protects fundamental rights "that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'"  *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).

Also subsumed within the concept of due process is the principle that a criminal statute must clearly define the conduct it proscribes.  *Grayned v. City of*

*Rockford*, 408 U.S. 104, 108 (1972).  Out of this principle grew a doctrine of vagueness, which holds that a criminal statute is constitutional only where it is sufficiently clear to put ordinary people on notice of the prohibited conduct. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  It also must define the criminal offense "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.*

Plaintiffs' vagueness claim, which appears in Count III, will be analyzed first.  Their substantive due process claims relating to the residency and employment restrictions, which appear in Counts I and II, will then be addressed respectively.

### a.    Void for Vagueness (Count III)

Plaintiffs contend, in Count III, that the residency restrictions, employment restrictions, and branded identification requirements are unconstitutionally vague. *See* Ala. Code §§ 15-20A-11, 15-20A-13, 15-20A-18.  A statutory provision is void for vagueness if it (1) fails to provide people of ordinary intelligence with fair notice of what conduct it proscribes or (2) is so unclear that it authorizes or encourages discriminatory enforcement.  *United States v. Williams*, 553 U.S. 285, 304 (2008).  To succeed on a void-for-vagueness challenge, the plaintiff must show that the statutory provision is "impermissibly vague in all of its applications." *Ala. Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1136, 1139 (11th Cir.

2014) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 4545 U.S. 489, 495 (1982)).  If the statutory provision at issue clearly proscribes some conduct in which the challenger engages, the challenger cannot complain of the statute's vagueness.  *Ala. Educ. Ass'n*, 746 F.3d at 1139–40.

Defendants' motion to dismiss will be addressed as it applies to each of the challenged ASORCNA provisions:  the residency restrictions, the employment restrictions, and the branded identification requirement.  With respect to Plaintiffs' claims in Count III, Defendants' motion to dismiss is due to be denied.

i.   Residency Restrictions and Vagueness

In support of their vagueness challenge to ASORCNA's residency restrictions, Plaintiffs make several factual allegations.  They contend that registrants cannot accurately measure the 2,000-foot buffer due to daily changes in land use.  They also take issue with the statutory definition of "residence," arguing that registrants of ordinary intelligence cannot decipher what constitutes establishment or maintenance of a residence.  With respect to registrant's plight in finding a suitable home, Plaintiffs allege that registrants have no access to maps showing the precise residential zones of exclusion.  They further contend that the statutory limitation on "overnight" visits in certain homes has no precise meaning.  Plaintiffs contend generally that law enforcement agencies across the state apply these residency restrictions in a disparate manner.  (Doc. # 39, at 30–31.)

22

Defendants argue that these allegations are insufficient to state a claim that ASORCNA's residency restrictions are unconstitutionally vague.  To determine whether Defendants' motion to dismiss should be granted on this basis, it must be determined whether the language of the residency provision fails to provide notice of the conduct that is prohibited or is so unclear that it allows for arbitrary or discriminatory enforcement.  *Williams*, 553 U.S. at 304.  As it relates to the residency restrictions, Defendants' motion will be denied.

Plaintiffs' allegations are sufficient to allow the reasonable inference that the residency provision fails to provide notice as to what conduct it proscribes.  *See id.* ASORCNA defines "residence" in a circular manner, failing to specifically identify the point at which a sex offender "resides" within a zone of exclusion such that he is subject to prosecution.  *See* Ala. Code § 15-20A-11(e).  The definition gives law enforcement broad discretion to interpret the meaning of "residence," providing that "residency shall be construed to refer to the places where a person resides . . . regardless of whether the person declares or characterizes such place as a residence."  Ala. Code § 15-20A-4(20).  Even if it were clear what constitutes a residence for purposes of the statute, registrants face a virtually insurmountable hurdle of determining the location of qualifying schools, childcare facilities, or resident camp facilities without accurate data of current land use within the state. *See Doe v. Snyder*, 101 F. Supp. 3d 672, 684 (E.D. Mich. 2015) (finding that

Michigan's sex offender statute, which employed a 1,000-foot residency zone of exclusion, was vague because, among other reasons, registrants had no access to parcel data indicating the location of various properties that triggered a zone of exclusion).

The residency provision also fails to adequately define "overnight" such that registrants are not put on notice of what exactly constitutes a violation when they choose to spend time with their minor relatives during the evening hours. *See* Ala. Code § 15-20A-11(d). Plaintiffs allege that it is unclear, both to them and to law enforcement, whether overnight refers to staying in one location between 5:00 p.m. and 9:00 a.m., or whether a registrant may avoid running afoul of this provision by leaving the prohibited residence before the clock strikes midnight.

Defendants contend that Plaintiffs' facial vagueness challenge fails because Plaintiffs are engaged in conduct that is clearly proscribed under the statute. *See Village of Hoffman*, 455 U.S. at 495. Defendants' application of this principle is imprecise. For the sake of convenience, this concept will be referred to as the "engagement principle." As noted in *Village of Hoffman*, the engagement principle holds that a challenger launching a facial attack on a statute may not complain that the statute is impermissibly vague in all of its applications when it is clear that some of the activity in which he engages is clearly prohibited under the language of the statute. 455 U.S. at 495.

Apparently arguing that Plaintiffs' challenge fails under the engagement principle, Defendants contend that they are "aware of no sense in which the plaintiffs are not allegedly engaged (or seeking to be engaged) in conduct that is clearly prohibited by ASORCNA." (Doc. # 44, at 18.)  This statement might be read, as Plaintiffs did, to mean that the party bringing a vagueness challenge must show that he has already violated the statute in order to challenge it.  This is not the thrust of the engagement principle as it applies to a pre-enforcement constitutional challenge.  *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  In light of Defendants' argument on this point, it is no wonder that Plaintiffs cited Article III standing cases to show that they need not have violated the law to bring the instant challenge.  (*See* Doc. # 46, at 14–17.)  This is a reasonable response to Defendants' initial engagement principle argument.[5]

The more likely import of Defendants' statement is that Plaintiffs cannot complain of ASORCNA's vagueness when they wish to have the freedom to spend the night in homes shared by their nieces and nephews.  In that respect, Defendants' statement rests on an invalid assumption.  That is, it assumes that

---

[5] Defendants' reply brief breeds more confusion.  In restating the engagement principle, Defendants employ the word "prescribe" where they ought to use the word "proscribe." (Doc. # 47, at 5.)  Presumably this error is nothing more than typographical.  Even so, this portion the reply brief, instead of shoring up Defendants' argument on this point, mostly just serves to illustrate "what Mark Twain meant when he said, 'The more you explain it, the more I don't understand it.'"  *Sec. & Exch. Comm'n v. Chenery*, 332 U.S. 194, 214 (1947) (Jackson, J., dissenting).  Defendants ultimately have not, to use their turn of phrase, "threaded the needle" to show that their motion should be granted by operation of the engagement principle.  (*See* Doc. # 47, at 5.)

spending the night with minor relatives is clearly prohibited by the residency restrictions.   That ASORCNA clearly defines what constitutes "overnight" "residency," or "living arrangement" is far from settled.   It is the opacity of these terms that incited the instant controversy.   Even if it were clear what the statute proscribed, Plaintiffs have not alleged that they are already spending the night in homes shared by their minor relatives.   They only contend that they would like to do so, but are unsure of what interactions the statute actually allows.   The engagement principle does not foreclose Plaintiffs' facial vagueness challenge in the way Defendants suggest. *See Village of Hoffman*, 455 U.S. at 495.

Plaintiffs' allegations are also sufficient to allow the reasonable inference that ASORCNA's residency provisions are so unclear as to authorize arbitrary or discriminatory enforcement. *See Williams*, 553 U.S. at 304.   Plaintiffs contend that law enforcement agencies across the state do not apply the residency provision uniformly.   Some agencies, they allege, have allowed individuals convicted of sexual crimes to live for extended periods of time within 2,000 feet of a restricted property.   They further allege that officers interpret "overnight" and "residence" to mean different things.   These allegations indicate the sort of arbitrary and disparate enforcement that the due process clause will not tolerate, and accordingly Plaintiffs have stated a claim with respect to the vagueness of the residency provisions.

ii.     Employment Restrictions and Vagueness

Challenging ASORCNA's employment provisions as unconstitutionally vague, Plaintiffs allege that registrants are unable to measure the 2,000-foot employment exclusion zones due to daily changes in land use.  They also take issue with the statutory definition of "apply," arguing that registrants of ordinary intelligence cannot decipher what it means to apply for employment within a restricted area.  Plaintiffs allege that Defendant Luther Strange ("Strange") has admitted in the past that he does not know whether the statutory definition of "apply" encompasses sending out résumés.  (*See* Doc. # 39, at 31.)  Plaintiffs further allege that registrants have no access to maps showing the precise employment zones of exclusion such that they are unable to even investigate employment opportunities without fear of prosecution.  Plaintiffs contend generally that law enforcement agencies do not apply the employment restrictions uniformly, and that some registrants are able to work within 2,000-feet of a school or childcare facility.  (Doc. # 39, at 30–31.)

As it relates to ASORCNA's employment restrictions, Defendants' motion to dismiss will be denied.  Plaintiffs' allegations are sufficient to allow the inferences that the employment provision fails to provide adequate notice and that it allows for arbitrary enforcement.  *See Williams*, 553 U.S. at 304.

27

Plaintiffs' allegations indicate that registrants of ordinary intelligence are not put on adequate notice as to which places of potential employment are off-limits under the statute. *See id.* The meaning of the term "apply" is unclear, as admitted by Strange. Registrants cannot be sure whether they will be exposed to criminal liability for sending résumés across an area in hopes of finding employment in an ASORCNA-compliant area. This issue is exacerbated by the facts that Plaintiffs have no access to precise land use data and that land use is in constant flux. *See Snyder*, 101 F. Supp. 3d at 684. It is also unclear, under the statutory language, whether "maintaining" employment within an area includes the situation in which an employer is located in an ASORCNA-compliant area, but the job requires the registrant to periodically pass through or perform intermittent work within 2,000 feet of a restricted location.

The allegations also are sufficient to support the reasonable inference that the employment restrictions allow for arbitrary enforcement. *See Williams*, 553 U.S. at 304. Plaintiffs have alleged that some law enforcement agencies allow sex offenders to work in locations that fall within a zone of exclusion, while others prohibit sex offenders from doing so. It is also reasonable to infer, based on the ambiguities in the statute, that law enforcement agencies in different parts of the state have the discretion to interpret the meaning of "apply" and "maintain" in disparate fashions.

iii.    Branded Identification Requirements and Vagueness

Plaintiffs finally challenge ASORCNA's branded identification provision on vagueness grounds.  They allege that registrants of ordinary intelligence cannot discern the meaning of the statute's requirement that sex offenders "always have [state-issued branded identification] in [their] possession."  Ala. Code § 15-20A-18(a).  They further allege that it is unclear what the statute requires when it provides that registrants must "relinquish any other" form of identification.  Ala. Code § 15-20A-18(d).  They contend, for example, that registrants cannot be sure whether the provision requires that they relinquish military or other federally-issued identification.

These allegations are in part sufficient to state a plausible claim that the branded identification provision is unconstitutionally vague.  With respect to the requirement that registrants possess state-issued identification, the meaning of this provision is ascertainable to people of ordinary intelligence.  *See United States v. Wayerski*, 624 F.3d 1342, 1349 (11th Cir. 2010); Ala. Code § 15-20A-18(a)–(c).  With respect to the requirement that registrants relinquish any other form of identification, however, the statutory language does not provide sufficient notice as to which identification registrants may retain.  The plain meaning of the statute suggests that registrants may not retain their federally-issued identification.  Defendants indicated, however, in support of their motion on another count of the

amended complaint, that Plaintiffs may use federally-issued identification, such as a passport, in certain situations.  (*See* note 9, *infra*.)  On the occasion of this motion to dismiss, where the inquiry is limited to the plausibility of the claim in light of the allegations, Plaintiffs' amended complaint is sufficient to state a claim that the "relinquish" portion of the branded identification provision is unconstitutionally vague.

In light of the foregoing, Defendants' motion to dismiss will be granted in part and denied in part as to Count III.  Defendants' motion to dismiss is granted with respect to Plaintiffs' claim that the portion of the statute requiring them to possess state-issued identification is unconstitutionally vague.  *See* Ala. Code § 15-20A-18(a)–(c).  Defendants' motion to dismiss is denied, however, with respect to their claim that the portion of the statute requiring them to relinquish other forms of identification is unconstitutionally vague.  *See* Ala. Code § 15-20A-18(d).

In sum, the allegations in the amended complaint are sufficient to state a plausible claim for relief on Plaintiffs' theory that the residency, employment, and relinquishment of non-branded identification provisions are so vague as to offend notions of due process.  *See Iqbal*, 556 U.S. at 678.; Ala. Code §§ 15-20A-11, 15-20A-13, 15-20A-18(d).  Defendants' motion to dismiss Count III will be denied except as to Plaintiffs' vagueness challenge to Ala. Code § 15-20A-18(a)–(c).

### b.       Residency Restrictions and Due Process (Count I)

In Count I, all Plaintiffs contend that ASORCNA's residency restrictions deprive them of substantive due process rights.[6]  ASORCNA's residency provision includes two separate restrictions:   the 2,000-foot rule and the prohibition of cohabitation with certain minors.   Ala. Code §§ 15-20A-11(a)–(c), 15-20A-11(d).  As it relates to each of these residency restrictions, the motion to dismiss is due to be granted in part and denied in part.

#### i.       The 2,000-Foot Rule

Plaintiffs allege that the 2,000-foot residency restriction infringes upon their rights to cohabitate with their spouses and live with extended family members.  Under substantive due process jurisprudence, a state may only infringe upon a fundamental right where it narrowly tailors the restriction to serve a compelling

---

[6] The amended complaint includes an allegation that might be construed as a procedural due process challenge to ASORCNA's residency provisions.  (Doc. # 39, at 32 ("ASORCNA does not provide for any individualized consideration before restricting Plaintiffs' ability to associate with close or extended family members.").)  Defendants, in the motion to dismiss, have characterized Plaintiffs' challenge in Count I as a substantive due process claim, and Plaintiffs made no effort to characterize their challenge as procedural in response to the motion.

It is conceivable that ASORCNA registrants might fashion a procedural due process challenge by claiming that ASORCNA's residency restrictions, especially as they relate to the flat prohibition on residing with certain minor children, fail to afford them the procedural protections contemplated by the Fourteenth Amendment.  Put another way, registrants might argue that because ASORCNA prevents them from living with children regardless of whether they victimized children, it deprives them of liberty without the requisite notice and opportunity to be heard.  No opinion is currently expressed as to the potential viability of such a claim.

Crucially for purposes of this motion to dismiss, Plaintiffs have offered no argument rebutting Defendants' contention that this claim turns on substantive due process jurisprudence.  Plaintiffs also have made no particularized factual allegations giving rise to a plausible claim that ASORCNA runs afoul of the procedural due process aspect of the Fourteenth Amendment.  Accordingly, any colorable procedural due process claims will not be considered in determining whether Count I survives the instant motion to dismiss.

government interest.  *Reno v. Flores*, 507 U.S. 292, 302 (1993).  Where the state law at issue does not interfere with a fundamental right, however, it is valid so long as it bears a rational relationship to a legitimate government interest.  *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997).

The 2,000-foot rule does not directly infringe upon Plaintiffs' right to intimate familial associations.  Plaintiffs allege that they are unable to live with family members of their choosing because those family members live within ASORCNA zones of exclusion.  These allegations do not indicate, however, that ASORCNA flatly prohibits Plaintiffs from living with family members in ASORCNA-compliant homes.  That the 2,000-foot rule allegedly disqualifies Plaintiffs from living in the majority of homes in the Montgomery area is of no moment–registrants are ultimately free to live with their families outside the statutorily excluded areas.

Such an indirect effect on Plaintiffs' choice of living arrangements does not infringe upon a fundamental right such that heightened scrutiny is required.  *Doe v. Moore*, 410 F.3d 1337, 1445–46 (11th Cir. 2005); *Doe v. Miller*, 405 F.3d 700, 710 (8th Cir. 2005) (holding that Iowa's sex offender residency restriction did not directly infringe upon registrants' rights to privacy, and thus was not subject to strict scrutiny); *McGuire v. City of Montgomery*, No. 2:13-CV-1027-WKW, 2013 WL 1336882, at *11 (M.D. Ala. March 29, 2013) (granting a motion to dismiss

with respect to the plaintiffs' claim that ASORCNA's 2,000-foot rule infringes upon registrants' fundamental rights).

Because the 2,000-foot rule does not infringe upon Plaintiffs' fundamental right to familial association, it is valid if it is rationally related to a legitimate state interest. *Glucksberg*, 521 U.S. at 728. The statute easily overcomes this constitutional hurdle. The 2,000-foot rule is rationally related to Alabama's stated interest in protecting vulnerable populations from abuse at the hands of recidivist sex offenders. *See* Ala. Code § 15-20A-2(5). Accordingly, Plaintiffs' allegations are insufficient to state a plausible claim for relief, and Defendants' motion to dismiss is due to be granted as it relates to Plaintiffs' due process attack on the 2,000-foot rule. *See Iqbal*, 556 U.S. at 678.

ii.     Prohibition on Cohabitation with Certain Minors

Plaintiffs further allege that the prohibition on residing with certain minor children infringes upon their privacy rights. *See* Ala. Code § 15-20A-11(d). The gravamen of their claim is that ASORCNA, by preventing registrants from residing with certain extended family members, including nieces and nephews, burdens the fundamental right to intimate familial association. Specifically, Doe 3 alleges that he would like to live with his adult niece, but he cannot because a minor child also

resides in that home.[7]  Doe 7 alleges that he is barred from living with his sibling, whose home is located in an ASORCNA-compliant area, because his sibling's children reside in that house.  To determine whether the amended complaint survives this motion to dismiss, it must first be determined whether the minor children restriction in fact burdens a fundamental right to intimate familial association.  If it does, then this provision of ASORCNA must withstand strict scrutiny.  *Reno*, 507 U.S. at 302.  If it does not burden this fundamental right, then it is subject only to rational basis review.  *Glucksberg*, 521 U.S. at 728.

Whether a particular state law implicates a fundamental right is a complex inquiry beholden to no rigid analytical paradigm.  *See Poe v. Ullman*, 367 U.S. 497, 542 (1961) ("Due process has not been reduced to any formula; its content cannot be determined by reference to any code. The best that can be said is that through the course of this Court's decisions it has represented the balance which our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society.").  In support of

---

[7] Worth noting is that Doe 3's niece's residence is located within a zone of exclusion, rendering it independently unavailable to him under the 2,000-foot rule.  Should his niece relocate to an ASORCNA-complaint area, however, Doe 3 would be unable to live with her under the minor children restriction.  Defendants argue that, because Doe 3's niece's home is independently unavailable to him under the 2,000-foot rule, he has not alleged sufficient facts to support his challenge to the minor children restriction.

Doe 3 contends that his niece would "gladly have him in their home." (Doc. # 39, at 18.)  One might infer, based on this allegation, that Doe 3's niece would consider relocating to allow Doe 3 to reside with her family if not for the minor child restriction.  The fact that Doe 3 currently cannot reside with his niece under the 2,000-foot rule does not inform the resolution of this motion as it relates to the minor child restriction.

their claim, Plaintiffs rely primarily on the Supreme Court's decision in *Moore v. City of East Cleveland*.  431 U.S. 494 (1977).

In *Moore v. City of East Cleveland*, the Court considered a challenge to a city ordinance regulating home occupancy.  The ordinance provided that only members of a family could reside together in a dwelling unit, and it defined "family" narrowly to exclude certain extended familial relationships.  *Id.* at 496. Notably for purposes of the case at bar, the ordinance made it unlawful for aunts and uncles to live with their nieces and nephews.  *See id.* at 496 n.2.  A plurality of the Court, relying on the fundamental right to privacy in matters pertaining to familial association, struck down this ordinance on substantive due process grounds.  *Id.* at 499.  In arriving at this conclusion, the plurality observed that our constitutional respect for familial association is "by no means a tradition limited to respect for the bonds uniting the members of the nuclear family."  *Id.* at 504.  It explicitly recognized that the "tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."  *Id.*

Against this backdrop, it is difficult to imagine how ASORCNA's minor children exception does not burden Plaintiffs' right to privacy with respect to choices of familial association.  As with the ordinance at issue in *Moore*, this aspect of Alabama's sex offender law prohibits aunts and uncles from residing

with their nieces and nephews.  *See id.*; Ala. Code § 15-20A-11(d).  Defendants nonetheless maintain that the minor children restriction does not implicate any fundamental right.   The authority on which Defendants rely, however, is unavailing.

Focusing on the scope of ASORCNA, Defendants contend that the narrow right of sex offenders to reside with minor children of extended relation is not fundamental and thus is unprotected as a matter of substantive due process.  They derive this proposition from *Doe v. Moore*, in which the Eleventh Circuit declined to extend due process protection in a case challenging Florida's sex offender statute.  410 F.3d at 1344.  The plaintiffs in that case, however, were challenging only the registration provision of the Florida sex offender statute.  *Id.*  The Eleventh Circuit, using the scope of the statutory provision to define the right at issue, determined that the "right of a [sex offender] to refuse subsequent registration of his or her personal information with Florida law enforcement and prevent publication of this information on Florida's Sexual Offender/Predator website" was not fundamental.  *Id.*

The provision Plaintiffs challenge in the instant case, and consequently the right at issue, bears little resemblance to the registration provision being challenged in *Doe v. Moore*.  Instead of arguing that they have a right to be free from ASORCNA's registration requirements, Plaintiffs here contend that the

residency provision infringes upon their fundamental right to determine their own familial residential arrangements without governmental interference.  Defendants, in their own briefing, define the right asserted here as Plaintiffs' "right to reside or sleep overnight with minor relatives other than their children, stepchildren, grandchildren, siblings, or stepsiblings."  (Doc. # 47, at 13.)  This right fits squarely within the fundamental right recognized in *Moore v. City of East Cleveland*, and accordingly should be treated as fundamental for purposes of resolving this motion to dismiss.  The fact that Plaintiffs are convicted sex offenders seeking to reside with extended relatives who are minors has no bearing on whether the right at issue is fundamental.  Instead, the nature of their transgressions comes to bear on whether the state has sufficient justification for burdening Plaintiffs' rights in this manner.

Defendants next contend that *Moore v. City of East Cleveland* stands for the proposition that the fundamental right to intimate familial associations extends only to existing family residential units.  That is, because Doe 3 and Doe 7 do not currently live with their relatives who are minor children, the right to privacy does not countenance their desire to reside with those family members.  Defendants' position is a concoction of reasoning derived from various adoption and foster care cases.  *See Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 844 (1977) (noting that the nature of a family association turns on more than

biological relationship); *Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir. 1995) (holding that a grandparent has no fundamental liberty interest in the adoption of her grandchild); *Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 445 (W.D. Pa. 2010) (finding that the reasoning of *Moore v. City of East Cleveland* should not be extended in the context of adoption rights). It may be that families seeking to adopt children with whom they have no previous relationship cannot rely on the fundamental right recognized in *Moore v. City of East Cleveland* to support their custodial desires. But it does not follow from this line of cases that Doe 3 and Doe 7 have no fundamental interest in choosing to live with their extended family members. In *Moore v. City of East Cleveland*, the Court recognized that "times of adversity" may require extended family members to "come together . . . to maintain or rebuild a secure home life." 431 U.S. at 505. It is clear that the fundamental right to familial association encompasses Plaintiffs' desire to reside with extended family members without governmental interference.

On the occasion of this motion to dismiss, where the inquiry is limited to the sufficiency and plausibility of the allegations in the amended complaint, it is clear that Doe 3 and Doe 7 have alleged sufficient factual matter to support a claim that ASORCNA's minor children residential restriction burdens their fundamental right to privacy. They have each alleged that they desire to live with extended family

members who are minor children, but cannot under ASORCNA's residency provisions.

Because the allegations are sufficient to indicate that ASORCNA burdens their fundamental rights in this way, the minor children restriction codified at § 15-20A-11(d) is only valid if it is narrowly tailored to serve a compelling state interest. *Reno*, 507 U.S. at 302. Though the state of Alabama has an interest in protecting vulnerable citizens from potential abuse by recidivist sex offenders, it is unclear whether the minor children rule, especially in light of the fact that it applies regardless of whether the sex offender victimized a minor child, is a narrowly tailored means of furthering that interest. Defendants' briefing offers no argument indicating that § 15-20A-11(d) in fact can survive sweeping review of this ilk. At least at this early stage of the litigation, it cannot be said that Doe 3 and Doe 7 have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678.

Accordingly, as it relates to Count I of the amended complaint, the motion to dismiss will be granted in part and denied in part. Because all Plaintiffs have failed to state a claim that the 2,000-foot rule deprives them of any constitutional protection, the motion to dismiss is due to be granted as to that limited challenge. With respect to Plaintiffs' claim that the prohibition against cohabitation with minor children violates their rights to substantive due process, the motion to

dismiss is due to be denied in part.  *See* Ala. Code § 15-20A-11(d).  Doe 1 and Doe 9 have not alleged sufficient factual matter to support a plausible claim that they are entitled to relief under this provision.  The motion will be granted as to these two Plaintiffs.  Doe 3 and Doe 7, however, have adequately stated a claim for relief.

In sum, Doe 3 and Doe 7 may proceed with their claim that the minor children residency provision, Ala. Code § 15-20A-11(d), violates their rights to substantive due process.  All other aspects of Count I will be dismissed.

### c.    Employment Restrictions and Due Process (Count II)

Count II of the amended complaint focuses on ASORCNA's employment restrictions, which are codified at Ala. Code § 15-20A-13.  As with the statute's residency restrictions, ASORCNA's employment provisions prohibit sex offenders from applying for, accepting, or maintaining employment or voluntary positions within 2,000 feet of areas where children are likely to be present.  Ala. Code § 15-20A-13.  With respect to Count II, Defendants' motion to dismiss is due to be granted.

Plaintiffs contend that ASCORNA's employment restrictions burden their fundamental right to engage in the common occupations of life.  Both parties treat

this claim as a substantive due process challenge,[8] and it will be addressed accordingly.  The Fourteenth Amendment's liberty component does encompass a fundamental right to choose one's field of employment.  *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999).  The state burdens this fundamental right, however, only where it completely prohibits a person from engaging in a particular calling.  *Id.*

Plaintiffs' factual allegations are insufficient to survive Defendants' motion to dismiss Count II.  These allegations do suggest that Plaintiffs have experienced trouble finding work.  Doe 3, for example, has been unable to find an ASORCNA-compliant auto body shop in his area, and as a result has been unable to use his skills as an automotive painter.  Doe 7 has been forced to turn down some construction jobs because the sites are within statutorily excluded zones.  The "vast majority" of businesses in Doe 9's hometown are located within ASORCNA's zones of exclusion.  Though these allegations are sufficient to suggest that Doe 3, Doe 7, and Doe 9 are unable to secure certain employment opportunities, they fall short of indicating that ASORCNA prevents them altogether from engaging in their chosen callings.

---

[8] As is the case in Count I, Count II of the amended complaint contains an allegation that could be understood as relating to a procedural due process theory.  (Doc. # 39, at 33 ("ASORCNA does not provide for any individualized consideration before restricting Plaintiffs' ability to engage in the common occupations of life.").)  *See* note 5, *supra*.  In the motion to dismiss, however, Defendants characterize Count II as a substantive due process challenge.  And Plaintiffs make no effort to preserve a procedural due process challenge in response to the motion.  Because Plaintiffs identify no factual allegations suggesting that ASORCNA has deprived them of their rights under the procedural component of the due process clause of the Fourteenth Amendment, any potential procedural claims are not addressed here.

The employment restrictions merely limit where registrants may work. The allegations are inadequate to state a plausible claim that ASORCNA in any way prohibits these Plaintiffs from practicing the professions of their choosing. *See Conn*, 526 U.S. at 291–92. *See also Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1217 n.5 (11th Cir. 1995) (upholding a restriction on an auto body shop's business in the face of a substantive due process challenge where the shop was not entirely prohibited from continuing its chosen line of business). Because ASORCNA's employment provisions do not burden Plaintiffs' fundamental right to engage in the common occupations of life, the statutory provisions must only withstand rational basis scrutiny. *Glucksberg*, 521 U.S. at 728.

Anticipating the applicability of this less searching form of review, Plaintiffs argue that ASORCNA's employment restrictions are not rationally related to any legitimate state interest. This is so, they contend, because § 15-20A-13 prevents registrants from working within close proximity to areas in which children will congregate regardless of whether the registrants victimized children. They allege that none of the Plaintiffs engaged in any crime in which a child was the victim. But the same is true of the residency restrictions, which also prohibit sex offenders from residing within 2,000 feet of certain areas where children are likely to be present regardless of whether offenders victimized children in the past.

The application of the rational basis standard is a matter of law to be determined by the court. *Hope for Families & Comm. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1140 (M.D. Ala. 2010).  It is clear that ASORCNA's employment provisions withstand this deferential form of review.  As with the residency restriction's 2,000-foot rule, the employment restrictions are rationally related to Alabama's stated interest in protecting vulnerable populations from abuse at the hands of recidivist sex offenders.  *See* Ala. Code § 15-20A-2(5).

Accordingly, Plaintiffs' allegations are insufficient to state claim with respect to ASORCNA's employment restrictions.  Defendants' motion to dismiss will be granted as to Count II.

### 2.    *Branded Identification Requirements and Free Speech (Count IV)*

In Count IV of the amended complaint, all Plaintiffs allege that ASORCNA's branded identification requirements, as implemented by the ALEA, violate their free speech rights under the First Amendment.  *See* Ala. Code § 15-20A-18.  Because ASORCNA requires them to carry identification bearing a government-mandated inscription, Plaintiffs argue, it runs afoul of the constitutionally protected right to refrain from speaking.  *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  The identification possession provision of ASORCNA, viewed independently of the other identification provisions, does not force registrants to display their branded identification except to allow law enforcement

43

to identify them as sex offenders.   When Plaintiffs' allegations are viewed in conjunction with the requirement that registrants relinquish all other forms of identification, however, it is apparent that they are sufficient to state a claim.   The motion to dismiss is due to be denied as to Count IV.

The freedom of speech clause of the First Amendment encompasses not only the right to speak, but also the right not to speak.   *Wooley*, 430 U.S. at 713.   At issue in *Wooley* was a New Hampshire law that required all drivers to display automobile tags bearing the state's motto.   430 U.S. at 707.   In striking down the New Hampshire law, the *Wooley* Court observed that the state treads into unconstitutional territory where it requires its citizens to display an ideological message "for the express purpose that it be observed and read by the public."   *Id.* at 713.   ASORCNA's branded identification requirements, when read holistically, admit of such a purpose.

By its terms and as implemented by the ALEA, the identification provision requires that sex offenders obtain and possess an unaltered, branded identification card.   Ala. Code § 15-20A-18(a).   This provision of the statute enshrines a discreet, legitimate purpose; it "enables law enforcement officers to identify the licensee as a sex offender."   Ala. Code § 15-20A-18(a), (d).   ASORCNA does not stop, however, at requiring registrants to carry their branded identification cards.   It takes a step further, requiring registrants to relinquish "any other driver license or

44

identification card previously issued to him or her which does not bear" the sex offender designation.  Ala. Code § 15-20A-18(d).  In practice, these provisions operate, on penalty of felony, to compel speech in an unconstitutional manner.

As Plaintiffs contend, daily consumer transactions require the presentation of identification.  When a consumer purchases alcohol or tobacco, for example, the prudent vendor requests proof of age.  Registrants may also be required to present identification when writing personal checks, making purchases with a credit card, or boarding airplanes.[9]  Because it does not allow registrants to possess any

---

[9] In an earlier case challenging ASORCNA on different grounds, findings were made regarding the pernicious role the branded identification plays in the lives of registrants:

> The red-letter labelling of registrant driver's licenses is no doubt an aggressive provision.  Mr. McGuire illustrated how the red lettering on his driver's license leads to shame and embarrassment in ordinary, everyday encounters with the public:

> ANSWER:  Well, first of all, without – just having the license itself is a reminder every day that you're being punished.  You're being – I don't know if the correct word is "ostracized."  But with that said, I had an experience just recently at a Dollar General Store.  I used my credit card to purchase some groceries; and the clerk asked me for my driver's license, so I showed it to him.  And he held it up to compare it with my credit card, and he looked at it and he looked at me again.  And he handed it back to me.  He said, how long have you been locked up?  And I found that to be just repulsive.  I felt very ashamed, very embarrassed.

> QUESTION:  In what kinds of situations do other folks have to looks at your driver's license?

> ANSWER:  Cashing checks.  Or I might pick up some items that my wife would order online from Walmart, and I have to go to Walmart and show my identification.

alternative form of identification,[10] ASORCNA requires sex offenders to disseminate the state's message for public view. [11]   *Id.*   Outside the context of allowing law enforcement to readily identify a sex offender's registrant status, ASORCNA's identification requirements appear to serve no other purpose than to humiliate offenders who have already atoned for their crimes.

---

QUESTION:  In fact, you've had to show your driver's license here in the past three days to get into this very building; isn't that right, Mr. Mcguire?

ANSWER:  That's correct.

*McGuire v. Strange*, 83 F. Supp. 3d 1231, 1253–54 (M.D. Ala. 2015).

[10] The state contends that ASORCNA registrants are free to acquire alternative forms of identification, such as passports, to use in these situations.  The plain language of the statute does not support this interpretation of the relinquishment provision.  *See* Ala. Code § 15-20A-18(d).

[11] The *Wooley* Court considered, albeit in *obiter dictum*, a situation tangentially related to the one at bar.  The national motto, "In God We Trust," is inscribed on United States currency. *See Wooley*, 430 U.S. at 716 n.15.  Trotting out a parade of horribles that would allegedly ensue in the wake of the Court's decision, opponents of the reasoning in *Wooley* argued that this national motto must also be considered unconstitutional compelled speech.  *See id.*  The Court noted, however, that "currency, which is passed from hand to hand, differs in significant respects from an automobile, which is readily associated with its operator."  *Id.*  Whereas money generally remains concealed in a pocket or purse, an automobile tag is on constant display to the public. *Id.*

Defendants insist that the identification card is similar to currency, which remains in registrants' pockets for extended periods of time, and thus does not give rise to any First Amendment issue.  The message branded on registrants' identification cannot be likened to the national motto inscribed on our currency.  Bank notes, regardless of their dwindling necessity in a world of electronic payment for goods and services, are nonetheless a ubiquitous feature of our modern economy.  The message they bear cannot be associated with the person who carries them precisely because of their ubiquity.  In contrast, a minute portion of the Alabama population carries the branded sex offender identification card.  And the information displayed on an identification card, the purpose of which is to facilitate the recognition of an individual based on his unique characteristics, is undoubtedly associated with the card's bearer.

The parties dispute the relevance of the ideological nature of the identification inscription.  As Defendants would have it, the fact that the message presented on the branded identification card is merely factual entitles it to a less robust form of free speech protection.  (Doc. # 44, at 37.)  Plaintiffs correctly note that the distinction between ideological and factual messages carries little weight in modern free speech analysis.  *Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 797–78 (1988) ("[C]ases cannot be distinguished simply because they involved compelled statements of opinion while here we deal with compelled statements of 'fact':  either form of compulsion burdens protected speech.").  Defendants maintain that this distinction is relevant in cases where the speech at issue is entitled to less protection, as is the case with commercial speech.  (Doc. # 44, at 37.)  But the presentation of identification, for purposes of traveling or depositing one's wages, implicates much more than commercial speech.  And the message inscribed on the branded identification encompasses a host of moral and philosophical messages related to societal concepts of crime and punishment. It is plausible that the message displayed on the branded identification card implicates free speech rights.

Defendants offer two other theories in support of their motion to dismiss Count IV, neither of which is availing.  Relying on *PruneYard Shopping Ctr. v. Robins*, they argue that the branded identification provision withstands

constitutional scrutiny because it does not force Plaintiffs to affirm any state message.    447 U.S. 74 (1980).    The reasoning of *Pruneyard*, however, is inapposite.    That case involved dissemination of a private message, not the compelled display of a government message.  *See id.* at 87.  Defendants further contend, based on the reasoning of *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, that ASORCNA merely regulates conduct rather than speech.  547 U.S. 47 (2006).  Reliance on *Rumsfeld* is also misplaced.  ASORCNA regulates much more than conduct.    By requiring registrants to possess branded identification and prohibiting them from carrying any other identification, it forces sex offenders to display a message prescribed by the government.

In light of the foregoing principles, the allegations in the amended complaint are sufficient to sustain Plaintiffs' First Amendment claim.    Taking those allegations as true and construing them in the light most favorable to Plaintiffs, Count IV states a First Amendment claim that is plausible on its face.  *See Iqbal*, 556 U.S. at 678.  Accordingly, Defendants' motion to dismiss will be denied as to Count IV.

## B.    Motion for a More Definite Statement

Defendants' motion also requests, in the event the motion to dismiss is not granted in full, an order requiring Plaintiffs to provide a more definite statement. This relief, if it were appropriate, could only be granted with respect to the claims

surviving the motion to dismiss.  Plaintiffs' vagueness challenge, which appears in Count III, survives the motion to dismiss in its entirety.  *See* Part IV.A.1.a, *supra*. Plaintiffs' due process challenge to ASORCNA's residency provision also survives as it relates to Doe 3 and Doe 7's challenge to the minor children restriction.  *See* Part IV.A.1.b.ii, *supra*.  Count IV's First Amendment likewise survives the motion to dismiss.  *See* Part IV.A.2, *supra*.

In support of the motion for a more definite statement, Defendants contend generally that the amended complaint fails to identify which provisions Plaintiffs are challenging in each count and that the amended complaint fails to identify which Plaintiffs are challenging which restrictions.  Upon review of the amended complaint, and after consideration of the parties' arguments with respect to the adequacy of the complaint, the motion for a more definite statement is due to be denied.

Count III clearly identifies which provisions of ASORCNA are at issue. (Doc. # 39, at 35 (listing the precise statutory provisions being challenged in Count III).)  Count III also makes it clear that all Plaintiffs are challenging all provisions for vagueness.  The allegations specific to each Plaintiff further make this clear, highlighting each Plaintiffs' issues with the residency, employment, and branded identification provisions.  Count I, as it relates to Doe 3 and Doe 7's challenge to the minor children rule, is also sufficiently clear.  The amended complaint clearly

lists the allegations made by Doe 3 and Doe 7 as they relate to the minor children provision codified at Ala. Code. § 15-20A-11(d) and (e).  (*See* Doc. # 39, at 32–33.)   Count IV also identifies the provisions being challenged and asserts a challenge on behalf of all Plaintiffs.  (See Doc. # 39, at 35–36.)

Plaintiffs have pleaded the surviving claims with sufficient particularity such that a more definite statement is not warranted.  The amended complaint is not "so vague or ambiguous that [Defendants] cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Defendants' motion for a more definite statement is without merit and will be denied.

## C.   <u>**Motion to Strike**</u>

Defendants finally request that certain material be stricken from the amended complaint.  In support of this request, Defendants propound a laundry list of allegedly impertinent material that it claims ought to be excluded.  (See Doc. # 44, at 40–41.)   None of the material listed is "immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  This motion will be also denied.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion to Dismiss First Amended Complaint or for More Definite Statement or to Strike (Doc. # 43) is GRANTED in part and DENIED in part.  It is further ORDERED as follows:

1.    The motion to dismiss is GRANTED in part and DENIED in part as to Count I.  The motion to dismiss is GRANTED as to Plaintiffs' claim that the 2,000-foot rule of the residency provision is unconstitutional.  The motion to dismiss is also GRANTED as it relates to Doe 1 and Doe 9's challenge to the residency provision's minor children restriction.  The motion to dismiss is DENIED as it relates to Doe 3 and Doe 7's challenge to the residency provision's minor children restriction.

2.    The motion to dismiss is GRANTED as to Count II.

3.    The motion to dismiss is GRANTED in part and DENIED in part as to Count III.  The motion to dismiss is GRANTED as to Plaintiffs' vagueness challenge to the provisions requiring registrants to possess state-issued branded identification.  *See* Ala. Code § 15-20A-18(a)–(c).  The motion to dismiss is DENIED as to all other aspects of Count III.

4.    The motion to dismiss is DENIED as to Count IV.

5.    To the extent Defendants' motion seeks a more definite statement or an order striking material from the amended complaint, it is DENIED.

DONE this 18th day of March, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE