# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### Northern Division

JOHN DOE #1, *et al.*,

    *Plaintiffs,*

    v.

LUTHER STRANGE III, in his official
capacity as Alabama Attorney General,
*et al.*,

    *Defendants.*

No. 2:15-cv-606-WKW-SRW

JURY TRIAL DEMANDED

## DEFENDANTS' MOTION TO DISMISS
## SECOND AMENDED COMPLAINT (DOC. 81)

The defendants respectfully move to dismiss the plaintiffs' second amended complaint. *See* doc. 81. In allowing the plaintiffs to file that pleading, the Court noted that "[t]o the extent that Defendants wish to challenge the facial plausibility of Plaintiffs' claims, they may do so by appropriate motion after Plaintiffs file their amended pleading." Doc. 80 at 1 n.1. This is that motion.

This motion, in particular, seeks dismissal of the second amended complaint in its entirety for failure to state a valid legal claim. *See* Fed. R. Civ. P. 12(b)(6). To be sure, it focuses primarily on the plaintiffs' newly added substantive claims: The first three sections below address the plaintiffs' new "irrebuttable presumptions" due process claim (count two, *see* doc. 81, ¶¶ 314-22); their new First Amendment overbreadth claim (count five, *see id.* ¶¶ 335-37); and their new First Amendment "individual capacity" damages claim against Defendants Stabler and Richardson in their individual capacities (count six, *see id.* ¶¶ 338-58). But the motion also reiterates

and preserves, in its final section, the defendants' position that *none* of the plaintiffs' claims should be allowed to proceed. When the Court previously approved the claims now embodied by counts one, three, and four of the second amended complaint, it did so on the basis of several flawed legal premises. Thus, while the Court is conducting its Rule 12(b)(6) analysis of the plaintiffs' new substantive claims, it should reconsider its earlier Rule 12(b)(6) analysis, correct its legal errors, and dismiss not just the new claims but also those previously allowed claims. The result will be dismissal of the second amended complaint in its entirety so that the parties and the Court itself may avoid the time and expense of further unnecessary litigation.

As always, the applicable legal standard calls for dismissal unless the plaintiffs have "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Here, even accepting the plaintiffs' factual allegations as true, controlling precedent precludes the Court from drawing a reasonable inference of liability in any respect.

## I.   The Court should dismiss the plaintiffs' "irrebuttable presumptions" due process claim (Count 2).

In count two of their second amended complaint, the plaintiffs attack various ASORCNA provisions under the Fourteenth Amendment's Due Process Clause. *See* doc. 81, ¶¶ 314-22. Specifically, they attack ASORCNA's restriction on sex offenders residing with minors (as it applies to sex offenders' minor extended relatives), *see* Ala. Code § 15-20A-11(d); its employment restriction, *see id.* § 15-20A-13(a)-(b); its travel

procedures, *see id.* § 15-20A-15(a), (b), (d); its weekly registration requirement for homeless sex offenders, *see id.* § 15-20A-12(b); and its community-notification provisions, *see id.* § 15-20A-21(b), (d). *See* doc. 81, ¶ 321. These provisions, they contend, violate due process because they create "irrebuttable presumptions": That is, they burden sex offenders "regardless of whether [they] victimized children" and "without the benefit of individualized assessments," thus "creat[ing] irrebuttable presumptions [allegedly] in violation of the Fourteenth Amendment." *Id.* ¶¶ 319, 321. The plaintiffs do not specify whether this is a procedural due process claim or a substantive one, but ultimately it does not matter. Either way, the claim is invalid as a matter of law.

***Jurisdictional Problems.*** First, regardless of the precise theory, the proposed amended complaint fails to identify a valid Article III case or controversy in various respects. For example, only John Doe #3 and John Doe #7 appear to have standing to challenge the minor-cohabitation rule. *Cf.* doc. 81, ¶¶ 159, 164. Only John Doe #10 has alleged any intention to travel. *See id.* ¶¶ 118-19, 265-66. And with the possible exception of John Doe #9, none of the plaintiffs appear to be subject to the weekly homeless registration requirement (or at imminent risk of becoming subject to it). *See id.* ¶ 122 (John Doe #10), *id.* ¶ 153 (John Doe #1), *id.* ¶ 157 (John Doe #3), *id.* ¶ 169 (John Doe #7); *cf. id.* ¶ 209 (John Doe #9).

***Procedural Due Process.*** In any event, the plaintiffs' irrebuttable-presumption theory is invalid as a matter of procedural due process doctrine. The so-called

irrebuttable-presumptions doctrine "was a strange hybrid of 'procedural' due process and equal protection invented by the Supreme Court in the early 1970s, and laid to rest soon after." *Brennan v. Stewart*, 834 F.2d 1248, 1258 (5th Cir. 1988) (citing *Vlandis v. Kline*, 412 U.S. 441 (1973) ("applying the doctrine"); *Weinberger v. Salfi*, 422 U.S. 749 (1975) ("effectively overruling it")). The idea behind it was that "even if a person clearly fell within a legislative class, due process required that he be given the opportunity to show that he 'really'. . . belonged on the other side of the legislative line." *Id.* at 1258.

Almost as soon as the Court first articulated the doctrine, however, it began scaling back the doctrine's reach. *See, e.g.*, *Salfi*, 422 U.S. at 772; *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976). In *Turner Elkhorn*, for example, the Court implicitly treated the challenged law as a substantive rule, and upheld it under rational-basis review. *See* 428 U.S. at 23, 25-26. "[T]he argument is essentially that Congress has accomplished its result in an impermissible manner by defining eligibility in terms of . . . an 'irrebuttable presumption' . . . ." *Id.* at 23. "But in a statute such as this . . ., we do not think that Congress's choice of statutory language can invalidate the enactment when its operation and effect are clearly permissible." *Id.*

The Supreme Court has continued to scale back the irrebuttable-presumption doctrine in more recent years, making explicit the approach *Turner Elkhorn* took implicitly. In *Michael H. v. Gerald D.*, 491 U.S. 110 (1989), a plurality of the Court rejected a procedural due process challenge to a statute establishing a conclusive presumption of paternity. This was because, in reality, "that rule of evidence is the im-

4

plementation of a substantive rule of law." *Id.* at 119 (plurality opinion). The Court then applied rational-basis review and upheld the law.[1] Similarly, in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), the Court rejected a sex offender's procedural due process challenge to a State's offense-based sex offender regulations, holding that he had no constitutional right to prove that he, in particular, was not "dangerous." *See id.* at 1-2. "Such claims," the Court held, "'must ultimately be analyzed' in terms of substantive, not procedural, due process." *Id.* at 8 (quoting *Michael H.*, 491 U.S. at 121 (plurality opinion)).

The defendants are aware of, and respectfully disagree with, this Court's recent analysis in *Martin v. Houston* rejecting arguments along these lines. *See* No. 2:14-CV-905-WKW, 2016 WL 1368109 at *14-*15 (M.D. Ala. April 6, 2016). But *Martin* is distinguishable from this case because it involved a claim that, "at least for purposes of resolving [a] motion to dismiss," appeared to be plausibly "procedural" in nature. *See id.* at *15. Unlike the John Doe plaintiffs here, the *Martin* plaintiff truly "s[ought] a hearing . . . to rebut [a] factual presumption." *Id.* Here, by contrast, the John Doe plaintiffs' claims simply evince a "substantive disagreement with the policy embodied in [ASORCNA]." *Id.*

---

[1] Numerous federal courts of appeals have expressly followed *Michael H.* on this point. *See, e.g.*, *B&G Const. Co. v. Director, Office of Workers' Comp. Programs*, 662 F.3d 233, 254-55 (3d Cir. 2011); *Lovila Coal Co. v. Harvey* 109 F.3d 445, 454 (8th Cir. 1997); *P.O.P.S. v. Gardner*, 998 F.2d 764, 767 (9th Cir. 1993); *Prudential Ins. Co. of Am. v. Moorhead*, 916 F.2d 261, 266 (5th Cir. 1990); *Farris v. Santa Clara Cnty.*, 891 F.2d 715, 717 n.3 (9th Cir. 1989).

Ultimately, *Connecticut DPS* is on all fours with any procedural due process in the proposed second amended complaint. And under that decision, "due process does not entitle [sex offenders] to a hearing to establish a fact that is not material under [ASORCNA]." *Connecticut DPS*, 538 U.S. at 7. Absent a valid *substantive* due process claim, the John Doe plaintiffs here have "no more right to additional 'process' enabling [them] to establish [their lack of dangerousness] . . . than . . . a 15-year-old has a right to 'process' enabling him to establish that he is a safe driver." *Id.* at 8-9 (Scalia, J., concurring); *see also Salfi*, 422 U.S. at 722 (discussing reasons to read the irrebuttable presumption doctrine narrowly); *Doe v. Moore*, 410 F.3d 1337, 1342 (11th Cir. 2005) (noting that procedural due process challenges to Florida's Sex offender Act are "foreclosed by the Supreme Court's decision in *Connecticut [DPS]*").

**Substantive Due Process.** The foregoing decisions, of course, do leave open the possibility that sex offenders may bring a *substantive* due process challenge to sex-offender regulations. But this fact does not make the plaintiffs' claim here any more viable.

For one thing, insofar as this count challenges ASORCNA's minor-cohabitation rule based on the asserted right of a sex offender to reside overnight with his distant minor relatives, it is redundant of count one. *Compare* doc. 81, ¶¶ 314, 319-22 (count two "irrebuttable presumptions" challenge to minor-cohabitation rule) *with id.* ¶¶ 308-13 (count one substantive due process claim to the same provision). The Court previously allowed such a claim to proceed past the Rule

12(b)(6) stage. *See* doc. 51 at 33-40. Although the defendants disagree with that analysis and ask the Court to reconsider its decision, *see infra* Section IV.A, there is at a minimum no reason to allow the plaintiffs to proceed with two identical claims.

Substantive due process challenges to the other ASORCNA provisions at issue in this count are plainly foreclosed. Indeed, as to most of these provisions, this Court has previously dismissed substantive due process challenges brought by the very lawyer who signed the second amended complaint. For example, this Court dismissed a substantive due process challenge to ASORCNA's employment restriction earlier in this very litigation. *See* doc. 51 at 40-43. Similarly, it dismissed substantive due process challenges to the travel procedures and community-notification provisions in a prior case. *See McGuire v. City of Montgomery*, No. 2:11–CV–1027–WKW, 2013 WL 1336882 at *10, *14 (M.D. Ala. March 29, 2013). Although to the defendants' knowledge this particular Court has not considered a substantive due process challenge to weekly homeless registration, binding Eleventh Circuit requires dismissal of ASORCNA's requirement to that effect for similar reasons: It does not implicate any fundamental right and plainly satisfies rational-basis review. *See Doe v. Moore*, 410 F.3d 1337, 1342-46 (11th Cir. 2005) (affirming dismissal of substantive due process challenge to sex-offender registration requirement); *see also McGuire v. Strange*, 83 F. Supp. 3d 1231, 1265-66 (M.D. Ala. 2015) (noting "rational connection" between weekly homeless registration and ASORCNA's public-safety goals).

Accordingly, the second amended complaint does not state a valid due process claim based on "irrebuttable presumptions," regardless of what specific doctrine the plaintiffs mean to invoke. The Court should therefore dismiss count two.

## II. The Court should disallow the plaintiffs' First Amendment "overbreadth" claim (Count 5).

Next, the Court should dismiss count five. In this count, the plaintiffs attack the requirement that sex offenders report to law enforcement any email addresses, instant message addresses and other internet identifiers they may use, as well as any internet service providers. *See* doc. 81, ¶¶ 335-37 (citing Ala. Code §§ 15-20A-7(a)(8)-(9), -10(e)). To do this, they invoke the First Amendment's overbreadth doctrine—the notion that a law will be held facially unconstitutional if it "punishes a 'substantial' amount of protected free speech." *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). This claim, again, faces jurisdictional problems as to all plaintiffs other than John Doe #10, who is the only one to include allegations of internet use. But the larger problem is that even with respect to John Doe #10, ASORCNA does not plausibly violate First Amendment overbreadth doctrine.

The ASORCNA requirement in question requires only one thing of sex offenders who are subject to it: They must report certain information to law enforcement. Thus, contrary to the plaintiffs' suggestion in their second amended complaint, the internet-reporting requirement does not at all resemble a law banning sex offenders from entering public libraries or from accessing social networking sites, which some courts have invalidated. *See* doc. 81, ¶ 335 (citing *Doe v. Albuquerque*, 667 F.3d

1111 (10th Cir. 2012); *Doe v. Jindal*, 853 F. Supp. 2d 596 (M.D. La. 2012)). Instead, it resembles the numerous requirements from other States that courts have upheld against this kind of claim. *See, e.g.*, *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010), *Coppolino v. Noonan*, 102 A.3d 1254 (Pa. 2014); *Harris v. State*, 985 N.E.2d 767 (Ind. App. 2013); *cf. Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) (preliminarily enjoining California's more aggressive internet-reporting requirements).

Mr. Doe #10's theory appears to be that the internet-reporting requirement burdens his ability to communicate on the Internet anonymously. *See* doc. 81, ¶ 303. But even assuming the factual and legal validity of that proposition, it does not make out a valid First Amendment overbreadth claim. This is in part because the internet-reporting requirement is at most subject only to intermediate scrutiny. Just like the requirements at issue in *Doe v. Shurtleff* and *Doe v. Harris*, Alabama's requirement is not "aimed at suppress[ing] the expression of unpopular views, . . . but rather it is directed towards aiding the police in solving crimes." *Shurtleff*, 628 F.3d at 1223 (quotation marks, citations omitted); *see also Harris*, 772 F.3d at 575-76. Indeed, under ASORCNA, sex offenders may use as many internet identifiers and internet service providers as they would like. And short of committing a crime, they may also do or say anything they would like on the Internet. In First Amendment parlance, this means that the requirement is "content neutral" and that it will be upheld so long as it "(1) serves a substantial government interest and (2) is narrowly drawn to serve that interest without unnecessarily interfering with First Amendment freedoms." *Shurtleff*, 628 F.3d at 1223 (quotation marks, citations omitted).

ASORCNA's internet-reporting requirement satisfies this level of scrutiny as a matter of law. To begin with, it is narrowly drawn to serve Alabama's substantial public-safety interests at issue here. Importantly, the narrowly-drawn element does not require a law to "'be the least speech-restrictive means of advancing the Government's interests. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Shurtleff*, 628 F.3d at 1224 n.5 (quoting *Turner Borad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994)). The reporting requirement gives law enforcement "priceless tools to aid them in their investigations" of crimes against children. Ala. Code § 15-20A-2(1). It also may deter registered sex offenders from engaging in criminal behavior on the Internet in the first place. Plainly, both of these goals will be undermined absent the regulation.

This leaves, then, the question of whether ASORCNA's requirement "unnecessarily interferes with [Mr. Doe #10's] First Amendment freedoms" in serving these interests. *Shurtleff*, 628 F.3d at 1223. For several reasons, it does not.

First, Alabama's law is quite clear about *what* information must be reported: It is any e-mail address, instant message address or other identifier "knowingly" "used" for "self-identification in Internet communications or postings"—or any Internet service providers "knowingly" "used" by the sex offender. Ala. Code § 15-20A-7(9). Thus, sex offenders in Alabama need not worry about their registration duties when creating an Internet identifier solely for consuming content on, say, a news website. Nor need they worry about their registration duties when passing unwittingly

through a publicly available WiFi network. The reporting duty arises only when the sex offender knowingly uses an ISP or knowingly uses an identifier for communicating with others over the Internet.

Second, the law is quite clear—and reasonable—about *when* and *how* the required information must be reported. After the initial registration, sex offenders must report "immediately" upon "chang[ing] any required registration information"—i.e., immediately after knowingly using an internet identifier or ISP. *See* Ala. Code § 15-20A-10(e). The word "immediately," however, is defined as "[w]ithin three business days." *Id.* § 15-20A-4(10). And contrary to the suggestion in the second amended complaint, *see* doc. 81, ¶ 336—the change may be reported "electronically" or "telephonically." Ala. Code § 15-20A-10(e). Compared to other States' requirements, this greatly mitigates the burden of the reporting requirement, providing further evidence that it is serving its purpose without unnecessary intrusion on First Amendment activities. *Cf. Harris*, 772 F.3d at 581-82 (describing an "onerous" California provision requiring sex offenders to report changes by mail within 24 hours of the change).[2]

Finally, there is no meaningful risk of unwarranted disclosure. ASORCNA expressly forbids the disclosure of sex offenders' internet identifiers "on the public

---

[2] Strictly speaking, changes must be presorted to "local law enforcement in person, electronically, or telephonically as required by the local law enforcement agency." Ala. Code § 15-20A-10(d). Thus, it is conceivable that *some* sex offenders may be told to report changes in person. Here, however, the plaintiffs have made no allegation to that effect. And even if they had, their First Amendment claim would be properly directed at the local law enforcement agency insisting on the in-person reporting—not at state officials, and not in a facial challenge to the statute itself.

registry website *or any other notification documents.*" Ala. Code § 15-20A-8(b) (empha-
sis added). The Court can and should construe this language as broadly protecting
sex offenders' internet information. *See Shurtleff*, 628 F.3d at 1223 (applying the con-
stitutional-avoidance canon of statutory interpretation). Read in that light, the statute
at most entails disclosure of this information to certain enumerated law enforcement
agencies, Ala. Code § 15-20A-42(f), who are themselves prevented from including it
on any "notification documents," *id.* § 15-20A-8(b). True, law enforcement may have
access to the information for its own purposes. But "such a disclosure would general-
ly occur, if at all, at some time period *following* Mr. Doe's speech and not at the mo-
ment he wished to be heard." *Shurtleff*, 628 F.3d at 1225. Moreover, even if some law
enforcement officials had real-time access to the information, that does not "impose[]
a constitutionally improper burden" on speech," *id.*:

> [T]his Court has found in a number of cases that constitutional viola-
> tions may arise from the deterrent, or 'chilling,' effect of governmental
> regulations that fall short of a direct prohibition against the exercise of
> First Amendment rights. In none of these cases, however, did the
> chilling effect arise merely from the individual's knowledge that a gov-
> ernmental agency was engaged in certain [information-gathering] activi-
> ties or from the individual's concomitant fear that, armed with the fruits
> of those activities, the agency might in the future take some other and
> additional action detrimental to that individual.

*Laird v. Tatum*, 408 U.S. 1, 11 (1972). As a result, ASORCNA's internet-reporting
requirement does not plausibly raise any concern of unnecessary disclosure.

In short, ASORCNA requires reporting of sex offenders' internet information
promote child safety in a way that does not unnecessarily burden sex offenders' free-
speech rights. For that reason, ASORCNA's internet-reporting provision does not

reach a substantial amount of protected speech as required to raise any First Amendment overbreadth concerns. The Court should dismiss this claim for failure to state a claim.

### III. The Court should disallow the plaintiffs' proposed new "deliberate indifference, individual capacity" damages claim (Count VI).

Next, but perhaps most importantly, the Court should dismiss count six. This count seeks to make Defendant Alabama Department of Public Safety Director John Richardson and new defendant Alabama Secretary of Law Enforcement Stan Stabler monetarily liable, in their individual capacities, for their role in implementing ASORNCA's identification requirement. *See* doc. 81, ¶¶ 338-58. Under that requirement, sex offenders must carry annotated driver's licenses or identification cards identifying them as a "CRIMINAL SEX OFFENDER." The Court previously allowed the plaintiffs to proceed on a First Amendment compelled-speech claim for injunctive relief. *See* doc. 51 at 43-48. But now, the plaintiffs demand damages.

The Court should dismiss this claim based on a straightforward application of qualified-immunity doctrine. Under this doctrine, an official acting under color of state law cannot be personally liable for damages unless he or she has violated a "'*clearly established*'" constitutional right. *Lane v. Franks*, 134 S. Ct. 2369, 2381 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (emphasis added)). This doctrine "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2085). It thus

protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Count six comes nowhere close to meeting this standard. In conclusory fashion, the second amended complaint asserts that "Defendants Richardson and Stabler violated the First Amendment rights of Plaintiffs and all registrants of ASORCNA by proscribing their right to speak and to refrain from speaking—to express their own views and be free from compulsory endorsement of the State's views." Doc. 81, ¶ 346. The plaintiffs state a similar conclusion in the very next paragraph. *See id.* ¶ 347. The problem with assertions like these is their level of generality: They are one half step away from merely repeating the text of the First Amendment. Accepting them as probative of the defendants' liability would thus violate the Supreme Court's admonition against allowing plaintiffs to "convert [a] rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). It would "mak[e] it impossible for officials 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Id.* (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

To avoid this problem, courts look to controlling authority within the jurisdiction. Specifically, they look "'to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." *Snider v. Jefferson State Cmty. Coll.,* 344 F.3d 1325, 1328 (11th Cir. 2003) (quoting *Marsh v. Butler County.,* 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001) (en banc)). But the only cases cited in the second amended complaint support *dismissal*

14

on qualified-immunity grounds, not liability—a fact which itself resolves the qualified-immunity question in the defendants' favor. The Supreme Court's decision in *Woolley v. Maynard*, for example, contains language affirmatively supporting the legality of the defendants' actions. *Cf.* doc. 81, ¶ 355. A footnote suggests that the compelled-speech question turns on whether the plaintiff is "*required*" to "publicly advertise" a particular message:

> It has been suggested that today's holding will be read as sanctioning the obliteration of the national motto, "In God We Trust" from United States coins and currency. That question is not before us today but we note that currency, which is passed from hand to hand, differs in significant respects from an automobile, which is readily associated with its operator. Currency is generally carried in a purse or pocket and *need not be displayed to the public*. The bearer of currency *is thus not required to publicly advertise the national motto*.

430 U.S. 705, 717 n.15 (1977) (emphasis added). This language validates the defendants' actions and in part demonstrates why the annotated identification card does not implicate any First Amendment concerns. But even if the Court disagrees about that, this language suggests, at a minimum, that in implementing ASORCNA's identification requirement, Defendants Stabler and Richardson were rendering a "judgment[] about [the] open legal question" of what, precisely, constitutes compelled speech. *Lane v. Franks*, 134 S. Ct. at 2381 (citation, quotation marks omitted). Similarly, this Court, in *McGuire v. Strange*, *upheld* the identification requirement as "rationally related to public safety aims" and "not excessive." 83 F. Supp. 3d at 1266. In these circumstances, it is difficult to conceive how a reasonable official would *know* that he or she was violating the First Amendment.

Finally, the plaintiffs allege that a "malicious[]" intent plagued Defendant Stabler and Richardson's implementation of the identification requirement. Doc. 81, ¶ 358; *see also id.* at ¶¶350-51, 356. But intent is irrelevant in the context of this case. It is irrelevant if (A) these defendants' actions do not amount to compelled speech at all. And it is equally irrelevant if (B) their actions satisfy the applicable level of First Amendment scrutiny. Indeed, the defendants' intent is irrelevant if their actions even arguably meet either one of these criteria.

The parties may disagree over whether the implantation of ASORCNA's identification requirement comports with the First Amendment in the first instance. But there can be no legitimate disagreement as to Director Richardson and Secretary Stabler's entitlement to qualified immunity in this case. The Court should accordingly dismiss count six, just as it should dismiss all the other counts.

## IV. The Court should dismiss each of the three counts that the plaintiffs have retained in their Second Amended Complaint.

Finally, the Court should dismiss the remaining counts in the second amended complaint—i.e., count one (familial-association substantive due process challenge to ASORCNA's minor-cohabitation rule as applied to a sex offender's distant, minor relatives); count three (void-for-vagueness due process challenge to ASORCNA's residency and employment restrictions and reporting requirements); and count four (First Amendment "compelled speech" challenge to ASORCNA's identification requirement). With one modest change to the vagueness claim (discussed below), these counts appeared in the *first* amended complaint, and the Court allowed them to pro-

16

ceed over the defendants' Rule 12(b)(6) motion to dismiss. *See generally* doc. 51. In doing so, however, the Court committed several important legal errors. The defendants now seek, in effect, reconsideration of these rulings. Correcting each of these legal errors, along with dismissing the three new substantive claims (*see* Sections I-III *supra*), will result in dismissal of the second amended complaint in its entirety.

### A.    The Court should dismiss the family-association substantive due process claim (Count 1).

In count one of the second amended complaint, John Doe #3 and John Doe #7 challenge, on substantive due process grounds, ASORCNA's provision forbidding sex offenders from residing with minors. *See* doc. 81, ¶¶ 308-13; Ala. Code § 15-20A-11(d). By all accounts, the law would *allow* these plaintiffs to reside with their own children, grandchildren, or siblings, whether by blood or by marriage. *See* Ala. Code § 15-20A-11(d). And there is undisputedly no reason to closely scrutinize this provision as it applies to minors who are *not* the plaintiffs' relatives. Thus, the plaintiffs' only hope for subjecting the minor-cohabitation rule to strict scrutiny is where it might prevent them from residing with their distant minor relatives such as John Doe #3's grandniece or grandnephew. *See* doc. 81, ¶¶ 158-59.

When this claim appeared in the first amended complaint, the defendants moved to dismiss it because (1) the minor-cohabitation rule does not implicate any fundamental right; (2) even if so, it does so only incidentally; and (3) the plaintiffs have not pleaded sufficient facts to show a genuine, pre-existing, "more-than-biological" family relationship between themselves and the minor relatives they hope

17

to reside with. *See* doc. 44 at 25-29 (defendants' motion-to-dismiss brief). The defendants adopt and re-assert each of those arguments here. But they emphasize two points that contributed to the Court's erroneous denial of the defendants' previous motion to dismiss.

First, the Court erred in defining the *scope* of the right to family association by wrongly disregarding the role that sex offenders' "transgressions" play in this analysis. Doc. 51 at 37; *see id.* at 36. The plaintiffs' transgressions—i.e., their sex-offender status—should be given at least equal billing in the careful-description calculus along with the particular "provision Plaintiffs challenge." Doc. 51 at 36-37. Indeed, if anything, the Court should focus *primarily* on the plaintiffs' sex-offender status; otherwise, *Doe v. Moore* and similar decisions would have spent much more time explaining why a generalized right to be free of registration requirements does not rise to the level of a fundamental right. *Cf.* 410 F.3d at 1342-45. In any event, the Court appears to have misunderstood the defendants' position when it wrote that "Defendants, in their own briefing, define the right asserted here as Plaintiffs' "right to reside or sleep overnight with minor relatives other than their children, stepchildren, grandchildren, siblings, or stepsiblings." Doc. 51 at 37. The proper question is whether the asserted right *of convicted sex offenders* to reside or sleep overnight with their minor extended relatives qualifies as fundamental. Seen in that light, it is clear that the right asserted here is different in kind from "the fundamental right recognized in *Moore v. City of East Cleveland*[, 431 U.S. 494 (1977)]." *Id.*

Second, the Court appears to have simply overlooked the defendants' alternative argument, that the minor-cohabitation rule burdens familial association interests only as an *incident* to its regulation of sex offenders' interactions with all minors. *See* doc. 44 at 27. As the defendants explained previously, the prohibition itself prevents sex offenders from residing or staying with "a minor." Ala. Code § 15-120A-11(d). Sex offenders are thus permitted unlimited visits with their minor distant relatives— and then they may even reside or stay with them indefinitely once they reach the age of majority. Accordingly, in the language of *Moore v. City of East Cleveland*, this rule does not "slic[e] deeply into the family itself." 431 U.S. at 498 (plurality). And in the language of *Doe v. Moore*, it does not "either directly or unduly burden the fundamental rights claimed by [the plaintiffs]"—and thus does not "trigger substantive due process protection." 410 F.3d at 1344; *see also Bowen v. Gilliard*, 483 U.S. 587, 602 (1987) ("'[The Legislature] adopted this rule in the course of constructing a complex social welfare system that necessarily deals with the intimacies of family life. This is not a case in which government seeks to foist orthodoxy on the unwilling.'") (quoting *Califano v. Jobst*, 434 U.S. 4, 54 n.11 (1977)).

For either of these reasons, the Court should dismiss count one.

**B.    The Court should dismiss the void-for-vagueness claim (Count 3).**

Count three's void-for-vagueness claim attacks ASORCNA's residency and employment restrictions as well as its reporting requirements. *See* doc. 81, ¶ 327. This represents a modest change from the void-for-vagueness challenge in the first amend-

ed complaint in that it substitutes a vagueness challenge to the reporting require-ments for the (prior) vagueness challenge to the identification requirement. *Compare id.* with doc. 39, ¶ 253. Previously, the defendants sought dismissal on the grounds that (1) such requirements are not vague in *all* of their applications; (2) that the mere potential for differing enforcement practices does not justify wholesale, facial invali-dation; and (3) these ASORCNA provisions are not themselves vague. *See* doc. 44 at 17-23. The defendants maintain that this count should be dismissed.

Two legal errors in the Court's previous motion-to-dismiss opinion stand out with respect to this claim. First, it was error to hold that allegations of disparate en-forcement practices justify an inference of impermissible vagueness. *See, e.g.*, doc. 51 at 26. Taken as true, such disparate enforcement practices could just as well indicate a lack of training on the part of law enforcement or even benign differences in local prosecutors' enforcement priorities. If so, the proper remedy is for a state court to dismiss a prosecution or enjoin the law enforcement officials to comply with Ala-bama law as written—not to invalidate the statute. Second, it was error to cite the supposed "circular[ity]" of terms like "residence" (in the residence restriction) as rais-ing an inference of impermissible vagueness. *Id.* at 23. That circularity may not be the hallmark of perfect draftsmanship, but it clearly does suffice to refer the reader to the core term "residence." Ala. Code § 15-20A-4(20). And that term is not vague—especially given that violations can only occur "knowingly" and there is no funda-mental right at stake in enforcement of the provision. *Id.* § 15-20A-11(h).

In that respect, the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), confirms the propriety of dismissal. As an initial matter, and in the spirit of candor towards the tribunal, it bears noting that *Johnson* casts doubt on the defendants' arguments relying on the facial-challenge "any-set-of-circumstances" standard. *See, e.g.*, 135 S. Ct. at 2560-61 ("It seems to us that the dissent's supposed requirement of vagueness in all applications is not a requirement at all, but a tautology."). Having said that, *Johnson* also quite clearly confirms the *validity* of criminal provisions that include and turn on "qualitative" terms:

> As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree," *Nash v. United States*, 229 U.S. 373, 377, 33 S. Ct. 780, 57 L.Ed. 1232 (1913).

*Id.* at 2561. Each of the ASORCNA terms at issue in this case—e.g., "residence," "overnight," "living arrangement," "maintaining" employment, "apply," etc.—are at least as clear as terms like "substantial risk" that would be proper under *Johnson*. And again, that is especially true where, as here, the statute carries a meaningful scienter requirement and does not implicate any fundamental constitutional right. The Court should therefore reconsider its decision to allow the plaintiffs' vagueness challenge proceed insofar as it targets the residency and employment provisions.

Finally, just as the Court should dismiss the challenge as to the residency and employment provisions, it should dismiss the newly added vagueness challenge to ASORCNA's reporting requirements. *See, e.g.*, doc. 81, ¶¶ 327. As discussed above in regards to the internet-reporting requirements, the statute is quite clear in what sex

offenders must report—and when and how they must report it. *See supra* pp. 10-11. Thus, to the defendants, the hypotheticals included in the second amended complaint present rather clear-cut violations of the reporting requirement. *See, e.g*, doc. 81, ¶ 277. The requirement, in other words, is not impermissibly vague.

### C.    The Court should dismiss the First Amendment "compelled speech" claim (Count 4).

The final claim is the plaintiffs' First Amendment compelled speech challenge to ASORCNA's identification-card requirement. Previously, the defendants sought dismissal based on the arguments that (1) this requirement does not implicate the First Amendment because it does not entail the forced public display of any state message; (2) it does not force sex offenders to *affirm* their sex-offender designation, and no reasonable person would ascribe the State's speech to the sex offender himself; and (3) the message conveys a mere fact, not an ideological message. *See* doc. 44 at 32-37. The defendants adopt those arguments and re-assert them here as a basis for dismissal at this juncture.

Having said that, there is one key legal error in the Court's prior Rule 12(b)(6) analysis that bears emphasis: It is the Court's reading of ASORCNA to require "registrants to relinquish *all* other forms of identification" beyond merely those driver's licenses and nondriver identification cards previously issued to the sex offender by ALEA itself. Doc. 51 at 44 (emphasis added). Even if this is a permissible reading of the statute, it is not the only reading of the statute. In context, the phrase "any other driver license or identification card previously issued to him or her which does not

bear [a sex offender] designation," Ala. Code § 15-20A-18(d), seems quite clearly directed to ALEA-issued identification, and not U.S. passports, employer or school ID cards, or veteran's cards, etc. In light of the constitutional-avoidance canon, and unless and until the state courts give a reason to doubt the matter, the Court should invoke this saving construction to uphold the statute. The Court should, accordingly, dismiss count four.

\* \* \*

For the foregoing reasons, the Court should dismiss the second amended complaint in its entirety.

Respectfully submitted,

Luther Strange
   *Attorney General*

|  | /s William G. Parker, Jr. |
|---|---|
| J. Haran Lowe, Jr. (ASB-1215-O76J) | Winfield J. Sinclair (ASB-1750-S81W) |
| F. Tim McCollum (ASB- 9980-C61F) | William G. Parker, Jr. (ASB-5142-I72P) |
| *Assistant Attorneys General* | *Assistant Attorneys General* |

STATE OF ALABAMA
ALA. LAW ENFORCEMENT AGENCY
P.O. Box 1511
Montgomery, AL  36102
(334) 242-4392
haran.lowe@dps.alabama.gov
tim.mccollum@dps.alabama.gov

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130
(334) 242-7300
wsinclair@ago.state.al.us
wparker@ago.state.al.us

**Additional Counsel for Defendant Richardson**

**Counsel for Defendants Strange and Richardson**

23

**CERTIFICATE OF SERVICE**

On September 12, 2016, I filed this motion electronically with the Court's

CM/ECF system which will serve the following counsel via e-mail:

J. Mitch McGuire
jmcguire@mandabusinesslaw.com

s/ William G. Parker, Jr.
Attorney for the Defendants