EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA


JOHN DOE #1, et al.,

    Plaintiffs,

    V.                   2:15-cv-606 WKW

STEVEN T. MARSHALL, et al.,

    Defendants.


\* \* \* \* \* \* \* \* \* \* \* \* \* \*


THE DEPOSITION OF JEREMY BOLTON was taken pursuant to stipulation and agreement before Shannon P. Yost, Certified Court Reporter and Commissioner for the State of Alabama at Large, at Montgomery City Hall, 103 North Perry Street, Montgomery, Alabama, on the 2nd day of July, 2018, commencing at 10:00 a.m, Central.


\* \* \* \* \* \* \* \* \* \* \* \* \* \*

JEREMY BOLTON   7/2/2018

Page 2

```
1                APPEARANCES:
2    FOR THE WITNESS:
3    Stephanie Smithee, Esquire
     CITY OF MONTGOMERY
4    103 North Perry Street
     Montgomery, Alabama 36104
5
6    FOR THE PLAINTIFFS:
7    J. Mitch McGuire, Esquire
     McGUIRE & ASSOCIATES
8    31 Clayton Street
     Montgomery, Alabama 36104
9
10   FOR THE DEFENDANTS:
11   Brad A. Chynoweth, Esquire
     OFFICE OF THE ATTORNEY GENERAL
12   501 Washington Avenue
     Montgomery, Alabama 36130
13
14   ALSO PRESENT:
15   Paula Jordan
16   Brenton Smith
17
18
19
20
21
22
23
```

Page 3

```
1                INDEX
2
3    Examination by Mr. McGuire * * * * * * 6
4    Examination by Mr. Chynoweth * * * * 91
5
6                EXHIBIT INDEX
7
8    Plaintiff's Exhibit          Page
9    Exhibit A              13
10   Exhibit B              30
11   Exhibit C              45
12   Exhibit D              57
13   Exhibit E              67
14
15
16
17
18
19
20
21
22
23
```

Page 4

```
1                STIPULATIONS
2
3        It is hereby stipulated and agreed by and
4    between counsel representing the parties that
5    the deposition of
6            JEREMY BOLTON
7    is taken pursuant to the Federal Rules of
8    Civil Procedure and that said deposition may
9    be taken before Shannon P. Yost, Certified
10   Shorthand Reporter, and Commissioner for the
11   State of Alabama at Large, without the
12   formality of a commission; that objections to
13   questions other than objections as to the form
14   of the question need not be made at this time
15   but may be reserved for a ruling at such time
16   as the said deposition may be offered in
17   evidence or used for any other purpose, by
18   either party, provided for by the Statute.
19       It is further stipulated and agreed by
20   and between counsel representing the parties
21   in this case that the filing of said
22   deposition is hereby waived and that said
23   deposition may be introduced at the trial of
```

Page 5

```
1    this case or used in any other manner by
2    either party hereto provided for the
3    Statute, regardless of the waiving of the
4    filing of the same.
5        It is further stipulated and agreed by
6    and between the parties hereto and the witness
7    that the signature of the witness to this
8    deposition is hereby waived.
9
10            * * * * * * * * * * * * * * * *
11
12
13
14
15
16
17
18
19
20
21
22
23
```

2 (Pages 2 to 5)

JEREMY BOLTON    7/2/2018

Page 6

1    COURT REPORTER: Are you guys
2    doing usual stipulations in these?
3    MR. McGUIRE: Yes.
4    MS. SMITHEE: Yes.
5    COURT REPORTER: Okay.
6
7    JEREMY BOLTON
8    The witness, after having first been duly
9    sworn to speak the truth, the whole truth, and
10   nothing but the truth, testified as follows:
11
12       EXAMINATION
13   BY MR. McGUIRE:
14   Q   Good morning.
15   A   Good morning.
16   Q   My name is Attorney Mitch McGuire. I'm
17       going to be asking you a few questions
18       this morning. But before we begin, will
19       you please state your name for the
20       record?
21   A   Jeremy Bolton.
22   Q   And, Mr. Bolton, can you tell me how
23       you're employed full-time?

Page 7

1    A   Montgomery Police Department.
2    Q   Now, before we move forward, I want to
3        talk to you a little bit about the ground
4        rules of this particular deposition.
5        Have you ever been deposed before?
6    A   Yes, I have.
7    Q   Okay. So I'm going to ask you a series
8        of questions, and you may hear a few
9        objections from your attorney or other
10       attorneys here. For example, they may
11       object to form or something like that.
12       However, unless your attorney
13       specifically instructs you not to answer
14       a question, you'll need to answer my
15       questions fully and completely and
16       truthfully.
17          Do you understand those rules as
18       we've talked about?
19   A   Yes, sir.
20   Q   Okay. Great.
21          Now, can you describe to me your
22       duties with the Montgomery Police
23       Department?

Page 8

1    A   I work for the criminal investigations
2        division.
3    Q   And what are your duties within the
4        criminal investigation?
5    A   Primarily the sex offender registration.
6    Q   And that's your primary role?
7    A   Yes, sir.
8    Q   Now, are you -- do you supervise
9        individuals in the -- what I'll call the
10       sex offender unit in the Montgomery
11       Police Department?
12   A   I'm the only person.
13   Q   You're the only person?
14   A   As far as I know.
15   Q   Okay. Have you worked with a detective
16       or corporal by the name of Jeremy Jones?
17   A   Yes, sir, in the past.
18   Q   And has Detective Jones assisted you in
19       your management of sex offenders in the
20       Montgomery -- city of Montgomery?
21   A   Are you talking -- he doesn't anymore.
22   Q   Has he in the past?
23   A   Yes.

Page 9

1    Q   And can you tell me the last time
2        Detective Jones assisted you with sex
3        offender matters?
4    A   I couldn't tell you.
5    Q   Okay. How many registrants of the sex
6        offender statute do you manage in the
7        city of Montgomery?
8    A   Does that include all registrants?
9    Q   All that you're responsible for managing
10       in the city of Montgomery.
11   A   Just a rough estimate?
12   Q   Yes, sure.
13   A   Roughly 425.
14   Q   Now, are you familiar with the Alabama
15       Sex Offender Registration and Community
16       Notification Act?
17   A   Yes, sir, I guess you would say so.
18   Q   I'm going to represent to you the Alabama
19       Sex Offender Registration and Community
20       Notification Act is the statute that
21       regulates sex offender conduct within our
22       community. Would you agree with that?
23   A   I don't understand the question.

3 (Pages 6 to 9)

JEREMY BOLTON   7/2/2018

Page 10

1  Q   What is your understanding of what -- do
2      you know -- are you familiar with a
3      statute that regulates what sex offenders
4      must do to comply?
5  A   Yes, sir, the ASORCNA compliance.
6  Q   So you call it ASORCNA?
7  A   Yes, sir.
8  Q   Okay.  And -- but you are talking about
9      the Alabama statute, are you not?
10 A   Yes, sir.  I guess that would be the
11     statute.
12 Q   Have you read the statute for which
13     you're responsible for enforcing as it
14     relates to registered sex offenders in
15     Montgomery, Alabama?
16 A   Which statute?
17 Q   The Alabama Sex Offender Registration and
18     Community --
19 A   Well, there's several different numbers.
20     I don't know which one is -- you're
21     specifically talking about.
22 Q   There are provisions within the statute.
23     That's correct; right?

Page 11

1  A   Yes, sir.
2  Q   But have you read the entire statute?
3  A   Yes, sir.
4  Q   Okay.  Because you give a copy of that
5      statute to registrants when they come in
6      in their registration events; correct?
7  A   On new registrants, from my
8      understanding.
9  Q   Right.  And you're responsible for
10     enforcing the provisions of a -- of
11     the -- of the statute, are you not?
12 A   Yes, sir.
13 Q   Okay.  So you understand the terms of the
14     statute, do you not?
15 A   Yes, sir.  I just wanted to know
16     specifically what statute you were
17     talking about.
18 Q   Okay.  So when I'm talking about what
19     statute, I'm talking about the Alabama
20     Sex Offender Registration and Community
21     Notification Act.
22 A   Okay.  Which number is that?
23 Q   That's Alabama Code 15-20A-1 and its

Page 12

1      sequence.
2  A   Okay.
3  Q   Okay?
4  A   I understand that.
5  Q   Do you understand that to be the Alabama
6      sex offender law for which registrants
7      must comply?
8  A   Yes, sir.
9  Q   And those are the terms within that
10     statute that you enforce?
11 A   Yes, sir.
12 Q   So you know the provisions of that
13     statute pretty well, do you not?
14 A   A lot of times I have to go back and
15     review just to make sure that my verbiage
16     and collection of it is correct.
17 Q   Okay.  Going forward, I'm just going to
18     refer to the Alabama Sex Offender
19     Registration and Community Notification
20     Act that we talked about earlier as the
21     statute.  Is that okay with you?
22 A   Okay.
23 Q   All right.  I want to direct your

Page 13

1      attention to what we're going to mark as
2      Plaintiff's Exhibit A.
3          (Plaintiff's Exhibit A was
4          marked for identification.)
5  Q   And, specifically, are we looking at a
6      section -- I want to direct your
7      attention to the first page of
8      Plaintiff's Exhibit A and specifically to
9      section 15-20A-2.  Do you see that?
10 A   Yes, sir.
11 Q   Do you see the section under 15-20A-2
12     with the subsection 1?
13 A   Yes, sir.
14 Q   Okay.  I'm going to read the very last
15     sentence of subsection 1 and it says,
16     does it not (As read) "Frequent in person
17     registration maintains constant contact
18     between sex offenders and law enforcement
19     providing law enforcement with priceless
20     tools to aid them in their
21     investigations, including obtaining
22     information for identifying, monitoring,
23     and tracking sex offenders."

4 (Pages 10 to 13)

JEREMY BOLTON   7/2/2018

Page 14

```
1          Did I read that correctly?
2    A   Yes, sir.
3    Q   And you've read this provision before,
4        have you not?
5    A   Yes, sir.
6    Q   And you understand that provision;
7        correct?
8    A   Yes, sir.
9    Q   Now, I want to direct your attention to
10       subsection 4 in the same section,
11       15-20A-2.  Do you see that section?
12   A   Yes, sir.
13   Q   And I'm reading the third sentence.
14       Excuse me.  I want to -- I want to strike
15       that.  I want to direct your attention to
16       subsection 5 at the bottom of page 1.  Do
17       you see that?
18   A   Okay.
19   Q   And you tell me if I'm reading this
20       correctly.  The first sentence says (As
21       read) "Sex offenders due to the nature of
22       their offenses have a reduced expectation
23       of privacy."
```

Page 15

```
1          Do you see that?
2    A   Yes, sir.
3    Q   And you understand that provision in the
4        statute, do you not?
5    A   Yes, sir, I guess.
6    Q   And I'm going to go to the second page of
7        Exhibit A and continue with subsection 5;
8        okay?  And I want you to tell me if I'm
9        reading this correctly.  It says (As
10       read) "Employment and resident
11       restrictions together with monitoring and
12       tracking also further that interest."
13         Do you see that?
14   A   Yes, sir.
15   Q   And, by the way, just the sentence before
16       that, it says that, in part, "The
17       legislature finds that releasing certain
18       information to the public furthers the
19       primary governmental interest of
20       protecting vulnerable populations,
21       particularly children."  Is that correct?
22   A   Yes, sir.
23   Q   And that portion that I read with you
```

Page 16

```
1        preceded the last sentence that I read;
2        am I correct?
3    A   Yes, sir.
4    Q   Okay.  Now, I want to ask you a few
5        questions about your understanding of
6        what a reduced expectation of privacy for
7        registrants means.
8          MS. SMITHEE:  Mitch, I'm going
9        to do a limited objection.
10         If you're asking him to make a
11       legal conclusion, I'm going to
12       object.
13         MR. McGUIRE:  No, I'm not
14       asking him to make a legal
15       conclusion.
16         MS. SMITHEE:  Okay.
17   BY MR. McGUIRE:
18   Q   I'm just asking you to state what your
19       understanding of a reduced expectation of
20       privacy means.
21         MR. CHYNOWETH:  Object to the
22       form.
23
```

Page 17

```
1    BY MR. McGUIRE:
2    Q   You may answer.
3    A   Just as far as -- what are you talking
4        about, privacy as in, what, their
5        personal or home, what?
6    Q   Personal, home, whatever you think that a
7        reduced expectation of privacy means, I
8        would like for you to articulate what
9        that means based on your understanding of
10       the terms of the statute.
11         MR. CHYNOWETH:  Object to the
12       form.
13   BY MR. McGUIRE:
14   Q   You may answer.
15   A   That you could conduct home checks where
16       they live.
17   Q   And so I want to make sure that I'm very
18       clear.  You're saying that based on your
19       understanding of the provisions that we
20       just read about the reduced expectation
21       of privacy for registrants of this
22       statute that you can conduct home checks;
23       is that correct?
```

5  (Pages 14 to 17)

JEREMY BOLTON   7/2/2018

Page 18

1      MR. CHYNOWETH: Object to the
2   form.
3   A   Yeah.  As a safety to the community, yes,
4   sir.
5   BY MR. McGUIRE:
6   Q   Okay.  Now, I want to talk to you
7   about -- when you say "home checks," can
8   you tell the Court kind of what you're
9   referring to?  Are you speaking about
10   what Officer Jones or Corporal Jones
11   described in his deposition as home
12   compliance checks?
13   A   Yes, sir, the same.
14   Q   Okay.  They're the same?
15   A   Yes, sir.
16   Q   Okay.  Now, Detective -- by the way, am I
17   right calling you Detective Bolton?
18   A   No, sir.
19   Q   I'm not?
20   A   No, sir.
21   Q   Investigator Bolton?
22   A   Yes, sir.
23   Q   Okay.

Page 19

1   A   That's all right.
2   Q   Okay.  Thank you.
3      Investigator Bolton, as it relates
4   to these home compliance checks, how
5   often do you conduct home compliance
6   checks?
7   A   We don't hardly.  Just once a year, if
8   that.
9   Q   Once a year?
10   A   Yes, sir.
11   Q   Okay.  And you've done these home
12   compliance checks personally, have you
13   not?
14   A   Yes, sir.
15   Q   Okay.  When you do those, describe what
16   you do when you conduct a home compliance
17   check.
18   A   First of all, we target whatever area
19   we're going to go to, so wherever -- a
20   certain area.  We print off a list of who
21   lives in that area, and then we -- and/or
22   me and another person -- most of the time
23   the U.S. Marshals go out and conduct home

Page 20

1   checks.
2   Q   You said that most of the time U.S.
3   Marshals.  Are the U.S. Marshals with you
4   every time you go do a home compliance
5   check?
6   A   Yes, sir, now.
7   Q   I heard you say "now."  What do you mean
8   now when you say --
9   A   Well, I'm the only person that does
10   handle sex offenders, so I have to
11   rely -- since Corporal Jones is now
12   assigned to a different location, I'm the
13   only one, so I can't do it by myself due
14   to safety issues.  So most of the time I
15   get one of the guys from the U.S.
16   Marshals to go with me too.
17   Q   Okay.  And when you say you get one of
18   the guys from the U.S. Marshals to go
19   with you, do you give the U.S. Marshals a
20   call and say, hey, can you do these home
21   compliance checks with me?
22   A   Yes, sir.
23   Q   Okay.  So it's not part of -- I want to

Page 21

1   make sure.  Is it your testimony that
2   your home compliance checks aren't part
3   of the U.S. Marshals -- some U.S.
4   Marshals program that incorporates
5   Montgomery Police Department to go out
6   with them to do compliance checks?
7   A   Yes, sir, it is.
8   Q   It is?
9   A   Uh-huh.
10   Q   Okay.  So you do it both ways?  Is it
11   Montgomery Police Department that
12   initiates these home compliance checks or
13   is it the U.S. Marshals that say, we're
14   initiating the home compliance check and
15   we want you, Detective Bolton, to go with
16   us?
17   A   Most of the time we initiate it.
18   Q   Okay.  All right.  Now, you stated that
19   earlier -- your testimony was that your
20   understanding of the statute,
21   particularly with a regard to a reduced
22   expectation of privacy, forms a basis for
23   you to believe that you can go and do

6  (Pages 18 to 21)

JEREMY BOLTON   7/2/2018

Page 22

1   home compliance checks on registrants of
2   the statute; is that correct?
3        MR. CHYNOWETH: Object to the
4   form.
5   BY MR. McGUIRE:
6   Q   Is that correct?
7   A   From my understanding, yes, sir.
8   Q   Okay. And, again, Investigator Bolton,
9   all I'm asking you -- all I'm going to be
10  asking you about is how you understand
11  the provisions.
12  A   Okay.
13  Q   There won't be "gotcha" questions. These
14  are how you understand these provisions
15  and what they allow you as one who
16  enforces the law to do; okay? Do you
17  understand that?
18  A   Uh-huh.
19  Q   Okay. All right. So is monitoring and
20  tracking -- what do you understand
21  monitoring and tracking to be as it's
22  written in the statute?
23  A   Not as far as tracking but as far as

Page 23

1   monitoring just as far as when they came
2   in and registered.
3   Q   So monitoring would be exclusively
4   limited to, based on your understanding
5   of the statute, that when individuals
6   come in to register, they give you
7   information; is that correct?
8   A   Yes, sir.
9   Q   And you take that information; correct?
10  A   Whatever they provide.
11  Q   And you track that -- well, you log that
12  information; am I correct?
13  A   Yes, sir. If it changes or something,
14  then we'd change it, but if not, then --
15  if it's consistent.
16  Q   Fair enough. Appreciate that.
17       Now, I want to return to discussing
18  with you these home compliance checks and
19  talk to you about how those home
20  compliance checks are conducted.
21       When you do home compliance checks,
22  are you arriving at registrants' homes to
23  determine whether they are in compliance

Page 24

1   with the residency restrictions of
2   ASORCNA?
3   A   No, sir.
4   Q   Of the statute?
5   A   No, sir.
6   Q   What are you doing when you do a home
7   compliance check?
8   A   To make sure they're living at the
9   address that they provided on their form.
10  Q   Okay. And if they're not living at the
11  address that they actually provide, do
12  you know if that's a violation of the
13  statute?
14  A   If they're not living there?
15  Q   Yes.
16  A   Yes, sir, it's a violation.
17  Q   What provision does that violate based on
18  your understanding?
19       MS. SMITHEE: Objection if it's
20  calling for him to interpret the
21  code or a legal conclusion.
22       But if you know, you can
23  answer.

Page 25

1   BY MR. McGUIRE:
2   Q   It's based on your understanding.
3   A   Under my understanding if that's a
4   violation?  It is.
5   Q   Yes, is it?  Is it a violation?
6   A   If they're not living there, yes.
7   Q   Okay. And do you know specifically based
8   on your understanding of the statute what
9   provisions someone not living where you
10  understand them to live -- what provision
11  that violates?
12       MR. CHYNOWETH: Object to the
13  form.
14  BY MR. McGUIRE:
15  Q   You may answer if you understand it.
16  A   What provision that violates?
17  Q   Yes.
18  A   I mean, the code where they have to be
19  registered at.
20  Q   Okay. And you -- you would agree with me
21  that -- would you not, Investigator
22  Bolton, that when a registrant gives you
23  an address in their registration events,

7 (Pages 22 to 25)

JEREMY BOLTON   7/2/2018

Page 26

1  a listed address, that they're supposed
2  to be living at that address that they
3  register; correct?
4  A  Yes, sir.
5  Q  Okay.  So you are -- based on what you
6  told me earlier, you are going to these
7  registrants' homes to verify that they,
8  indeed, live at these addresses that they
9  have registered; is that correct?
10  A  Yes, sir.
11  Q  Okay.  Now, when you set out to do these
12  home compliance checks, are those home
13  compliance checks that you perform
14  conducted pursuant to a warrant?
15  A  No, sir.
16  Q  Are they conducted pursuant to an
17  invitation from these registrants to come
18  to their homes?
19  A  No, sir.
20  Q  Are they conducted unannounced?
21  A  Yes, sir.
22  Q  I'm going to pose a scenario to you.
23  Let's assume that -- Investigator Bolton,

Page 27

1  that you have a Montgomery, Alabama
2  citizen that's not a registered sex
3  offender.  Do you have that part of the
4  scenario?  Alabama citizen -- Montgomery,
5  Alabama citizen that is not a registered
6  sex offender.
7  A  Uh-huh.
8  Q  Do you believe that you could go to that
9  person's home and ask them to provide
10  proof that they live in that residence?
11       MR. CHYNOWETH:  Object to the
12  form.
13  BY MR. McGUIRE:
14  Q  You may answer.
15  A  Ask if they do live there?  Is that your
16  question?
17  Q  Ask them if they can provide proof that
18  they live there.
19  A  No, sir.
20  Q  Why not?
21  A  I'm not there for a plain citizen.  I'm
22  there for a sex offender.
23  Q  So --

Page 28

1  A  I wouldn't go to a plain person's house
2  just to pick them -- just to go do a home
3  compliance check on somebody.
4  Q  So in your mind, persons who are
5  registrants of the statute are not plain
6  citizens?
7  A  They are, but under the guidelines they
8  have to provide, you know, the registrant
9  address.
10  Q  Sure.  I understand.
11  Are all of the registrants that you
12  conduct home compliance checks for -- do
13  you know if they're on probation or
14  parole when you go to do home compliance
15  checks?
16  A  I don't know.
17  Q  Do any of your duties require you to
18  monitor compliance of individuals that
19  are on probation or parole?
20  A  No, sir.
21  Q  Okay.  As a Montgomery Police Department
22  police officer, you have, have you not,
23  been trained on what an illegal search

Page 29

1  is?  Have you not?
2  A  Yes, sir.
3  Q  Okay.  If you showed up at a person --
4  what you call a plain person that's not a
5  registrant under the statute -- if you
6  showed up at their homes and asked them
7  to show proof that they actually reside
8  in that address, would that be an illegal
9  search?
10       MR. CHYNOWETH:  Object to the
11  form.
12  BY MR. McGUIRE:
13  Q  You may answer.
14  A  I wouldn't do that.
15  Q  I didn't ask you if you would do it.  I
16  asked if that would be an illegal search
17  based on your understanding and training
18  on what an illegal search is.
19       MR. CHYNOWETH:  Object to the
20  form.
21  A  I've answered.  I would not do that.
22  Because why would I need to go up there
23  to do that?

8  (Pages 26 to 29)

JEREMY BOLTON   7/2/2018

Page 30

1    BY MR. McGUIRE:
2    Q   Well, you're asking me questions. Again,
3        I didn't ask you if you would do it or
4        not. I asked you if you did it, would it
5        be an illegal search.
6            MR. CHYNOWETH: Object to the
7        form.
8    BY MR. McGUIRE:
9    Q   You may answer.
10   A   Well, first of all, I wouldn't do it, so
11       I don't know if that would be considered
12       a legal search.
13   Q   Fair enough.
14           You've been trained on the Fourth
15       Amendment; correct?
16   A   Yes, sir.
17   Q   And you've been trained on what an
18       illegal search and seizure is; correct?
19   A   Yes, sir.
20   Q   Okay. All right. I'm showing you
21       what's -- we're going to mark as
22       Plaintiff's Exhibit B.
23           (Plaintiff's Exhibit B was

Page 31

1            marked for identification.)
2    Q   And I'm going to represent to you at the
3        top of this page you'll see a document
4        110-1, and it is a document that was
5        filed in the matter for which we are
6        present today for deposition. Would you
7        accept my representation?
8    A   I would have to take your word on it,
9        yes, sir.
10   Q   Thank you.
11           I'm going to direct your attention
12       to page -- and by the way, Investigator
13       Bolton, I'm going to be going based on
14       the pages at the top of this exhibit;
15       okay? They're different from the ones at
16       the bottom.
17           I'm going to first direct your
18       attention to page 8. And I'm going to
19       ask you to review page 8 and represent to
20       you that this is a subsection of section
21       15-20A-4, which is the definitions
22       section of the statute, and this is
23       subsection 3. And would you agree with

Page 32

1        me that subsection 3 is the definition of
2        child care facility based on the statute?
3    A   Yes, sir.
4    Q   And based on your understanding of the
5        statute, does child care facility as
6        defined in the statute actually comport
7        with your understanding of what a child
8        care facility is?
9            MR. CHYNOWETH: Object to the
10       form.
11   BY MR. McGUIRE:
12   Q   You may answer.
13   A   Yes, sir.
14   Q   Thank you.
15           Next I'm going to direct your
16       attention to page 10 of the same exhibit,
17       and we're still under the definitions
18       section of the statute. And I would
19       direct your attention to subsection 14.
20       Do you see subsection 14?
21   A   Yes, sir.
22   Q   Okay. And since it's relatively short,
23       can you tell me the term that's defined

Page 33

1        in subsection 14?
2    A   As an overnight visit.
3    Q   Okay. And it describes an overnight
4        visit or defines an overnight visit as
5        any presence between the hours of 10:30
6        p.m. and 6:00 a.m.; is that correct?
7    A   That's what it says, yes, sir.
8    Q   Now, are you aware that certain
9        registrants of the statute are not
10       allowed to live with certain minors or
11       have overnight visits with certain
12       minors? Are you familiar with it?
13   A   Yes, sir.
14   Q   Okay. Now, when you do your home
15       compliance checks, are part of those home
16       compliance checks to ensure that, as you
17       described it, protecting the public
18       includes that those registrants aren't
19       living with minors?
20   A   Yes, sir.
21   Q   Okay. So part of -- would you agree part
22       of your home compliance checks is, in
23       fact, to enforce residency restrictions

9 (Pages 30 to 33)

JEREMY BOLTON   7/2/2018

Page 34

1    upon registrants at least as it relates
2    to overnight visits with minors; correct?
3    A  Well, first of all, we'd have to find out
4    if they're just there for an overnight
5    visit.
6    Q  Uh-huh.
7    A  So we would have to confirm with that.
8    Q  But, again, one of the reasons that you
9    do your home compliance checks is to make
10    sure that registrants who aren't supposed
11    to be living with minors, in fact, are
12    not living with minors; correct?
13    A  That could be, uh-huh.
14    Q  I want to direct your attention to page
15    11, Investigator Bolton, to subsection 20
16    of the definitions of the statute.  And
17    am I correct in stating that subsection
18    20 defines the term "reside"?
19    A  Yes, sir.
20    Q  Okay.  And as you've reviewed subsection
21    20 defining the term "reside," is your
22    understanding of the term "reside" based
23    on what is contained in subsection 20 of

Page 35

1    the definitions of the statute?
2            MR. CHYNOWETH:  Object to the
3        form.
4    A  Yes, sir.
5    BY MR. McGUIRE:
6    Q  Next I want to turn your attention to the
7        very next subsection, subsection 21, on
8        page 12.  And can you tell the Court what
9        definition is provided here?
10    A  Is this redacted?
11    Q  Well, thank you for bringing that up,
12        Investigator Bolton.  I want you to
13        ignore everything that has those lines
14        through it.  It's called a strike
15        through.  And, unfortunately, I haven't
16        been able to find an updated copy of the
17        statute because it was changed recently.
18    A  Uh-huh.
19    Q  So everything that is stricken through
20        are no longer part of the statute, so
21        just the terms that are not stricken
22        through.
23    A  Based upon this?

Page 36

1    Q  That's correct.
2    A  Well, I would have to have the other part
3        because I would have to be in guidelines
4        with the law.
5    Q  Does subsection 21 define the term
6        "residence"?
7    A  For what's redacted, no.
8    Q  Okay.  I want you again, Investigator, to
9        accept my representation that the
10        redacted portions --
11    A  Well, I would need an actual copy of the
12        law because that's what I follow.
13    Q  That's exactly --
14    A  Well, then I'm not representing with
15        that, then.
16    Q  Let me represent to you that what you
17        have and what you're reviewing is an
18        exact copy of what the law is absent
19        those redactions.
20    A  With the new law?
21    Q  Yes.
22        Would you accept my representation?
23    A  No, sir.

Page 37

1    Q  Okay.  So here's what I would like you to
2        do, Investigator Bolton.  Can you read
3        the word that's right after subsection
4        21?
5    A  Residence.
6    Q  Okay.  The next thing I'd like you to
7        read is beginning with the un-redacted
8        word or un-stricken through word "A."  Do
9        you see that?
10    A  Uh-huh.
11    Q  Can you read from A and everything else
12        in that -- in subsection 21?
13    A  "A fixed residence as defined by section
14        15-20A-4 or other place where the person
15        resides, regardless of whether the person
16        declares or characterizes such place as a
17        residence."
18    Q  Now, I want to represent to you that as
19        you've read it just now, the statute as
20        of August 1st, 2017 in terms of what a --
21        how a residence is defined is just what
22        you read.  Would you accept my
23        representation?

JEREMY BOLTON   7/2/2018

Page 38

1  A  No, sir. I'd have to see it in writing.
2  Q  Okay. So now -- so are you telling the
3     Court that this is not your understanding
4     of what a residence is?
5  A  No. I go back to what our book says as a
6     definition, the updated book.
7  Q  When's the last time your book's been
8     updated?
9  A  Whatever the last was the State sent out.
10 Q  Do you have a copy of that book, by the
11    way?
12 A  Not with me.
13 Q  Do you have a copy at your office?
14 A  Uh-huh.
15 Q  Okay. What is your current understanding
16    of what a residence is under the statute?
17       MR. CHYNOWETH: Object to the
18       form.
19 A  As far as what the law says?
20 BY MR. McGUIRE:
21 Q  What is your understanding?
22 A  Where the person resides at.
23 Q  Okay. So your understanding of a

Page 39

1     residence based on the statute, as you
2     understand it, is where a person resides
3     at?
4        MR. CHYNOWETH: Object to the
5        form.
6  A  Yeah, the information that the person
7     provides.
8  BY MR. McGUIRE:
9  Q  Okay. Investigator Bolton, finally, I'd
10    like to direct your attention to page 32
11    of the document that I gave you that was
12    filed in this case. And one of the
13    things that I want to go back and clarify
14    about the provisions that you've
15    reviewed, those provisions are part of
16    Alabama Act Number 2017-414 and were
17    effective August 1st, 2017. Do you
18    understand my comment?
19       MR. CHYNOWETH: Object to the
20       form.
21 BY MR. McGUIRE:
22 Q  You may answer.
23 A  Yes, sir.

Page 40

1  Q  Okay. And before you do that, I'd like
2     you to flip over and go back to the very
3     first page of this document that I
4     presented to you; okay?
5        On the right-hand side, what do you
6     see -- can you read that for the Court's
7     edification?
8  A  "Act 2017-414."
9  Q  Okay. So now I'm going to redirect your
10    attention back to page 32. And I'd ask
11    you to review at the bottom of the page
12    15-20A-11 subsection A through I. Can
13    you review those, please, and let me know
14    when you're done.
15       (At which time, a break was
16       held.)
17 BY MR. McGUIRE:
18 Q  Okay. We're back on the record.
19    Investigator Bolton. Did you review the
20    sections under 15-20A-11 that I asked you
21    to review?
22 A  Yes, sir.
23 Q  Do you understand those provisions to be

Page 41

1     the residency restrictions of the
2     statute?
3  A  Yes, sir.
4  Q  And based on your reading of the statute,
5     is that also the way you understand the
6     provisions are to be enforced?
7        MR. CHYNOWETH: Object to the
8        form.
9  BY MR. McGUIRE:
10 Q  You may answer.
11 A  Yes, sir, as far as I know.
12 Q  Okay. Now, I want to just take a little
13    sidestep and ask you this about home
14    compliance checks. Investigator Bolton,
15    when you do home compliance checks, are
16    those home compliance checks just your
17    personal decision to conduct?
18       MR. CHYNOWETH: Object to the
19       form.
20 A  No, sir.
21 BY MR. McGUIRE:
22 Q  Are they based on what you believe the
23    statute allows you to do to enforce the

11 (Pages 38 to 41)

JEREMY BOLTON   7/2/2018

Page 42

1  law?
2          MR. CHYNOWETH: Object to the
3      form.
4  A  No, sir.
5  BY MR. McGUIRE:
6  Q   Why do you do home compliance checks?
7  A  For the safety of the community.
8  Q   Okay. So you don't -- a little earlier
9      you said that you believe that because
10     registrants have a reduced expectation of
11     privacy it allowed you to do home checks.
12     Are you changing your testimony now?
13 A  Well, actually, the home checks are just
14     done as a courtesy to the community. We
15     don't have to do them as required by law.
16 Q   So when you gave the answer earlier that
17     a reduced expectation of privacy means
18     that you can do -- conduct home checks,
19     were you mistaken?
20 A  That's the reason I asked you what's
21     considered as privacy.
22 Q   Again, I said based on your understanding
23     of the law. Were you mistaken based on

Page 43

1      your understanding of the law?
2  A  No, sir.
3  Q   Okay. So based on your understanding of
4      the law, do you agree that earlier you
5      stated that a reduced expectation of
6      privacy meant that you were allowed to
7      conduct home compliance checks? Do you
8      recall giving that answer?
9  A  Yes, sir, uh-huh.
10 Q   Okay. And do you still contend that a
11     reduced expectation of privacy as you
12     understand it allows you to do home
13     compliance checks?
14         MR. CHYNOWETH: Object to the
15     form.
16 A  Yes, sir.
17 BY MR. McGUIRE:
18 Q   Thank you.
19     Do you know where the Regency Inn is
20     in Montgomery, Alabama?
21 A  What's the address?
22 Q  ████████████████████████████
23 A  Yes, sir.

Page 44

1  Q   Where is that?
2  A  That's next door to our office.
3  Q   Right next door, is it not?
4  A  Yes, sir.
5  Q   In fact, there's only a fence that
6      separates your office from the Regency
7      Inn; isn't that true?
8  A  Yes, sir.
9  Q   Okay. The registrants of "ASORCNA" live
10     at the Regency Inn in compliance with the
11     2,000 feet distance restrictions of the
12     statute?
13 A  No, sir.
14 Q   Why not?
15 A  Due to the day care.
16 Q   Which day care? Do you know?
17 A  I think it's -- I think it's -- Beacon of
18     Hope I think is the name of it.
19 Q   And how long have you known about Beacon
20     of Hope?
21 A  Since it came online with DHR.
22 Q   And that's been at least over five years,
23     hasn't it?

Page 45

1  A  I'm not sure.
2  Q   Okay. And so when a registered day care
3      comes online with DHR, are you
4      automatically notified about those day
5      cares that come online or do you have --
6      are you automatically notified about day
7      cares that come online with DHR?
8  A  No, sir.
9  Q   How do you find out that those day cares
10     come online with DHR?
11 A  They provide a list to our GIS.
12 Q   And how often do they update that list?
13 A  You'd have to talk to him.
14 Q   How often do you receive updates from
15     DHR?
16 A  I don't.
17 Q   Do you know a registrant by the name of
18     Tommie Lee Dennis?
19 A  No, sir.
20 Q   Let me show you what's -- what we're
21     going to mark as Plaintiff's Exhibit C.
22         (Plaintiff's Exhibit C was
23         marked for identification.)

12 (Pages 42 to 45)

## Page 46

1  Q   Am I showing you an ALEA posting of a
2       registered sex offender in the city of
3       Montgomery by the name of Tommie Lee
4       Dennis?
5  A   Yes, sir.
6  Q   Do you recognize his face?
7  A   No, sir, not right offhand.
8  Q   Okay.  What address is the ALEA posting
9       showing as his current address?
10 A   ██████████████
11 Q   And that would be the Regency Inn;
12      correct?
13 A   No, sir.
14 Q   The Regency Inn is not ███████████
15      ████████████
16 A   No, sir.
17 Q   What is ████?
18 A   I don't know.
19 Q   Did we just cover that Regency Inn was
20      located at ███████████████
21      ██████████?
22 A   From my understanding, but after seeing
23      the address, that is incorrect.

## Page 47

1  Q   Okay.  What is the address of Regency
2       Inn?
3  A   If I'm remembering correctly, it's ████
4       ██████████████████
5  Q   ████?
6  A   Uh-huh.
7  Q   Okay.  Would ██████████████████
8       ████ be off limits based on ASORCNA's
9       residency restrictions that we just
10      talked about?
11 A   Yes and no.
12 Q   What does yes and no mean?
13 A   Well, if you notice in here it says he's
14      released.  So, obviously, he's being
15      released from prison; is that correct?
16 Q   Well, what date does it show that he was
17      released?
18 A   8/3/2017.
19 Q   So he's out now; isn't that true?
20 A   Yes, sir.
21 Q   And he's residing based on this ALEA
22      posting at ████████████████████
23      ████████ isn't that true?

## Page 48

1  A   No, sir.  The posting is ████ not
2  Q   I just said ██████████████████████
3       ██████████
4  A   Okay.
5  Q   So he's living there, is he not?
6            MR. CHYNOWETH:  Object to the
7       form.
8  A   I couldn't tell you.
9  BY MR. McGUIRE:
10 Q   As an officer of the police department,
11      you are familiar with addresses, are you
12      not?
13 A   Yes, sir.
14 Q   And you are familiar with addresses in
15      relation to other addresses, are you not?
16 A   Yes, sir.
17 Q   What is the address of your office?
18 A   1751.
19 Q   1751.
20 A   Uh-huh.
21 Q   And so we've agreed that 1751 -- would
22      your office be off limits, by the way?
23 A   Yes, sir.

## Page 49

1  Q   Okay.  So 1751 is off limits; correct?
2  A   Uh-huh.
3  Q   Based on the residency restrictions;
4       correct?
5  A   Uh-huh.
6  Q   And ████ would be off limits, wouldn't
7       it?
8  A   Yes, sir.
9  Q   What's that tell you about ████,
10      Detective -- or Investigator Bolton?
11 A   Well, it's an incorrect address.
12 Q   If it's a correct address, would it be
13      off limits?
14 A   It would.
15 Q   By the way, who puts in the information
16      when these registrants come and register?
17 A   It depends.
18 Q   You're the only one at MPD that registers
19      these offenders; am I correct?
20 A   Yes, sir.  But not necessarily because,
21      also, Department of Corrections does
22      enter registrants.
23 Q   Okay.  So if the Department of

13 (Pages 46 to 49)

JEREMY BOLTON   7/2/2018

Page 50

1    Corrections made a mistake about where
2    this registrant lives and put ▇▇▇ versus
3    ▇▇▇ does it matter whether he's in a
4    restricted -- does it matter -- hold on a
5    second.
6         Does it matter as it relates to the
7    2,000 foot restriction? ▇▇▇ would be
8    off limits as well; right?
9  A  Yes, sir.
10 Q  Okay. And if, in fact -- in the same
11   exhibit, can you look down under crime
12   information and tell me what sex crime
13   this registrant was convicted for?
14 A  Rape second degree.
15 Q  Okay. And, of course, his release date,
16   again, was August 3rd, 2017; is that
17   correct?
18 A  Yes, sir.
19 Q  Okay. So based on your understanding of
20   the law, would this registrant be allowed
21   to live at ▇▇▇▇▇▇▇▇▇▇▇▇
22   ▇▇▇▇▇▇▇▇?
23 A  Is he being released from prison?

Page 51

1  Q  It says a release date on 8/3/2017, does
2    it not?
3  A  Yes, sir.
4  Q  So 8/3 -- excuse me -- yeah, 2017, that's
5    in the past, isn't it?
6  A  Uh-huh.
7  Q  So you would agree with me that just
8    based on this posting, correct, that from
9    the posting it appears that he's been
10   released already; isn't that true?
11 A  Yes, sir.
12 Q  Okay. So assuming that he's been
13   released already, isn't it true,
14   Investigator Bolton, that this registrant
15   is not allowed to live at ▇▇▇
16   ▇▇▇▇▇▇▇▇▇▇▇▇▇?
17 A  Now, if he's being released he is
18   allowed.
19 Q  Okay. Tell me the -- tell me the
20   circumstances under which he is allowed.
21 A  Because once he's released, we inform
22   them if he's living at a noncompliant
23   address. And then he has, from my

Page 52

1    understanding, seven days to find a
2    compliant address.
3  Q  So based on your testimony and assuming
4    that this registrant, Tommie Lee Dennis,
5    was released on August 3rd, 2017, are you
6    telling the Court that by August 10th,
7    2017 he needs to find a compliant
8    address? Is that what you're telling the
9    Court?
10 A  That's if he reported to us. He may have
11   not even reported. I can't tell you if
12   he's one of ours or not.
13 Q  Would he be on the ALEA website as a
14   registered sex offender for Montgomery,
15   Alabama if he didn't report to you?
16       MR. CHYNOWETH: Object to the
17   form.
18 BY MR. McGUIRE:
19 Q  You may answer.
20 A  I couldn't tell you, sir. That's part of
21   ALEA. I don't control them.
22 Q  When a new registrant comes to the City
23   of Montgomery to register for the first

Page 53

1    time, what do you do with that
2    information?
3  A  We give it to the -- they fill out the
4    Form 47 if they're new, and then we send
5    that over to ALEA.
6  Q  So you send that over to ALEA?
7  A  Uh-huh.
8  Q  Can ALEA receive that information when
9    registrants come and register -- can they
10   receive that from someone else?
11 A  Yes, sir.
12 Q  Who can they receive that from?
13 A  Department of Corrections.
14 Q  Okay. So ALEA may have gotten this
15   information from the Department of
16   Corrections and not you?
17 A  Yes, sir. I don't know.
18 Q  Okay.
19 A  I couldn't tell you.
20 Q  So, again, I want to cover this and make
21   sure we understand and the Court
22   understands.
23       Based on the documentation that you

14 (Pages 50 to 53)

JEREMY BOLTON   7/2/2018

Page 54

1   see from the ALEA posting that by
2   August 10th, 2017, Tommie Lee Jones (sic)
3   should have registered with the
4   Montgomery Police Department; correct?
5   A   By what date?
6   Q   By -- excuse me.  By -- Tommie Lee Dennis
7   should have registered by August 10th,
8   2017.  He should have been registered
9   with your office; isn't that true?
10  A   No, sir.
11  Q   When should Mr. Dennis have registered
12  with your office?
13  A   Now, if this was accurate, his release
14  date; correct?
15  Q   August 3rd, 2017.  When should he have
16  registered?
17  A   As pursuant, he has three days to
18  register with local.  That's if he
19  doesn't have a detainer going to -- like,
20  if he's released from prison, somebody
21  else has a warrant for him, even though
22  this paperwork's been submitted, they
23  don't run his name, from my

Page 55

1   understanding.  You would have to talk to
2   the Department of Corrections.  If they
3   run his name and he has an active
4   warrant, he could still submit this
5   paperwork, but he could be locked up in
6   the Bullock County Jail.
7   Q   Okay.  So what I want to do is -- I don't
8   want to talk about what he could have
9   done or what possibilities were about him
10  going to another jail or a warrant
11  being -- what I'm specifically talking
12  about is just your understanding of the
13  law; okay?
14  A   Okay.
15  Q   All right.  So if Mr. Dennis was released
16  on August 3rd, how many days does he have
17  to register with your office?
18  A   Three days.
19  Q   So by August 6th, am I correct that
20  Mr. Dennis should have registered with
21  your office?
22  A   As pursuant -- that's correct.  Yes, sir.
23  Q   Okay.  A little bit earlier you -- are

Page 56

1   you familiar with these ALEA postings, by
2   the way?
3   A   Just -- not really, but yes, sir.
4   Q   Okay.  To your knowledge, if an
5   individual is in, let's say, Kilby
6   prison, do you know what it will reflect
7   on the ALEA posting as to where this
8   registrant is?
9   A   No, sir.
10  Q   Do you know if it will reflect
11  incarcerated and give the address of the
12  prison he's in?
13  A   I don't know, sir.
14  Q   Okay.  Fair enough.
15      Are you familiar with a registrant
16  by the name of James Buycks, spelled
17  B-U-Y-C-K-S?
18  A   Yes, sir, from my understanding.
19  Q   Okay.  What do you know about Mr. Buycks?
20  A   He's one of our sex offenders.
21  Q   Now, in November of 2017, did Mr. Buycks
22  come in to you personally and propose
23  moving to a new address?

Page 57

1   A   I don't remember.
2   Q   If Mr. Buycks stated that he came to you
3   personally and proposed moving to a new
4   address, would you have any reason to
5   believe that Mr. Buycks was lying about
6   that?
7   A   I couldn't tell you.
8   Q   I want to represent to you that -- I want
9   to give you what we're marking as
10  Plaintiff's Exhibit D.
11      (Plaintiff's Exhibit D was
12      marked for identification.)
13  Q   And this is a little bit of a stack of an
14  exhibit, and we're going to go through
15  these -- these pages; okay?
16  A   Okay.
17  Q   Now, the very first page of this exhibit,
18  is this the ALEA posting for James Edward
19  Buycks?
20  A   Yes, sir, it appears so.
21  Q   Okay.  And what address do they have
22  Mr. Buycks currently living?
23  A   ████████████████████

15 (Pages 54 to 57)

JEREMY BOLTON   7/2/2018

Page 58

1  Q   And are you aware that Mr. Buycks used to
2      live at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
3  A   I'm unsure.
4  Q   Can you flip to page 2?
5  A   (The witness complies.)
6  Q   And page 2 is the Montgomery Police
7      Department's sex offender registration
8      form; isn't that true?
9  A   For page 2?
10 Q   The second page, the page that you're
11     currently on.
12 A   No, sir.
13 Q   It's not part of Montgomery Police
14     Department's sex offender registration
15     forms?
16 A   Well, it's Alabama.  That's what we use.
17 Q   I'd like you to flip to page 3.
18 A   Okay.
19 Q   Can you look down at the bottom of the
20     page?  Whose signature do you see?
21 A   For which one?
22 Q   Either one.
23 A   It's Mr. Buycks'.

Page 59

1  Q   And do you see another signature?
2  A   Uh-huh.
3  Q   Whose signatures is that?
4  A   T. Bailey.
5  Q   Who is T. Bailey?
6  A   He's an analyst.
7  Q   An analyst where?
8  A   At the police department.
9  Q   So you would agree with me, would you
10     not, that this sex offender registration
11     form is from -- one that was filled out
12     at the Montgomery Police Department?
13 A   Yes, sir.
14 Q   And signed by T. Bailey of the Montgomery
15     Police Department; correct?
16 A   Yes, sir.
17 Q   In fact, underneath it says "Registering
18     Agency," does it not?
19 A   Yes, sir.
20 Q   And what reporting officer does it list?
21 A   Me.
22 Q   What reporting officer does it list?
23     Does it say T. Bailey?

Page 60

1  A   Oh, T. Bailey.  I'm sorry.
2  Q   Right.  And then what agency name?
3  A   Montgomery Police Department.
4  Q   Okay.  And it gives your address and
5      phone number; correct?
6  A   Uh-huh.
7  Q   And the contact e-mail -- whose e-mail is
8      that?
9  A   That's mine.
10 Q   That's your e-mail.  Okay.  So you have
11     no reason to believe that this is not a
12     form of the Montgomery Police Department
13     filled out by Mr. James Buycks?
14 A   This is not a form of the Montgomery
15     Police Department.  This is a form from
16     ALEA.
17 Q   Okay.  Was this form filled out -- okay.
18     Let me -- let me back up and talk about
19     what you just stated.  An ALEA -- this is
20     an ALEA form; correct?
21 A   Uh-huh.
22 Q   But under responsible agency, under this
23     second page of that particular form, this

Page 61

1      is information unique to the Montgomery
2      Police Department; correct?
3  A   As a reporting agency, I guess.
4  Q   So you understand what I'm referring to
5      when I say a Montgomery Police Department
6      form?
7  A   Well, this is not a Montgomery Police
8      Department form.  The other forms, if
9      this is the whole packet, is ours.
10 Q   We'll get to that in a moment; okay?
11 A   Okay.
12 Q   You don't deny that Mr. Buycks filled out
13     this form, whatever it is, at the
14     Montgomery Police Department, do you?
15 A   No, sir.
16 Q   Okay.  Now, I want to go back to that
17     initial page of this sex offender
18     registration form that you referred to.
19     What address do you see listed here for
20     Mr. Buycks?
21 A   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 Q   You see ▮▮▮▮▮▮▮▮.  Do you see an
23     address that's stricken through on that

16 (Pages 58 to 61)

JEREMY BOLTON   7/2/2018

Page 62

1   form?
2   A   ▓▓
3   Q   So if I represent to you that Mr. Buycks
4       used to live at ▓▓ and what was in
5       Montgomery Police Department's system
6       that auto populated in this form was ▓▓
7       ▓▓▓▓▓▓ you would have no reason to
8       deny that, would you?
9   A   No, sir.
10  Q   So to your knowledge, did Mr. Buycks used
11      to live at ▓▓▓▓▓▓?
12  A   Yes, sir, as far as I know.
13  Q   Okay. Now, can you tell me -- back to
14      the first page of this exhibit of
15      Mr. Buycks -- on the ALEA website
16      posting, what sex crime does it have
17      listed for Mr. Buycks?
18  A   Sex abuse first degree.
19  Q   And over to your right and a little
20      closer to the bottom, you'll see victim
21      information. Do you see that?
22  A   Uh-huh.
23  Q   And what does it say under the gender of

Page 63

1   his victim?
2   A   Female.
3   Q   And what was the age of his victim?
4   A   Seven.
5   Q   Okay. I'd like you to -- Investigator
6       Bolton, to tell me why it is that
7       Mr. Buycks would be allowed on
8       November 1st, 2017 to move from ▓▓▓▓
9       ▓▓ to ▓▓▓▓▓▓?
10  A   I couldn't tell you.
11  Q   If I represented to you that ▓▓▓▓▓▓
12      ▓▓▓▓ was off limits because of Edward
13      T. Davis Elementary School, would you
14      accept that representation?
15  A   No, sir.
16  Q   Do you know where 312 Truett Drive is?
17  A   No, sir.
18  Q   Did you have registrants come in to you a
19      few months ago and ask you if they could
20      live at 312 Truett Drive?
21  A   I don't know. I'd have to see who it is.
22  Q   Okay. We'll get to that in a moment.
23      Let me ask you this as an officer

Page 64

1   who enforces "ASORCNA". If Mr. Buycks
2   moved to ▓▓▓▓▓▓▓▓ -- that's the
3   first part of my scenario. You got that?
4   A   If he moved, yes, sir.
5   Q   If he moved to ▓▓▓▓▓▓▓▓ from ▓▓
6       ▓▓▓▓▓▓ The second part of my
7       scenario is and if that place that he
8       moved, ▓▓▓▓▓▓ was less than
9       2,000 feet from Edward T. Davis
10      Elementary, would you agree with me that
11      he should not have been allowed to live
12      there?
13  A   I would have to see that, but, yes, based
14      upon what you're giving me.
15  Q   Okay. Why -- let's assume it's you. Why
16      would you allow a registrant that was not
17      supposed to live within 2,000 feet of a
18      school or day care to live within 2,000
19      feet of a school or day care?
20  A   It depends on the person.
21  Q   What do you mean by that?
22  A   Well, we have some people who -- some
23      offenders who have court orders that they

Page 65

1   are allowed to live at their residence
2   that's within 2,000 feet of a school or a
3   day care.
4   Q   Okay. Well, I want you to assume for the
5       purposes of the example that I gave you
6       that there is no court order that allows
7       Mr. Buycks, for example, to live at ▓▓
8       ▓▓▓▓▓▓ and that that home is less
9       than 2,000 feet from a school or day
10      care. What scenario can you describe and
11      what reason can you provide the Court as
12      to why you would allow Mr. Buycks on
13      November 1st, 2017 to move to that
14      location?
15  A   I wouldn't.
16  Q   You would not allow that?
17  A   Uh-uh.
18  Q   And if you did allow that, then that
19      would be a mistake?
20  A   Yes, sir.
21  Q   Do you have a mapping system where you're
22      able to check to determine whether a
23      residence is compliant per the statute?

17 (Pages 62 to 65)

JEREMY BOLTON   7/2/2018

Page 66

1  A  Yes, sir.
2  Q  What's the name of that mapping system?
3  A  It used to be the GIS department, but I
4     don't know what the name of the mapping
5     is now.
6  Q  Does ArcMap sound familiar to you?
7  A  That's what we used to use.
8  Q  Okay. You don't use ArcMap anymore?
9  A  No, sir.
10 Q  Okay. By the way, do you share or do you
11    provide the Montgomery County Sheriff's
12    Office information with regard to homes
13    that are compliant or noncompliant using
14    the tools that you just described?
15 A  No, sir.
16 Q  So you never provide, for example,
17    Lieutenant Persky at the Montgomery
18    Sheriff's Department confirmation that a
19    particular address based on your system
20    is compliant or noncompliant? You never
21    do that?
22 A  Most of the time from my understanding --
23    you'd have to talk to the County -- if

Page 67

1     it's inside the city limits, they send
2     them to us first to see if there's a
3     compliant address or not.
4  Q  Do you know why they do that?
5  A  To see if it's a compliant address.
6  Q  Well, don't they have a system there that
7     they can just check for themselves?
8  A  I don't know. I don't work for the
9     County.
10 Q  So to your knowledge, you just don't know
11    if they have a system or not that can --
12 A  No, sir.
13 Q  A mapping system?
14 A  I do not know.
15 Q  Okay. Let me show you what we're going
16    to mark as Plaintiff's Exhibit E.
17           (Plaintiff's Exhibit E was
18           marked for identification.)
19 Q  Am I showing you a -- ALEA's website
20    posting of a registrant of the statute by
21    the name of either Bmherman Jovant Bailey
22    or Herman Jovant Bailey.
23 A  Yes, sir.

Page 68

1  Q  Okay. And can you tell the Court what
2     his date of release is according to the
3     ALEA website?
4  A  6/10 of 2018.
5  Q  So it's showing that Mr. Bailey was just
6     released a few weeks ago on this ALEA
7     posting; correct?
8  A  Yes, sir.
9  Q  And can you look down at his sex crime
10    and see what they show his --
11 A  He has two.
12 Q  Can you -- can you tell the Court what
13    those were?
14 A  Attempted rape first degree and a sex
15    abuse first degree.
16 Q  Okay. And what current address is it
17    showing for Mr. Bailey?
18 A  Per this post, ▓▓▓▓▓▓▓▓▓
19 Q  Now, you told the Court a little earlier
20    now that it's just you that does the
21    registering of these individuals in the
22    Montgomery Police Department; correct?
23 A  Yes, sir.

Page 69

1  Q  So do you know Mr. Bailey?
2  A  No. She's an analyst. I'm the officer.
3     When you stated that --
4  Q  When I say "Mr. Bailey," I'm talking
5     about this registrant that we just got
6     through talking about.
7  A  Oh, okay.
8  Q  Do you know him?
9  A  No, sir, not right offhand.
10 Q  Did you not register him?
11 A  I'd have to see the paperwork. I don't
12    know.
13 Q  Based on your earlier testimony and based
14    on Mr. Bailey's release date of
15    June 10th, 2018, Mr. Bailey would have
16    been required to register with you if he
17    was going to be in the city of Montgomery
18    by June 13th, 2018; isn't that true?
19 A  Yes, sir.
20 Q  Okay. If I represented to you that ▓▓▓
21    ▓▓▓▓▓▓▓▓ is a restricted residence
22    because it is too close -- it is fewer
23    than 2,000 feet from Edward T. Davis

18 (Pages 66 to 69)

JEREMY BOLTON   7/2/2018

Page 70

```
 1      Elementary School, if that proved to be
 2      true, Mr. Bailey, this registrant, should
 3      not have been allowed to move to ███████
 4      ██████ isn't that true?
 5   A  You said he was released; correct?
 6   Q  That's correct, June 10th.
 7   A  Okay.  If he was released, then he's
 8      allowed to live at ███ just like I --
 9      former testimony.  I said that he's
10      allowed to live there for one week and
11      then he has to move.
12   Q  Then he has to move?
13   A  Uh-huh.
14   Q  Now, I want you to take a look at the top
15      left-hand corner of this particular ALEA
16      posting.  Do you see a date at the very
17      top left-hand corner?
18   A  Yes, sir.
19   Q  And what date does it show?
20   A  7/2/2018.
21   Q  Is that today?
22   A  Uh-huh.
23   Q  So based on the information about
```

Page 71

```
 1      Mr. Bailey that you see in this website
 2      posting, this printout is from today,
 3      would you agree?
 4   A  Uh-huh.
 5   Q  Okay.  Now, if Mr. Bailey -- what is the
 6      last possible date -- if you assume that
 7      Mr. Bailey was living -- ████████████████
 8      was too close to Davis Elementary School,
 9      what is the last possible date Mr. Bailey
10      could have lived in compliance in that
11      home?
12   A  I would have to look at the calendar.
13   Q  Well, you can just count the days, can
14      you not?
15   A  Well, we're not open on weekends.  So it
16      depends on when he was released.  If he's
17      got three days, then if he's released on
18      a Friday -- if he comes in Monday,
19      Tuesday, or Wednesday -- if he comes in
20      on a Wednesday, then he has a week from
21      that Wednesday date, so I wouldn't know.
22   Q  So does the statute say business days or
23      does the statute say days?  Is there a
```

Page 72

```
 1      distinction between the seven days that
 2      you spoke about earlier?
 3   A  Well, days that we're open, yes, sir.
 4   Q  So your understanding of the statute
 5      means that seven days only includes the
 6      days that you're open; is that correct?
 7   A  Well, business days is what we consider.
 8   Q  So you call them business days.  And what
 9      are business days based on how you
10      understand them to be?
11   A  As far as our registration?
12   Q  Yes.
13   A  Monday through Thursday, 8:00 to 12:00.
14   Q  Okay.  So Friday is not a business day
15      for you?
16   A  No, sir.
17   Q  So if a registrant needed to report some
18      critical information to you on a Friday,
19      they couldn't do that; is that correct?
20   A  No, sir.
21   Q  If a registrant, let's say for example,
22      wanted to obtain a travel permit from you
23      on a Friday, could they do that?
```

Page 73

```
 1   A  We don't do that.
 2   Q  You don't do travel permits?
 3   A  No, sir.
 4   Q  Why not?
 5   A  The County does it.
 6   Q  Okay.  So only the County; the City
 7      doesn't do any travel permits?
 8   A  No, sir.  We don't do travel permits.
 9      The County handles that.
10   Q  All right.  Now, Detective Bolton --
11      excuse me.  Investigator Bolton -- I'm
12      sorry -- do you recall ever having a
13      conversation with me over the telephone?
14   A  A long time ago, yes, sir.
15   Q  And do you recall me calling you
16      inquiring with you as to why you were
17      asking a registrant by the name of
18      Michael McGuire what time he was
19      underneath his bridge when he was
20      homeless?  Do you recall that
21      conversation?
22   A  Yes, sir.
23   Q  And do you recall giving me the answer
```

19 (Pages 70 to 73)

JEREMY BOLTON   7/2/2018

Page 74

1   stating, well, it's part of an
2   investigation?  Do you recall giving that
3   answer?
4   A   I remember our conversation but not
5   verbatim.
6   Q   Okay.  Well, let me ask you this:
7   What -- do you recall what investigation
8   you were doing on Mr. McGuire that
9   required him to tell you what time he was
10   at his bridge?
11   A   Well, if he's homeless, we'd like to go
12   by and see, you know, if we're doing a
13   home compliance check.
14   Q   Didn't you tell him that you went by
15   there?
16   A   I think we sent some patrol officers by.
17   Q   And you told him that they didn't see him
18   at the bridge?
19   A   As far as I recollect, yes, sir.
20   Q   Okay.  What time is a homeless registrant
21   that lists a bridge as their residence --
22   what time are they required to be at that
23   bridge?

Page 75

1   A   They're not.
2   Q   Well, why do you ask that question if
3   they're not required to be there at a
4   specific time?
5   A   Because we'd like to go out and see them
6   while they're there.
7   Q   Why?  For what?  Like to go see them for
8   what?
9   A   To make sure that they're living there or
10   staying there.
11   Q   So you're going to make sure that
12   registrants are living under their
13   registered bridge when they register as
14   homeless.  You just want to go check the
15   bridge to make sure that they're staying
16   there.  Is that part of your home
17   compliance checks?
18   A   Yes, sir.
19   Q   And you do that because you believe
20   registrants have a reduced expectation to
21   privacy; is that correct?
22        MR. CHYNOWETH:  Object to the
23   form.

Page 76

1   BY MR. McGUIRE:
2   Q   You may answer.
3   A   I guess if that's what you consider, yes,
4   sir.
5   Q   Now, what if Mr. McGuire is never at his
6   bridge?  Is there a certain time
7   Mr. McGuire is supposed to --
8        MR. McGUIRE:  Well, strike
9   that.
10   BY MR. McGUIRE:
11   Q   What if Mr. McGuire tells you, well,
12   Investigator Bolton, I'm normally at my
13   bridge from 7:00 a.m. to 9:00 a.m.?  Do
14   you go and try to verify that?
15   A   If I have somebody available, yes, sir.
16   Q   Okay.  And what if he's not there between
17   7:00 a.m. and 9:00 a.m.?
18   A   Well, if he told me he was going to be
19   there between 7:00 and 9:00, then that's
20   when we'll send somebody out to be there.
21   Q   Okay.  And what if you send somebody out
22   to be there and he's not there?
23   A   Okay.

Page 77

1   Q   Then what?
2   A   Then we try to get in touch with him to
3   see when he'd be available to be out
4   there.
5   Q   Why do you need him to be available to be
6   out there?
7   A   Because if that's where they're listing
8   where they're supposed to be residing...
9   Q   Let me ask you this, Investigator Bolton:
10   How long -- what would you say the
11   average time of your home compliance
12   check is?
13   A   What do you mean?
14   Q   The average time you're at a registrant's
15   residence or bridge or wherever you go,
16   what would be the average time you would
17   spend at these residences trying to
18   confirm that these registrants actually
19   live there?
20   A   Five to ten minutes.
21   Q   Five to ten minutes?
22   A   Uh-huh.
23   Q   Okay.  So if Mr. McGuire tells you,

20  (Pages 74 to 77)

JEREMY BOLTON   7/2/2018

Page 78

1   Investigator Bolton, I'm at my bridge
2   between 7:00 a.m. and 9:00 a.m. every day
3   and you went there three days in a row
4   from 7:00 a.m. to 9:00 a.m. and he wasn't
5   there either day and you've sat there for
6   five to ten minutes, what's that mean to
7   you?
8           MR. CHYNOWETH: Object to the
9       form.
10  A   Nothing.
11  BY MR. McGUIRE:
12  Q   It means nothing to you?
13  A   Uh-uh.
14  Q   So, again, why do you want to know what
15      time a homeless registrant is present at
16      their bridge?  Why do you want to know
17      that?
18  A   Just to go by and see if they're there --
19      I mean, if they're living there because
20      of reasonable suspicion, say, they're not
21      living there.
22  Q   Did you have a reasonable suspicion to
23      suspect Mr. McGuire wasn't living there

Page 79

1       when you asked him that question?
2   A   Well, I kind of did after you threatened
3       me on the phone.
4   Q   Well, you asked him, though, before I
5       talked to you on the phone, didn't you?
6   A   I asked him, but then after you made the
7       phone call and threatened me in regards
8       to bringing me -- you said that you would
9       sue me too and bring me in on this.  Make
10      sure that's on the record too.
11  Q   Okay.  You got that on the record; right?
12  A   Uh-huh.
13  Q   What I did tell you was that you would be
14      in front of the Court if you continued to
15      interrogate Mr. McGuire.
16  A   I didn't interrogate him.  I just asked
17      him a question.
18  Q   My question to you was, I told you that
19      you would be in front of the Court if you
20      continued to interrogate Mr. McGuire,
21      didn't I?
22  A   I wasn't interrogating him.
23  Q   That's not what I asked you.  I said, I

Page 80

1   stated to you that you would be in front
2   of the Court if you continued to
3   interrogate Mr. McGuire; isn't that true?
4   A   I wasn't interrogating him, so I don't --
5   Q   Did you hear the question that I asked
6       you?
7   A   Uh-huh.
8   Q   Did you understand the question that I
9       asked you?
10          What was my question?
11  A   I was not interrogating him.  But you did
12      say that --
13  Q   That wasn't my question.  What was my
14      question?
15  A   You did threaten to bring me in front of
16      the Court if I continued to interrogate
17      him.
18  Q   Okay.  Did you continue to interrogate
19      him?
20  A   Not after we had the phone call.
21  Q   Okay.
22  A   Because I had already previously asked
23      him before that, before your phone call.

Page 81

1   Q   Okay.  I appreciate that.  Do you know
2       that this deposition is an appearance
3       before the Court?
4   A   Okay.  Yes, sir.
5   Q   So what you determine as a threat you
6       wouldn't mind if I consider it a promise,
7       would you?
8   A   That's your dealings.
9   Q   Okay.  Did you interrogate Mr. McGuire
10      just to mess with him?
11          MR. CHYNOWETH: Object to the
12      form.
13  BY MR. McGUIRE:
14  Q   You may answer.
15  A   I didn't interrogate him.
16  Q   Did you question him just to bother him?
17  A   No, sir.
18  Q   You admit, though, that there's no reason
19      for you to ask him what time that he's
20      under his bridge, is there?
21          MR. CHYNOWETH: Object to the
22      form.
23  A   I was trying to be more lenient with

21 (Pages 78 to 81)

JEREMY BOLTON   7/2/2018

Page 82

1   your -- it's your brother; right -- in
2   reference to going out to do a home check
3   just to make sure he's in compliance with
4   the law.
5   BY MR. McGUIRE:
6   Q   Why are you more lenient with my brother
7   versus any other registrant?
8   A   Because if we go out and do a home check
9   if he's under a bridge, he may be over at
10   somebody's residence during the day. I'm
11   not sure.
12   Q   Well, if you want to be lenient with a
13   registrant, why don't you just let them
14   live in a noncompliant home rather than
15   under a bridge?
16        MR. CHYNOWETH: Object to the
17        form.
18   BY MR. McGUIRE:
19   Q   You may answer.
20   A   Because he's considered homeless.
21   Q   You didn't have to be considered
22   homeless. He could bring you a
23   noncompliant address; correct?

Page 83

1   A   Yes, sir.
2   Q   And you could let him live there,
3   couldn't you?
4        MR. CHYNOWETH: Object to the
5        form.
6   A   For seven days.
7   BY MR. McGUIRE:
8   Q   That would be lenient, wouldn't it?
9   A   And we all know that.
10   Q   Why wouldn't you allow him to live there
11   permanently?
12        MR. CHYNOWETH: Object to the
13        form.
14   A   That would be against the law.
15   BY MR. McGUIRE:
16   Q   Well, it's against the law for you to be
17   lenient with him when he's homeless,
18   isn't it?
19        MR. CHYNOWETH: Object to the
20        form.
21   A   No, sir, not to my understanding.
22   BY MR. McGUIRE:
23   Q   Are you aware that Corporal Jones went to

Page 84

1   Mr. McGuire's current registered address?
2   Are you aware of that?
3   A   Briefly, yes, sir.
4   Q   What do you know about that?
5   A   He went out to whatever address your
6   brother's listed at.
7   Q   So is it your testimony to the Court that
8   you don't just single out Mr. McGuire, do
9   you, to pick at him?
10   A   No, sir.
11   Q   You don't do that, do you?
12        MR. CHYNOWETH: Object to the
13        form.
14   A   No, sir.
15   BY MR. McGUIRE:
16   Q   You're sure about that?
17        MS. SMITHEE: Asked and
18        answered.
19   BY MR. McGUIRE:
20   Q   You may answer.
21        Are you sure about that?
22   A   I've already answered.
23   Q   Are you sure about that?

Page 85

1        MS. SMITHEE: Object again,
2        asked and answered.
3   BY MR. McGUIRE:
4   Q   You may answer.
5   A   I've answered.
6   Q   During your home compliance checks,
7   Investigator Bolton, what do you
8   typically require from a registrant to
9   demonstrate that they live there?
10   A   Do I make contact with the person there?
11   Q   What do you typically require when you do
12   a home compliance check for a registrant
13   to demonstrate the fact that they live at
14   that address?
15        MR. CHYNOWETH: Object to the
16        form.
17   A   Okay. Do I make contact with the person?
18   BY MR. McGUIRE:
19   Q   Let's say you do make contact with them.
20   A   Then I get them to sign a form.
21   Q   You get them to sign a form?
22   A   Uh-huh.
23   Q   And what does that form state?

22  (Pages 82 to 85)

JEREMY BOLTON   7/2/2018

Page 86

1    A   It's just a home compliance check stating
2        that they live at that address.
3    Q   And what if they refuse to sign the form,
4        then what?
5    A   I put refuse to sign and then have the
6        person who's with me witness it.
7    Q   Okay. Do you ever accept a piece of mail
8        that a registrant has at that address to
9        prove that they live there?
10   A   We have.
11   Q   Do you ask them to show that?
12   A   No, sir.
13   Q   So they just voluntarily get it to you?
14   A   Some of them do; some of them don't.
15   Q   Do you ever require them to show you
16       clothing that they may have in the home
17       to demonstrate that they live there?
18   A   No, sir.
19   Q   Do they -- do they sometimes just
20       randomly show you clothing to prove that
21       they live there?
22   A   Yes, sir.
23   Q   Is that good enough for you?

Page 87

1    A   Yes, sir.
2    Q   It's good enough to demonstrate that
3        registrants live there?
4    A   They're providing clothes there, yes,
5        sir.
6    Q   So I want to make sure that we're clear
7        on these home compliance checks. So you
8        said that they last typically between
9        five to ten minutes; right?
10   A   It just depends, yes, sir.
11   Q   But you said on average between five and
12       ten minutes; correct?
13   A   Uh-huh.
14   Q   Okay. And if a registrant -- you're able
15       to make contact with that registrant,
16       then you get them to sign a form;
17       correct?
18   A   Uh-huh.
19   Q   And if they sign the form, correct,
20       you're satisfied that they actually
21       reside there?
22   A   Yes, sir.
23   Q   If they show you mail that comes to that

Page 88

1        address in the five to ten minutes that
2        you're there, that satisfies you that
3        they actually reside in that address; is
4        that correct?
5    A   Yes, sir.
6    Q   Or if they show you clothing inside the
7        residence that belongs to them, that
8        satisfies you that they actually live
9        there in that five- to ten-minute period
10       that you're there?
11   A   Yes, sir.
12   Q   During your home compliance checks,
13       Investigator Bolton, do you ring the
14       doorbells when you're around?
15   A   If they have a doorbell.
16   Q   And, otherwise, do you knock on doors?
17   A   Yes, sir.
18   Q   Do you knock on windows?
19   A   Yes, sir.
20   Q   Do you try to enter into the back of the
21       home to check and see if those
22       individuals are there?
23   A   No, sir.

Page 89

1    Q   Never happens?
2    A   I haven't.
3    Q   You've never gone in the backyard of any
4        registrant and knocked on a window to
5        check and see if they were there? You've
6        never done that?
7    A   Not that I can recall.
8    Q   So you could have done it?
9    A   I mean, I wouldn't, but, I meant...
10   Q   I mean, you know what you do; right?
11   A   Yes, sir.
12   Q   So you know if you've done it or you
13       haven't, do you not?
14   A   I would not do that.
15   Q   Here's my question: Have you done that?
16       That's yes or no.
17   A   No, sir.
18   Q   I'm going to represent to you that
19       Mr. McGuire will be coming to Montgomery
20       Police Department for his quarterly
21       registration event tomorrow. Do you plan
22       to interrogate him tomorrow?
23           MR. CHYNOWETH: Object to the

23 (Pages 86 to 89)

JEREMY BOLTON   7/2/2018

Page 90

1        form.
2    A   No, sir.
3    BY MR. McGUIRE:
4    Q   Do you plan to interrogate him ever
5        again?
6    A   If he was Mirandized under investigation,
7        yes, sir.
8    Q   By the way, the last time you
9        interrogated him, was he Mirandized?
10   A   I didn't interrogate him.
11   Q   Okay.  The last time you asked him what
12       time he was under his bridge, was he
13       Mirandized?
14   A   No, sir.
15   Q   Did you have a warrant --
16   A   No, sir.
17   Q   -- to show up to his bridge?
18   A   A warrant to show up to his bridge?
19   Q   Yes.
20   A   No, sir.
21   Q   Did Officer Jones tell you that when he
22       went to Mr. McGuire's home the last time
23       he did on about September 1st, 2017 --

Page 91

1        did he tell you that he was going to have
2        a warrant issued for his arrest?
3    A   I wasn't here.  I'm not sure.
4    Q   Investigator Bolton, let me thank you for
5        your time this morning.  I appreciate you
6        taking the time to talk to us and wish
7        you the best of luck.
8            MR. McGUIRE:  Pass the witness.
9                EXAMINATION
10   BY MR. CHYNOWETH:
11   Q   Good morning, Investigator Bolton.  I'm
12       Brad Chynoweth from the attorney
13       general's office.  I have just a couple
14       of brief questions for you this morning.
15           Did Mr. McGuire ask you about Tommie
16       Lee Dennis and give you in Exhibit C a
17       copy of the ALEA sex offender
18       registration?
19   A   Yes, sir.
20   Q   Do you have any personal knowledge of
21       Tommie Lee Dennis?
22   A   No, sir.
23   Q   Were your answers regarding Mr. Dennis'

Page 92

1        address based solely on that document in
2        front of you?
3    A   Yes, sir.
4    Q   And was Exhibit E a ALEA sex offender
5        registration for Herman Bailey?
6    A   Yes, sir.
7    Q   And do you have any personal knowledge of
8        Mr. Bailey?
9    A   No, sir.
10   Q   And so your answers that --
11           MR. CHYNOWETH:  Strike that.
12   BY MR. CHYNOWETH:
13   Q   So your knowledge of those addresses is
14       based solely on those documents in front
15       of you?
16   A   Yes, sir.
17   Q   If either of those addresses were within
18       2,000 feet of a day care or school, would
19       those be compliant addresses under
20       ASORCNA?
21   A   No, sir.
22           MR. CHYNOWETH:  No further
23       questions.

Page 93

1    (At which time, the
2    deposition concluded at
3    approximately 11:40 a.m.,
4    Central.)

Epiq Court Reporting Solutions - Birmingham
800-888-3376                         http://www.deposition.com

JEREMY BOLTON   7/2/2018

Page 94

1          REPORTER'S CERTIFICATE
2
3    STATE OF ALABAMA,
4    ELMORE COUNTY,
5
6          I, Shannon P. Yost, Certified
7    Shorthand Reporter and Commissioner for the
8    State of Alabama at Large, do certify that I
9    reported the deposition of the aforementioned
10   deponent, who was first duly sworn by me to
11   speak the truth, the whole truth, and nothing
12   but the truth.
13
14       The foregoing computer-printed pages
15   contains a true and correct transcript of
16   the examination of said witness by counsel for
17   the parties set out herein.  The reading and
18   signing of same is hereby not waived.
19
20       I further certify that I am neither of
21   kin nor of counsel to the parties to said
22   cause, nor in any manner interested in the
23   results thereof.

Page 95

1
2         This 11th day of July, 2018.
3
4
5
6         /s/Shannon P. Yost
7         Shannon P. Yost,
          Certified Shorthand Reporter
8         and Commissioner for the
          State of Alabama at Large
9         My Commission Expires 6/9/2021
          ACCR #158 - Expires 9/30/18
10
11
12
13
14
15
16
17
18
19
20
21
22
23

25 (Pages 94 to 95)

JEREMY BOLTON   7/2/2018

**A**

**a.m**
1:19 33:6 76:13,13,17
  76:17 78:2,2,4,4 93:3
**able**
35:16 65:22 87:14
**absent**
36:18
**abuse**
62:18 68:15
**accept**
31:7 36:9,22 37:22
  63:14 86:7
**ACCR**
95:9
**accurate**
54:13
**Act**
9:16,20 11:21 12:20
  39:16 40:8
**active**
55:3
**actual**
36:11
**address**
24:9,11 25:23 26:1,2
  28:9 29:8 43:21 46:8
  46:9,23 47:1 48:17
  49:11,12 51:23 52:2
  52:8 56:11,23 57:4
  57:21 60:4 61:19,23
  66:19 67:3,5 68:16
  82:23 84:1,5 85:14
  86:2,8 88:1,3 92:1
**addresses**
26:8 48:11,14,15
  92:13,17,19
**admit**
81:18
**aforementioned**
94:9
**age**
63:3
**agency**
59:18 60:2,22 61:3
**ago**

63:19 68:6 73:14
**agree**
9:22 25:20 31:23
  33:21 43:4 51:7 59:9
  64:10 71:3
**agreed**
4:3,19 5:5 48:21
**agreement**
1:14
**aid**
13:20
**al**
1:4,7
**Alabama**
1:2,16,18 2:4,8,12
  4:11 9:14,18 10:9,15
  10:17 11:19,23 12:5
  12:18 27:1,4,5 39:16
  43:20 52:15 58:16
  94:3,8 95:8
**ALEA**
46:1,8 47:21 52:13,21
  53:5,6,8,14 54:1 56:1
  56:7 57:18 60:16,19
  60:20 62:15 68:3,6
  70:15 91:17 92:4
**ALEA's**
67:19
**allow**
22:15 64:16 65:12,16
  65:18 83:10
**allowed**
33:10 42:11 43:6
  50:20 51:15,18,20
  63:7 64:11 65:1 70:3
  70:8,10
**allows**
41:23 43:12 65:6
**Amendment**
30:15
**analyst**
59:6,7 69:2
**and/or**
19:21
**answer**
7:13,14 17:2,14 24:23

25:15 27:14 29:13
  30:9 32:12 39:22
  41:10 42:16 43:8
  52:19 73:23 74:3
  76:2 81:14 82:19
  84:20 85:4
**answered**
29:21 84:18,22 85:2,5
**answers**
91:23 92:10
**anymore**
8:21 66:8
**appearance**
81:2
**APPEARANCES**
2:1
**appears**
51:9 57:20
**appreciate**
23:16 81:1 91:5
**approximately**
93:3
**ArcMap**
66:6,8
**area**
19:18,20,21
**arrest**
91:2
**arriving**
23:22
**articulate**
17:8
**asked**
29:6,16 30:4 40:20
  42:20 79:1,4,6,16,23
  80:5,9,22 84:17 85:2
  90:11
**asking**
6:17 16:10,14,18 22:9
  22:10 30:2 73:17
**ASORCNA**
10:5,6 24:2 44:9 64:1
  92:20
**ASORCNA's**
47:8
**assigned**

20:12
**assisted**
8:18 9:2
**ASSOCIATES**
2:7
**assume**
26:23 64:15 65:4 71:6
**assuming**
51:12 52:3
**Attempted**
68:14
**attention**
13:1,7 14:9,15 31:11
  31:18 32:16,19 34:14
  35:6 39:10 40:10
**attorney**
2:11 6:16 7:9,12 91:12
**attorneys**
7:10
**August**
37:20 39:17 50:16
  52:5,6 54:2,7,15
  55:16,19
**auto**
62:6
**automatically**
45:4,6
**available**
76:15 77:3,5
**▬▬▬▬▬▬**
2:12 57:23 58:2
**average**
77:11,14,16 87:11
**aware**
33:8 58:1 83:23 84:2

**B**

**B**
3:10 30:22,23
**B-U-Y-C-K-S**
56:17
**back**
12:14 38:5 39:13 40:2
  40:10,18 60:18 61:16
  62:13 88:20
**backyard**

89:3
**Bailey**
59:4,5,14,23 60:1
67:21,22 68:5,17
69:1,4,15 70:2 71:1,5
71:7,9 92:5,8
**Bailey's**
69:14
**based**
17:9,18 23:4 24:17
25:2,7 26:5 29:17
31:13 32:2,4 34:22
35:23 39:1 41:4,22
42:22,23 43:3 47:8
47:21 49:3 50:19
51:8 52:3 53:23
64:13 66:19 69:13,13
70:23 72:9 92:1,14
**basis**
21:22
**Beacon**
44:17,19
**beginning**
37:7
**believe**
21:23 27:8 41:22 42:9
57:5 60:11 75:19
**belongs**
88:7
**best**
91:7
**bit**
7:3 55:23 57:13
**Bmherman**
67:21
**Bolton**
1:13 4:6 6:7,21,22
18:17,21 19:3 21:15
22:8 25:22 26:23
31:13 34:15 35:12
37:2 39:9 40:19
41:14 49:10 51:14
63:6 73:10,11 76:12
77:9 78:1 85:7 88:13
91:4,11
**book**

38:5,6,10
**book's**
38:7
**bother**
81:16
**bottom**
14:16 31:16 40:11
58:19 62:20
~~~~~~~~~
43:22 46:21 47:23
48:3 50:22 51:16
**Brad**
2:11 91:12
**break**
40:15
**Brenton**
2:16
**bridge**
73:19 74:10,18,21,23
75:13,15 76:6,13
77:15 78:1,16 81:20
82:9,15 90:12,17,18
**brief**
91:14
**Briefly**
84:3
**bring**
79:9 80:15 82:22
**bringing**
35:11 79:8
**brother**
82:1,6
**brother's**
84:6
**Bullock**
55:6
**business**
71:22 72:7,8,9,14
**Buycks**
56:16,19,21 57:2,5,19
57:22 58:1 60:13
61:12,20 62:3,10,15
62:17 63:7 64:1 65:7
65:12
**Buycks'**
58:23

**C**

C
3:11 45:21,22 91:16
**calendar**
71:12
**call**
8:9 10:6 20:20 29:4
72:8 79:7 80:20,23
**called**
35:14
**calling**
18:17 24:20 73:15
**care**
32:2,5,8 44:15,16 45:2
64:18,19 65:3,10
92:18
**cares**
45:5,7,9
**case**
4:21 5:1 39:12
**cause**
94:22
**Central**
1:20 93:4
**certain**
15:17 19:20 33:8,10
33:11 76:6
**CERTIFICATE**
94:1
**Certified**
1:15 4:9 94:6 95:7
**certify**
94:8,20
**change**
23:14
**changed**
35:17
**changes**
23:13
**changing**
42:12
**characterizes**
37:16
**check**
19:17 20:5 21:14 24:7
28:3 65:22 67:7

74:13 75:14 77:12
82:2,8 85:12 86:1
88:21 89:5
**checks**
17:15,22 18:7,12 19:4
19:6,12 20:1,21 21:2
21:6,12 22:1 23:18
23:20,21 26:12,13
28:12,15 33:15,16,22
34:9 41:14,15,16
42:6,11,13,18 43:7
43:13 75:17 85:6
87:7 88:12
**child**
32:2,5,7
**children**
15:21
**Chynoweth**
2:11 3:4 16:21 17:11
18:1 22:3 25:12
27:11 29:10,19 30:6
32:9 35:2 38:17 39:4
39:19 41:7,18 42:2
43:14 48:6 52:16
75:22 78:8 81:11,21
82:16 83:4,12,19
84:12 85:15 89:23
91:10,12 92:11,12,22
**circumstances**
51:20
**citizen**
27:2,4,5,21
**citizens**
28:6
**city**
1:17 2:3 8:20 9:7,10
46:2 52:22 67:1
69:17 73:6
**Civil**
4:8
**clarify**
39:13
**Clayton**
2:8
**clear**
17:18 87:6

JEREMY BOLTON   7/2/2018

Page 3

close
69:22 71:8
closer
62:20
clothes
87:4
clothing
86:16,20 88:6
code
11:23 24:21 25:18
collection
12:16
come
11:5 23:6 26:17 45:5,7
45:10 49:16 53:9
56:22 63:18
comes
45:3 52:22 71:18,19
87:23
coming
89:19
commencing
1:19
comment
39:18
commission
4:12 95:9
Commissioner
1:16 4:10 94:7 95:8
community
9:15,19,22 10:18
11:20 12:19 18:3
42:7,14
completely
7:15
compliance
10:5 18:12 19:4,5,12
19:16 20:4,21 21:2,6
21:12,14 22:1 23:18
23:20,21,23 24:7
26:12,13 28:3,12,14
28:18 33:15,16,22
34:9 41:14,15,16
42:6 43:7,13 44:10
71:10 74:13 75:17
77:11 82:3 85:6,12

compliant
86:1 87:7 88:12
compliant
52:2,7 65:23 66:13,20
67:3,5 92:19
complies
58:5
comply
10:4 12:7
comport
32:6
computer-printed
94:14
concluded
93:2
conclusion
16:11,15 24:21
conduct
9:21 17:15,22 19:5,16
19:23 28:12 41:17
42:18 43:7
conducted
23:20 26:14,16,20
confirm
34:7 77:18
confirmation
66:18
~~correction~~
43:22 46:10,14,20
47:4,7,22 48:2 50:21
51:16
consider
72:7 76:3 81:6
considered
30:11 42:21 82:20,21
consistent
23:15
constant
13:17
contact
13:17 60:7 85:10,17
85:19 87:15
contained
34:23
contains
94:15
contend

43:10
continue
15:7 80:18
continued
79:14,20 80:2,16
control
52:21
conversation
73:13,21 74:4
convicted
50:13
copy
11:4 35:16 36:11,18
38:10,13 91:17
corner
70:15,17
corporal
8:16 18:10 20:11
83:23
correct
10:23 11:6 12:16 14:7
15:21 16:2 17:23
22:2,6 23:7,9,12 26:3
26:9 30:15,18 33:6
34:2,12,17 36:1
46:12 47:15 49:1,4
49:12,19 50:17 51:8
54:4,14 55:19,22
59:15 60:5,20 61:2
68:7,22 70:5,6 72:6
72:19 75:21 82:23
87:12,17,19 88:4
94:15
Corrections
49:21 50:1 53:13,16
55:2
correctly
14:1,20 15:9 47:3
counsel
4:4,20 94:16,21
count
71:13
County
55:6 66:11,23 67:9
73:5,6,9 94:4
couple

91:13
course
50:15
court
1:1,15 6:1,5 18:8 35:8
38:3 52:6,9 53:21
64:23 65:6,11 68:1
68:12,19 79:14,19
80:2,16 81:3 84:7
Court's
40:6
courtesy
42:14
cover
46:19 53:20
crime
50:11,12 62:16 68:9
criminal
8:1,4
critical
72:18
current
38:15 46:9 68:16 84:1
currently
57:22 58:11

**D**

D
3:12 57:10,11
date
47:16 50:15 51:1 54:5
54:14 68:2 69:14
70:16,19 71:6,9,21
Davis
63:13 64:9 69:23 71:8
day
1:19 44:15,16 45:2,4,6
45:9 64:18,19 65:3,9
72:14 78:2,5 82:10
92:18 95:2
days
52:1 54:17 55:16,18
71:13,17,22,23 72:1
72:3,5,6,7,8,9 78:3
83:6
dealings

JEREMY BOLTON   7/2/2018

Page 4

81:8
decision
41:17
declares
37:16
Defendants
1:8 2:10
define
36:5
defined
32:6,23 37:13,21
defines
33:4 34:18
defining
34:21
definition
32:1 35:9 38:6
definitions
31:21 32:17 34:16
35:1
degree
50:14 62:18 68:14,15
Delano
57:23 58:2 61:21,22
62:7,11 63:9,9,12
64:2,5,6,8 65:8
demonstrate
85:9,13 86:17 87:2
Dennis
45:18 46:4 52:4 54:6
54:11 55:15,20 91:16
91:21
Dennis'
91:23
deny
61:12 62:8
department
7:1,23 8:11 21:5,11
28:21 48:10 49:21,23
53:13,15 54:4 55:2
59:8,12,15 60:3,12
60:15 61:2,5,8,14
66:3,18 68:22 89:20
Department's
58:7,14 62:5
depends

49:17 64:20 71:16
87:10
deponent
94:10
deposed
7:5
deposition
1:13 4:5,8,16,22,23
5:8 7:4 18:11 31:6
81:2 93:2 94:9
describe
7:21 19:15 65:10
described
18:11 33:17 66:14
describes
33:3
detainer
54:19
detective
8:15,18 9:2 18:16,17
21:15 49:10 73:10
determine
23:23 65:22 81:5
DHR
44:21 45:3,7,10,15
~~~~~~~~~~~
43:22 46:10,15,20
47:4,7,22 48:2 50:21
51:16
different
10:19 20:12 31:15
direct
12:23 13:6 14:9,15
31:11,17 32:15,19
34:14 39:10
discussing
23:17
distance
44:11
distinction
72:1
DISTRICT
1:1,2
division
8:2
document

31:3,4 39:11 40:3 92:1
documentation
53:23
documents
92:14
DOE
1:4
doing
6:2 24:6 74:8,12
door
44:2,3
doorbell
88:15
doorbells
88:14
doors
88:16
~~~~~~
46:10,15 47:4,8 63:16
63:20 68:18 69:21
70:4 71:7
due
14:21 20:13 44:15
duly
6:8 94:10
duties
7:22 8:3 28:17

**E**

E
3:13 67:16,17 92:4
e-mail
60:7,7,10
earlier
12:20 21:19 26:6 42:8
42:16 43:4 55:23
68:19 69:13 72:2
edification
40:7
Edward
57:18 63:12 64:9
69:23
effective
39:17
either
4:18 5:2 58:22 67:21

78:5 92:17
Elementary
63:13 64:10 70:1 71:8
ELMORE
94:4
employed
6:23
Employment
15:10
enforce
12:10 33:23 41:23
enforced
41:6
enforcement
13:18,19
enforces
22:16 64:1
enforcing
10:13 11:10
ensure
33:16
enter
49:22 88:20
entire
11:2
Esquire
2:3,7,11
estimate
9:11
et
1:4,7
event
89:21
events
11:6 25:23
evidence
4:17
exact
36:18
exactly
36:13
examination
3:3,4 6:12 91:9 94:16
example
7:10 65:5,7 66:16
72:21

JEREMY BOLTON   7/2/2018

**exclusively**
23:3
**excuse**
14:14 51:4 54:6 73:11
**exhibit**
3:6,8,9,10,11,12,13
13:2,3,8 15:7 30:22
30:23 31:14 32:16
45:21,22 50:11 57:10
57:11,14,17 62:14
67:16,17 91:16 92:4
**expectation**
14:22 16:6,19 17:7,20
21:22 42:10,17 43:5
43:11 75:20
**Expires**
95:9,9

**F**

**face**
46:6
**facility**
32:2,5,8
**fact**
33:23 34:11 44:5
50:10 59:17 85:13
**Fair**
23:16 30:13 56:14
**familiar**
9:14 10:2 33:12 48:11
48:14 56:1,15 66:6
**far**
8:14 17:3 22:23,23
23:1 38:19 41:11
62:12 72:11 74:19
**Federal**
4:7
**feet**
44:11 64:9,17,19 65:2
65:9 69:23 92:18
**Female**
63:2
**fence**
44:5
**fewer**
69:22

**filed**
31:5 39:12
**filing**
4:21 5:4
**fill**
53:3
**filled**
59:11 60:13,17 61:12
**finally**
39:9
**find**
34:3 35:16 45:9 52:1,7
**finds**
15:17
**first**
6:8 13:7 14:20 19:18
30:10 31:17 34:3
40:3 52:23 57:17
62:14,18 64:3 67:2
68:14,15 94:10
**five**
44:22 77:20,21 78:6
87:9,11 88:1
**five-**
88:9
**fixed**
37:13
**flip**
40:2 58:4,17
**follow**
36:12
**follows**
6:10
**foot**
50:7
**foregoing**
94:14
**form**
4:13 7:11 16:22 17:12
18:2 22:4 24:9 25:13
27:12 29:11,20 30:7
32:10 35:3 38:18
39:5,20 41:8,19 42:3
43:15 48:7 52:17
53:4 58:8 59:11
60:12,14,15,17,20,23

61:6,8,13,18 62:1,6
75:23 78:9 81:12,22
82:17 83:5,13,20
84:13 85:16,20,21,23
86:3 87:16,19 90:1
**formality**
4:12
**former**
70:9
**forms**
21:22 58:15 61:8
**forward**
7:2 12:17
**Fourth**
30:14
**Frequent**
13:16
**Friday**
71:18 72:14,18,23
**front**
79:14,19 80:1,15 92:2
92:14
**full-time**
6:23
**fully**
7:15
**further**
4:19 5:5 15:12 92:22
94:20
**furthers**
15:18

**G**

**gender**
62:23
**GENERAL**
2:11
**general's**
91:13
**GIS**
45:11 66:3
**give**
11:4 20:19 23:6 53:3
56:11 57:9 91:16
**gives**
25:22 60:4

**giving**
43:8 64:14 73:23 74:2
**go**
12:14 15:6 19:19,23
20:4,16,18 21:5,15
21:23 27:8 28:1,2,14
29:22 38:5 39:13
40:2 57:14 61:16
74:11 75:5,7,14
76:14 77:15 78:18
82:8
**going**
6:17 7:7 9:18 12:17,17
13:1,14 15:6 16:8,11
19:19 22:9 26:6,22
30:21 31:2,11,13,13
31:17,18 32:15 40:9
45:21 54:19 55:10
57:14 67:15 69:17
75:11 76:18 82:2
89:18 91:1
**good**
6:14,15 86:23 87:2
91:11
**gotcha**
22:13
**gotten**
53:14
**governmental**
15:19
**Great**
7:20
**ground**
7:3
**guess**
9:17 10:10 15:5 61:3
76:3
**guidelines**
28:7 36:3
**guys**
6:1 20:15,18

**H**

**Hall**
1:17
**handle**

Epiq Court Reporting Solutions - Birmingham

JEREMY BOLTON   7/2/2018

20:10
**handles**
73:9
**happens**
89:1
**hear**
7:8 80:5
**heard**
20:7
**held**
40:16
**hereto**
5:2,6
**Herman**
67:22 92:5
**hey**
20:20
**hold**
50:4
**home**
17:5,6,15,22 18:7,11
19:4,5,11,16,23 20:4
20:20 21:2,12,14
22:1 23:18,19,21
24:6 26:12,12 27:9
28:2,12,14 33:14,15
33:22 34:9 41:13,15
41:16 42:6,11,13,18
43:7,12 65:8 71:11
74:13 75:16 77:11
82:2,8,14 85:6,12
86:1,16 87:7 88:12
88:21 90:22
**homeless**
73:20 74:11,20 75:14
78:15 82:20,22 83:17
**homes**
23:22 26:7,18 29:6
66:12
**Hope**
44:18,20
**hours**
33:5
**house**
28:1

**I**
**identification**
13:4 31:1 45:23 57:12
67:18
**identifying**
13:22
**ignore**
35:13
**illegal**
28:23 29:8,16,18 30:5
30:18
**incarcerated**
56:11
**include**
9:8
**includes**
33:18 72:5
**including**
13:21
**incorporates**
21:4
**incorrect**
46:23 49:11
**INDEX**
3:1,6
**individual**
56:5
**individuals**
8:9 23:5 28:18 68:21
88:22
**inform**
51:21
**information**
13:22 15:18 23:7,9,12
39:6 49:15 50:12
53:2,8,15 61:1 62:21
66:12 70:23 72:18
**initial**
61:17
**initiate**
21:17
**initiates**
21:12
**initiating**
21:14
**Inn**

43:19 44:7,10 46:11
46:14,19 47:2
**inquiring**
73:16
**inside**
67:1 88:6
**instructs**
7:13
**interest**
15:12,19
**interested**
94:22
**interpret**
24:20
**interrogate**
79:15,16,20 80:3,16
80:18 81:9,15 89:22
90:4,10
**interrogated**
90:9
**interrogating**
79:22 80:4,11
**introduced**
4:23
**investigation**
8:4 74:2,7 90:6
**investigations**
8:1 13:21
**Investigator**
18:21 19:3 22:8 25:21
26:23 31:12 34:15
35:12 36:8 37:2 39:9
40:19 41:14 49:10
51:14 63:5 73:11
76:12 77:9 78:1 85:7
88:13 91:4,11
**invitation**
26:17
**issued**
91:2
**issues**
20:14

**J**
**J**
2:7

**jail**
55:6,10
**James**
56:16 57:18 60:13
**Jeremy**
1:13 4:6 6:7,21 8:16
**JOHN**
1:4
**Jones**
8:16,18 9:2 18:10,10
20:11 54:2 83:23
90:21
**Jordan**
2:15
**Jovant**
67:21,22
**July**
1:19 95:2
**June**
69:15,18 70:6

**K**
**Kilby**
56:5
**kin**
94:21
**kind**
18:8 79:2
**knock**
88:16,18
**knocked**
89:4
**know**
8:14 10:2,20 11:15
12:12 24:12,22 25:7
28:8,13,16 30:11
40:13 41:11 43:19
44:16 45:17 46:18
53:17 56:6,10,13,19
62:12 63:16,21 66:4
67:4,8,10,14 69:1,8
69:12 71:21 74:12
78:14,16 81:1 83:9
84:4 89:10,12
**knowledge**
56:4 62:10 67:10

91:20 92:7,13
**known**
44:19

## L

**Large**
1:17 4:11 94:8 95:8
**law**
12:6 13:18,19 22:16
36:4,12,18,20 38:19
42:1,15,23 43:1,4
50:20 55:13 82:4
83:14,16
**Lee**
45:18 46:3 52:4 54:2,6
91:16,21
**left-hand**
70:15,17
**legal**
16:11,14 24:21 30:12
**legislature**
15:17
**lenient**
81:23 82:6,12 83:8,17
**let's**
26:23 56:5 64:15
72:21 85:19
**Lieutenant**
66:17
**limited**
16:9 23:4
**limits**
47:8 48:22 49:1,6,13
50:8 63:12 67:1
**lines**
35:13
**list**
19:20 45:11,12 59:20
59:22
**listed**
26:1 61:19 62:17 84:6
**listing**
77:7
**lists**
74:21
**little**

7:3 41:12 42:8 55:23
57:13 62:19 68:19
**live**
17:16 25:10 26:8
27:10,15,18 33:10
44:9 50:21 51:15
58:2 62:4,11 63:20
64:11,17,18 65:1,7
70:8,10 77:19 82:14
83:2,10 85:9,13 86:2
86:9,17,21 87:3 88:8
**lived**
71:10
**lives**
19:21 50:2
**living**
24:8,10,14 25:6,9 26:2
33:19 34:11,12 48:5
51:22 57:22 71:7
75:9,12 78:19,21,23
**local**
54:18
**located**
46:20
**location**
20:12 65:14
**locked**
55:5
**log**
23:11
**long**
44:19 73:14 77:10
**longer**
35:20
**look**
50:11 58:19 68:9
70:14 71:12
**looking**
13:5
**lot**
12:14
**luck**
91:7
**lying**
57:5

## M

**mail**
86:7 87:23
**maintains**
13:17
**manage**
9:6
**management**
8:19
**managing**
9:9
**manner**
5:1 94:22
**mapping**
65:21 66:2,4 67:13
**mark**
13:1 30:21 45:21
67:16
**marked**
13:4 31:1 45:23 57:12
67:18
**marking**
57:9
**MARSHALL**
1:7
**Marshals**
19:23 20:3,3,16,18,19
21:3,4,13
**matter**
31:5 50:3,4,6
**matters**
9:3
**McGuire**
2:7,7 3:3 6:3,13,16
16:13,17 17:1,13
18:5 22:5 25:1,14
27:13 29:12 30:1,8
32:11 35:5 38:20
39:8,21 40:17 41:9
41:21 42:5 43:17
48:9 52:18 73:18
74:8 76:1,5,7,8,10,11
77:23 78:11,23 79:15
79:20 80:3 81:9,13
82:5,18 83:7,15,22
84:8,15,19 85:3,18

89:19 90:3 91:8,15
**McGuire's**
84:1 90:22
**mean**
20:7 25:18 47:12
64:21 77:13 78:6,19
89:9,10
**means**
16:7,20 17:7,9 42:17
72:5 78:12
**meant**
43:6 89:9
**mess**
81:10
**Michael**
73:18
**MIDDLE**
1:2
**mind**
28:4 81:6
**mine**
60:9
**minors**
33:10,12,19 34:2,11
34:12
**minutes**
77:20,21 78:6 87:9,12
88:1
**Mirandized**
90:6,9,13
**mistake**
50:1 65:19
**mistaken**
42:19,23
**Mitch**
2:7 6:16 16:8
**moment**
61:10 63:22
**Monday**
71:18 72:13
**monitor**
28:18
**monitoring**
13:22 15:11 22:19,21
23:1,3
**Montgomery**

JEREMY BOLTON   7/2/2018

1:17,18 2:3,4,8,12
7:1,22 8:10,20,20 9:7
9:10 10:15 21:5,11
27:1,4 28:21 43:20
46:3 52:14,23 54:4
58:6,13 59:12,14
60:3,12,14 61:1,5,7
61:14 62:5 66:11,17
68:22 69:17 89:19
**months**
63:19
**morning**
6:14,15,18 91:5,11,14
**move**
7:2 63:8 65:13 70:3,11
70:12
**moved**
64:2,4,5,8
**moving**
56:23 57:3
**MPD**
49:18

**N**

**name**
6:16,19 8:16 44:18
45:17 46:3 54:23
55:3 56:16 60:2 66:2
66:4 67:21 73:17
**nature**
14:21
**necessarily**
49:20
**need**
4:14 7:14 29:22 36:11
77:5
**needed**
72:17
**needs**
52:7
**neither**
94:20
**never**
66:16,20 76:5 89:1,3,6
**new**
11:7 36:20 52:22 53:4

56:23 57:3
**noncompliant**
51:22 66:13,20 82:14
82:23
**normally**
76:12
**North**
1:17 2:4
**notice**
47:13
**Notification**
9:16,20 11:21 12:19
**notified**
45:4,6
**November**
56:21 63:8 65:13
**number**
11:22 39:16 60:5
**numbers**
10:19

**O**

**object**
7:11 16:12,21 17:11
18:1 22:3 25:12
27:11 29:10,19 30:6
32:9 35:2 38:17 39:4
39:19 41:7,18 42:2
43:14 48:6 52:16
75:22 78:8 81:11,21
82:16 83:4,12,19
84:12 85:1,15 89:23
**objection**
16:9 24:19
**objections**
4:12,13 7:9
**obtain**
72:22
**obtaining**
13:21
**obviously**
47:14
**offender**
8:5,10 9:3,6,15,19,21
10:17 11:20 12:6,18
27:3,6,22 46:2 52:14

58:7,14 59:10 61:17
91:17 92:4
**offenders**
8:19 10:3,14 13:18,23
14:21 20:10 49:19
56:20 64:23
**offenses**
14:22
**offered**
4:16
**offhand**
46:7 69:9
**office**
2:11 38:13 44:2,6
48:17,22 54:9,12
55:17,21 66:12 91:13
**officer**
18:10 28:22 48:10
59:20,22 63:23 69:2
90:21
**officers**
74:16
**Oh**
60:1 69:7
**okay**
6:5 7:7,20 8:15 9:5
10:8 11:4,13,18,22
12:2,3,17,21,22
13:14 14:18 15:8
16:4,16 18:6,14,16
18:23 19:2,11,15
20:17,23 21:10,18
22:8,12,16,19 24:10
25:7,20 26:5,11
28:21 29:3 30:20
31:15 32:22 33:3,14
33:21 34:20 36:8
37:1,6 38:2,15,23
39:9 40:1,4,9,18
41:12 42:8 43:3,10
44:9 45:2 46:8 47:1
47:7 48:4 49:1,23
50:10,15,19 51:12,19
53:14,18 55:7,13,14
55:23 56:4,14,19
57:15,16,21 58:18

60:4,10,17,17 61:10
61:11,16 62:13 63:5
63:22 64:15 65:4
66:8,10 67:15 68:1
68:16 69:7,20 70:7
71:5 72:14 73:6 74:6
74:20 76:16,21,23
77:23 79:11 80:18,21
81:1,4,9 85:17 86:7
87:14 90:11
**once**
19:7,9 51:21
**ones**
31:15
**online**
44:21 45:3,5,7,10
**open**
71:15 72:3,6
**order**
65:6
**orders**
64:23
**overnight**
33:2,3,4,11 34:2,4

**P**

**P**
1:15 4:9 94:6 95:6,7
**p.m**
33:6
**packet**
61:9
**page**
3:8 13:7 14:16 15:6
31:3,12,18,19 32:16
34:14 35:8 39:10
40:3,10,11 57:17
58:4,6,9,10,10,17,20
60:23 61:17 62:14
**pages**
31:14 57:15 94:14
**paperwork**
55:5 69:11
**paperwork's**
54:22
**parole**

Epiq Court Reporting Solutions - Birmingham

28:14,19
**part**
15:16 20:23 21:2 27:3
33:15,21,21 35:20
36:2 39:15 52:20
58:13 64:3,6 74:1
75:16
**particular**
7:4 60:23 66:19 70:15
**particularly**
15:21 21:21
**parties**
4:4,20 5:6 94:17,21
**party**
4:18 5:2
**Pass**
91:8
**patrol**
74:16
**Paula**
2:15
**people**
64:22
**perform**
26:13
**period**
88:9
**permanently**
83:11
**permit**
72:22
**permits**
73:2,7,8
**Perry**
1:18 2:4
**Persky**
66:17
**person**
8:12,13 13:16 19:22
20:9 29:3,4 37:14,15
38:22 39:2,6 64:20
85:10,17 86:6
**person's**
27:9 28:1
**personal**
17:5,6 41:17 91:20

92:7
**personally**
19:12 56:22 57:3
**persons**
28:4
**phone**
60:5 79:3,5,7 80:20,23
**pick**
28:2 84:9
**piece**
86:7
**place**
37:14,16 64:7
**plain**
27:21 28:1,5 29:4
**Plaintiff's**
3:8 13:2,3,8 30:22,23
45:21,22 57:10,11
67:16,17
**Plaintiffs**
1:5 2:6
**plan**
89:21 90:4
**please**
6:19 40:13
**police**
7:1,22 8:11 21:5,11
28:21,22 48:10 54:4
58:6,13 59:8,12,15
60:3,12,15 61:2,5,7
61:14 62:5 68:22
89:20
**populated**
62:6
**populations**
15:20
**portion**
15:23
**portions**
36:10
**pose**
26:22
**possibilities**
55:9
**possible**
71:6,9

**post**
68:18
**posting**
46:1,8 47:22 48:1 51:8
51:9 54:1 56:7 57:18
62:16 67:20 68:7
70:16 71:2
**postings**
56:1
**preceded**
16:1
**presence**
33:5
**present**
2:14 31:6 78:15
**presented**
40:4
**pretty**
12:13
**previously**
80:22
**priceless**
13:19
**Primarily**
8:5
**primary**
8:6 15:19
**print**
19:20
**printout**
71:2
**prison**
47:15 50:23 54:20
56:6,12
**privacy**
14:23 16:6,20 17:4,7
17:21 21:22 42:11,17
42:21 43:6,11 75:21
**probation**
28:13,19
**Procedure**
4:8
**program**
21:4
**promise**
81:6

**proof**
27:10,17 29:7
**propose**
56:22
**proposed**
57:3
**protecting**
15:20 33:17
**prove**
86:9,20
**proved**
70:1
**provide**
23:10 24:11 27:9,17
28:8 45:11 65:11
66:11,16
**provided**
4:18 5:2 24:9 35:9
**provides**
39:7
**providing**
13:19 87:4
**provision**
14:3,6 15:3 24:17
25:10,16
**provisions**
10:22 11:10 12:12
17:19 22:11,14 25:9
39:14,15 40:23 41:6
**public**
15:18 33:17
**purpose**
4:17
**purposes**
65:5
**pursuant**
1:14 4:7 26:14,16
54:17 55:22
**put**
50:2 86:5
**puts**
49:15

**Q**

**quarterly**
89:20

JEREMY BOLTON   7/2/2018

question
4:14 7:14 9:23 27:16
75:2 79:1,17,18 80:5
80:8,10,13,14 81:16
89:15
questions
4:13 6:17 7:8,15 16:5
22:13 30:2 91:14
92:23

**R**

randomly
86:20
rape
50:14 68:14
read
10:12 11:2 13:14,16
14:1,3,21 15:10,23
16:1 17:20 37:2,7,11
37:19,22 40:6
reading
14:13,19 15:9 41:4
94:17
really
56:3
reason
42:20 57:4 60:11 62:7
65:11 81:18
reasonable
78:20,22
reasons
34:8
recall
43:8 73:12,15,20,23
74:2,7 89:7
receive
45:14 53:8,10,12
recognize
46:6
recollect
74:19
record
6:20 40:18 79:10,11
redacted
35:10 36:7,10
redactions

36:19
redirect
40:9
reduced
14:22 16:6,19 17:7,20
21:21 42:10,17 43:5
43:11 75:20
refer
12:18
reference
82:2
referred
61:18
referring
18:9 61:4
reflect
56:6,10
refuse
86:3,5
regard
21:21 66:12
regarding
91:23
regardless
5:3 37:15
regards
79:7
Regency
43:19 44:6,10 46:11
46:14,19 47:1
register
23:6 26:3 49:16 52:23
53:9 54:18 55:17
69:10,16 75:13
registered
10:14 23:2 25:19 26:9
27:2,5 45:2 46:2
52:14 54:3,7,8,11,16
55:20 75:13 84:1
registering
59:17 68:21
registers
49:18
registrant
25:22 28:8 29:5 45:17
50:2,13,20 51:14

52:4,22 56:8,15
64:16 67:20 69:5
70:2 72:17,21 73:17
74:20 78:15 82:7,13
85:8,12 86:8 87:14
87:15 89:4
registrant's
77:14
registrants
9:5,8 11:5,7 12:6 16:7
17:21 22:1 26:17
28:5,11 33:9,18 34:1
34:10 42:10 44:9
49:16,22 53:9 63:18
75:12,20 77:18 87:3
registrants'
23:22 26:7
registration
8:5 9:15,19 10:17 11:6
11:20 12:19 13:17
25:23 58:7,14 59:10
61:18 72:11 89:21
91:18 92:5
regulates
9:21 10:3
relates
10:14 19:3 34:1 50:6
relation
48:15
relatively
32:22
release
50:15 51:1 54:13 68:2
69:14
released
47:14,15,17 50:23
51:10,13,17,21 52:5
54:20 55:15 68:6
70:5,7 71:16,17
releasing
15:17
rely
20:11
remember
57:1 74:4
remembering

47:3
report
52:15 72:17
reported
52:10,11 94:9
Reporter
1:15 4:10 6:1,5 94:7
95:7
REPORTER'S
94:1
reporting
59:20,22 61:3
represent
9:18 31:2,19 36:16
37:18 57:8 62:3
89:18
representation
31:7 36:9,22 37:23
63:14
represented
63:11 69:20
representing
4:4,20 36:14
require
28:17 85:8,11 86:15
required
42:15 69:16 74:9,22
75:3
reserved
4:15
reside
29:7 34:18,21,22
87:21 88:3
residence
27:10 36:6 37:5,13,17
37:21 38:4,16 39:1
65:1,23 69:21 74:21
77:15 82:10 88:7
residences
77:17
residency
24:1 33:23 41:1 47:9
49:3
resident
15:10
resides

37:15 38:22 39:2
residing
47:21 77:8
responsible
9:9 10:13 11:9 60:22
restricted
50:4 69:21
restriction
50:7
restrictions
15:11 24:1 33:23 41:1
  44:11 47:9 49:3
results
94:23
return
23:17
review
12:15 31:19 40:11,13
  40:19,21
reviewed
34:20 39:15
reviewing
36:17
right
10:23 11:9 12:23
  18:17 19:1 21:18
  22:19 30:20 37:3
  44:3 46:7 50:8 55:15
  60:2 62:19 69:9
  73:10 79:11 82:1
  87:9 89:10
right-hand
40:5
ring
88:13
role
8:6
rough
9:11
Roughly
9:13
row
78:3
rules
4:7 7:4,17
ruling

4:15
run
54:23 55:3

**S**

s/Shannon
95:6
safety
18:3 20:14 42:7
sat
78:5
satisfied
87:20
satisfies
88:2,8
saying
17:18
says
13:15 14:20 15:9,16
  33:7 38:5,19 47:13
  51:1 59:17
scenario
26:22 27:4 64:3,7
  65:10
school
63:13 64:18,19 65:2,9
  70:1 71:8 92:18
search
28:23 29:9,16,18 30:5
  30:12,18
second
15:6 50:5,14 58:10
  60:23 64:6
section
13:6,9,11 14:10,11
  31:20,22 32:18 37:13
sections
40:20
see
13:9,11 14:11,17 15:1
  15:13 31:3 32:20
  37:9 38:1 40:6 54:1
  58:20 59:1 61:19,22
  61:22 62:20,21 63:21
  64:13 67:2,5 68:10
  69:11 70:16 71:1

74:12,17 75:5,7 77:3
  78:18 88:21 89:5
seeing
46:22
seizure
30:18
send
53:4,6 67:1 76:20,21
sent
38:9 74:16
sentence
13:15 14:13,20 15:15
  16:1
separates
44:6
September
90:23
sequence
12:1
series
7:7
set
26:11 94:17
seven
52:1 63:4 72:1,5 83:6
sex
8:5,10,19 9:2,5,15,19
  9:21 10:3,14,17
  11:20 12:6,18 13:18
  13:23 14:21 20:10
  27:2,6,22 46:2 50:12
  52:14 56:20 58:7,14
  59:10 61:17 62:16,18
  68:9,14 91:17 92:4
Shannon
1:15 4:9 94:6 95:7
share
66:10
Sheriff's
66:11,18
short
32:22
Shorthand
4:10 94:7 95:7
show
29:7 45:20 47:16

67:15 68:10 70:19
  86:11,15,20 87:23
  88:6 90:17,18
showed
29:3,6
showing
30:20 46:1,9 67:19
  68:5,17
sic
54:2
side
40:5
sidestep
41:13
sign
85:20,21 86:3,5 87:16
  87:19
signature
5:7 58:20 59:1
signatures
59:3
signed
59:14
signing
94:18
single
84:8
sir
7:19 8:7,17 9:17 10:5
  10:7,10 11:1,3,12,15
  12:8,11 13:10,13
  14:2,5,8,12 15:2,5,14
  15:22 16:3 18:4,13
  18:15,18,20,22 19:10
  19:14 20:6,22 21:7
  22:7 23:8,13 24:3,5
  24:16 26:4,10,15,19
  26:21 27:19 28:20
  29:2 30:16,19 31:9
  32:3,13,21 33:7,13
  33:20 34:19 35:4
  36:23 38:1 39:23
  40:22 41:3,11,20
  42:4 43:2,9,16,23
  44:4,8,13 45:8,19
  46:5,7,13,16 47:20

48:1,13,16,23 49:8
49:20 50:9,18 51:3
51:11 52:20 53:11,17
54:10 55:22 56:3,9
56:13,18 57:20 58:12
59:13,16,19 61:15
62:9,12 63:15,17
64:4 65:20 66:1,9,15
67:12,23 68:8,23
69:9,19 70:18 72:3
72:16,20 73:3,8,14
73:22 74:19 75:18
76:4,15 81:4,17 83:1
83:21 84:3,10,14
86:12,18,22 87:1,5
87:10,22 88:5,11,17
88:19,23 89:11,17
90:2,7,14,16,20
91:19,22 92:3,6,9,16
92:21
**Smith**
2:16
**Smithee**
2:3 6:4 16:8,16 24:19
84:17 85:1
**solely**
92:1,14
**somebody**
28:3 54:20 76:15,20
76:21
**somebody's**
82:10
**sorry**
60:1 73:12
**sound**
66:6
**speak**
6:9 94:11
**speaking**
18:9
**specific**
75:4
**specifically**
7:13 10:21 11:16 13:5
13:8 25:7 55:11
**spelled**

56:16
**spend**
77:17
**spoke**
72:2
**stack**
57:13
**state**
1:16 4:11 6:19 16:18
38:9 85:23 94:3,8
95:8
**stated**
21:18 43:5 57:2 60:19
69:3 80:1
**STATES**
1:1
**stating**
34:17 74:1 86:1
**statute**
4:18 5:3 9:6,20 10:3,9
10:11,12,16,22 11:2
11:5,11,14,16,19
12:10,13,21 15:4
17:10,22 21:20 22:2
22:22 23:5 24:4,13
25:8 28:5 29:5 31:22
32:2,5,6,18 33:9
34:16 35:1,17,20
37:19 38:16 39:1
41:2,4,23 44:12
65:23 67:20 71:22,23
72:4
**staying**
75:10,15
**Stephanie**
2:3
**STEVEN**
1:7
**stipulated**
4:3,19 5:5
**stipulation**
1:14
**stipulations**
4:1 6:2
**Street**
1:18 2:4,8

**stricken**
35:19,21 61:23
**strike**
14:14 35:14 76:8
92:11
**submit**
55:4
**submitted**
54:22
**subsection**
13:12,15 14:10,16
15:7 31:20,23 32:1
32:19,20 33:1 34:15
34:17,20,23 35:7,7
36:5 37:3,12 40:12
**sue**
79:9
**supervise**
8:8
**supposed**
26:1 34:10 64:17 76:7
77:8
**sure**
9:12 12:15 17:17 21:1
24:8 28:10 34:10
45:1 53:21 75:9,11
75:15 79:10 82:3,11
84:16,21,23 87:6
91:3
**suspect**
78:23
**suspicion**
78:20,22
**sworn**
6:9 94:10
**system**
62:5 65:21 66:2,19
67:6,11,13

--- T ---
**T**
1:7 59:4,5,14,23 60:1
63:13 64:9 69:23
**take**
23:9 31:8 41:12 70:14
**taken**

1:13 4:7,9
**talk**
7:3 18:6 23:19 45:13
55:1,8 60:18 66:23
91:6
**talked**
7:18 12:20 47:10 79:5
**talking**
8:21 10:8,21 11:17,18
11:19 17:3 55:11
69:4,6
**target**
19:18
**telephone**
73:13
**tell**
6:22 9:1,4 14:19 15:8
18:8 32:23 35:8 48:8
49:9 50:12 51:19,19
52:11,20 53:19 57:7
62:13 63:6,10 68:1
68:12 74:9,14 79:13
90:21 91:1
**telling**
38:2 52:6,8
**tells**
76:11 77:23
**ten**
77:20,21 78:6 87:9,12
88:1
**ten-minute**
88:9
**term**
32:23 34:18,21,22
36:5
**terms**
11:13 12:9 17:10
35:21 37:20
**testified**
6:10
**testimony**
21:1,19 42:12 52:3
69:13 70:9 84:7
**thank**
19:2 31:10 32:14
35:11 43:18 91:4

thereof
94:23
thing
37:6
things
39:13
think
17:6 44:17,17,18
74:16
third
14:13
threat
81:5
threaten
80:15
threatened
79:2,7
three
54:17 55:18 71:17
78:3
Thursday
72:13
time
4:14,15 9:1 19:22 20:2
20:4,14 21:17 38:7
40:15 53:1 66:22
73:14,18 74:9,20,22
75:4 76:6 77:11,14
77:16 78:15 81:19
90:8,11,12,22 91:5,6
93:1
times
12:14
today
31:6 70:21 71:2
told
26:6 68:19 74:17
76:18 79:18
Tommie
45:18 46:3 52:4 54:2,6
91:15,21
tomorrow
89:21,22
tools
13:20 66:14
top

31:3,14 70:14,17
touch
77:2
track
23:11
tracking
13:23 15:12 22:20,21
22:23
trained
28:23 30:14,17
training
29:17
transcript
94:15
travel
72:22 73:2,7,8
trial
4:23
true
44:7 47:19,23 51:10
51:13 54:9 58:8
69:18 70:2,4 80:3
94:15

63:16,20 68:18 69:21
70:3 71:7
truth
6:9,9,10 94:11,11,12
truthfully
7:16
try
76:14 77:2 88:20
trying
77:17 81:23
Tuesday
71:19
turn
35:6
two
68:11
typically
85:8,11 87:8

**U**

U.S
19:23 20:2,3,15,18,19

21:3,3,13
uh-huh
21:9 22:18 27:7 34:6
34:13 35:18 37:10
38:14 43:9 47:6
48:20 49:2,5 51:6
53:7 59:2 60:6,21
62:22 70:13,22 71:4
77:22 79:12 80:7
85:22 87:13,18
Uh-uh
65:17 78:13
un-redacted
37:7
un-stricken
37:8
unannounced
26:20
underneath
59:17 73:19
understand
7:17 9:23 11:13 12:4,5
14:6 15:3 22:10,14
22:17,20 25:10,15
28:10 39:2,18 40:23
41:5 43:12 53:21
61:4 72:10 80:8
understanding
10:1 11:8 16:5,19 17:9
17:19 21:20 22:7
23:4 24:18 25:2,3,8
29:17 32:4,7 34:22
38:3,15,21,23 42:22
43:1,3 46:22 50:19
52:1 55:1,12 56:18
66:22 72:4 83:21
understands
53:22
unfortunately
35:15
unique
61:1
unit
8:10
UNITED
1:1

unsure
58:3
update
45:12
updated
35:16 38:6,8
updates
45:14
use
58:16 66:7,8
usual
6:2

**V**

V
1:6
verbatim
74:5
verbiage
12:15
verify
26:7 76:14
versus
50:2 82:7
victim
62:20 63:1,3
violate
24:17
violates
25:11,16
violation
24:12,16 25:4,5
visit
33:2,4,4 34:5
visits
33:11 34:2
voluntarily
86:13
vulnerable
15:20

**W**

waived
4:22 5:8 94:18
waiving
5:3

**want**
7:2 12:23 13:6 14:9,14
   14:14,15 15:8 16:4
   17:17 18:6 20:23
   21:15 23:17 34:14
   35:6,12 36:8 37:18
   39:13 41:12 53:20
   55:7,8 57:8,8 61:16
   65:4 70:14 75:14
   78:14,16 82:12 87:6
**wanted**
11:15 72:22
**warrant**
26:14 54:21 55:4,10
   90:15,18 91:2
**Washington**
2:12
**wasn't**
78:4,23 79:22 80:4,13
   91:3
**way**
15:15 18:16 31:12
   38:11 41:5 48:22
   49:15 56:2 66:10
   90:8
**ways**
21:10
**we'll**
61:10 63:22 76:20
**we're**
13:1 19:19 21:13
   30:21 32:17 40:18
   45:20 57:9,14 67:15
   71:15 72:3 74:12
   87:6
**we've**
7:18 48:21
**website**
52:13 62:15 67:19
   68:3 71:1
**Wednesday**
71:19,20,21
**week**
70:10 71:20
**weekends**
71:15

**weeks**
68:6
**went**
74:14 78:3 83:23 84:5
   90:22
   ▄▄▄
57:23 58:2 61:21,22
   62:7,11 63:8,9,11
   64:2,5,6,8 65:8
**When's**
38:7
**window**
89:4
**windows**
88:18
**wish**
91:6
**witness**
2:2 5:6,7 6:8 58:5 86:6
   91:8 94:16
**WKW**
1:6
**word**
31:8 37:3,8,8
**work**
8:1 67:8
**worked**
8:15
**wouldn't**
28:1 29:14 30:10 49:6
   65:15 71:21 81:6
   83:8,10 89:9
**writing**
38:1
**written**
22:22

**X**

**Y**

**yeah**
18:3 39:6 51:4
**year**
19:7,9
**years**
44:22

**Yost**
1:15 4:9 94:6 95:6,7

**Z**

**0**

**1**

**1**
1:4 13:12,15 14:16
**10**
32:16
**10:00**
1:19
**10:30**
33:5
**103**
1:17 2:4
   ▄▄▄
58:2 62:2,4,6,11 63:8
   64:5
**10th**
52:6 54:2,7 69:15 70:6
**11**
34:15
**11:40**
93:3
**110-1**
31:4
**119**
68:18 69:20 70:8 71:7
**11th**
95:2
**12**
35:8
**12:00**
72:13
**13**
3:9
**13th**
69:18
**14**
32:19,20 33:1
**15-20A-1**
11:23
**15-20A-11**

40:12,20
**15-20A-2**
13:9,11 14:11
**15-20A-4**
31:21 37:14
   ▄▄▄
57:23 61:21,22 63:9
   63:11 64:2,5,8 65:7
**158**
95:9
**1751**
48:18,19,21 49:1
   ▄▄▄
43:22 46:10,14,17,20
   47:22 48:1,2 49:9
   50:2,7,21 51:15
   ▄▄▄
47:3,5,7 48:1 49:6
   50:3
**1st**
37:20 39:17 63:8
   65:13 90:23

**2**

**2**
58:4,6,9
**2,000**
44:11 50:7 64:9,17,18
   65:2,9 69:23 92:18
**2:15-cv-606**
1:6
**20**
34:15,18,21,23
**2017**
37:20 39:17 50:16
   51:4 52:5,7 54:2,8,15
   56:21 63:8 65:13
   90:23
**2017-414**
39:16 40:8
**2018**
1:19 68:4 69:15,18
   95:2
**21**
35:7 36:5 37:4,12
**2nd**

1:18

**3**

**3**
31:23 32:1 58:17
**30**
3:10
**31**
2:8
**312**
63:16,20
**32**
39:10 40:10
**36104**
2:4,8
**36130**
2:12
**3rd**
50:16 52:5 54:15
55:16

**4**

**4**
14:10
**425**
9:13
**45**
3:11
**47**
53:4

**5**

**5**
14:16 15:7
**501**
2:12
**57**
3:12

**6**

**6**
3:3
**6/10**
68:4
**6/9/2021**
95:9

**6:00**
33:6
**67**
3:13
**6th**
55:19

**7**

**7/2/2018**
70:20
**7:00**
76:13,17,19 78:2,4

**8**

**8**
31:18,19
**8/3**
51:4
**8/3/2017**
47:18 51:1
**8:00**
72:13

**9**

**9/30/18**
95:9
**9:00**
76:13,17,19 78:2,4
**91**
3:4