EXHIBIT 3



IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

JOHN DOE #1, et al.,

Plaintiffs,

vs. CIVIL ACTION NO. 2:15-CV-606-WKW

LUTHER STRANGE, III, et al.,

Defendants.

* * * * * *

DEPOSITION OF DERRICK BONE, taken pursuant to notice and stipulation on behalf of the Plaintiffs, at McGuire & Associates, 31 Clayton Street, Montgomery, Alabama, before Bridgette Mitchell, Shorthand Reporter and Notary Public in and for the State of Alabama at Large, on June 29, 2018, commencing at 8:05 a.m.

APPEARANCES

FOR THE PLAINTIFFS:
J. Mitch McGuire, Esquire
McGUIRE & ASSOCIATES
31 Clayton Street
Montgomery, Alabama 36104
334.517.1000
jmcguire@mandabusinesslaw.com

FOR LUTHER STRANGE, STAN STABLER, and JOHN RICHARDSON:
Brad A. Chynoweth, Esquire
STATE OF ALABAMA OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130
334.242.7997
bchynoweth@ago.state.al.us

FOR DERRICK BONE:
Kendrick E. Webb, Esquire
WEBB & ELEY
7475 Halcyon Pointe Drive
Montgomery, Alabama 36117
334.262.1850
kwebb@webbeley.com

ALSO PRESENT:
Paula Jordan
Brenton Smith



STIPULATIONS

It is hereby stipulated and agreed by and between counsel representing the parties that the deposition of DERRICK BONE is taken pursuant to the Federal Rules of Civil Procedure and that said deposition may be taken before Bridgette Mitchell, Shorthand Reporter and Notary Public in and for the State of Alabama at Large, without the formality of a commission; that objections to questions, other than objections as to the form of the questions, need not be made at this time, but may be reserved for a ruling at such time as the deposition may be offered in evidence or used for any other purpose as provided for by the Federal Rules of Civil Procedure.

It is further stipulated and agreed by and between counsel representing the parties in this case that said deposition may be introduced at the trial of this case or used in any other manner by



either party hereto provided for by the Federal Rules of Civil Procedure.

INDEX


| EXAMINATION | Page |
|---|---|
| By Mr. McGuire | 5 |
| By Mr. Chynoweth | 80 |
| By Mr. Webb | 86 |
| By Mr. McGuire | 88 |

| EXHIBITS | Page |
|---|---|
| Plaintiffs' Exhibit A — Chilton County Sheriff's Office 6/4/18 article SORNA compliance check | 11 |
| Plaintiffs' Exhibit B — ALEA website posting James Ed Benjamin | 13 |
| Plaintiffs' Exhibit C — Alabama Act 2017-414 | 47 |
| Plaintiffs' Exhibit D — ALEA website posting Paul Hamilton Tucker | 72 |
| Plaintiffs' Exhibit E — The Law Dictionary 6/29/18 Black's Law Dictionary What is Arbitrary? | 96 |




COURT REPORTER: Usual stipulations?
MR. McGUIRE: Yes.
MR. WEBB: Yes.
DERRICK BONE, having first been duly sworn or affirmed to speak the truth, the whole truth, and nothing but the truth, testified as follows:

EXAMINATION

BY MR. McGUIRE:
**Q. Good morning.**
A. Good morning.
**Q. Will you please state your name for the record.**
A. Derrick Bone.
**Q. And, Mr. Bone, can you tell me how you are employed?**
A. With the Chilton County Sheriff's Office.
**Q. And what is your title there at the Chilton County Sheriff's Office?**
A. Sex offender compliance investigator and I handle the civil part for the sheriff's office.

Q. And, Detective Bone -- are you a detective with the --
A. Title is investigator.
Q. Investigator. Okay. So do you mind if I refer to you as Investigator Bone?
A. That's -- that's fine.
Q. Okay. Investigator Bone, have you ever sat for a deposition before?
A. I have.
Q. So I want to cover with you some ground rules of this deposition and make sure that you understand. I'm going to ask you a series of questions. And when I ask those questions, you may hear some objections from your attorney or other attorneys here, for example, as to the form of the question that I ask. However, unless your attorney explicitly instructs you not to answer a question, you're required to answer my questions completely and truthfully. Do you understand those rules as I've described them?



A. I do.
Q. Okay. Now, you mentioned earlier that you were responsible for the sex offender management in Chilton County?
A. That's correct.
Q. Do you know how many sex offenders fall under your management in Chilton County?
A. I have 160.
Q. One hundred sixty. And is part of your responsibility to enforce the Alabama Sex Offender Registration and Community Notification Act?
A. That's correct.
Q. Now, that is a mouthful, so if you don't mind, I'm going to take the acronym of the Alabama Sex Offender Registration and Community Notification Act and, going forward, I'm just going to refer to it as ASORCNA. Is that okay with you?
A. Yes, sir.
Q. So when I refer to ASORCNA, I'm going to be referring to the statute that you enforce with regard to the registrants of



the statute. Okay?
A. Yes, sir.
Q. Thank you. All right. Now, ASORCNA, does it not, contains provisions that regulate what registrants of the statute must do to be compliant in the community as registered sex offenders; is that correct?
A. It is.
Q. And the statute details the terms and provisions you are responsible for enforcing regarding registrants of the statute; correct?
A. That's correct.
Q. And are you familiar with the provisions of ASORCNA?
A. Yes.
Q. And, specifically, are you familiar with the residency restrictions of ASORCNA located in 15-20A-11 of the statute?
A. I'm not sure what the code is right off the top of my head.
Q. Okay. Now, I want to ask you



specifically, recently did you go about Chilton County and conduct what are described as compliance checks of registered sex offenders?
A. I have.
Q. Okay. And can you tell me the last time you conducted compliance checks of registered sex offenders?
A. It's been within two weeks.
Q. And how often do you conduct compliance checks of registered sex offenders in Chilton County?
A. As much as I can due to my schedule.
Q. So would you give me just an estimate on a monthly basis how many times you would do a compliance check?
A. Like I said, I don't -- I can't give you an exact number. I handle so much civil stuff. But in the meantime, if my civil paper is close to a sex offender's address, I would drive by there and check on the sex offender.
Q. Now, when I refer to compliance checks,

do you understand what I mean when I -- when I'm speaking of compliance checks?
A. Yes, sir.
Q. Describe to me what your understanding of a compliance check is.
A. Drive to a sex offender's listed address, verify the sex offender is living at the current address. And if he is there, make sure the sex offender is not in violation of ASORCNA.
Q. Now, are these compliance checks done just within the Chilton County Sheriff's Office or are they done in conjunction with some other governmental agency, for example, the U.S. Marshals?
A. We conduct our compliance checks, but I have been in contact with the U.S. Marshals.
Q. So you conduct compliance checks at these registrants' homes independent of the U.S. Marshals Service; correct?
A. What are you referring to that by?
Q. So your home compliance checks of these



registered sex offenders, do you do them alone?
A. Yes.
Q. Okay. I want to show you what we are going to mark as Plaintiffs' Exhibit A.
(Plaintiffs' Exhibit A was marked for identification.)
Q. Do you recognize this document?
A. I do.
Q. Can you tell the Court what it is?
A. That is from our website of the compliance check I did recently.
Q. And can you tell me if this article represents that there were sex offenders found in violation of Sex Offender Regulation and Notification Act in this article?
A. That's correct.
Q. And can you tell me the names of the persons listed in here that were just the persons that were arrested?
A. The persons that was arrested?
Q. Yes.



A. Out of the five pictures, the top two has not been arrested. The bottom three was arrested.
Q. And what were the names of the bottom three that were arrested?
A. Starting from left to right, the first one would be Paul Tucker, the middle one would be J[redacted] B[redacted] and the last one on the right would be Daniel Whitehead.
Q. Okay. And you -- do you know these individuals? Have you gotten to know these individuals over the time that they have been registrants of ASORCNA?
A. Yes.
Q. Okay. And in order that they're listed in the article, it shows J[redacted] E[redacted] B[redacted] arrested on 5/22; correct?
A. Yes, sir.
Q. And it shows Paul Hamilton Tucker arrested on May 23rd; correct?
A. That's correct.
Q. And Daniel Everett Whitehead arrested on May 24th; correct?



A. That's correct.
Q. And all of those arrests were in 2018; correct?
A. Yes, sir.
Q. So Investigator Bone, I want to talk to you about these individuals, and I guess the best way to do this is based on the article here is just to talk about them in order that they appear in the document. And I want to make sure that we discuss each of these individuals and so we get an understanding of how you enforce the law. Is that okay with you?
A. Sure.
Q. Okay. So I'm going to show you first what we're marking as Plaintiffs' Exhibit B.
(Plaintiffs' Exhibit B was marked for identification.)
Q. Now, Detective Bone, you would agree with me, would you not, that the first page of Exhibit B is the ALEA website posting of a registered sex offender; correct?

A. That's correct.
**Q. And can you tell me the name of the individual on this ALEA posting in Exhibit B?**
A. J[redacted] B[redacted]
**Q. And J[redacted] B[redacted] is the first individual listed in the article, Exhibit A, that we discussed; correct?**
A. That's correct.
**Q. Okay. Now, I want to talk to you a little bit about Mr. B[redacted] arrest. In the article, it states that he was stopped for a traffic violation and was arrested for an ASORCNA violation. During the traffic stop was -- during the traffic stop, a controlled substance was also found. Along with the ASORCNA violation, B[redacted] was also arrested for possession of a controlled substance, drug paraphernalia, illegal possession of prescription pills, and an open container; is that correct?**
A. That's correct.



**Q. Okay. I want to represent to you that through the records in Alacourt, I pulled these registrants in this article in Exhibit A, their information, and so I want to discuss some of those things with you. And we're going to start with Mr. B[redacted]. Okay?**
**Can you describe to the Court what your -- what the SORNA violation was that Mr. B[redacted] allegedly violated?**
A. He failed to spend three consecutive nights at his listed registered address.
**Q. Okay. Describe to the Court how you came to that conclusion.**
A. I went to this -- his listed registered address three consecutive nights. I take that back. Two consecutive nights. He was not at that address. I had another deputy go the third night for me because I couldn't make it, and that deputy said he was not at that address.
**Q. Okay. And can you tell me approximately the times that you went to Mr. B[redacted]**



**address on the two times that you went, the two consecutive nights that you went?**
A. I don't recall the times right now.
**Q. Was it morning?**
A. No, sir.
**Q. Was it afternoon?**
A. No, sir.
**Q. Was it night?**
A. Yes, it was.
**Q. Was it seven o'clock?**
A. No, sir.
**Q. Was it eight o'clock?**
A. No, sir.
**Q. Nine o'clock?**
A. No.
**Q. Ten o'clock p.m.?**
A. I would say between ten and midnight.
**Q. Between ten and midnight. Okay. Now, describe to me on your visits to Mr. B[redacted] home what you did.**
A. I parked on the side of the road, walked down the driveway to where his camper is located, knocked on the door several



times. There was no answer. I did not see his car that he usually drives, so I logged it in the computer as no contact made with J[redacted] B[redacted]
**Q. Can you describe for the Court on each occasion the total amount of time that you spent at Mr. B[redacted] residence during which you did not contact him?**
A. Roughly two or three minutes.
**Q. Two to three minutes. And those two to three minutes were somewhere between ten and midnight; correct?**
A. Yes.
**Q. On each occasion; correct?**
A. Yes, sir.
**Q. And were you able to confirm on the third night from your other deputy what time he went to Mr. B[redacted]?**
A. It would be somewhere in that time frame, between ten and midnight.
**Q. Okay. And were you able to confirm how long the other deputy was at Mr. B[redacted] residence?**

A. No, sir.
Q. Okay. Now, I want to refer back to Exhibit B and ask you to tell the Court the current address for Mr. B[redacted].
A. [redacted], Verbena, Alabama 36091.
Q. And is that the address that you went to on the two -- two consecutive nights that you went to do this -- was this a home compliance check you were doing for Mr. B[redacted]?
A. Yes, sir.
Q. So was that the address you went to during these home compliance checks --
A. Yes, sir.
Q. -- on those two consecutive nights?
A. Yes.
Q. And the third night that another deputy went to Mr. B[redacted] address, this -- the [redacted] address is that address that the other deputy went to on the third consecutive night; correct?
A. Yes, sir.



Q. Okay. Now, I want to clarify for the Court. Are you -- is it your testimony to the Court, as I understand it, that because Mr. B[redacted] was not at his residence on those three consecutive nights that you went there, based on what you've testified to earlier, that was the basis for you issuing a warrant for his arrest; is that correct?
A. That's correct.
Q. And that was the basis for him being charged for a violation of ASORCNA; correct?
A. That's correct.
Q. And was that charge a violation of the residency restrictions?
A. Yes.
Q. Okay. And Investigator Bone, is that the sole basis for Mr. B[redacted] being charged with those offenses?
A. Yes.
Q. Now, Mr. B[redacted], there's some important questions I want to ask you about how you



enforce the law. Is there a particular time that any registrant is supposed to be at their home on any given day?
A. There's not.
Q. So when you went to Mr. B[redacted] residence between 10 p.m. and midnight for those two to three minutes, did you know if Mr. B[redacted] had been at his residence at any time during that day?
A. No, sir.
Q. Did you know if Mr. B[redacted] came -- was there at 9:50 p.m.?
A. No, sir. No, sir.
Q. Did you know if Mr. B[redacted] was there at 12:01 a.m.?
A. No, sir.
Q. So you agreed with me -- you testified just a minute -- moment earlier that there's not a specific time that Mr. B[redacted] is required to be at his residence; correct?
A. That's correct.
Q. So isn't it true, Investigator Bone, that



he wasn't required to be there when you showed up; isn't that true?
A. Say it again.
Q. Mr. B[redacted] wasn't required to be at his address when you decided to show up; isn't that true?
A. That's correct.
Q. And you agreed with me that that was the sole basis for you issuing an arrest warrant; correct?
A. That's correct.
Q. And so you didn't have any cause to arrest Mr. B[redacted] for that particular violation; isn't that true?
MR. WEBB: Object to the form.
MR. CHYNOWETH: Object to the form.
Q. You may answer.
A. I do.
Q. What was the cause?
A. He was not at his listed registered address on those three nights.
Q. You just testified earlier that you don't

know if he was there at 9:50; correct?
A. That's correct.
Q. You just testified earlier that you don't know if he was there at 12:01 a.m. the next morning; correct?
A. That's correct.
Q. So what basis other than the two to three minutes that you were there do you have to testify to the Court that he wasn't at his -- wasn't living at his residence?
A. Because the address where his car was at is next to -- next door to our county commissioner, and he called me and I had been in constant contact with him. And Mr. B[redacted] has been staying at this address next to our commissioner, which is in a restricted zone. And I have seen him in the yard several times at night.
Q. So you've seen him in the yard several times at night; correct?
A. Yes.
Q. At another address.
A. Yes.



Q. Correct? Is there something in the law in your mind, Investigator Bone, that prevents Mr. B[redacted] from standing in the yard of another address at night?
A. Not standing in the yard is not.
Q. Well, you just testified that you saw him standing in the yard.
A. That's correct.
Q. Did you ever see him sleeping in the house?
A. When I went to arrest him on the other SORNA violation, he was in the -- on the couch of that address.
Q. Is there a law against somebody sitting on the couch of an address?
A. He was, in my opinion, establishing a residence there.
Q. Tell me how Mr. B[redacted] established a residence.
A. Because the homeowner provided me with a written statement saying that Mr. B[redacted] has spent four consecutive nights at his house.



Q. What's that homeowner's name?
A. Danny Avery.
Q. Now, do you have that written statement?
A. I do.
Q. Did you file that written statement with the -- with your charges here?
A. I have not.
Q. Did you file a police report?
A. I have started one. I have not finished it. It's still an open case.
Q. Still an open case?
A. I'm still working it.
Q. So you never filed the police report stating -- with this statement from Danny Avery?
A. I have not yet.
Q. Why not?
A. I haven't had time.
Q. I'm showing you what's been marked as -- what we're going to mark as -- well, what we've already marked as Exhibit B. And I want you to go to page 4, the fourth page, of Exhibit B. Do you recognize



this document?
A. Yes, I do.
Q. What is it?
A. I'm sorry. That is my I/O report I did on J[redacted] B[redacted].
Q. So you did have time to do a report?
A. I'm sorry. Yes, sir.
Q. Okay. And in that report, you don't have anything there that mentions Danny Avery, do you?
(Witness reviews document.)
A. Okay. I'm sorry. Let me clarify.
Q. Hold on. I didn't ask you a question. The question is -- I don't want you to clarify. I want you to answer my question. You don't have anything in this report that mentions Danny Avery, do you?
A. Not in this report, I do not.
Q. Okay. And he was arrested pursuant to -- based on what -- your testimony earlier, a sworn statement that was given to you by Danny Avery; correct?

Page 26

A. Danny Avery has nothing do with this I/O report.
Q. Okay. So does Danny Avery live on [redacted]?
A. Yes, he does.
Q. Does he live at [redacted]?
A. Yes, he does.
Q. And in this report that you wrote on page 4, isn't it true that you said that Mr. B[redacted] was living on [redacted] next to West End Baptist Church? Isn't that true?
A. Yes.
Q. And you said on April 17th, around 10:30 p.m., you observed J[redacted] B[redacted] standing in the yard at [redacted]; correct?
A. That's correct.
Q. And then you also said you observed his car parked in the driveway at approximately 11:42 p.m.; correct?
A. That's correct.
Q. And then you said Deputy Freeman and

Page 27

yourself went to his registered address and did not make contact with Mr. B[redacted]?
A. That's correct.
Q. Okay. I want to stop you right there. After you -- as you wrote in your report, at 11:42 p.m., you witnessed Mr. B[redacted] standing in the driveway; correct?
A. That's correct. Or --
Q. So --
A. -- the yard.
Q. Or the yard. And you went immediately to his residence?
A. That's correct.
Q. To check and see if he was there?
A. That's correct.
Q. Well, if you saw him standing in the driveway at [redacted], why would you need to go to his house to check and see if he was there?
A. To verify that he has property at his address.
Q. Why do you need to verify that he has

Page 28

property at --
A. To make sure he is still living at that address in Verbena.
Q. And how do you confirm whether he has property at that address?
A. Because I know the camper he lives in.
Q. Was the camper there at his address?
A. It was.
Q. Okay. What else did you confirm that -- what else did you do to confirm that he had property at that address?
A. He has two Chevrolet Cavalier vehicles at that address that I've seen there.
Q. Were they there?
A. They was.
Q. Okay. So did that prove to you that he still lived there?
A. He had property there.
Q. Did that -- and in your mind, if he has property there, does that prove to you that he lives there?
A. No.
Q. Okay. So you just testified a little bit

Page 29

earlier that you saw him standing in the yard at 11:42; correct?
A. That's correct.
Q. Now, did you -- did you think to get out at that time and go ask Mr. B[redacted] any questions?
A. No.
Q. So you didn't ask anybody any questions that night?
A. No, sir.
Q. Okay. But seeing Mr. B[redacted] standing in the yard, you decided to go and check and see if he was at home?
A. That's correct.
Q. You would agree with me that he can't be in two places at the same time, would you?
A. That's correct.
Q. And you would agree with me that if you put your eyes on him on [redacted], that it's pretty likely that he's not going to be at another address; correct?
A. That's correct.

**Q. Okay. Now, you said that, in your report, that you first observed him in the yard on April 17th, correct, 2018 around 10:30 p.m.; correct?**
A. Say it again.
**Q. You said that you observed him standing in the yard at [redacted] -- excuse me -- and that was on April 17, 2018; is that correct?**
A. That's correct.
**Q. All right. And then you said that you -- on April 18, 2018, around 11:11 p.m., you went to his registered address and did not make contact with him; correct?**
A. That's correct.
**Q. And was that one of those two- to three-minute visits that you spoke of earlier?**
A. That's correct.
**Q. Okay. And then you said you drove by [redacted] and observed his car at the residence on April 19, 2018; is that correct?**
A. That's correct. I'm sorry. Can you



repeat that question? I'm sorry.
**Q. Did you write in your report, I then drove by [redacted] and observed his car at the residence? What date was that? Was that April 18th or April 19th?**
A. That would be April the 18th.
**Q. Okay. And you went on in your report to say, On April 19, 2018, Deputy Smitherman observed his car on -- at [redacted] and then Deputy Smitherman went to the registered address and did not make contact with J[redacted] B[redacted] correct?**
A. That is correct.
**Q. And on the next page, you said J[redacted] B[redacted] failed to spend three consecutive nights at his registered address and has failed to notify the Chilton County Sheriff's Office of another address; is that correct?**
A. That's correct.
**Q. And based on the report that you wrote, what is in here is the basis for you arresting Mr. B[redacted] isn't that true?**



A. That's correct.
**Q. Now, did you arrest Mr. B[redacted] subsequent to this May 22nd arrest?**
A. Can you repeat that question again?
**Q. At any time after -- you would agree with me that the initial arrest was made on May 22nd, would you not?**
A. I don't recall that.
**Q. Okay. Would you accept my representation that Alacourt reflects that he was arrested on May 22nd for the charges that we just discussed regarding [redacted]?**
A. Sure.
**Q. Okay. To your knowledge, was Mr. B[redacted] arrested after that point for another SORNA violation?**
A. Yes, he was.
**Q. Describe to the Court why he was arrested.**
A. Like I said, we went to [redacted] and observed B[redacted] car there again and then I arrested him.
**Q. And where -- where did you arrest him?**



A. At [redacted]
**Q. And describe how you effected this arrest. Did you walk up to the door of [redacted]?**
A. I did.
**Q. And what did you do next?**
A. I knocked on the door.
**Q. You knocked on the door. And then who answered the door?**
A. Eventually, J[redacted] B[redacted] did.
**Q. Well, you say "eventually." Did somebody answer the door before then?**
A. No.
**Q. Okay. So Mr. B[redacted] answered the door?**
A. Yes.
**Q. And what did you do next?**
A. I placed him in handcuffs.
**Q. Placed him in handcuffs. And you placed him in handcuffs for what reason?**
A. Because I still had an outstanding warrant for a SORNA violation.
**Q. You still had an outstanding warrant for a SORNA violation?**

A. Yes.
**Q. What was the outstanding warrant for a SORNA violation in that particular instance?**
A. It was failure to register address.
**Q. Failure to register an address. Explain that charge to the Court.**
A. On those three consecutive nights that he was not at his listed address, I charged him with failure to register a new address with local law enforcement.
**Q. Okay. So you charged him with a violation of the residency restrictions.**
A. Yes.
**Q. Correct? And arrested him for that?**
A. Yes.
**Q. And you charged him again for failure to register [redacted] as his address?**
A. That's correct.
**Q. Okay. Just as an aside, I want to ask you a couple questions. Is there a provision in the law that prohibits a registrant from parking their car at**



**another residence?**
A. There's not.
**Q. And a registrant's car isn't subject to the statute, is it?**
A. He has to register a vehicle, if he has a vehicle, and he -- he has to register with the sheriff's office.
**Q. So any vehicle that a registrant owns, they have to register it?**
A. That's correct.
**Q. Do they have to register it -- let's say -- let's say they don't use it. Let's say the car is broken and it's just sitting in the driveway. Do they still have to register that vehicle with you?**
A. That's correct.
**Q. If they don't use it for work or, let's say, they don't use it for personal use, they still have to register that vehicle with you?**
A. That's correct.
**Q. And that's your understanding of the law?**
A. That's correct.



**Q. Was Mr. B[redacted] charged with failure to register a vehicle or anything like that?**
A. He was not.
**Q. Are there any pending charges for him for failure to register a vehicle?**
A. No.
**Q. Okay. The vehicles that you saw in a driveway that was not his -- you said that you saw Mr. B[redacted] car in this [redacted] driveway; correct?**
A. That's correct.
**Q. Is -- is that a violation of a law in any respect?**
A. No.
**Q. Okay. Through your lawyer, if I ask you to produce a copy of the statement from Mr. Avery, could you do that?**
A. Sure.
**Q. How quickly will it take you? How long will it take you to produce that?**
A. I have to ask my lawyer first.
MR. WEBB: I need to check and make sure it's okay with the D.A. to



produce it. He'll -- he'll get it eventually through the disclosures, but --
MR. McGUIRE: Sure. And --
MR. WEBB: -- I just need to -- I don't do criminal. Okay?
MR. McGUIRE: It's -- it's fine. And what I'm going to do is probably issue a subpoena duces tecum pursuant to Rule 45 of the Federal Rules of Civil Procedure and --
MR. WEBB: Okay.
MR. McGUIRE: -- and ask for that --
MR. WEBB: Okay.
MR. McGUIRE: -- a copy of that. Okay?
**Q. (By Mr. McGuire) All right. Now, let's talk about, Investigator Bone -- go back to these home compliance checks. Okay? Let's say, Investigator Bone, you have a Chilton County resident who is not a registered sex offender under ASORCNA.**

**Could you go to their home, show up at their door, knock on their door, and ask them to prove that they live there?**
A. No.
**Q. Why not?**
A. They're not a registered sex offender.
**Q. Well, so then you would agree with me, would you not, that the reason that you do these home compliance checks is solely because these registrants are indeed registered sex offenders?**
A. That's correct.
**Q. That's the only reason you do these home compliance checks; correct?**
A. That's correct.
**Q. Is there something in the law in your training that informs you that you could not show up to a citizen's home who is not a registered sex offender and require them to prove that they live at their residence?**
A. There's not.
**Q. There's no -- nothing in the law that**



**says you can't do that?**
A. (Witness shakes head.)
**Q. Are you familiar with the Fourth Amendment of the United States Constitution?**
A. I know about it. I'm not really hundred percent sure on it.
**Q. As a law enforcement officer, were you trained on what an illegal search and seizure is?**
A. Yes.
**Q. Okay. Now, given the fact that we set the baseline for Fourth Amendment illegal searches and seizures, does that change your opinion on whether you can go to a citizen's home and ask them or seek proof that they live at their residence?**
A. I'm not getting what -- what you're trying to say.

MR. McGUIRE: Would you repeat my question?

**Q. I want to see if you can understand it if I repeat it.**



**(Court reporter reads back last question.)**

A. A regular citizen as in not sex offender?
**Q. Yes.**
A. No.
**Q. No what? What do you mean when you say no?**
A. I'm not going to go search a citizen's house, verify they live there.
**Q. So -- but you do believe that you can go and search a registered sex offender's home, don't you?**
A. Not searching it.
**Q. Well, what do you -- what do you think you're doing -- when you go to -- during your home compliance checks, if a registrant is -- is at that address, what do you do?**
A. Just, Hey, I'm verifying you live here, everything is compliant, any changes, and go about my way.
**Q. So I want to understand. If you arrive at a registrant's address between 10 p.m.**



**and twelve midnight for two to three minutes and that registrant just happens to be there during that time, then in your mind, they're not in violation of the law; correct?**
A. If they are there, they are not in violation.
**Q. But if they aren't there during the two to three minutes that you're there, then you believe that you have cause to suspect that they are in violation of the law; correct?**
A. That's correct.

MR. CHYNOWETH: Object to the form.

**Q. I want to make sure that we're very clear to the Court. You would agree with me, would you not, that the only reason that you do these what you call home compliance checks of registered sex offenders of ASORCNA is for the sole reason that they are registrants of this statute? You would agree with that,**

would you not?
A. That's correct.
Q. Now, as we finish up on Mr. B[redacted] and go to these other people that you arrested, do you know if Mr. B[redacted] is on probation or parole?
A. I don't.
Q. Do any part of your responsibilities as an investigator with the Chilton County Sheriff's Office require you to monitor compliance of individuals that are on probation or parole?
A. No.
Q. Would you accept my representation as I've looked through Mr. B[redacted] Alacourt and other public records that he is not on probation or parole?
A. Yes.
Q. So as it relates to Mr. B[redacted] -- I want to represent to you that he is a free American. Would you agree with that?
A. That's correct.



MR. CHYNOWETH: Object to the form.
Q. Would you agree that Mr. B[redacted] prior to your arrest on May 22, 2018, has rights of every other citizen in Chilton County? Would you agree with that?
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
Q. You may answer.
A. That's correct.
Q. Would you agree that Mr. B[redacted] has Fourth Amendment rights?
A. Yes.
Q. Do you feel that Mr. B[redacted] has fewer rights, constitutional rights, than other citizens of Chilton County?
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
Q. You may answer.
MR. WEBB: Did you say you would agree that he has few rights?



Q. Would you agree -- would you characterize Mr. B[redacted] or any registered sex offender as having fewer constitutional rights than other citizens of Chilton County? Did you understand that question?
A. No.
Q. Okay. Let me do it this way. You recognize that persons -- what you called earlier regular citizens of Chilton County, they have constitutional rights; correct?
A. Yes.
Q. You said because those regular citizens aren't sex offenders, that you would not show up to their homes and do home compliance checks to prove that they live there; correct?
A. That's correct.
Q. Do you believe that Mr. B[redacted] and other registered sex offenders of ASORCNA have fewer rights than those citizens that you -- whose homes you would not go



to?
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
Q. You may answer.
MR. WEBB: Go on. Answer if you understand.
Q. You may -- you may answer.
A. They've got restrictions.
Q. So, Investigator Bone, I just want to make sure. You did hear the question that I asked you; correct?
A. Yes.
Q. Did you understand the question that I asked?
A. I did.
Q. Okay. Let's -- let's put that to the test. What was my question?
A. Do I believe they have fewer rights than a regular citizen.
Q. Okay. This is being recorded for the Court, so now the Court is going to understand that you heard and understood

Page 46

and can repeat the question that I asked.

MR. WEBB: Mitch, don't talk down to him.

MR. McGUIRE: I'm --

MR. WEBB: You are talking down to him, and I'll -- quit with that condescending attitude.

MR. McGUIRE: Is that an object to the form?

MR. WEBB: Yes, it is.

MR. McGUIRE: Okay. You --

MR. WEBB: Because I'm --

MR. McGUIRE: Objection noted.

MR. WEBB: Listen.

MR. McGUIRE: Objection noted.

MR. WEBB: I would also like the court reporter to keep a copy of the recording because of the condescending attitude of plaintiffs' counsel.

MR. McGUIRE: Objection noted.

Q. Did you hear the question that I asked you, Detective Bone?

MR. WEBB: You can go on and

Page 47

answer.

A. Yes.

Q. Did you understand the question that I asked you?

A. I did.

Q. Kindly, sir, will you repeat my question?

A. Do I believe that a regular citizen -- or a sex offender has the rights as a regular citizen.

Q. Okay. Kindly, sir, now that we know that you heard and understood and can repeat the question that I asked you, do you mind just answering that question, please, sir?

A. I believe he has the same rights except for some of the restrictions.

Q. I'm going to show you what's -- what we're going to mark as Plaintiffs' Exhibit C.

(Plaintiffs' Exhibit C was marked for identification.)

(Off-the-record discussion.)

Q. In what we have marked as Exhibit C, I

Page 48

want to represent to you that this is a copy of some revisions memorialized in Alabama Act No. 2017-414. And it is an exhibit submitted by the defendants in an active lawsuit in the Middle District of Alabama in Document 110-1. Investigator Bone, I would like you to turn to -- and we're going to be referring to the numbered pages at the top of the document. Okay? So I'd like to refer you to page 8 of 88 as they're numbered on the top of the document. And specifically I'm going to refer you to Subsection 3, and it's a definition of childcare facility. And I'd ask you to read that definition and tell me if that is your understanding of what a childcare facility is as defined by ASORCNA.

(Witness reviews document.)

A. What was your question again?

Q. Is that your understanding of the definition of a childcare facility as defined by ASORCNA?

Page 49

A. That's correct.

Q. And do you understand that provision?

A. That's correct.

Q. And I want to direct your attention to page 10 of 88 in that document. Under Subsection 14 and the definition of overnight visit, do you see that definition?

A. I do.

Q. Is that your understanding of what an overnight visit is as defined by ASORCNA?

(Witness reviews document.)

A. That's correct.

Q. I want to direct your attention to the next page, page 11, and I'd ask you to read Subsection 20, the definition of "reside." And it -- reside continues over to page 12. And you can let me know when you're done reviewing that.

(Witness reviews document.)

A. Okay.

Q. Now, you just reviewed Subsection 20 and the definition of "reside;" correct?

A. That's correct.
Q. When Mr. B[redacted] was arrested, was this your understanding of what the term "reside" meant?
A. That's correct.
Q. Okay. I want to refer you to -- on page 12, Subsection 21, the definition of "residence." And by the way, you can -- you can ignore the strike-through, the words under the strike-throughs. They are no longer part of the statute, which is why they're stricken through.
(Witness reviews document.)
A. Okay.
Q. Finally, I want to direct your attention to page 22 -- excuse me. Make that page -- yeah, page 22. And not finally, but next I want to direct your attention to page 22. And I want to represent to you that we are reviewing on page 22 Alabama Code 15-20A-7, Subsection 7.
(Witness reviews documents.)
Q. And I'd like you to -- in this particular



instance, I'd like you to read aloud Subsection 7 for the Court, please.
A. The license plate number, registration number or identifier, description, and permanent or frequent location where all vehicles are kept for any vehicle used for work or personal use, including land vehicles, aircraft, and watercraft.
Q. Okay. Do you understand that subsection that you just read?
A. Yes.
Q. What, in your mind, does "any vehicle used for work" mean?
A. A work vehicle.
Q. And what, in your mind, does "any vehicle used for personal use" mean?
A. A personal vehicle.
Q. Now, after reading this subsection and based on the discussion we had earlier about what registered sex offenders are required to report in terms of vehicles, you would agree with me, would you not, that if a registered sex offender does



not use a vehicle for work or personal use, that they are not required to report it to you? Would you agree with that statement?
MR. CHYNOWETH: Object to the form.
Q. You may answer.
A. Yeah.
Q. Okay. So a vehicle that's just sitting inoperative in a driveway or a yard, if it's not for work or personal use of a registrant, they're not required to report that to you; isn't that true?
A. That's correct.
Q. I want to direct your attention, Investigator Bone, to page 29. And I'm going to ask you on page 29 under -- on Section 15-20A-10 to read Subsection A, please.
(Witness reviews document.)
A. Okay.
Q. All right. And then I'll ask you to read Subsections B and C, please.



(Witness reviews document.)
A. Okay.
Q. And when you arrested Mr. B[redacted] on May 22, 2018, was this your understanding of the provisions under Section 15-20A-10, Subsections A, B, and C?
A. That's correct.
Q. Okay. Finally, I would like to direct your attention to page 32 through page 36. And I'd ask you to read and review Section 15-20A-11.
(Witness reviews document.)
MR. McGUIRE: We're going to go off.
(Short recess.)
Q. (By Mr. McGuire) We're back on the record. Investigator Bone, did you review Alabama Code Section 15-20A-11?
A. I think we're still working on it.
Q. Okay. You may finish.
(Witness reviews document.)
A. I've read it.
Q. Okay. Good. Now, all the sections that

Page 54

I've had you read -- let me first ask you this. Is this your understanding of what are called the residency requirements of registrants of ASORCNA, the section that you just wrote -- read -- 15-20A-11?
A. That's correct.
Q. Okay. And just for example, Mr. B[redacted], when you arrested Mr. B[redacted] for a violation of 15-20A-11, these are the provisions you understood; correct?
A. That's correct.
Q. Okay. Now, are you the person responsible for taking the information from these registrants as they come in with their, for example, quarterly reporting requirements?
A. That's correct.
Q. And so they -- the registrants of Chilton County come to you; correct?
A. That's correct.
Q. And they fill out their forms; correct?
A. That's correct.

Page 55

Q. And give you their information; correct?
A. That's correct.
Q. All right. And so they do have an obligation to report at least quarterly; correct?
A. That's correct.
Q. All right. Now, I want to return, if I -- if I can, to what you've described as these home compliance checks. When you do home compliance checks, you arrive at these registrants' addressed -- addresses unannounced; isn't that true?
A. That's correct.
Q. And you arrive at these registrants' address -- addresses uninvited; isn't that true?
A. That's correct.
Q. Okay. Can you point to me a provision in ASORCNA, the statute, that grants you the ability to show up unannounced and uninvited at these registrants' homes?
MR. CHYNOWETH: Object to the form.

Page 56

Q. You may answer.
A. To conduct the compliance check.
Q. Okay.
MR. McGUIRE: Can you read my question, Bridgette, back to --
(Court reporter reads back last question.)
A. No.
Q. If I represent to you that there is no provision in ASORCNA that allows you to show up unannounced and uninvited at their homes, would you accept that representation?
MR. WEBB: Object to the form.
MR. CHYNOWETH: Object to the form.
Q. You may answer.
A. Yeah.
Q. And you stated to me earlier, did you not, that absent the restrictions that ASORCNA registrants are under or excluding the restrictions that ASORCNA registrants are required to comply with,

Page 57

that they have equal rights, equal constitutional rights, as every other citizen of Chilton County; is that correct?
A. They don't have all those equal rights as far as the residence restrictions.
Q. Okay. And there's a reason I want to ask this question, because I want to clarify kind of how you enforce and view the law. You accepted my representation that there's no provision in ASORCNA that requires home checks or home compliance checks of registrants of ASORCNA. You accepted that representation, did you not?
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
Q. You may answer.
A. Yeah.
Q. What I'm trying to make clear -- and this is the question that I have for you -- what gives you, Investigator Bone, the

Page 58

**right to show up at registrants of ASORCNA's homes unannounced and uninvited so that they can prove that they live there? What gives you the right to do that?**

MR. CHYNOWETH: Object to the form.

MR. WEBB: Object to the form.

**Q. You may answer.**

A. To verify that they are living there and they are in compliance with the ASORCNA -- ASORCNA act.

**Q. Do you believe that you could do that with a citizen of Chilton County who is not a registered sex offender?**

A. No.

**Q. Why not?**

A. They're not a sex offender. That act does not apply to them.

**Q. Okay. But you can't point to a provision in the act that requires you to go out and do home compliance checks; correct?**

MR. CHYNOWETH: Object to the

Page 59

form.

**Q. You may answer it.**

MR. WEBB: Object to the form.

No. I was just motioning to the court reporter that I also object to the form. I'm sorry.

MR. McGUIRE: That's okay.

MR. WEBB: I'm doing that so I don't interrupt the flow of the question.

MR. McGUIRE: That's okay.

A. Can you repeat it again?

MR. McGUIRE: Would you?

(Court reporter reads back last question.)

MR. WEBB: Asked and answered.

**Q. You may answer.**

A. No.

**Q. Have you received training on home compliance checks?**

A. Can you clarify?

**Q. Has anyone trained you on how to conduct home compliance checks?**

Page 60

A. No.

**Q. So are the home compliance checks just something that you, Investigator Bone, have -- has decided to do on your own?**

A. No.

**Q. Who has instructed you to do home compliance checks?**

A. I go out there and to verify that they are in compliance.

**Q. So who has instructed you to do home compliance checks?**

A. I guess the law.

**Q. Can you repeat that answer?**

A. Following the law to -- to verify that they are in compliance.

**Q. What law are you referring to that requires you to do home compliance checks to verify that they're in compliance?**

A. To make sure that there is no -- that they are living at that registered address. The only way I would know that they're in compliance and that registered address is good is for me to physically

Page 61

go out there and conduct a home compliance check.

**Q. You know that these registrants are required to come in once a quarter and report that information to you on a form; correct?**

A. That's correct.

**Q. Okay. And they do that; is that correct?**

A. They do.

**Q. So what I -- what I'm trying to understand, Investigator Bone, is beyond them coming in quarterly, or more frequently if they're homeless, to report to you that information during their registration events, what other requirement do these registrants have to prove to you that they live in their address?**

A. I have to verify that they live there.

**Q. Well, you do that in their reporting events, do you not?**

A. I can't verify they live there just by them coming in and telling me they live

there.
**Q. So you -- you believe that there is something outside of their registration events that require you to verify where they live?**
A. I go out there to check to make sure that they are living at that current address.
**Q. Let me drill down on that for a minute, Investigator Bone. When you do, let's say, for example, an initial home compliance check on any registrant of ASORCNA, you decide that, do you not, you're going to go to a certain registrant's home; correct?**
A. That's correct.
**Q. Prior to you going to that registrant's home, is there any reason to believe that a crime has been committed in their home prior to you going there?**
A. Unless I've received a complaint, no.
**Q. So do you often -- you would agree with me that you often go to registrants' homes without receiving any complaints;**



**correct?**
A. That's correct.
**Q. Okay. So these are all -- these -- these are the occasions that I'm referring to. When you go to individuals' homes and you haven't received any complaints of anything about anything going on in that home, can you -- can you accept that initial part of my question?**
A. Yes.
**Q. Okay. Absent a complaint, you would agree with me, would you not, that you don't have any reason other than your desire to determine whether these registrants actually live at that address for going to their residence?**
MR. WEBB: Object to the form.
MR. CHYNOWETH: Object to the form.
**Q. You may -- did you understand my question?**
A. Will you repeat it one more time?
**Q. I said is it -- let me ask you this way.**



**Is there any reason other than you trying to verify that these individuals live at a particular address for you going unannounced and uninvited to a registrant's address?**
A. When I go there, I want to verify they do live there. And if they are not around -- are not supposed to have kids there, I want to verify that there is no kids living at the address with them.
**Q. But absent a complaint, as we discussed a little earlier, you don't have any cause to go to that residence, do you not?**
MR. CHYNOWETH: Object to the form.
**Q. Do you?**
MR. WEBB: Object to the form.
**Q. You may answer.**
A. To verify that they live at that address.
**Q. Okay. Do you have any reason to believe that a crime is being committed in that home?**
A. Not at that time.



**Q. Do you have any reason to believe that a registrant is noncompliant with ASORCNA prior to arriving at their home?**
A. Every case is different. It depends.
**Q. Let me give you some specifics. Let's take Mr. B[redacted] for example. When you say you saw him standing at the [redacted] [redacted] address in the yard, and after seeing him that night in the yard you went over to his residence; correct?**
A. That's correct.
**Q. Did you have any reason to believe that a crime was being committed at his residence?**
A. At that time, no.
**Q. Did any time during that night you have reason to believe that a crime was being committed at his residence?**
A. That night or within the three days?
**Q. That night.**
A. No, not that night.
**Q. So did you have any cause, probable or other, to go to his residence to do a**

Page 66

**home compliance check?**
A. Yes.
MR. CHYNOWETH: Object to the form.
**Q. What was it?**
A. To verify that he lived -- he is living at that address.
**Q. So are you telling the Court that your personal wish to verify that a registrant lives at an address is probable cause to go to a registrant's address?**
MR. WEBB: I object to the form.
MR. CHYNOWETH: Object to the form.
**Q. You may answer.**
A. Ask -- can you repeat the question.
**Q. Are you telling the Court that your personal desire to do a home compliance check is probable cause to enter the threshold of any registrant's property?**
MR. WEBB: Object to the form.
MR. CHYNOWETH: Object to the form.

Page 67

**Q. You may answer it. Do you understand the question?**
A. No, I don't.
MR. McGUIRE: Can you repeat my question to him, the last question?
(Court reporter reads back the last question.)
A. Yes.
**Q. Have you, Investigator Bone, participated in from, let's say, January 1, 2017 to the present date, training on the provisions of ASORCNA?**
A. Yes.
**Q. Do you have training materials from those training sessions?**
A. Yes.
**Q. By the way, can you tell the Court what training sessions you've attended?**
A. Attended a 16-hour class. I'm not sure when, but it's last year sometime.
**Q. Can you tell me where that class was conducted?**
A. AUM.

Page 68

**Q. And can you tell me who -- was there one instructor or several instructors during that class?**
A. Several.
**Q. And can you name some of the instructors that were instructing that class?**
A. I can't.
**Q. Do you recall the topics of that 16-hour training class at AUM?**
A. I don't.
**Q. Okay. Do those topics include home compliance checks?**
A. I don't recall.
**Q. Have you ever been trained at all on home compliance checks?**
A. Not going out to a house and conducting a home compliance check.
**Q. Okay. What's the name of the sheriff of Chilton County?**
A. John Shearon.
**Q. Does John Shearon -- did John Shearon direct you to conduct home compliance checks?**

Page 69

A. No.
**Q. Is John Shearon aware that you conduct home compliance checks?**
A. He is.
**Q. And has he congratulated you for conducting home compliance checks?**
A. He has.
**Q. So to your knowledge, is Sheriff Shearon supportive of your home compliance checks?**
A. He is.
**Q. And by the way, how long have you been conducting home compliance checks?**
A. I started in August of 2014 handling the sex offender compliance.
**Q. And was Sheriff Shearon the sheriff at the time?**
A. He was not.
**Q. Who was the sheriff at the time?**
A. Kevin Davis.
**Q. And when did Sharon Shearon -- Sheriff Shearon -- come on as sheriff of Chilton County, if you recall?**

A. I don't recall.
Q. Did you do home compliance checks in Chilton County last week?
A. I did not.
Q. Did you do home compliance checks in Chilton County during the week of June 11, 2018?
A. I don't recall.
Q. Do you plan to do home compliance checks this week?
A. This week? No.
Q. When do you plan to do home compliance checks next?
A. Whenever my schedule allows it.
Q. Give the Court an estimate on when that may be.
A. I have no idea.
Q. So would you describe these home compliance checks as random?
A. Yes.
MR. CHYNOWETH: Object to the form.
Q. You may answer.



A. Yes.
Q. So you check them on an ad hoc basis or just a random date that you choose; correct?
A. Yes.
Q. Okay. Is it your testimony to the Court that you plan to continue to do these home compliance checks of ASORCNA registrants in Chilton County even though you've accepted my representation that there is no provision in the statute, ASORCNA, that provides for home compliance checks of registrants?
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
Q. You may answer.
A. Yes.
Q. And is it your testimony to the Court that you plan to continue to do these home compliance checks even though you cannot specifically cite a provision in ASORCNA that allows for you to do home



compliance checks?
MR. CHYNOWETH: Object to the form.
Q. You may answer.
A. I'll continue -- I will continue to do them.
Q. I'm going to show you what we're going to mark as Plaintiffs' Exhibit D.
(Plaintiffs' Exhibit D was marked for identification.)
Q. On page 1 of Plaintiffs' -- Plaintiffs' Exhibit D, you would agree with me, would you not, that this is a posting of an Alabama registrant of ASORCNA's ALEA website information; correct?
A. That's correct.
Q. And can you tell me the name of this registrant?
A. Paul Hamilton Tucker.
Q. And based on the article that you -- that we discussed, Exhibit A, earlier today, Paul Hamilton Tucker had two separate SORNA violations within Chilton County;



correct?
A. That's correct.
Q. Can you tell the Court what those SORNA violations were?
A. Failed to spend three consecutive nights at his address, failure to register his address.
Q. Okay. Now -- and you arrested this individual; correct?
A. That's correct.
Q. And you did a police report; correct?
A. That's correct.
Q. Did you have an affidavit from somebody or a sworn statement from someone that said that he spent four consecutive nights somewhere other than his residence?
A. No.
Q. So were the facts that led to his arrest similar to the facts that led to the arrest of Mr. B[redacted]?
A. Similar, yes.
Q. Okay. So what basis did you arrest

**Mr. Tucker on when you said that he failed to spend three consecutive nights at his address?**
A. I received information that he was not living at his address and was living at another address so that -- I started an investigation.
**Q. When you say you received information, what information did you receive?**
A. Another deputy advised me that he was -- that Paul Tucker was living at another location.
**Q. Now, did that other deputy who told you that Paul Tucker was living at another location, did he tell you that he saw Mr. Tucker asleep at that other location?**
A. He did not.
**Q. Did he tell you that Mr. Tucker had not been at his residence at all on three consecutive days?**
A. He did not.
**Q. Give me some specifics about what the deputy told you that caused you to arrest**



**Mr. Tucker for a violation of the residency or failure to spend three consecutive -- did you say three consecutive nights?**
A. That's correct.
**Q. Before I ask you that question, let me ask you this. Is there a requirement that registrants spend three consecutive nights at their registered address?**
MR. CHYNOWETH: Object to the form.
**Q. You may answer it.**
A. Is there a requirement?
**Q. That registrants spend three consecutive nights at their address.**
A. They cannot be away for their listed address for three consecutive nights.
**Q. Ever?**
MR. CHYNOWETH: Object to the form.
**Q. You may answer.**
A. During -- I mean, three consecutive nights or ten nights within a month.



**Q. So may a registrant, for example, spend two nights away from their residence and then return on the third night?**
A. He can.
**Q. Nothing unlawful about that; correct?**
A. No, sir.
**Q. Okay. Now, when you say a registrant doesn't spend three consecutive nights, for example, like Mr. Tucker, were you able to demonstrate in Mr. Tucker's case that led to his arrest that Mr. Tucker slept overnight in a residence other than his own on three consecutive nights?**
A. He was not at his registered address on those three consecutive nights that we conducted those compliance checks.
**Q. And were those compliance checks like those two- to three-minute checks that you've described earlier?**
A. Yes.
**Q. And you're saying that because Mr. Tucker wasn't there during your compliance checks, is that the reason he was**



**arrested?**
A. Yes.
**Q. And that's the reason he was charged?**
A. Yes.
**Q. And that's the sole basis for his arrested charge?**
MR. CHYNOWETH: Object to the form.
**Q. You may answer.**
MR. WEBB: Object to the form.
A. That is the reason he was arrested.
**Q. Okay. I want to direct your attention to page 2 of Exhibit D. And page 2 of Exhibit D is the ALEA website posting of an Alabama registered sex offender; isn't that true?**
A. Yes.
**Q. And what is that registrant's name?**
A. Daniel Everett Whitehead.
**Q. And based on Exhibit A, the article or the posting, the sheriff's website posting that we reviewed earlier, he was arrested on May 24, 2018. Am I correct?**

A. That's correct.
**Q. And was Mr. Whitehead arrested for -- I want to be clear. Was he arrested for a subsequent sodomy charge?**
A. Mr. Whitehead was arrested for a probation violation.
**Q. What was that probation violation?**
A. I don't recall.
**Q. Okay. Now, so when -- when --**
A. I'm sorry. I'm sorry. It said the probation violation was on sodomy first.
**Q. Right.**
A. Chilton County.
**Q. So is your understanding from this article that the actual violation that he committed was a sodomy first in Shelby County?**
A. That's correct.
**Q. Now, I want to refer you back to the ALEA posting. Okay? And would you look under crime information and tell me the sex crime for which Mr. Whitehead was convicted? You may answer.**



A. Sodomy first.
**Q. Sodomy first. And when was that -- I mean -- excuse me. Can you tell me where -- the crime location?**
A. Shelby County.
**Q. So is it possible that your interpretation that Mr. Whitehead violated his probation by committing a sodomy first in Shelby County is wrong?**
A. No.
**Q. So it's your testimony that this is a charge after the -- that came after the charge that he was convicted of initially requiring his registration under ASORCNA?**
A. That's correct.
**Q. Now, in this article, you mentioned persons by the name of Dustin Smith and Jeffery -- is it Defee?**
MR. WEBB: Are you talking about the article?
**Q. Excuse me. In Exhibit A, you mention Dustin Smith and Jeffery -- is it Defee?**
A. Defee.



**Q. Defee. You mentioned -- those are -- those are mentioned. You don't mention them, but they're mentioned in this particular posting; correct?**
A. That's correct.
**Q. Have those individuals been captured?**
A. They have not.
**Q. Have they turned themselves in?**
A. They have not.
**Q. Okay. Investigator Bone, at this time, I'm going to pass. And if your lawyers or lawyer for the attorney general's office have questions of you, they can ask you.**

**EXAMINATION**

BY MR. CHYNOWETH:
**Q. Investigator Bone, I'm Brad Chynoweth with the attorney general's office. I have just a few questions for you this morning. I'd like to ask you some questions about Exhibit B, the narrative summary of the police report in Exhibit B.**



MR. McGUIRE: Can we stop for a second?
MR. CHYNOWETH: Yes.
MR. McGUIRE: Just -- just a brief break.
MR. CHYNOWETH: Okay.
(Short recess.)
**Q. (By Mr. Chynoweth) As I mentioned before the break, I'd like to ask you some questions about the police report in Exhibit B. If you could turn to page 3, I'd like to ask you some questions about your narrative statement in this. Now, people who are subject to the state's sex offender registration law are required to reside at their registered address; correct?**
A. That's correct.
**Q. And somebody who's not subject to our sex offender registration law is not required to live at a registered address, are they?**
A. That's correct.

Q. Your narrative statement in this police report, does it state that on April 17, 2018 around 10:30 p.m., you observed J[redacted] B[redacted] standing in the yard at [redacted]?
A. That's correct.
Q. Does it state that at 11:42 p.m. Deputy Freeman and yourself went to his registered address and did not make contact with him?
A. That's correct.
Q. Can you explain why you would check to see whether a sex offender is at a registered address at 11:42 p.m.?
A. To verify that he is living at his address.
Q. And does it say that on April 18th, you went to the same person's registered address at 11:11 p.m.?
A. That's correct.
Q. Can you explain why you would check to see whether a sex offender is at his registered residence at 11:42 p.m. and



11:11 p.m. at night?
A. Because those times are the normal times that a normal person would be at home.
Q. So in your experience, a typical person is at their residence at those times of night?
A. Yes.
Q. And the report states that on April 19th, Deputy Smitherman observed his car at [redacted] and then Deputy Smitherman went to the registered address and did not make contact with J[redacted] B[redacted] Is that what the report states?
A. That is correct.
Q. Do you know what time of day it would have been that Deputy Smitherman went to see whether the registrant was at his registered address?
A. I don't have it wrote down on the report.
Q. Is it likely that he went at night on the 19th as well?
MR. McGUIRE: Object to the form.
Q. You may answer.



A. It would be around the same time.
Q. Can you turn to Exhibit C? That's a copy of the statute. And if you could please turn to page 11. That's the ECF header at the top of the page. Do you see Subsection 20 on page 11? Does that subsection contain a definition of "reside" for purposes of ASORCNA?
(Witness reviews document.)
A. That's correct.
Q. Does Subsection 20, beginning with the third sentence, say the term "reside" includes but is not limited to spending more than four hours a day at the place on three or more consecutive days?
A. That's correct.
Q. If you observe someone to not be at their registered residence at 10:30 p.m. and 11:11 p.m. on two consecutive nights, would that give you reason to believe that the person is not residing at that location?
A. That's correct.



Q. And is this based on your belief that people are typically at their residence at those times of day?
A. Yes.
Q. So if you observe that someone is not at their residence late at night on three consecutive days, is that evidence that the person is not residing there?
A. Yes.
Q. So does ASORCNA require you to be at your home at 11:11 p.m. on a given night?
A. No.
Q. But based on your observation that a registrant is not at home after 11 p.m. on three consecutive nights, that provides you evidence that that person is not residing there?
A. That's correct.
Q. And if someone is not at home late at night on three consecutive nights in a row, does that, in your opinion, provide probable cause to arrest that person for failure to reside at the registered

address?
A. That's correct.
MR. CHYNOWETH: No further questions.
MR. WEBB: Yes.
EXAMINATION
BY MR. WEBB:
Q. You had offered to clarify -- you had wanted to clarify some of your testimony with respect to Mr. B[redacted] and were not given the opportunity, and I wanted to give you the opportunity to clarify your testimony as to Mr. B[redacted] and all the bases that led you to arrest Mr. B[redacted]. Would you please go through the timeline of events?
A. I received information that he was living next door to the -- to one of the commissioners. And I also received information from our narcotics agent that he was also living at that address. They had received complaints that he had been selling drugs from the address at [redacted]



[redacted], or [redacted]. That's when I opened up my investigation to verify to see if he was actually living at his address on [redacted]
Q. And that was the basis. So with respect to Mr. B[redacted] it was not a random home inspection that you started. It was actually due to being informed by two different sources that he was either residing or staying at the location that's next to the county commissioner; is that correct?
A. That's correct.
Q. Now, you had mentioned -- he asked you a question about investigating things based on personal desire. Would you please explain your -- what you mean by that?
A. Yeah. It wasn't personal desire. It was work-related, opening up the investigation.
Q. Now, are you aware of the sheriff's responsibility to ferret out crime?
A. Yes.



Q. And are you aware that as deputy sheriff you are the alter ego of the sheriff?
A. Yes.
Q. And -- and, therefore, you are charged with, by state law, investigating potential crimes; is that correct?
A. That's correct.
MR. WEBB: No further questions.
EXAMINATION
BY MR. McGUIRE:
Q. Investigator Bone, I have a few follow-up questions based on the questions that counsel for the attorney general's office and your counsel has just asked.
You just reviewed again with counsel for the attorney general's office the definition of "reside." Am I correct?
A. That's correct.
Q. And you remember a series of questions that counsel asked you about showing up at registrants' residents, particularly Mr. B[redacted], at eleven o'clock or so at night; correct?



A. That's correct.
Q. And you went through a series of questions and answers where counsel asked do you expect that normal people would be there at night. Do you remember calling -- giving testimony of that sort?
A. That's correct.
Q. Okay. Based on your review and understanding of Section 20, point to me part of the provision, point to me a sentence, point to me a word, would you, please, that requires a registrant to be at their registered residence at night. Can you do that for me?
MR. CHYNOWETH: Object to the form.
Q. Can you do that for me?
MR. WEBB: Object to the form. The act speaks for itself.
Q. You may answer. Can you do that for me?
A. There is not a timeline a -- or certain time that they have to be at the -- the address. But when I conduct a lot of my

home visits, a person should be at their house between the time frame of ten and five in the morning unless they have a job that's -- works night shift.
**Q. What if they have friends that they go visit at night, is there -- do they break the law by going to see their friends at night?**
A. No, they don't.
**Q. Well, what business is it of yours what they're doing at night?**
A. I'm making sure that he's in compliance with the law.
**Q. You have no business, do you, Investigator Bone, to even inquire what any registrant does at night, do you?**
A. I do.
MR. WEBB: Object to the form.
**Q. What business do you have to know what they're doing at night in their homes?**
A. To verify that he is living at his address.
**Q. And, again, you don't have a statute that**



**you can point to that gives you that authority, do you?**
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
**Q. Do you?**
A. To conduct the -- the compliance check at his house.
**Q. You don't have a provision of ASORCNA that gives you the authority to do that, do you?**
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
**Q. You may answer.**
A. Like -- like I said again, to -- I conducted the check.
**Q. Okay. Investigator Bone, if -- if I ask you a question and it requires a yes or no answer, is there anything that prevents you from saying yes or no?**
A. No.
**Q. Okay. So I'm going to ask you again. Is**



**there a provision of ASORCNA that gives you the ability to do home compliance checks at all?**
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
**Q. You may answer.**
A. I'm going to say again, to conduct the -- the -- see if he lives at the house.
**Q. Are you refusing to answer my question yes or no?**
A. No, I'm not.
**Q. Can you answer my question yes or no?**
A. No, I cannot.
**Q. Okay.**
MR. McGUIRE: Ms. Bridgette, do you mind marking and certifying that question?
**Q. I want to see if you would agree with me, Investigator Bone, on the following characterization. And I want you to take -- I want you to accept my representation as we discussed earlier,**



**that -- well, you don't have to accept my representation. You agreed, did you not, earlier in your testimony that oftentimes you go to registrants' homes for these home compliance checks with no complaints of any violations going on at that home. You recall that testimony?**
A. That's correct.
**Q. And you do do that; isn't that true?**
A. That's correct.
**Q. Okay. So would you agree with me that if you conduct home compliance checks in that manner without -- you do that without a substantial cause to do it; isn't that true?**
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
A. Repeat it again.
**Q. You would agree with me that if you show up at registrants' house -- houses or homes just to do a home compliance check with no complaint of any crime or**

violation going on there, you would agree with me that there is no substantial cause for you to go to that address, would you not?

MR. CHYNOWETH: Object to the form.

MR. WEBB: Object to the form.

Q. You may answer.

A. To conduct a home visit.

Q. Okay. Outside of the home visit that you want to conduct, is there any other substantial cause for you to go to that residence?

MR. CHYNOWETH: Object to the form.

A. To make --

Q. You may answer.

A. To make sure they are in compliance.

Q. Okay. You said that. And I got that. I said outside of making sure that they're in compliance, is there any other substantial cause for you to go to those registrants' homes and do a home



compliance check?

A. No.

Q. Okay. Is there any reason whatsoever outside of just doing a home compliance check for you to go to registrants' homes to confirm they live there?

MR. WEBB: I object to this line of questioning as it exceeds the scope of redirect.

Q. You may answer.

A. If I'm conducting or get information to conduct an investigation on a sex offender.

Q. Okay. So I want to make sure that we don't lose parts of what we set up as this question. Okay? So here are a few things I'd like you to assume. Assume that you don't have a complaint or anything that requires you to investigate other than you wanting to perform a home compliance check on these individuals. Do you have that part of the scenario?

A. Yes.



Q. Okay. Is there any reason whatsoever for you to show up at those residents or registrants of ASORCNA's home other than the home compliance checks?

A. No.

Q. So what I want to do is I want to hand you what we're going to mark as Plaintiffs' Exhibit E.

(Plaintiffs' Exhibit E was marked for identification.)

Q. And at the very top of the page, very top of the border of the page, do you see the date June 29, 2018, printed in the top left-hand corner?

A. I do.

Q. And do you see the words on the top line that says: What is arbitrary? Definition of arbitration, Black's Law Dictionary. Do you see that?

A. I do.

Q. And below that, it says, The Law Dictionary, featuring Black's Law Dictionary Free Online Legal Dictionary



Second Edition. Do you see that?

A. I do.

Q. Okay. And then below that, you see something that is -- says: What is arbitrary? Do you see that question?

A. I do.

Q. And do you see a definition of arbitrary that says, Not supported by fair, solid, and substantial cause and without reason given; is that correct?

A. That's correct.

Q. Would you describe -- would you agree with me that based on your answers earlier that absent your -- the purpose of a home compliance check, that any reason other than that would be purely arbitrary?

MR. WEBB: I object --

Q. Would you agree with that?

MR. WEBB: -- to the form.

MR. CHYNOWETH: Object to the form.

Q. You may answer.

Page 98

MR. WEBB: That is a -- number one, it calls for a legal conclusion. Number two, it is completely unsupported by law.
MR. McGUIRE: Are you -- are you instructing your client not to answer the --
MR. WEBB: No --
MR. McGUIRE: -- question?
MR. WEBB: -- I'm not. We're --
MR. McGUIRE: Well, we're not going to have --
MR. WEBB: It's also --
MR. McGUIRE: Hey, we're not going to have --
MR. WEBB: -- not --
MR. McGUIRE: -- speaking objections.
MR. WEBB: Whoa. Hold --
MR. McGUIRE: You can object to form.
MR. WEBB: Hey, hold up. Hold on.

Page 99

MR. McGUIRE: You can object to form.
MR. WEBB: You're also exceeding the scope --
MR. McGUIRE: Do I need to --
MR. WEBB: -- of redirect.
MR. McGUIRE: -- hand you Rule 45?
MR. WEBB: You're also exceeding the --
MR. McGUIRE: Do I need to hand you --
MR. WEBB: -- scope of redirect.
MR. McGUIRE: -- Rule 45?
MR. WEBB: For what purpose?
MR. McGUIRE: You're doing -- you're -- you're committing a speaking objection. You're -- you're allowed to object to form.
MR. WEBB: I know. And I'm objecting to the form.
MR. McGUIRE: Okay. You're -- you're giving a long colloquy of speaking

Page 100

objection. He's going to answer my questions today, every one of them.
MR. WEBB: And I --
MR. McGUIRE: That's assured.
MR. WEBB: -- understand that. But just because he's not giving you the testimony you want doesn't mean you have to treat him the way you've been treating him today.
MR. McGUIRE: Are you done?
MR. WEBB: Yeah, I'm finished.
**Q. You may answer.**
A. What is your question again?
MR. McGUIRE: Repeat my question, would you, please, Bridgette?
MR. WEBB: And I want you to save a copy of this recording.
(Court reporter reads back the last question.)
MR. WEBB: And I'll restate my prior objections.
MR. CHYNOWETH: Object to the form.

Page 101

**Q. You may answer.**
THE WITNESS: Can you repeat it one more time?
(Court reporter reads back the last question.)
MR. WEBB: Object to the form.
A. I'm -- I'm not understanding. Can I take a break for a second?
**Q. Sure.**
A. Talk to my counsel.
**Q. Are you taking a break to talk to your counsel so that you can seek instruction on how to answer this question?**
A. Can I just take a break for a minute?
**Q. Sure. Take a break for a minute.**
**(Short recess.)**
**Q. (By Mr. McGuire) Okay, Investigator Bone. We're back on the record. And for the record, on this brief break, did you have an opportunity to speak to your attorney?**
A. Briefly.
**Q. Without getting into attorney-client privilege, were you instructed on how to**

Page 102

**answer the last question I gave you?**

MR. WEBB: No, I didn't instruct him on how to answer it. And you don't -- you don't get into that. You are getting into attorney-client privilege.

MR. McGUIRE: Are you being deposed?

MR. WEBB: No. He is.

MR. McGUIRE: Then my question --

MR. WEBB: You --

MR. McGUIRE: -- is -- my -- my -- my demand to you is you not answer --

MR. WEBB: I --

MR. McGUIRE: -- any questions. You not answer any questions for him or about him. If I need to depose you, I'll send a subpoena. Otherwise, let me conduct my deposition, because, Counsel, this is my deposition.

MR. McGUIRE: I understand that.

MR. McGUIRE: Make an objection.

Page 103

Either tell your client not to answer the question, have him answer the question, or leave. You make --

MR. WEBB: You don't --

MR. McGUIRE: -- the call.

MR. WEBB: You don't tell me to leave.

MR. McGUIRE: You can -- I'm not telling you to leave. I'm telling --

MR. WEBB: Oh, yeah.

MR. McGUIRE: -- you those are your options.

MR. WEBB: No.

MR. McGUIRE: Those are --

MR. WEBB: Don't --

MR. McGUIRE: -- your options.

MR. WEBB: Don't --

MR. McGUIRE: Make the proper objection.

MR. WEBB: You will ask --

MR. MCGUIRE: You're not going to do speaking objections here today, Counsel. Not going to happen. Not in

Page 104

this deposition.

MR. WEBB: And you're not going to treat my client that way or me that way.

MR. McGUIRE: Listen, this is no disrespect. What I'm telling you is, I'm not required by any rule to be sweet to you or your client. I'm required to ask questions and he is required to answer. And he's going to answer every one. Be clear on that.

So, now, let's return to -- can you give him my last question, please?

(Court reporter reads back the last question.)

A. No.

**Q. Do you recall the last -- the question I gave you before you took your break?**

A. I don't.

**Q. Okay.**

MR. McGUIRE: Ms. Bridgette, can you go back to that last question and ask him -- repeat it to him?

Page 105

(Court reporter reads back the requested question.)

MR. WEBB: Object to the form.

**Q. Did you understand the question?**

MR. WEBB: Same objections.

**Q. Did you understand the question?**

A. Yes.

**Q. You may answer it.**

A. No.

**Q. Now, your lawyer asked you some questions and gave you an opportunity to kind of clarify and give some additional information surrounding your arrest of, I believe it was, Mr. Benjamin; is that correct?**

A. Yes.

**Q. Do you recall those questions from your lawyer?**

A. Yes.

**Q. Were any of those additional facts that you added, any one of them, in the initial report that you wrote?**

A. It was facts.

Q. My question to you was, were any of those additional facts that you added in the initial report that you wrote?
A. No.
Q. Why not?
A. Because I have another report that's not on the table.
Q. You have another report that's not on the table?
A. That's correct.
Q. And that other report is in the record?
(No immediate answer given.)
Q. Strike that. Let me ask you this. Did you file additional reports in this case other than the report that you see there regarding Mr. B[redacted]?
A. Okay. Here -- this is a little confusing because it's still -- I've not finished all the reports. This I/O report that you have here -- is there another copy?
THE WITNESS: There's one more to this.
A. This is going to be two different case



numbers, so this I/O report does not go with this arrest report.
Q. You see two arrest reports in there, do you not?
A. I do not.
Q. In this exhibit, can you tell me what -- as I'm holding up, that is part of Exhibit B. Can you tell me the two pages that I'm holding up and that you are now holding in your hand? What is that called?
A. An incident and offense report.
Q. So is that your report?
A. That is correct.
Q. Okay. I'm going to go through the same documents, the same exhibit, on a different case, on a different arrest -- excuse me -- and would you tell me the two documents that I'm handing to you and that you're holding? It's part of Exhibit B, is it not?
A. That's correct.
Q. And both of those would constitute, would



they not, combined, both reports from both arrests of Mr. J[redacted] B[redacted]? Isn't that true?
A. That is the arrest report.
Q. When we're speaking of arrest report, that is the report that you file in the case, is it not?
A. That is correct.
Q. Is there some other kind of report that you're referring to when you talk about reports?
A. There would be another arrest report.
Q. Well, he was only arrested two times; correct?
A. That's correct.
Q. And you see two reports, do you not?
A. I see one incident and offense report and I see one arrest report.
Q. Okay. Is it possible that you did not file an arrest report the second time?
A. I -- no. I filed an arrest report.
Q. So it would be in the record, in the Alacourt record, to your knowledge would



it be?
A. I'm not sure.
Q. Okay. Now, let's talk about the May 22nd arrest of Mr. B[redacted]. You do agree that Mr. B[redacted] was arrested on May 22nd; correct?
A. I don't have that arrest report from May 22nd.
Q. Well, you know the report where you talk about you witnessing him standing on [redacted]?
A. That's correct.
Q. Okay. And that was the arrest report associated with this May 22nd arrest; isn't that true?
A. Repeat that again.
Q. The incident in your report that you described where you witnessed Mr. B[redacted] standing in a yard on [redacted], that report is associated with his arrest on May 22nd; isn't that true?
A. No.
Q. How many times have you arrested

Page 110

Mr. B[redacted]?
A. Three.
Q. How many times have you arrested Mr. B[redacted] in 2018?
A. Two.
Q. What dates did you arrest him on?
A. On this one -- I'm sorry. Let me back up. Let me clarify that. I've signed warrants on him. I've only arrested him once. Another officer that conducted the traffic stop arrested him for my warrants.
Q. Okay. So your warrants were associated with the time that you saw him standing in the yard at [redacted], correct, the warrants that you issued?
A. On the first occasion, yes.
Q. Right. And he was arrested for that on May 22nd. Am I correct?
A. Yes.
Q. Are you -- and you mentioned that you weren't done with the reports.
A. That's correct.

Page 111

Q. And are you talking about that arrest that we just talked about? Are you saying that you aren't done with those reports?
A. That's correct.
Q. If you, as you describe in your narrative in your report, witness this activity beginning on April 17 and Mr. B[redacted] was arrested on May 22nd, why would your report not be complete by now?
A. Because I'm still not finished with it.
Q. Why not?
A. Because I've not had the time yet.
Q. So you haven't had the time in over a month to complete a report for an arrest that you initiated a warrant for, an arrest that was effectuated on May 22nd?
A. That's correct.
Q. Is that the way you normally work?
A. No.
Q. Do you normally work faster?
A. It depends on --
Q. I just want to --

Page 112

A. -- what I --
Q. Okay. Excuse me. I want the Court to understand. You submitted a partial report for the May 22nd arrest; correct?
A. Correct.
Q. Are there facts that you know today that you didn't know then?
A. No.
Q. Well, why not just do a complete report?
A. Because I've not had time.
Q. Well, now, you described with additional facts that your counsel elicited from you that there were suspicions of selling drugs. Do you recall that answer?
A. That's correct.
Q. Could you have not just written that in your report?
A. No.
Q. And you described some other activity that purportedly led to your investigation that led to his -- led to you signing a warrant for him; correct?
A. Yes.

Page 113

Q. And you could have included that in your report; right?
A. When I get time.
Q. But you could have included that in your report in less than a paragraph; isn't that true?
A. Sure.
Q. Why didn't you?
A. Because I haven't had time yet.
Q. Well, you had time to put down that you saw him on [redacted] didn't you?
A. Yes.
Q. And you had time to put down that after you saw him on [redacted] you went to check to see if he lived at his address, didn't you?
A. Yes.
Q. Okay. And you -- but you didn't have time to say that, Well, on information and belief, we suspected him of dealing drugs, as you said. You didn't have time to write that down?
A. I wasn't going to write that down.

Page 114

**Q. Why not?**
A. Because I didn't have -- I didn't have any part of investigating him for selling drugs.
**Q. Well, did you not just contend through your counsel that that was part of the cause that you used to go to his residence? Don't you remember saying that?**
A. Used to conduct a home compliance check.
**Q. Yes.**
A. Yes.
**Q. So which is it, did -- did you -- did you have -- did you use that drug dealing and whatever you just elicited today -- or testified to just today that's not in your report, did you use that as cause to go to Mr. B[redacted] residence or were you just doing your home compliance check to go -- as reason to go to his residence?**
A. It started off from the narcotics investigator telling me that J[redacted]

Page 115

B[redacted] was possibly living at this address at [redacted].
**Q. Okay.**
A. And they was investigating him for selling narcotics and wanted me to get into it to investigate my side to see if J[redacted] B[redacted] was actually living at [redacted] [redacted] or if he was living at his registered address on [redacted].
**Q. Okay. Now, your lawyer talked to you about what you meant by personal desire to go to registrants' homes and do home compliance checks. Do you recall that question he asked?**
A. That's correct.
**Q. You don't have to go and do these home compliance checks, do you?**
A. No, I don't.
**Q. You're not required to do them, are you?**
A. I do them for -- to verify that they are living there.
**Q. Very good. But you're not -- you're not required to do them, are you?**

Page 116

A. Yes.
**Q. Who requires you to do them?**
A. The law requires that they be in compliance.
**Q. Well, they don't -- you don't have to do home checks to determine that they're in compliance, do you?**
A. Yes.
**Q. And the law requires you to do that. And that's your understanding of the law?**
A. That is my understanding, yes.
**Q. And is your understanding based on reading of the residency restrictions?**
A. Yes.
**Q. And your understanding of the law and the way you enforce it and do home compliance checks, is it a result of you reading the definition of, as we did earlier, childcare facility?**
MR. CHYNOWETH: Object to the form.
MR. WEBB: Object to the form.
**Q. You may answer.**

Page 117

A. Do what, now?
**Q. Is your understanding of the law -- is the way you enforce the law, particularly as it relates to home compliance checks, is it based on your understanding of the term "reside" as it's listed in the statute in ASORCNA?**
A. Yes.
**Q. Is -- are your home compliance checks that you conduct based on your understanding of the term "residence" in -- as defined in ASORCNA?**
MR. CHYNOWETH: Object to the form.
**Q. You may answer.**
A. Yes.
**Q. Is the way you enforce the residency restrictions and particularly the way you conduct home compliance checks based on your understanding of the residency restrictions of ASORCNA?**
MR. CHYNOWETH: Object to the form.

**Q. You may answer.**
A. Yes.
**Q. Are there any reasons outside of ASORCNA and your understanding of the statute, are there any reasons at all that you do home compliance checks?**
A. If I get a complaint, then I have to investigate it.
**Q. Absent any complaints, are there any reasons outside of your understanding of ASORCNA as a statute, absent any complaints from any citizen, are there any reasons whatsoever outside of provisions of ASORCNA that you do home compliance checks?**
A. No.
MR. McGUIRE: I have no further questions at this time.
MR. CHYNOWETH: No further questions.
MR. WEBB: No questions.
(The deposition of Derrick Bone concluded at 10:52 a.m., on June 29, 2018.)



REPORTER'S CERTIFICATE

STATE OF ALABAMA )
)
ELMORE COUNTY )

I do hereby certify that the above and foregoing transcript was taken down by me in stenotype, and the questions and answers thereto were transcribed by means of computer-aided transcription, and that the foregoing represents a true and correct transcript of the testimony given by said witness.

I further certify that I am neither of counsel, nor any relation to the parties to the action, nor am I anywise interested in the result of said cause.

I further certify that I am duly licensed by the Alabama Board of Court Reporting as a Certified Court Reporter as evidenced by the ACCR number following my name below.

Bridgette Mitchell
Certified Court Reporter and
Commissioner for the State of
Alabama at Large
ACCR No. 231 - Expires 9/30/18
MY COMMISSION EXPIRES 12/15/21

A

**a.m**
1:23 20:15 22:4 118:23
**ability**
55:20 92:2
**able**
17:16,21 76:10
**absent**
56:20 63:11 64:11 97:14 118:9,11
**accept**
32:9 42:14 56:12 63:8 92:22 93:1
**accepted**
57:10,14 71:10
**ACCR**
119:16,21
**acronym**
7:15
**act**
4:15 7:12,17 11:16 48:3 58:12,18,21 89:19
**action**
1:9 119:12
**active**
48:5
**activity**
111:7 112:19
**actual**
78:15
**ad**
71:2
**added**
105:21 106:2
**additional**
105:12,20 106:2,14 112:11
**address**
9:21 10:6,8 15:12,16 15:18,21 16:1 18:4,7 18:13,19,20,21 21:5 21:22 22:11,16,22 23:4,13,15 27:1,22 28:3,5,7,11,13 29:22 30:13 31:11,17,19 34:5,6,9,11,18 40:17 40:23 55:15 60:21,23 61:18 62:7 63:15 64:3,5,10,19 65:8 66:7,10,11 73:6,7 74:3,5,6 75:9,15,17 76:14 81:16,21 82:9 82:14,16,19 83:11,18 86:1,21,23 87:4 89:23 90:22 94:3 113:15 115:2,9
**addressed**
55:11
**addresses**
55:12,15
**advised**
74:10
**affidavit**
73:13
**affirmed**
5:6
**afternoon**
16:6
**agency**
10:14
**agent**
86:20
**agree**
13:20 29:15,19 32:5 38:7 41:17,23 42:21 43:3,6,12,23 44:1 51:22 52:3 62:21 63:12 72:12 92:19 93:11,20 94:1 97:12 97:19 109:4
**agreed**
3:2,19 20:17 21:8 93:2
**aircraft**
51:8
**al**
1:6,11
**Alabama**
1:2,19,21 2:5,9,10,15 3:9 4:15 7:10,16 18:5 48:3,6 50:21 53:18 72:14 77:15 119:2,15,21
**Alacourt**
15:2 32:10 42:16 108:23
**ALEA**
4:13,16 13:22 14:3 72:14 77:14 78:19
**allegedly**
15:10
**allowed**
99:18
**allows**
56:10 70:14 71:23
**aloud**
51:1
**alter**
88:2
**Amendment**
39:4,13 43:13
**American**
42:21
**amount**
17:6
**answer**
6:19,20 17:1 21:18 25:15 33:12 43:10,21 45:5,6,8 47:1 52:7 56:1,17 57:19 58:9 59:2,17 60:13 64:18 66:15 67:1 70:23 71:17 72:4 75:12,21 77:9 78:23 83:23 89:20 91:15,20 92:7 92:10,13 94:8,17 95:10 97:23 98:6 100:1,12 101:1,13 102:1,3,14,17 103:1 103:2 104:9,10 105:8 106:12 112:14 116:23 117:15 118:1
**answered**
33:9,14 59:16
**answering**
47:13
**answers**
89:3 97:13 119:7
**anybody**
29:8
**anywise**
119:12
**appear**
13:9
**APPEARANCES**
2:1
**apply**
58:19
**approximately**
15:22 26:21
**April**
26:14 30:3,8,12,21 31:5,5,6,8 82:2,17 83:8 111:8
**arbitrary**
4:18 96:17 97:5,7,17
**arbitration**
96:18
**arrest**
14:11 19:9 21:9,13 23:11 32:2,3,6,23 33:3 43:4 73:19,21 73:23 74:23 76:11 85:22 86:14 105:13 107:2,3,17 108:4,5 108:12,18,20,21 109:4,7,13,14,21 110:6 111:1,15,17 112:4
**arrested**
11:21,22 12:2,3,5,17 12:20,22 14:14,18 25:20 32:11,15,19,22 34:15 42:5 50:2 53:3 54:8 73:8 77:1,6,11 77:23 78:2,3,5 108:13 109:5,23 110:3,9,11,18 111:9
**arresting**
31:23
**arrests**
13:2 108:2
**arrive**

40:22 55:10,14
**arriving**
65:3
**article**
4:12 11:13,17 12:16 13:8 14:7,12 15:3 72:20 77:20 78:15 79:16,20
**aside**
34:20
**asked**
45:12,15 46:1,21 47:4 47:12 59:15 87:14 88:14,20 89:3 105:10 115:14
**asleep**
74:16
**ASORCNA**
7:19,21 8:3,16,19 10:10 12:13 14:14,17 19:12 37:23 41:21 44:21 48:18,23 49:11 54:4 55:19 56:10,21 56:22 57:11,13 58:12 58:12 62:12 65:2 67:12 71:8,12,23 79:14 84:8 85:10 91:9 92:1 117:7,12 117:21 118:3,11,14
**ASORCNA's**
58:2 72:14 96:3
**associated**
109:14,20 110:13
**Associates**
1:18 2:4
**assume**
95:17,17
**assured**
100:4
**attended**
67:18,19
**attention**
49:4,14 50:15,18 52:15 53:9 77:12
**attitude**
46:7,19
**attorney**
2:9 6:15,18 80:12,18 88:13,16 101:20
**attorney-client**
101:22 102:5
**attorneys**
6:16
**August**
69:14
**AUM**
67:23 68:9
**authority**
91:2,10
**Avenue**
2:10
**Avery**
24:2,15 25:9,17,23 26:1,3 36:17
**aware**
69:2 87:21 88:1

**B**

**B**
4:13 13:17,18,22 14:4 18:3 24:21,23 52:23 53:6 80:21,23 81:11 107:8,21
**back**
15:17 18:2 37:19 40:1 53:16 56:5,6 59:13 67:6 78:19 100:18 101:4,18 104:14,22 105:1 110:7
**Baptist**
26:11
**based**
13:7 19:6 25:21 31:21 51:19 72:20 77:20 85:1,13 87:15 88:12 89:8 97:13 116:12 117:5,10,19
**baseline**
39:13
**bases**
86:14
**basis**
9:15 19:8,11,19 21:9 22:7 31:22 71:2 73:23 77:5 87:5
**bchynoweth@ago.st...**
2:11
**beginning**
84:11 111:8
**behalf**
1:17
**belief**
85:1 113:20
**believe**
40:10 41:10 44:20 45:19 47:7,15 58:13 62:2,17 64:20 65:1 65:12,17 84:20 105:14
**[redacted]**
4:14 12:8,17 14:5,6,18 15:7,10 17:4 18:4,11 19:4,19,22 20:8,11 20:14,20 21:4,13 22:15 23:3,18,22 25:5 26:10,15 27:3,7 29:5,11 31:12,15,23 32:2,15 33:10,14 36:1 42:3,5,19 43:3 43:12,15 44:2,20 50:2 53:3 54:8,9 65:6 73:21 82:4 83:12 86:10,13,15 87:6 88:22 105:14 106:16 108:2 109:4,5 109:19 110:1,4 111:8 115:1,7
**[redacted]**
14:11 15:23 16:20 17:7,18,23 18:19 20:5 32:21 36:9 42:15 114:18
**best**
13:7
**beyond**
61:11
**bit**
14:11 28:23
**Black's**
4:18 96:18,22
**Board**
119:15
**Bone**
1:15 2:13 3:5 5:5,15 5:16 6:1,5,7 13:5,20 19:18 20:23 23:2 37:19,21 45:10 46:22 48:7 52:16 53:17 57:23 60:3 61:11 62:9 67:9 80:10,17 88:11 90:15 91:18 92:20 101:17 118:22
**border**
96:12
**bottom**
12:2,4
**Brad**
2:8 80:17
**break**
81:5,9 90:6 101:8,11 101:14,15,19 104:18
**Brenton**
2:19
**Bridgette**
1:19 3:7 56:5 92:16 100:15 104:21 119:19
**brief**
81:5 101:19
**Briefly**
101:21
**broken**
35:13
**business**
90:10,14,19

**C**

**C**
4:14 47:19,20,23 52:23 53:6 84:2
**call**
41:19 103:5
**called**
22:13 44:9 54:3

107:11
**calling**
89:6
**calls**
98:2
**camper**
16:22 28:6,7
**captured**
80:6
**car**
17:2 22:11 26:20 30:20 31:4,9 32:21 34:23 35:3,13 36:9 83:9
**case**
3:21,23 24:10,11 65:4 76:10 106:14,23 107:17 108:7
**cause**
21:12,20 41:10 64:12 65:22 66:10,19 85:22 93:14 94:3,12,22 97:9 114:7,17 119:12
**caused**
74:23
**Cavalier**
28:12
**certain**
62:13 89:21
**CERTIFICATE**
119:1
**Certified**
119:15,20
**certify**
119:6,11,14
**certifying**
92:17
**change**
39:14
**changes**
40:20
**characterization**
92:21
**characterize**
44:1
**charge**
19:15 34:7 77:6 78:4 79:12,13
**charged**
19:12,19 34:9,12,17 36:1 77:3 88:4
**charges**
24:6 32:11 36:4
**check**
4:12 9:16,21 10:5 11:12 18:10 27:15,19 29:12 36:22 56:2 61:2 62:6,11 66:1,19 68:17 71:2 82:12,21 91:7,17 93:22 95:1,5 95:21 97:15 113:15 114:10,19
**checks**
9:3,7,11,23 10:2,11,16 10:19,23 18:14 37:20 38:9,14 40:16 41:20 44:17 55:9,10 57:12 57:13 58:22 59:20,23 60:2,7,11,17 68:12 68:15,23 69:3,6,10 69:13 70:2,5,9,13,19 71:8,13,21 72:1 76:16,17,18,23 92:3 93:5,12 96:4 115:13 115:17 116:6,17 117:4,9,19 118:6,15
**Chevrolet**
28:12
**childcare**
48:15,17,22 116:19
**Chilton**
4:11 5:18,20 7:4,7 9:2 9:12 10:12 31:18 37:22 42:9 43:5,17 44:4,10 54:19 57:3 58:14 68:19 69:22 70:3,6 71:9 72:23 78:13
**choose**
71:3
**Church**
26:11
**Chynoweth**
2:8 4:8 21:16 41:14 43:1,7,18 45:2 52:5 55:22 56:15 57:16 58:6,23 63:18 64:14 66:3,13,22 70:21 71:14 72:2 75:10,19 77:7 80:16,17 81:3,6 81:8 86:3 89:15 91:3 91:12 92:4 93:16 94:5,14 97:21 100:22 116:20 117:13,22 118:19
**cite**
71:22
**citizen**
40:3 43:5 45:20 47:7,9 57:3 58:14 118:12
**citizen's**
38:18 39:16 40:8
**citizens**
43:17 44:4,10,14,22
**civil**
1:9 3:6,18 4:2 5:22 9:18,19 37:10
**clarify**
19:1 25:12,15 57:8 59:21 86:8,9,12 105:12 110:8
**class**
67:19,21 68:3,6,9
**Clayton**
1:18 2:4
**clear**
41:16 57:21 78:3 104:11
**client**
98:6 103:1 104:3,8
**close**
9:20
**code**
8:21 50:21 53:18
**colloquy**
99:23
**combined**
108:1
**come**
54:15,20 61:4 69:22
**coming**
61:12,23
**commencing**
1:22
**commission**
3:11 119:22
**commissioner**
22:13,16 87:11 119:20
**commissioners**
86:19
**committed**
62:18 64:21 65:13,18 78:16
**committing**
79:8 99:17
**community**
7:11,17 8:6
**complaint**
62:20 63:11 64:11 93:23 95:18 118:7
**complaints**
62:23 63:6 86:22 93:5 118:9,12
**complete**
111:10,15 112:9
**completely**
6:21 98:3
**compliance**
4:12 5:21 9:3,7,10,16 9:23 10:2,5,11,16,19 10:23 11:12 18:10,14 37:20 38:9,14 40:16 41:20 42:11 44:17 55:9,10 56:2 57:12 58:11,22 59:20,23 60:2,7,9,11,15,17,18 60:22 61:2 62:11 66:1,18 68:12,15,17 68:22 69:3,6,9,13,15 70:2,5,9,12,19 71:8 71:13,21 72:1 76:16 76:17,22 90:12 91:7 92:2 93:5,12,22 94:18,21 95:1,4,21

96:4 97:15 114:10,19 115:13,17 116:4,7,16 117:4,9,19 118:6,15
**compliant**
8:6 40:20
**comply**
56:23
**computer**
17:3
**computer-aided**
119:8
**concluded**
118:22
**conclusion**
15:14 98:2
**condescending**
46:7,18
**conduct**
9:2,10 10:16,19 56:2 59:22 61:1 68:22 69:2 89:23 91:7 92:8 93:12 94:9,11 95:12 102:20 114:10 117:10,19
**conducted**
9:7 67:22 76:16 91:17 110:10
**conducting**
68:16 69:6,13 95:11
**confirm**
17:16,21 28:4,9,10 95:6
**confusing**
106:17
**congratulated**
69:5
**conjunction**
10:13
**consecutive**
15:11,16,17 16:2 18:8 18:16,22 19:5 23:22 31:16 34:8 73:5,15 74:2,20 75:3,4,8,14 75:17,22 76:8,13,15 84:15,19 85:7,15,20
**constant**
22:14
**constitute**
107:23
**Constitution**
39:5
**constitutional**
43:16 44:3,11 57:2
**contact**
10:17 17:3,8 22:14 27:2 30:14 31:12 82:10 83:12
**contain**
84:7
**container**
14:22
**contains**
8:4
**contend**
114:5
**continue**
71:7,20 72:5,5
**continues**
49:17
**controlled**
14:16,19
**convicted**
78:23 79:13
**copy**
36:16 37:16 46:17 48:2 84:2 100:17 106:20
**corner**
96:14
**correct**
7:5,13 8:8,13,14 10:21 11:18 12:17,20,21,23 13:1,3,23 14:1,8,9,22 14:23 17:12,14 18:22 19:9,10,13,14 20:21 20:22 21:7,10,11 22:1,2,5,6,20 23:1,8 25:23 26:17,18,21,22 27:4,8,9,14,16 29:2,3 29:14,18,22,23 30:3 30:4,9,10,14,15,18 30:22,23 31:12,13,19 31:20 32:1 34:15,19 35:10,16,21,23 36:10 36:11 38:12,14,15 41:5,12,13 42:2,23 43:11 44:12,18,19 45:12 49:1,3,13,23 50:1,5 52:14 53:7 54:6,11,12,18,20,21 54:22,23 55:1,2,5,6 55:13,17 57:4 58:22 61:6,7,8 62:14,15 63:1,2 65:10,11 71:4 72:15,16 73:1,2,9,10 73:11,12 75:5 76:5 77:23 78:1,18 79:15 80:4,5 81:17,18,23 82:6,11,20 83:14 84:10,16,23 85:18 86:2 87:12,13 88:6,7 88:17,18,23 89:1,7 93:8,10 97:10,11 105:15 106:10 107:14,22 108:8,14 108:15 109:6,12 110:15,19,23 111:5 111:18 112:4,5,15,22 115:15 119:9
**couch**
23:13,15
**counsel**
3:3,20 46:19 88:13,14 88:15,20 89:3 101:10 101:12 102:20 103:23 112:12 114:6 119:11
**[illegible]**
4:11 5:18,20 7:4,7 9:2 9:12 10:12 18:5,20 22:12 31:18 37:22 42:9 43:6,17 44:5,11 54:20 57:3 58:14 68:19 69:23 70:3,6 71:9 72:23 78:13,17 79:5,9 87:4,11 115:9 119:3
**couple**
34:21
**court**
1:1 5:1 11:10 15:8,13 17:5 18:3 19:2,3 22:9 32:18 34:7 40:1 41:17 45:22,22 46:17 51:2 56:6 59:5,13 66:8,17 67:6,17 70:15 71:6,19 73:3 100:18 101:4 104:14 105:1 112:2 119:15 119:15,20
**cover**
6:10
**crime**
62:18 64:21 65:13,17 78:21,22 79:4 87:22 93:23
**crimes**
88:6
**criminal**
37:6
**current**
10:8 18:4 62:7

D

**D**
4:15 72:8,9,12 77:13 77:14
**D.A**
36:23
**Daniel**
12:9,22 77:19
**Danny**
24:2,14 25:9,17,23 26:1,3
**date**
31:4 67:11 71:3 96:13
**dates**
110:6
**Davis**
69:20
**day**
20:3,9 83:15 84:14 85:3
**days**

65:19 74:20 84:15 85:7
**dealing** 113:20 114:14
**decide** 62:12
**decided** 21:5 29:12 60:4
**Defee** 79:18,22,23 80:1
**defendants** 1:12 48:4
**defined** 48:18,23 49:11 117:12
**definition** 48:14,16,22 49:6,8,16 49:23 50:7 84:7 88:17 96:18 97:7 116:18
**demand** 102:13
**demonstrate** 76:10
**depends** 65:4 111:22
**depose** 102:18
**deposed** 102:8
**deposition** 1:15 3:4,7,15,21 6:8 6:11 102:20,21 104:1 118:22
**deputy** 15:19,20 17:17,22 18:18,21 26:23 31:8 31:10 74:10,13,23 82:7 83:9,10,16 88:1
**Derrick** 1:15 2:13 3:4 5:5,15 118:22
**describe** 10:4 15:8,13 16:19 17:5 32:18 33:2 70:18 97:12 111:6
**described** 6:22 9:3 55:8 76:19 109:18 112:11,19
**description** 51:4
**desire** 63:14 66:18 87:16,18 115:11
**details** 8:10
**detective** 6:1,2 13:20 46:22
**determine** 63:14 116:6
**Dictionary** 4:17,18 96:19,22,23 96:23
**different** 65:4 87:9 106:23 107:17,17
**direct** 49:4,14 50:15,18 52:15 53:8 68:22 77:12
**disclosures** 37:2
**discuss** 13:11 15:5
**discussed** 14:8 32:12 64:11 72:21 92:23
**discussion** 47:22 51:19
**disrespect** 104:6
**District** 1:1,2 48:5
**DIVISION** 1:3
**document** 11:8 13:10 25:1,11 48:6,10,12,19 49:5 49:12,20 50:13 52:20 53:1,12,21 84:9
**documents** 50:22 107:16,19
**DOE** 1:6
**doing** 18:10 40:15 59:8 90:11,20 95:4 99:16 114:19
**door** 16:23 22:12 33:3,7,8,9 33:12,14 38:2,2 86:18
**drill** 62:8
**drive** 2:14 9:21 10:6
**drives** 17:2
**driveway** 16:22 26:20 27:8,18 35:14 36:8,10 52:10
**drove** 30:19 31:3
**drug** 14:20 114:14
**drugs** 86:23 112:14 113:21 114:4
**duces** 37:9
**due** 9:13 87:8
**duly** 5:6 119:14
**Dustin** 79:17,22

E

**E** 2:13 4:17 96:8,9
**earlier** 7:2 19:7 20:18 21:23 22:3 25:21 29:1 30:17 44:10 51:19 56:19 64:12 72:21 76:19 77:22 92:23 93:3 97:14 116:18
**ECF** 84:4
**Ed** 4:14
**Edition** 97:1
**Edward** 12:16
**effected** 33:2
**effectuated** 111:17
**ego** 88:2
**eight** 16:12
**either** 4:1 87:9 103:1
**eleven** 88:22
**ELEY** 2:14
**elicited** 112:12 114:15
**ELMORE** 119:3
**employed** 5:17
**enforce** 7:10,23 13:13 20:1 57:9 116:16 117:3,17
**enforcement** 34:11 39:8
**enforcing** 8:12
**enter** 66:19
**equal** 57:1,1,5
**Esquire** 2:3,8,13
**established** 23:18
**establishing** 23:16
**estimate** 9:14 70:15
**et**

1:6,11
**events**
61:15,21 62:4 86:16
**eventually**
33:10,11 37:2
**Everett**
12:22 77:19
**evidence**
3:16 85:7,16
**evidenced**
119:16
**exact**
9:18
**EXAMINATION**
4:7 5:9 80:15 86:6 88:9
**example**
6:16 10:15 54:7,16 62:10 65:6 76:1,9
**exceeding**
99:3,9
**exceeds**
95:8
**excluding**
56:22
**excuse**
30:7 50:16 79:3,21 107:18 112:2
**exhibit**
4:11,13,14,15,17 11:5 11:6 13:17,18,22 14:4,8 15:4 18:3 24:21,23 47:19,20,23 48:4 72:8,9,12,21 77:13,14,20 79:21 80:21,23 81:11 84:2 96:8,9 107:6,8,16,21
**EXHIBITS**
4:10
**expect**
89:4
**experience**
83:4
**Expires**
119:21,22
**explain**
34:6 82:12,21 87:17
**explicitly**
6:18
**eyes**
29:20

**F**

**facility**
48:15,18,22 116:19
**fact**
39:12
**facts**
73:19,20 105:20,23 106:2 112:6,12
**failed**
15:11 31:15,17 73:5 74:2
**failure**
34:5,6,10,17 36:1,5 73:6 75:2 85:23
**fair**
97:8
**fall**
7:6
**familiar**
8:15,18 39:3
**far**
57:6
**faster**
111:21
**featuring**
96:22
**Federal**
3:5,17 4:2 37:10
**feel**
43:15
**ferret**
87:22
**fewer**
43:15 44:3,22 45:19
**file**
24:5,8 106:14 108:6 108:20
**filed**
24:13 108:21
**fill**
54:22
**finally**
50:15,17 53:8
**fine**
6:6 37:7
**finish**
42:3 53:20
**finished**
24:9 100:11 106:18 111:11
**first**
5:5 12:6 13:15,21 14:6 30:2 36:21 54:1 78:11,16 79:1,2,9 110:17
**five**
12:1 90:3
**flow**
59:9
**follow-up**
88:11
**following**
60:14 92:20 119:16
**follows**
5:8
**foregoing**
119:6,8
**form**
3:12 6:17 21:15,17 41:15 43:2,8,9,19,20 45:3,4 46:9 52:6 55:23 56:14,16 57:17 57:18 58:7,8 59:1,3,6 61:5 63:17,19 64:15 64:17 66:4,12,14,21 66:23 70:22 71:15,16 72:3 75:11,20 77:8 77:10 83:22 89:16,18 90:18 91:4,5,13,14 92:5,6 93:17,18 94:6 94:7,15 97:20,22 98:21 99:2,19,21 100:23 101:6 105:3 116:21,22 117:14,23
**formality**
3:10
**forms**
54:22
**forward**
7:18
**found**
11:15 14:17
**four**
23:22 73:15 84:14
**fourth**
24:22 39:3,13 43:13
**frame**
17:19 90:2
**free**
42:21 96:23
**Freeman**
26:23 82:8
**frequent**
51:5
**frequently**
61:13
**friends**
90:5,7
**further**
3:19 86:3 88:8 118:17 118:19 119:11,14

**G**

**GENERAL**
2:9
**general's**
80:12,18 88:13,16
**getting**
39:18 101:22 102:5
**give**
9:14,17 55:1 65:5 70:15 74:22 84:20 86:12 104:13 105:12
**given**
20:3 25:22 39:12 85:11 86:11 97:10 106:12 119:9
**gives**
57:23 58:4 91:1,10 92:1
**giving**
89:6 99:23 100:6

**go**
9:1 15:19 24:22 27:19 29:5,12 37:19 38:1 39:15 40:8,10,15,21 42:4 44:23 45:6 46:23 53:13 58:21 60:8 61:1 62:6,13,22 63:5 64:6,13 65:23 66:11 86:15 90:5 93:4 94:3,12,22 95:5 104:22 107:1,15 114:7,18,20,20 115:12,16
**going**
6:12 7:15,17,18,21 11:5 13:15 15:6 24:20 29:21 37:8 40:8 45:22 47:17,18 48:8,13 52:17 53:13 62:13,16,19 63:7,16 64:3 68:16 72:7,7 80:11 90:7 91:23 92:8 93:6 94:1 96:7 98:12,15 100:1 103:21,23 104:2,10 106:23 107:15 113:23
**good**
5:11,12 53:23 60:23 115:22
**gotten**
12:11
**governmental**
10:14
**grants**
55:19
**ground**
6:10
**guess**
13:6 60:12

**H**

**Halcyon**
2:14
**Hamilton**
4:16 12:19 72:19,22
**hand**
96:6 99:7,11 107:10
**handcuffs**
33:17,18,19
**handing**
107:19
**handle**
5:22 9:18
**handling**
69:14
**happen**
103:23
**happens**
41:2
**he'll**
37:1,1
**head**
8:22 39:2
**header**
84:4
**hear**
6:14 45:11 46:21
**heard**
45:23 47:11
**hereto**
4:1
**Hey**
40:19 98:14,22
**[illegible]**
26:3,6,10,16 27:18 29:20 30:7,20 31:3,9 32:12,20 33:1,4 34:18 36:10 65:7 82:5 83:10 87:1 109:11,19 110:15 113:11,14 115:2,8
**hoc**
71:2
**hold**
25:13 98:19,22,22
**holding**
107:7,9,10,20
**home**
10:23 16:20 18:9,14 20:3 29:13 37:20 38:1,9,13,18 39:16 40:12,16 41:19 44:16 55:9,10 57:12,12 58:22 59:19,23 60:2 60:6,10,17 61:1 62:10,14,17,18 63:8 64:22 65:3 66:1,18 68:11,14,17,22 69:3 69:6,9,13 70:2,5,9,12 70:18 71:8,12,21,23 83:3 85:11,14,19 87:6 90:1 92:2 93:5 93:6,12,22 94:9,10 94:23 95:4,20 96:3,4 97:15 114:10,19 115:12,16 116:6,16 117:4,9,19 118:6,14
**homeless**
61:13
**homeowner**
23:20
**homeowner's**
24:1
**homes**
10:20 44:16,23 55:21 56:12 58:2 62:23 63:5 90:20 93:4,22 94:23 95:5 115:12
**hours**
84:14
**house**
23:10,23 27:19 40:9 68:16 90:2 91:8 92:9 93:21
**houses**
93:21
**hundred**
7:9 39:6

**I**

**I/O**
25:4 26:1 106:19 107:1
**idea**
70:17
**identification**
11:7 13:19 47:21 72:10 96:10
**identifier**
51:4
**ignore**
50:9
**III**
1:11
**illegal**
14:20 39:9,13
**immediate**
106:12
**immediately**
27:12
**important**
19:22
**incident**
107:12 108:17 109:17
**include**
68:11
**included**
113:1,4
**includes**
84:13
**including**
51:7
**independent**
10:20
**INDEX**
4:5
**individual**
14:3,7 73:9
**individuals**
12:11,12 13:6,11 42:11 64:2 80:6 95:21
**individuals'**
63:5
**information**
15:4 54:14 55:1 61:5 61:14 72:15 74:4,8,9 78:21 86:17,20 95:11 105:13 113:19
**informed**
87:8
**informs**
38:17

**initial**
32:6 62:10 63:9 105:22 106:3
**initially**
79:13
**initiated**
111:16
**inoperative**
52:10
**inquire**
90:15
**inspection**
87:7
**instance**
34:4 51:1
**instruct**
102:2
**instructed**
60:6,10 101:23
**instructing**
68:6 98:6
**instruction**
101:12
**instructor**
68:2
**instructors**
68:2,5
**instructs**
6:19
**interested**
119:12
**interpretation**
79:7
**interrupt**
59:9
**introduced**
3:22
**investigate**
95:19 115:6 118:8
**investigating**
87:15 88:5 114:3 115:4
**investigation**
74:7 87:2,20 95:12 112:21
**investigator**
5:21 6:3,4,5,7 13:5 19:18 20:23 23:2 37:19,21 42:9 45:10 48:6 52:16 53:17 57:23 60:3 61:11 62:9 67:9 80:10,17 88:11 90:15 91:18 92:20 101:17 114:23
**issue**
37:9
**issued**
110:16
**issuing**
19:8 21:9

**J**

**J**
2:3
**[redacted]**
4:14 12:8,16 14:5,6 17:4 25:5 26:15 31:12,14 33:10 82:4 83:12 108:2 114:23 115:7
**January**
67:10
**Jeffery**
79:18,22
**jmcguire@mandab...**
2:6
**job**
90:4
**John**
1:6 2:8 68:20,21,21 69:2
**Jordan**
2:18
**June**
1:22 70:7 96:13 118:23

**K**

**keep**
46:17
**Kendrick**
2:13
**kept**
51:6
**Kevin**
69:20
**kids**
64:8,10
**kind**
57:9 105:11 108:9
**Kindly**
47:6,10
**knock**
38:2
**knocked**
16:23 33:7,8
**know**
7:6 12:10,11 20:8,11 20:14 22:1,4 28:6 39:6 42:5 47:10 49:18 60:21 61:3 83:15 90:19 99:20 109:9 112:6,7
**knowledge**
32:14 69:8 108:23
**kwebb@webbeley.c...**
2:16

**L**

**land**
51:7
**Large**
1:22 3:10 119:21
**late**
85:6,19
**law**
4:17,18 13:13 20:1 23:1,14 34:11,22 35:22 36:12 38:16,23 39:8 41:5,12 57:9 60:12,14,16 81:15,20 88:5 90:7,13 96:18 96:21,22 98:4 116:3 116:9,10,15 117:2,3
**lawsuit**
48:5
**lawyer**
36:15,21 80:12 105:10 105:18 115:10
**lawyers**
80:11
**leave**
103:3,7,9
**led**
73:19,20 76:11 86:14 112:20,21,21
**left**
12:6
**left-hand**
96:14
**legal**
96:23 98:2
**let's**
35:11,12,13,17 37:18 37:21 45:17,17 62:9 65:5 67:10 104:12 109:3
**license**
51:3
**licensed**
119:15
**limited**
84:13
**line**
95:7 96:16
**listed**
10:6 11:20 12:15 14:7 15:12,15 21:21 34:9 75:16 117:6
**Listen**
46:14 104:5
**little**
14:11 28:23 64:12 106:17
**live**
26:3,6 38:3,20 39:17 40:9,19 44:17 58:3 61:17,19,22,23 62:5 63:15 64:2,7,19 81:21 95:6
**lived**
28:17 66:6 113:15
**lives**
28:6,21 66:10 92:9

**living**
10:7 22:10 26:10 28:2 58:10 60:20 62:7 64:10 66:6 74:5,5,11 74:14 82:15 86:17,21 87:3 90:21 115:1,7,8 115:21
**local**
34:11
**located**
8:20 16:23
**location**
51:5 74:12,15,16 79:4 84:22 87:10
**logged**
17:3
**long**
17:22 36:19 69:12 99:23
**longer**
50:11
**look**
78:20
**looked**
42:15
**lose**
95:15
**lot**
89:23
**LUTHER**
1:11 2:7

**M**

**making**
90:12 94:20
**management**
7:4,7
**manner**
3:23 93:13
**mark**
11:5 24:20 47:18 72:8 96:7
**marked**
11:7 13:19 24:19,21 47:21,23 72:10 96:10
**marking**
13:16 92:17
**Marshals**
10:15,18,21
**materials**
67:14
**McGuire**
1:17 2:3,4 4:7,9 5:3,10 37:4,7,13,16,18 39:20 46:4,8,11,13 46:15,20 53:13,16 56:4 59:7,10,12 67:4 81:1,4 83:22 88:10 92:16 98:5,9,11,14 98:17,20 99:1,5,7,11 99:14,16,22 100:4,10 100:14 101:17 102:7 102:10,12,16,22,23 103:5,8,11,14,16,18 103:21 104:5,21 118:17
**mean**
10:1 40:6 51:13,16 75:22 79:3 87:17 100:7
**means**
119:7
**meant**
50:4 115:11
**memorialized**
48:2
**mention**
79:21 80:2
**mentioned**
7:2 79:16 80:1,2,3 81:8 87:14 110:21
**mentions**
25:9,17
**middle**
1:2 12:7 48:5
**midnight**
16:17,18 17:12,20 20:6 41:1
**mind**
6:4 7:15 23:2 28:19 41:4 47:13 51:12,15 92:17
**minute**
20:18 30:17 62:8 101:14,15
**minutes**
17:9,10,11 20:7 22:8 41:2,9
**Mitch**
2:3 46:2
**Mitchell**
1:20 3:8 119:19
**moment**
20:18
**monitor**
42:10
**Montgomery**
1:19 2:5,10,15
**month**
75:23 111:15
**monthly**
9:15
**morning**
5:11,12 16:4 22:5 80:20 90:3
**motioning**
59:4
**mouthful**
7:14

**N**

**name**
5:13 14:2 24:1 68:5,18 72:17 77:18 79:17 119:16
**names**
11:19 12:4
**narcotics**
86:20 114:22 115:5
**narrative**
80:21 81:13 82:1 111:6
**need**
3:13 27:19,23 36:22 37:5 99:5,11 102:18
**neither**
119:11
**never**
24:13
**new**
34:10
**night**
15:19 16:8 17:17 18:18,22 22:18,20 23:4 29:9 65:9,16,19 65:20,21 76:3 83:1,6 83:20 85:6,11,20 88:23 89:5,13 90:4,6 90:8,11,16,20
**nights**
15:12,16,17 16:2 18:8 18:16 19:6 21:22 23:23 31:16 34:8 73:5,16 74:2 75:4,9 75:15,17,23,23 76:2 76:8,13,15 84:19 85:15,20
**Nine**
16:14
**noncompliant**
65:2
**normal**
83:2,3 89:4
**normally**
111:19,21
**NORTHERN**
1:3
**Notary**
1:20 3:8
**noted**
46:13,15,20
**notice**
1:16
**Notification**
7:12,17 11:16
**notify**
31:17
**number**
9:18 51:3,4 98:1,3 119:16
**numbered**
48:9,11
**numbers**
107:1

**O**

**o'clock**
16:10,12,14,16 88:22
**object**
21:15,16 41:14 43:1,7 43:9,18,20 45:2,4 46:8 52:5 55:22 56:14,15 57:16,18 58:6,8,23 59:3,5 63:17,18 64:14,17 66:3,12,13,21,22 70:21 71:14,16 72:2 75:10,19 77:7,10 83:22 89:15,18 90:18 91:3,5,12,14 92:4,6 93:16,18 94:5,7,14 95:7 97:18,21 98:20 99:1,19 100:22 101:6 105:3 116:20,22 117:13,22
**objecting**
99:21
**objection**
46:13,15,20 99:18 100:1 102:23 103:19
**objections**
3:11,12 6:15 98:18 100:21 103:22 105:5
**obligation**
55:4
**observation**
85:13
**observe**
84:17 85:5
**observed**
26:15,19 30:2,6,20 31:3,9 32:21 82:3 83:9
**occasion**
17:6,14 110:17
**occasions**
63:4
**Off-the-record**
47:22
**offender**
5:21 7:3,11,16 9:22 10:7,9 11:15 13:23 37:23 38:6,19 40:3 44:3 47:8 51:23 58:15,18 69:15 77:15 81:15,20 82:13,22 95:13
**offender's**
9:20 10:6 40:11
**offenders**
7:6 8:7 9:4,8,11 11:1 11:14 38:11 41:21 44:15,21 51:20
**offense**
107:12 108:17
**offenses**
19:20
**offered**
3:16 86:8
**office**
2:9 4:12 5:18,20,23 10:13 31:18 35:7 42:10 80:13,18 88:13 88:16
**officer**
39:8 110:10
**oftentimes**
93:3
**Oh**
103:10
**okay**
6:4,7 7:2,19 8:1,23 9:6 11:4 12:10,15 13:13 13:15 14:10 15:1,7 15:13,22 16:18 17:21 18:2 19:1,18 25:8,12 25:20 26:3 27:5 28:9 28:16,23 29:11 30:1 30:19 31:7 32:9,14 33:14 34:12,20 36:7 36:15,23 37:6,12,15 37:17,20 39:12 44:8 45:17,21 46:11 47:10 48:10 49:21 50:6,14 51:9 52:9,21 53:2,8 53:20,23 54:7,13 55:18 56:3 57:7 58:20 59:7,10 61:8 63:3,11 64:20 68:11 68:18 71:6 73:8,23 76:7 77:12 78:9,20 80:10 81:6 89:8 91:18,23 92:15 93:11 94:10,19 95:3,14,16 96:1 97:3 99:22 101:17 104:20 106:17 107:15 108:19 109:3,13 110:13 112:2 113:18 115:3,10
**once**
61:4 110:10
**Online**
96:23
**open**
14:21 24:10,11
**opened**
87:2
**opening**
87:19
**opinion**
23:16 39:15 85:21
**opportunity**
86:11,12 101:20 105:11
**options**
103:12,16
**order**
12:15 13:9
**outside**
62:3 94:10,20 95:4 118:3,10,13
**outstanding**
33:20,22 34:2
**overnight**
49:7,11 76:12
**owns**
35:8

**P**

**p.m**
16:16 20:6,12 26:15 26:21 27:7 30:4,12 40:23 82:3,7,14,19 82:23 83:1 84:18,19 85:11,14
**page**
4:7,10 13:21 24:22,23 26:9 31:14 48:11 49:5,15,15,18 50:7 50:16,17,17,19,20 52:16,17 53:9,10 72:11 77:13,13 81:11 84:4,5,6 96:11,12
**pages**
48:9 107:8
**paper**
9:20
**paragraph**
113:5
**paraphernalia**
14:20
**parked**
16:21 26:20
**parking**
34:23
**parole**
42:6,12,17
**part**
5:22 7:9 42:8 50:11 63:9 89:10 95:22 107:7,20 114:3,6
**partial**
112:3
**participated**
67:9
**particular**
20:1 21:13 34:3 50:23 64:3 80:4
**particularly**
88:21 117:3,18
**parties**
3:4,21 119:12
**parts**
95:15
**party**
4:1
**pass**
80:11

**Paul**
4:16 12:7,19 72:19,22 74:11,14
**Paula**
2:18
**pending**
36:4
**people**
42:4 81:14 85:2 89:4
**percent**
39:7
**perform**
95:20
**permanent**
51:5
**person**
54:13 83:3,4 84:21 85:8,16,22 90:1
**person's**
82:18
**personal**
35:18 51:7,16,17 52:1 52:11 66:9,18 87:16 87:18 115:11
**persons**
11:20,21,22 44:9 79:17
**physically**
60:23
**pictures**
12:1
**pills**
14:21
**place**
84:14
**placed**
33:17,18,18
**places**
29:16
**Plaintiffs**
1:7,17 2:3
**plaintiffs'**
4:11,13,14,15,17 11:5 11:6 13:16,18 46:19 47:18,20 72:8,9,11 72:11 96:8,9
**plan**
70:9,12 71:7,20
**plate**
51:3
**please**
5:13 47:14 51:2 52:19 52:23 84:3 86:15 87:16 89:12 100:15 104:13
**point**
32:15 55:18 58:20 89:9,10,11 91:1
**Pointe**
2:14
**police**
24:8,13 73:11 80:22 81:10 82:1
**possession**
14:19,20
**possible**
79:6 108:19
**possibly**
115:1
**posting**
4:13,16 13:22 14:3 72:13 77:14,21,22 78:20 80:4
**potential**
88:6
**prescription**
14:21
**present**
2:18 67:11
**pretty**
29:21
**prevents**
23:3 91:21
**printed**
96:13
**prior**
43:3 62:16,19 65:3 100:21
**privilege**
101:23 102:6
**probable**
65:22 66:10,19 85:22
**probably**
37:8
**probation**
42:6,12,17 78:6,7,11 79:8
**Procedure**
3:6,18 4:2 37:11
**produce**
36:16,20 37:1
**prohibits**
34:22
**proof**
39:16
**proper**
103:18
**property**
27:21 28:1,5,11,18,20 66:20
**prove**
28:16,20 38:3,20 44:17 58:3 61:17
**provide**
85:21
**provided**
3:17 4:1 23:20
**provides**
71:12 85:16
**provision**
34:22 49:2 55:18 56:10 57:11 58:20 71:11,22 89:10 91:9 92:1
**provisions**
8:4,11,15 53:5 54:10 67:12 118:14
**public**
1:21 3:9 42:16
**pulled**
15:2
**purely**
97:16
**purportedly**
112:20
**purpose**
3:17 97:14 99:15
**purposes**
84:8
**pursuant**
1:16 3:5 25:20 37:9
**put**
29:20 45:17 113:10,13

**Q**

**quarter**
61:4
**quarterly**
54:16 55:4 61:12
**question**
6:17,19 25:13,14,16 31:1 32:4 39:21 40:2 44:6 45:11,14,18 46:1,21 47:3,6,12,13 48:20 56:5,7 57:8,22 59:9,14 63:9,21 66:16 67:2,5,5,7 75:6 87:15 91:19 92:10,13 92:18 95:16 97:5 98:9 100:13,14,19 101:5,13 102:1,10 103:2,2 104:13,15,17 104:22 105:2,4,6 106:1 115:14
**questioning**
95:8
**questions**
3:11,13 6:13,14,20 19:23 29:6,8 34:21 80:13,19,21 81:10,12 86:4 88:8,12,12,19 89:3 100:2 102:16,17 104:9 105:10,17 118:18,20,21 119:7
**quickly**
36:19
**quit**
46:6

**R**

**random**
70:19 71:3 87:6
**read**
48:16 49:16 51:1,10

52:18,22 53:10,22 54:1,5 56:4
**reading**
51:18 116:13,17
**reads**
40:1 56:6 59:13 67:6 100:18 101:4 104:14 105:1
**really**
39:6
**reason**
33:19 38:8,13 41:18 41:22 57:7 62:17 63:13 64:1,20 65:1 65:12,17 76:23 77:3 77:11 84:20 95:3 96:1 97:9,16 114:20
**reasons**
118:3,5,10,13
**recall**
16:3 32:8 68:8,13 69:23 70:1,8 78:8 93:7 104:17 105:17 112:14 115:13
**receive**
74:9
**received**
59:19 62:20 63:6 74:4 74:8 86:17,19,22
**receiving**
62:23
**recess**
53:15 81:7 101:16
**recognize**
11:8 24:23 44:9
**record**
5:14 53:17 101:18,19 106:11 108:22,23
**recorded**
45:21
**recording**
46:18 100:17
**records**
15:2 42:16
**redirect**
95:9 99:6,13
**refer**
6:5 7:18,21 9:23 18:2 48:10,13 50:6 78:19
**referring**
7:22 10:22 48:8 60:16 63:4 108:10
**reflects**
32:10
**refusing**
92:10
**regard**
7:23
**regarding**
8:12 32:12 106:16
**register**
34:5,6,10,18 35:5,6,9 35:11,15,19 36:2,5 73:6
**registered**
8:7 9:4,8,11 11:1 13:23 15:12,15 21:21 27:1 30:13 31:11,16 37:23 38:6,11,19 40:11 41:20 44:2,21 51:20,23 58:15 60:20 60:22 75:9 76:14 77:15 81:16,21 82:9 82:14,18,23 83:11,18 84:18 85:23 89:13 115:9
**registrant**
20:2 34:23 35:8 40:17 41:2 52:12 62:11 65:2 66:9 72:14,18 76:1,7 83:17 85:14 89:12 90:16
**registrant's**
35:3 40:23 62:14,16 64:5 66:11,20 77:18
**registrants**
7:23 8:5,12 12:13 15:3 38:10 41:22 54:4,15 54:19 56:21,23 57:13 58:1 61:3,16 63:15 71:9,13 75:8,14 96:3
**registrants'**
10:20 55:11,14,21 62:22 88:21 93:4,21 94:23 95:5 115:12
**registration**
7:11,16 51:3 61:15 62:3 79:14 81:15,20
**regular**
40:3 44:10,14 45:20 47:7,9
**regulate**
8:5
**Regulation**
11:16
**relates**
42:19 117:4
**relation**
119:11
**remember**
88:19 89:5 114:8
**repeat**
31:1 32:4 39:20,23 46:1 47:6,11 59:11 60:13 63:22 66:16 67:4 93:19 100:14 101:2 104:23 109:16
**report**
24:8,13 25:4,6,8,17,19 26:2,8 27:6 30:2 31:2,7,21 51:21 52:2 52:13 55:4 61:5,13 73:11 80:22 81:10 82:2 83:8,13,19 105:22 106:3,6,8,11 106:15,19 107:1,2,12 107:13 108:4,5,6,9 108:12,17,18,20,21 109:7,9,13,17,20 111:7,10,15 112:4,9 112:17 113:2,5 114:17
**reporter**
1:20 3:8 5:1 40:1 46:17 56:6 59:5,13 67:6 100:18 101:4 104:14 105:1 119:15 119:20
**REPORTER'S**
119:1
**reporting**
54:17 61:20 119:15
**reports**
106:14,19 107:3 108:1 108:11,16 110:22 111:4
**represent**
15:1 42:20 48:1 50:19 56:9
**representation**
32:9 42:14 56:13 57:10,14 71:10 92:23 93:2
**representing**
3:3,20
**represents**
11:14 119:8
**requested**
105:2
**require**
38:19 42:10 62:4 85:10
**required**
6:20 20:20 21:1,4 51:21 52:2,12 56:23 61:4 81:15,20 104:7 104:8,9 115:19,23
**requirement**
61:16 75:7,13
**requirements**
54:3,17
**requires**
57:12 58:21 60:17 89:12 91:19 95:19 116:2,3,9
**requiring**
79:14
**reserved**
3:14
**reside**
49:17,17,23 50:4 81:16 84:8,12 85:23 88:17 117:6
**residence**

17:7,23 19:5 20:6,9 20:21 22:10 23:17,19 27:13 30:21 31:4 35:1 38:21 39:17 50:8 57:6 63:16 64:13 65:10,14,18,23 73:17 74:19 76:2,12 82:23 83:5 84:18 85:2,6 89:13 94:13 114:8,18,21 117:11
**residency**
8:19 19:16 34:13 54:3 75:2 116:13 117:17 117:20
**resident**
37:22
**residents**
88:21 96:2
**residing**
84:21 85:8,17 87:10
**respect**
36:13 86:10 87:5
**responsibilities**
42:8
**responsibility**
7:10 87:22
**responsible**
7:3 8:11 54:14
**restate**
100:20
**restricted**
22:17
**restrictions**
8:19 19:16 34:13 45:9 47:16 56:20,22 57:6 116:13 117:18,21
**result**
116:17 119:12
**return**
55:7 76:3 104:12
**review**
53:11,18 89:8
**reviewed**
49:22 77:22 88:15
**reviewing**
49:19 50:20
**reviews**
25:11 48:19 49:12,20 50:13,22 52:20 53:1 53:12,21 84:9
**revisions**
48:2
**RICHARDSON**
2:8
**right**
8:3,21 12:6,9 16:3 27:5 30:11 37:18 52:22 55:3,7 58:1,4 78:12 110:18 113:2
**rights**
43:5,13,16,16,23 44:4 44:11,22 45:19 47:8 47:15 57:1,2,5
**[redacted]**
16:21 18:5,20 26:4,6 26:10,16 27:18 29:20 30:7,20 31:3,9 32:12 32:20 33:1,4 34:18 36:10 65:8 82:5 83:10 87:1,4 109:11 109:20 110:15 113:11,14 115:2,8,9
**Roughly**
17:9
**row**
85:21
**rule**
37:10 99:8,14 104:7
**rules**
3:6,18 4:2 6:11,22 37:10
**ruling**
3:14

**S**

**sat**
6:8
**save**
100:16
**saw**
23:6 27:17 29:1 36:7,9 65:7 74:15 110:14
113:11,14
**saying**
23:21 76:21 91:21 111:3 114:8
**says**
39:1 96:17,21 97:4,8
**scenario**
95:22
**schedule**
9:13 70:14
**scope**
95:8 99:4,13
**search**
39:9 40:8,11
**searches**
39:14
**searching**
40:13
**second**
81:2 97:1 101:8 108:20
**section**
52:18 53:5,11,18 54:4 89:9
**sections**
53:23
**see**
17:2 23:9 27:15,20 29:13 39:22 49:7 82:13,22 83:17 84:5 87:3 90:7 92:9,19 96:12,16,19 97:1,3,5 97:7 106:15 107:3 108:16,17,18 113:15 115:6
**seeing**
29:11 65:9
**seek**
39:16 101:12
**seen**
22:17,19 28:13
**seizure**
39:10
**seizures**
39:14
**selling**
86:23 112:13 114:3 115:5
**send**
102:19
**sentence**
84:12 89:11
**separate**
72:22
**series**
6:13 88:19 89:2
**Service**
10:21
**sessions**
67:15,18
**set**
39:12 95:15
**seven**
16:10
**sex**
5:21 7:3,6,10,16 8:7 9:4,8,11,20,22 10:6,7 10:9 11:1,14,15 13:23 37:23 38:6,11 38:19 40:3,11 41:20 44:2,15,21 47:8 51:20,23 58:15,18 69:15 77:15 78:21 81:14,19 82:13,22 95:12
**shakes**
39:2
**Sharon**
69:21
**Shearon**
68:20,21,21 69:2,8,16 69:21,22
**Shelby**
78:16 79:5,9
**sheriff**
68:18 69:8,16,16,19 69:21,22 88:1,2
**sheriff's**
4:11 5:18,20,22 10:12 31:18 35:7 42:10 77:21 87:21
**shift**

90:4
**Short**
53:15 81:7 101:16
**Shorthand**
1:20 3:8
**show**
11:4 13:15 21:5 38:1 38:18 44:16 47:17 55:20 56:11 58:1 72:7 93:20 96:2
**showed**
21:2
**showing**
24:19 88:20
**shows**
12:16,19
**side**
16:21 115:6
**signed**
110:8
**signing**
112:22
**similar**
73:20,22
**sir**
7:20 8:2 10:3 12:18 13:4 16:5,7,11,13 17:15 18:1,12,15,23 20:10,13,13,16 25:7 29:10 47:6,10,14 76:6
**sitting**
23:14 35:14 52:9
**sixty**
7:9
**sleeping**
23:9
**slept**
76:12
**Smith**
2:19 79:17,22
**Smitherman**
31:8,10 83:9,10,16
**sodomy**
78:4,11,16 79:1,2,9
**sole**
19:19 21:9 41:21 77:5
**solely**
38:9
**solid**
97:8
**somebody**
23:14 33:11 73:13 81:19
**SORNA**
4:12 15:9 23:12 32:16 33:21,23 34:3 72:23 73:3
**sorry**
25:4,7,12 30:23 31:1 59:6 78:10,10 110:7
**sort**
89:6
**sources**
87:9
**speak**
5:6 101:20
**speaking**
10:2 98:17 99:17,23 103:22 108:5
**speaks**
89:19
**specific**
20:19
**specifically**
8:18 9:1 48:13 71:22
**specifics**
65:5 74:22
**spend**
15:11 31:15 73:5 74:2 75:2,8,14 76:1,8
**spending**
84:13
**spent**
17:7 23:22 73:15
**spoke**
30:17
**STABLER**
2:7
**STAN**
2:7
**standing**
23:3,5,7 26:16 27:8,17 29:1,11 30:6 65:7 82:4 109:10,19 110:14
**start**
15:6
**started**
24:9 69:14 74:6 87:7 114:22
**Starting**
12:6
**state**
1:21 2:9 3:9 5:13 82:2 82:7 88:5 119:2,20
**state's**
81:14
**stated**
56:19
**statement**
23:21 24:3,5,14 25:22 36:16 52:4 73:14 81:13 82:1
**states**
1:1 14:12 39:4 83:8,13
**stating**
24:14
**statute**
7:22 8:1,5,10,13,20 35:4 41:23 50:11 55:19 71:11 84:3 90:23 117:7 118:4,11
**staying**
22:15 87:10
**stenotype**
119:7
**stipulated**
3:2,19
**stipulation**
1:16
**stipulations**
3:1 5:2
**stop**
14:15,16 27:5 81:1 110:11
**stopped**
14:13
**STRANGE**
1:11 2:7
**Street**
1:18 2:4 87:1
**stricken**
50:12
**Strike**
106:13
**strike-through**
50:9
**strike-throughs**
50:10
**stuff**
9:19
**subject**
35:3 81:14,19
**submitted**
48:4 112:3
**subpoena**
37:9 102:19
**subsection**
48:14 49:6,16,22 50:7 50:21 51:2,9,18 52:18 84:6,7,11
**Subsections**
52:23 53:6
**subsequent**
32:3 78:4
**substance**
14:16,19
**substantial**
93:14 94:2,12,22 97:9
**summary**
80:22
**supported**
97:8
**supportive**
69:9
**supposed**
20:2 64:8
**sure**
6:11 8:21 10:9 13:10 13:14 28:2 32:13 36:18,23 37:4 39:7 41:16 45:11 60:19 62:6 67:19 90:12

94:18,20 95:14 101:9 101:15 109:2 113:7
**surrounding**
105:13
**suspect**
41:11
**suspected**
113:20
**suspicions**
112:13
**sweet**
104:7
**sworn**
5:6 25:22 73:14

**T**

**table**
106:7,9
**take**
7:15 15:16 36:19,20 65:6 92:22 101:7,14 101:15
**taken**
1:15 3:5,7 119:6
**talk**
13:5,8 14:10 37:19 46:2 101:10,11 108:10 109:3,9
**talked**
111:2 115:10
**talking**
46:5 79:19 111:1
**tecum**
37:9
**tell**
5:16 9:6 11:10,13,19 14:2 15:22 18:3 23:18 48:16 67:17,21 68:1 72:17 73:3 74:15,18 78:21 79:3 103:1,6 107:6,8,18
**telling**
61:23 66:8,17 103:9,9 104:6 114:23
**ten**
16:16,17,18 17:11,20 75:23 90:2
**term**
50:3 84:12 117:6,11
**terms**
8:10 51:21
**test**
45:18
**testified**
5:8 19:7 20:17 21:23 22:3 23:6 28:23 114:16
**testify**
22:9
**testimony**
19:2 25:21 71:6,19 79:11 86:9,13 89:6 93:3,7 100:7 119:9
**Thank**
8:3
**thereto**
119:7
**things**
15:5 87:15 95:17
**think**
29:4 40:14 53:19
**third**
15:19 17:16 18:18,22 76:3 84:12
**three**
12:2,5 15:11,16 17:9 17:10,11 19:5 20:7 21:22 22:7 31:15 34:8 41:1,9 65:19 73:5 74:2,19 75:2,3,8 75:14,17,22 76:8,13 76:15 84:15 85:6,15 85:20 110:2
**three-**
30:16
**three-minute**
76:18
**threshold**
66:20
**time**
3:14,15 9:6 12:12 17:6 17:17,19 20:2,9,19 24:18 25:6 29:5,16 32:5 41:3 63:22 64:23 65:15,16 69:17 69:19 80:10 83:15 84:1 89:22 90:2 101:3 108:20 110:14 111:13,14 112:10 113:3,9,10,13,19,21 118:18
**timeline**
86:16 89:21
**times**
9:15 15:23 16:1,3 17:1 22:18,20 83:2,2,5 85:3 108:13 109:23 110:3
**title**
5:19 6:3
**today**
72:21 100:2,9 103:22 112:6 114:15,16
**told**
74:13,23
**top**
8:22 12:1 48:9,12 84:5 96:11,11,13,16
**topics**
68:8,11
**total**
17:6
**traffic**
14:13,15,16 110:11
**trained**
39:9 59:22 68:14
**training**
38:17 59:19 67:11,14 67:15,18 68:9
**transcribed**
119:7
**transcript**
119:6,9
**transcription**
119:8
**treat**
100:8 104:3
**treating**
100:8
**trial**
3:22
**true**
20:23 21:2,6,14 26:9 26:12 31:23 52:13 55:12,16 77:16 93:9 93:15 108:3 109:15 109:21 113:6 119:8
**truth**
5:7,7,8
**truthfully**
6:21
**trying**
39:19 57:21 61:10 64:1
**Tucker**
4:16 12:7,19 72:19,22 74:1,11,14,16,18 75:1 76:9,11,21
**Tucker's**
76:10
**turn**
48:7 81:11 84:2,4
**turned**
80:8
**twelve**
41:1
**two**
9:9 12:1 15:17 16:1,2 17:9,10,10 18:8,8,16 20:7 22:7 28:12 29:16 41:1,8 72:22 76:2 84:19 87:8 98:3 106:23 107:3,8,19 108:13,16 110:5
**two-**
30:16 76:18
**typical**
83:4
**typically**
85:2

**U**

**U.S**
10:15,17,21

**unannounced**
55:12,20 56:11 58:2 64:4
**understand**
6:12,22 10:1 19:3 39:22 40:22 44:5 45:7,14,23 47:3 49:2 51:9 61:11 63:20 67:1 100:5 102:22 105:4,6 112:3
**understanding**
10:4 13:12 35:22 48:17,21 49:10 50:3 53:4 54:2 78:14 89:9 101:7 116:10,11,12 116:15 117:2,5,11,20 118:4,10
**understood**
45:23 47:11 54:11
**uninvited**
55:15,21 56:11 58:2 64:4
**United**
1:1 39:4
**unlawful**
76:5
**unsupported**
98:3
**use**
35:12,17,18,18 51:7 51:16 52:1,2,11 114:14,17
**Usual**
5:1
**usually**
17:2

**V**

**vehicle**
35:5,6,8,15,19 36:2,5 51:6,12,14,15,17 52:1,9
**vehicles**
28:12 36:7 51:6,8,21
**Verbena**
18:5 28:3
**verify**
10:7 27:21,23 40:9 58:10 60:8,14,18 61:19,22 62:4 64:2,6 64:9,19 66:6,9 82:15 87:2 90:21 115:20
**verifying**
40:19
**view**
57:9
**violated**
15:10 79:8
**violation**
10:10 11:15 14:13,14 14:18 15:9 19:12,15 21:14 23:12 32:16 33:21,23 34:3,13 36:12 41:4,7,11 54:9 75:1 78:6,7,11,15 94:1
**violations**
72:23 73:4 93:6
**visit**
49:7,11 90:6 94:9,10
**visits**
16:19 30:17 90:1
**vs**
1:9

**W**

**walk**
33:3
**walked**
16:21
**want**
6:10 8:23 11:4 13:5,10 14:10 15:1,5 18:2 19:1,23 24:22 25:14 25:15 27:5 34:20 39:22 40:22 41:16 42:20 45:10 48:1 49:4,14 50:6,15,18 50:19 52:15 55:7 57:7,8 64:6,9 77:12 78:3,19 92:19,21,22 94:11 95:14 96:6,6 100:7,16 111:23 112:2
**wanted**
86:9,11 115:5
**wanting**
95:20
**warrant**
19:8 21:10 33:21,22 34:2 111:16 112:22
**warrants**
110:9,12,13,16
**Washington**
2:10
**wasn't**
21:1,4 22:9,10 76:22 87:18 113:23
**watercraft**
51:8
**way**
13:7 40:21 44:8 50:8 60:21 63:23 67:17 69:12 100:8 104:3,4 111:19 116:16 117:3 117:17,18
**we're**
13:16 15:6 24:20 41:16 47:18 48:8 53:13,16,19 72:7 96:7 98:10,11,14 101:18 108:5
**we've**
24:21
**Webb**
2:13,14 4:8 5:4 21:15 36:22 37:5,12,15 43:9,20,22 45:4,6 46:2,5,10,12,14,16 46:23 56:14 57:18 58:8 59:3,8,15 63:17 64:17 66:12,21 71:16 77:10 79:19 86:5,7 88:8 89:18 90:18 91:5,14 92:6 93:18 94:7 95:7 97:18,20 98:1,8,10,13,16,19 98:22 99:3,6,9,13,15 99:20 100:3,5,11,16 100:20 101:6 102:2,9 102:11,15 103:4,6,10 103:13,15,17,20 104:2 105:3,5 116:22 118:21
**website**
4:13,16 11:11 13:22 72:15 77:14,21
**week**
70:3,6,10,11
**weeks**
9:9
**went**
15:15,23 16:1,2 17:18 18:7,9,13,19,21 19:6 20:5 23:11 27:1,12 30:13 31:7,10 32:20 65:10 82:8,18 83:11 83:16,20 89:2 113:14
**weren't**
110:22
**West**
26:11
**whatsoever**
95:3 96:1 118:13
**Whitehead**
12:9,22 77:19 78:2,5 78:22 79:7
**Whoa**
98:19
**wish**
66:9
**witness**
25:11 39:2 48:19 49:12,20 50:13,22 52:20 53:1,12,21 84:9 101:2 106:21 111:7 119:9
**witnessed**
27:7 109:18
**witnessing**
109:10
**word**
89:11
**words**

50:10 96:16
**work**
35:17 51:7,13,14 52:1 52:11 111:19,21
**work-related**
87:19
**working**
24:12 53:19
**works**
90:4
**write**
31:2 113:22,23
**written**
23:21 24:3,5 112:16
**wrong**
79:9
**wrote**
26:8 27:6 31:21 54:5 83:19 105:22 106:3

**X**

**Y**

**yard**
22:18,19 23:4,5,7 26:16 27:11,12 29:2 29:12 30:3,7 52:10 65:8,9 82:4 109:19 110:15
**yeah**
50:17 52:8 56:18 57:20 87:18 100:11 103:10
**year**
67:20

**Z**

**zone**
22:17

**0**

**1**

**1**
1:6 67:10 72:11
**10**
20:6 40:23 49:5
**10:30**
26:15 30:4 82:3 84:18
**10:52**
118:23
**[redacted]**
26:6,16 27:18 30:7,19 31:3,9 32:20 33:1,4 34:18 82:5 83:9 86:23 115:2,7
**11**
4:11 49:15 70:7 84:4,6 85:14
**11:11**
30:12 82:19 83:1 84:19 85:11
**11:42**
26:21 27:7 29:2 82:7 82:14,23
**110-1**
48:6
**12**
49:18 50:7
**12/15/21**
119:22
**12:01**
20:15 22:4
**12387**
18:5
**13**
4:13
**14**
49:6
**15-20A-10**
52:18 53:6
**15-20A-11**
8:20 53:11,18 54:5,10
**15-20A-7**
50:21
**16-hour**
67:19 68:8
**160**
7:8
**17**
30:8 82:2 111:8
**17th**
26:14 30:3
**18**
30:12
**18th**
31:5,6 82:17
**19**
30:21 31:8
**19th**
31:5 83:8,21

**2**

**2**
77:13,13
**2:15-CV-606-WKW**
1:9
**20**
49:16,22 84:6,11 89:9
**2014**
69:14
**2017**
67:10
**2017-414**
4:15 48:3
**2018**
1:22 13:2 30:3,8,12,21 31:8 43:4 53:4 70:7 77:23 82:3 96:13 110:4 118:23
**21**
50:7
**22**
43:4 50:16,17,19,20 53:4
**22nd**
32:3,7,11 109:3,6,8,14 109:21 110:19 111:9 111:17 112:4
**231**
119:21
**23rd**
12:20
**24**
77:23
**24th**
12:23
**29**
1:22 52:16,17 96:13
118:23

**3**

**3**
48:14 81:11
**31**
1:18 2:4
**32**
53:9
**334.242.7997**
2:11
**334.262.1850**
2:15
**334.517.1000**
2:5
**36**
53:10
**36091**
18:6
**36104**
2:5
**36117**
2:15
**36130**
2:10

**4**

**4**
24:22 26:9
**45**
37:10 99:8,14
**47**
4:14

**5**

**5**
4:7
**5/22**
12:17
**501**
2:10
**59**
18:5,20 87:4 115:9

**6**

**6/29/18**

4:17
**6/4/18**
4:12

7

**7**
50:21 51:2
**72**
4:15
**7475**
2:14

8

**8**
48:11
**8:05**
1:23
**80**
4:8
**86**
4:8
**88**
4:9 48:11 49:5

9

**9/30/18**
119:21
**9:50**
20:12 22:1
**96**
4:17




Clanton, Alabama







HOME | INMATE ROSTER | MOST WANTED | PRESS RELEASES | SEX OFFENDERS | CONTACT US

SERVICES

- Administration
- Calendar
- Corrections
- County Stats
- Courthouse Security
- Criminal Investigation
- Employment
- FAQ
- Office Staff
- Patrol
- Pistol Permits
- Project Lifesaver
- Reserve Deputy
- Special Operation
- Victims Advocate

Crime Tips HOTline
205-755-7898
or Submit Via Email

Main Phone:
(205) 755-4698

Main Fax:
(205) 280-7245

Jail Phone:
(205) 755-1053

Jail Fax:
(205) 280-1580

After Hours (Dispatch):
(205) 755-1120
(24 Hours)

Emergency:
Dial 911

Email Map

500 2nd Avenue North
Clanton, AL 35045

Administrative
Office Hours:
M-F 8:00am - 4:00pm

06/04/2018

## Sex Offenders Arrested during Sorna Compliance Check









Throughout the last week of May 2018, Investigator Derrick Bone conducted nightly sex offender compliance checks within Chilton County. During the checks Investigator Bone found five sex offenders to be in violation of the Sex Offender Regulation and Notification Act (SORNA).

On 5-22-2018 J[redacted] E[redacted] B[redacted] was stopped for a traffic violation and was arrested for Sorna Violation, during the traffic stop a controlled substance was also found. Along with the Sorna Violation Benjamin was arrested for possession of a controlled substance, drug paraphernalia, illegal possession of prescription pills, and open container.

5-23-2018 Paul Hamilton Tucker was arrested for a bond revocation, this was from two separate Sorna Violations within Chilton County.

5-24-2018 Daniel Everett Whitehead was arrested for Probation Violation on sodomy 1st out of Shelby Co., he was transferred to Shelby Co. Jail.

Investigator Bone has signed warrants on Dustin Christopher Smith for 2 Sorna Violations. Smith moved without notifying Investigator Bone.

Warrants have also been issued on Jeffery Windell Defee for 2 Sorna Violations for moving without notifying Investigator Bone.

The last known address for Smith and Defee was on 40 County Road 374 Clanton, Al.

If you have any information on the whereabouts of Smith or Deffee, please notify the Sheriff's Office. You can submit anonymous tips on our page or call our Crime Tips Hotline (205-755-7898).

I would like to thank Investigator Bone for his tireless efforts in coordinating these checks. We continue to fight all types of crimes throughout Chilton County and Investigator Bone does a fantastic job managing the 160 sex offenders we have here.

If Dustin or Jeffery are reading this, you have been warned. We are not only searching for the two of you here, we have friends everywhere that have your pictures and know exactly what you look like. Turn yourselves in or we will find you.

Sheriff John Shearon



# Alabama Law Enforcement Agency
# Community Information Center

Home Search Sex Offender Information Services Home

**Criminal Sex Offender Information**

**Current Picture**



**Name:** TUCKER, PAUL HAMILTON
**Status:** Compliant
**Race:** White
**Sex:** Male
**Date Of Birth:** 
**Current Age:** 48 Year(s)
**Height:** 6' 0"
**Weight:** 180 lbs.
**Eye Color:** Brown
**Hair Color:** Brown
**Release Date:**

**Physical Address**

**Current Address:**
JEMISON, AL 35085 United States of America (the)
Chilton County
**Address is Temporary:** No
**Address Last Verified:** 10/05/2017
**Registration Date:** 10/03/2017
**Google Map:** 




**Crime Information**

**Date of Arrest:** 06/12/1998
**Conviction Date:** 08/13/1999
**Sex Crime:** Incest
**Crime Location:** Shelby County, AL
**Crime Country:** United States of America (the)
**Description:**
**UCR Code:** XX, Unknown

**Scars, Marks & Tattoos**

Scars, Chest - Scar on left ribcage
Tattoos, Arm, left upper - Gloria
Tattoos, Arm, right - Heart

**Alias Names**

None Reported

**Schools Attending**

None Reported

**Victim Information**

None Reported

**Vehicle Information**

**Vehicle:** 0 Unknown None Reported
**Tag:** Unknown
**Color:** Unknown

**Work Information**

**Occupation:** Disabled
**Work Address:**

**Special Notes**

Due to time delays in processing sex offender data, this information should be verified with the appropriate Sheriff's Office or Chief of Police.

**Disclaimer: Contact local law enforcement for more information.**

**Comments/Information**

If you would like to leave a comment with us or inform us of some issue with this offender. If you require a response please enter your email address as well.
Your Email:



# Alabama Law Enforcement Agency
# Community Information Center

Home Search Sex Offender Information Services Home

## Criminal Sex Offender Information

Current Picture

**Name:** WHITEHEAD, DANIEL EVERETT
**Status:** Compliant
**Race:** White
**Sex:** Male
**Date Of Birth:** [redacted]
**Current Age:** 64 Year(s)
**Height:** 6' 0"
**Weight:** 250 lbs.
**Eye Color:** Hazel
**Hair Color:** Brown
**Release Date:**

## Physical Address

**Current Address:** [redacted]
MONTEVALLO, AL 35115 United States of America (the)
Chilton County
**Address is Temporary:** No
**Address Last Verified:** 04/07/2017
**Registration Date:** 09/05/2014
**Google Map:**

## Crime Information

**Date of Arrest:** 11/02/2012
**Conviction Date:** 09/02/2014
**Sex Crime:** Sodomy 1st
**Crime Location:** Shelby County, AL
**Crime Country:** United States of America (the)
**Description:**
**UCR Code:** XX, Unknown

## Scars, Marks & Tattoos

Tattoos, Shoulder, right - Eagle and Lion
Tattoos, Chest - Heart and Turtle

## Alias Names

None Reported

## Schools Attending

None Reported

## Victim Information

None Reported

## Vehicle Information

**Vehicle:** 1998 Mercury Marquis
**Tag:** Unknown 14AN906
**Color:** Blue, Light

## Work Information

None Reported

## Special Notes

Due to time delays in processing sex offender data, this information should be verified with the appropriate Sheriff's Office or Chief of Police.

**Disclaimer: Contact local law enforcement for more information.**

## Comments/Information

If you would like to leave a comment with us or inform us of some issue with this offender. If you require a response please enter your email address as well.

Your Email:

Your Comments:



# Alabama Law Enforcement Agency
# Community Information Center

Home Search Sex Offender Information Services Home

**Criminal Sex Offender Information**

**Name:** SMITH, DUSTIN C
**Status:** Compliant
**Race:** White
**Sex:** Male
**Date Of Birth:** [redacted]
**Current Age:** 33 Year(s)
**Height:** 2' 8"
**Weight:** 140 lbs.
**Eye Color:** Blue
**Hair Color:** Blonde or Strawberry
**Release Date:** 01/20/2018

**Current Picture**

**Physical Address**

**Current Address:** [redacted]
CLANTON, AL 35045 United States of America (the)
Chilton County

**Address is Temporary:** No
**Address Last Verified:** 01/23/2018
**Registration Date:** 11/17/2017
**Google Map:**

**Crime Information**

**Date of Arrest:** 08/16/2010
**Conviction Date:** 08/13/2010
**Sex Crime:** Sexual Abuse With a Child Less Than 12
**Crime Location:** Autauga County, AL
**Crime Country:** United States of America (the)
**Description:**
**UCR Code:** XX, Unknown

**Scars, Marks & Tattoos**
None Reported

**Alias Names**
None Reported

**Schools Attending**
None Reported

**Victim Information**
**Gender:** Female
**Age:** 0

**Vehicle Information**
None Reported

**Work Information**
None Reported

**Special Notes**
Due to time delays in processing sex offender data, this information should be verified with the appropriate Sheriff's Office or Chief of Police.

**Disclaimer: Contact local law enforcement for more information.**

**Comments/Information**
If you would like to leave a comment with us or inform us of some issue with this offender. If you require a response please enter your email address as well.
Your Email:

Your Comments:




# Alabama Law Enforcement Agency
# Community Information Center



**Criminal Sex Offender Information**

**Current Picture**

**Name:** DEFEE, JEFFERY WINDELL
**Status:** Compliant
**Race:** White
**Sex:** Male
**Date Of Birth:**
**Current Age:** 44 Year(s)
**Height:** 5' 2"
**Weight:** 130 lbs.
**Eye Color:** Brown
**Hair Color:** Brown
**Release Date:** 03/26/2018

**Physical Address**

**Current Address:** 
CLANTON, AL 35045 United States of America (the)
Chilton County
**Address is Temporary:** No
**Address Last Verified:**
**Registration Date:** 03/29/2018
**Google Map:** 

**Crime Information**

**Date of Arrest:** 09/04/1992
**Conviction Date:** 09/04/1992
**Sex Crime:** Rape 2nd
**Crime Location:** Montgomery County, AL
**Crime Country:** United States of America (the)
**Description:** Victim was a fourteen year old female
**UCR Code:** XX, Unknown

**Scars, Marks & Tattoos**

Tattoos, Arm, right - Skull

**Alias Names**

DEFEE, JEFFERY
DEFEE, JEFFREY W
TEW, RICKY
DEFEE, J WINDELL
DEFEE, JEFFERY WINDALL
DEFEE, SHORTIE
DEFEE, JEFFREY
DEFEE, JEFFERY WINDELL
DEFEE, JEFF
TEW, RICKEY

**Schools Attending**

None Reported

**Victim Information**

**Gender:** Female
**Age:** 14

**Vehicle Information**

None Reported

**Work Information**

**Occupation:** Unemployed
**Work Address:**

**Special Notes**

Due to time delays in processing sex offender data, this information should be verified with the appropriate Sheriff's Office or Chief of

# The Law Dictionary

*Featuring Black's Law Dictionary Free Online Legal Dictionary 2nd Ed.*

Search...

## What is ARBITRARY?

Not supported by fair, solid, and substantial cause, and without reason given. Treloar v. Bigge, L. R. 9 Exch. 155.




Make The Switch Now

Shop now to get our best deal of the season. Free install, WiFi setup & DVR service


## More On This Topic

1. The Four Pillars of the Rule of Law
2. International Business Law
3. Probable Cause Arrests vs. Arrest Warrants
4. Probable Cause Arrests vs. Arrest Warrants
5. What's the difference between the insanity plea and incompetency?
6. Definitions Of Probable Cause Vs. Reasonable Suspicion
7. How Does Alimony Work?
8. Five Things to Know About Proving a Product Liability Claim
9. Three Alternatives to the Rule of Law
10. What Are Grounds For Divorce?

## Related Legal Terms

ARBITRARY GOVERNMENT, ARBITRARY PUNISHMENT, ARBITRARY POWER, ARBITRARY DISCRETION, SUPERSTRUCTURE, VALUE CASH, REASONABLE ACT, CARRY ON BUSINESS, AD EA QUAE FREQUENTIUS ACCIDUNT JURA ADAPTANTUR, FAIR TRADE

## Link to This Definition

Did you find this definition of ARBITRARY helpful? You can share it by copying the code below and adding it to your blog or web page.

```
<a href="https://thelawdictionary.org/arbitrary/" title="ARBITRARY">ARBITRARY</a>
```

Written and fact checked by The Law Dictionary

< POWER

POWER OF SALE >

Featuring Black's Law Dictionary




G+




Popular Articles

How Do You Prove a Defamation of Character Claim?

Best Way to Run a Free Arrest Warrant Check
How to Order a Criminal Background Check on Yourself
How Do I Get a Copy of My Criminal Record?
How to Calculate a Settlement in a Workman's Comp Injury

### Related

POWER
POVERTY AFFIDAVIT
POUSTIE
POWER OF APPOINTMENT
POWER COUPLED WITH AN INTEREST
POWER OF SALE

**Enter your email address to stay current on legal news and receive special offers**

Email

Subscribe

### Disclaimer

Nothing stated or implied on this page should be construed to be legal, tax, or professional advice. The Law Dictionary is not a law firm and this page should not be interpreted as creating an attorney-client or legal adviser relationship. For questions regarding your specific situation, please consult a qualified attorney.

*Powered by Black's Law Dictionary Free 2nd Ed. and The Law Dictionary*
*About | Terms | Privacy | Legal Questions*