UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

**EXHIBIT 3**

JOHN DOE #1, et al., )
)
    Plaintiff, )
)
v. ) Case. No. 2:15-cv-606 WKW
)
STEVEN T. MARSHALL, et al. )
)
)
    Defendants )
)

## DECLARATION OF R. KARL HANSON

I, R. Karl Hanson, declare as follows:

1. This supplementary declaration should be read in conjunction with my declaration of July 15, 2016, and my supplementary declaration of August 14, 2016.

2. For a summary of my qualifications as an expert in this area, please see paragraphs 3-7 and Exhibit 1 (my c.v.) of my July 15, 2016 declaration.

3. The purpose of this declaration is to rebut certain opinions expressed in the expert report of Nicholas Scurich, Ph.D., dated May 28, 2018. In his report, Dr. Scurich opines that it is impossible using existing knowledge to assess the likelihood that an individual with a history of sexual offending will commit a crossover offense, i.e., an offense against a different category of victim. My review of the research literature, including a careful reading of Dr. Scurich's own report, leads to the opposite conclusion: it is possible to assess the likelihood of crossover sexual offending for individuals with a history crime. Furthermore, the expected rate of crossover offending is much lower than the rates implied by Dr. Scurich's report.

4. One robust predictor of crossover offending is the total number of sexual offenses committed[1]. As the number of victims increases, the likelihood of crossover offending also

---

[1] Parent, G, Guay, J-P, & Knight, RA. (2007). An assessment of long-term risk of recidivism by adult sex offenders: One size doesn't fit all. *Criminal Justice and Behavior, 38*(2), 188-209. doi:10.1177/0093854810388238

1

increases. Multiple victims are, in fact, required in order to offend against more than one type of victim. Consequently, all the procedures for assessing the likelihood of any sexual recidivism also inform the likelihood of committing a new sexual offence against a different victim type. As documented in Dr. Scurich's own report, the risk of crossover offending is a fraction of the risk of any new sexual offending, and is predicted by the same risk tools that predict any new sexual offending (see ¶ 20 of Dr. Scurich's report).

5. Dr. Scurich's overestimates the proportion of individuals with a history of sexual offending who will engage in crossover offending. He states that 1-in-10 will have both adult and child victims, and that 1-in-3 will have victims in more than one category (age, relationship, gender). Although these numbers are accurately extracted for the studies reviewed, these rates should not be interpreted as the unexpected rates of crossover offending because the number are based on individuals who have already offended against more than one victim. Most individuals who have ever been convicted of sexual offence are only convicted of offences against one victim. In a large study of 3,938 individuals with a history of sexual crime, 75% had only one offense on record [2]. Those who are known to have offended against more than one victim are unrepresentative of the total population of individuals with a history of sexual crime. Instead of concluding that 1-in-10 individuals with a history of sexual crime will offend against both adults and children, the studies reviewed by Dr. Scurich actually state that *if the individuals were to reoffend sexually*, there is a 1-in-10 chance that it would be against a victim in a different age category. This is an important difference, which substantially lowers the expectation of crossover offending.

6. As stated in my declaration of July 15, 2016, it is rare for individuals with a history of sexual crime to commit any new sexual offenses. After 5 years follow-up, between 10 and 15 individuals out of 100 are expected to reoffend with any new sexual offense. The rate of sex new offending in a different age category is, necessarily, lower. The likelihood of offending in any specific category is a subset of the overall likelihood of reoffending.

---

[2] Harris, AJR & Hanson, RK. (2004). Sex offender recidivism: A simple question. Corrections Users Report No. 2004-03: Public Safety and Emergency Preparedness Canada.

7.      Contrary to Dr. Scurich's opinion, the rate of crossover sexual offending can be reliably estimated by considering the likelihood of any sexual reoffending and the conditional probability of new sexual offending in a different category (i.e., if a new offense occurs, what is the likelihood that it is in a different category?). The overall likelihood of any sexual reoffending is routinely estimated with moderate accuracy using validated risk assessment tools (e.g., Static-99R), which I discussed in my July 15, 2016 declaration. Dr. Scurich's review indicates that the conditional probably of reoffending in a different age category is 1-in-10. In other words, out of 100 recidivists, 10 will switch from adults to child victims, or from child to adult victims. Dr. Scurich's estimates seem reasonable when applied to recidivists, and are broadly consistent with my reading of this research literature. Consequently, if an individual who has only offended against adult females is assessed as having a 15% chance of committing any new sexual offense, this individual's risk of committing a sexual offense against a child would be only 1.5% (1/10th of 15%). Similar calculations can be made for different initial risk levels. If the overall risk of any sexual recidivism for an individual with only adult victims was 6%, the risk for sexual recidivism against a child would be .6%, or less than 1 in a 100.

8.      Given the average recidivism rates are 10% to 15% for any sexual offending, and Dr. Scurich's estimates of the rate of crossover for recidivists, a reasonable conclusion is that approximately 3 out of 100 individuals with a history of sexual crime will engage in crossover offending of some sort, and 1 out of 100 will commit offense against both adult and child victims.

9.      Although any child sexual victimization is troubling, zero risk is not achievable in theory or in practice. Instead, public protection policies need to be guided by a threshold of tolerable risk. This threshold should be informed by the risk we are prepared to tolerate in the general population, and by the extent to which sexual crime specific measures could be expected to lower that risk even further. In our previous research, we have provided evidence to inform this threshold by considering on the rate of spontaneous out-of-the-blue sexual offending among individuals with a criminal conviction but no prior history of sexual crime. Based on 11 studies involving 543,204 individuals, our research team found that the rate of spontaneous sexual

offenses among non-sexual offender to be in the range of 1-2% within a 5-year period[3]. Based on these results, we propose that there is little public protection benefit from sexual crime specific interventions for individuals whose risk of a new sexual crime (of any sort) is less than 2% after 5 years[4]. Similarly, restricting access to children is unlikely to promote public safety when the individual's risk to sexually victimize a child is already very low (less than 2 out of 100).

10. It is possible, however, to identify individuals whose risk to sexual victimize children is sufficiently high to justify sex crime specific measures, including restricting their access to children. Those most likely to sexual victimize children are individuals with a recent conviction for a sexual offense against a child, and those who have high scores on validate sexual recidivism risk tools. Given a previous sexual offense against a child, the expected rate of new sexual offenses against a child would be usually be in the range of 9% to 13%; it could be as high as 40% if the individual had other established risk factors. Conversely, even with a history of a sexual offense against a child, an individual's risk for a new child sexual crime could still be as low as 1 out of 100 if the individual's overall recidivism risk was low (e.g., older age, many years offense-free in the community, prosocial lifestyle).

11. In summary, there is little public protection benefit in restricting access to children for individuals with a history of sexual offending against adults. Blanket policies that apply to all individuals with a history of sexual crime waste limited resources on a significant number of people who pose no real risk to children. Rather than considering all individuals with a history of sexual crime as continuous, lifelong threats to children, society will be better served when legislation and policies consider the cost/benefit break point after which resources spent tracking and supervising low-risk individuals are better re-directed toward the management of high-risk individuals, crime prevention, and victim services.

---

[3] Kahn, RE, Ambroziak, G, Hanson, RK, & Thornton, D. (2017). Release from the sex offender label. *Archives of Sexual Behavior, 46*, 861-864. doi:10.1007/x10508-017-0972-y

[4] Hanson, RK, Harris, AJR, Letourneau, E, Helmus, LM, & Thornton, D. (2018). Reductions in risk based on time offense free in the community : Once a sexual offender, not always a sexual offender. *Psychology, Public Policy and Law, 24*(1), 48-63. doi:10.1037/law0000135

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*R. Karl Hanson, Ph.D., C.Psych*

Dated: June 20, 2018