EXHIBIT 4

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |
|---|---|
| JOHN DOE #1, et al, | |
| *Plaintiffs*, | |
| | |
| v. | Case No. 2:15-cv-0606-WKW-SRW |
| | |
| STEVEN T. MARSHALL, in his official Capacity as Alabama Attorney General, et al., | |
| *Defendants*. | |

## EXPERT REPORT OF NICHOLAS SCURICH, PH.D.

### QUALIFICATIONS

1.    I am an associate professor at the University of California, Irvine with a joint appointment in the Department of Criminology, Law and Society, and the Department of Psychology and Social Behavior. I joined the faculty at the University of California, Irvine in 2012 and I received tenure in 2016.

2.    I was an undergraduate at the University of Southern California, where I received a B.A. in Psychology, *cum laude*, in 2007. In 2009, I received a M.A. in Psychology and in 2012 I received a Ph.D. in Psychology, both from the University of Southern California. I was a Fellow at the University of Southern California Gould School of Law from 2010-2011.

3.    I am the author of over 50 peer-reviewed journal articles, book chapters, and law review articles. These articles appear in journals such as *The Journal of the American Academy of Psychiatry and the Law*, *Law and Human Behavior*, and *Psychology, Public Policy, and Law*, among others. A main focus of my scholarly research concerns the risk of violent and sexual

1

recidivism. I have given professional trainings on these topics to clinical and forensic

psychologists, including to the Forensic Assessment Division of the California Board of Parole

Psychologists.

4.    My research has been funded by state and federal agencies, and my research has

been recognized by awards from several scholarly societies. In 2015, I received the Saleem Shah

early career achievement award from the American Psychological Association (Division 41) and

the American Academy of Forensic Psychology. I am on the editorial board of *Law and Human*

*Behavior* and *Behavioral Sciences and the Law*, two leading interdisciplinary law and social

science journals.

5.    My education, training, experience, and a complete list of my publications are set

forth more fully in my curriculum vitae, a copy of which is attached hereto as Exhibit A.

**OPINIONS TO BE EXPRESSED AND THE REASONS AND BASES FOR THEM**

6.    Based on my understanding of the plaintiffs' Second Amended Complaint, my

testimony is most relevant to the plaintiffs' challenge to the ASORCNA provision generally

prohibiting adult sex offenders from residing or staying overnight with minors. Ala. Code § 15-

20A-11(d). I will refer to this provision as the "minor cohabitation rule." Having said this, I do

not intend to limit the relevance of my testimony in any way, as much of it would be relevant to

numerous other ASORCNA provisions—even if they are not at issue in this case and even if I do

not specifically mention them here.

7.    The testimony contained in this report boils down to 4 specific opinions, which

can be summarized as follows:

- **Opinion 1.** "Crossover offending" is the phenomenon of sexual offenders victimizing more than one 'type' of victim over the course of their criminal career (e.g., both child and adult victims, both male and female victims, both extra-familial and intra-familial victims).

- **Opinion 2.** The empirical literature suggests that approximately 1-in-3 sexual offenders will engage in crossover offending of some sort, and approximately 1-in-10 sexual offenders will have both adult and child victims.

- **Opinion 3.** The empirical literature also suggests that crossover offenders cannot be prospectively discerned from non-crossover offenders. In other words, it is not currently possible to assess the likelihood that a sexual offender is or is not a crossover offender.

- **Opinion 4.** The minor cohabitation rule is sensible in light of the prevalence, the relative risk, and the inability to prospectively discern crossover offenders.

### Section I. Crossover Offenders and the Minor Cohabitation Rule

8.      A key issue in this case is whether it is sensible to regulate sex offenders as a class without regard to the type of victim(s) involved in their predicate sex-offense conviction. The Second Amended Complaint (SAC) repeatedly asserts that "none of the Plaintiffs were convicted for sexual crimes against minors or children (SAC at §310)." The unstated implication is that because the plaintiffs were convicted of victimizing adults, they pose no risk of victimizing children. The same implicit argument is made with respect to victimizing relatives ("None of Plaintiffs were convicted for harming or have ever harmed minors, children, or family members…(SAC at §144)." Whether or not sexual offenders victimize different "types" victims (e.g., both adults and children, both relatives and strangers) is an empirical question that has been studied extensively.

9.      Offender classification schemes, or typologies, have a long tradition in criminology. With regard to sexual offenders, several typologies are widely used, including: offenders who victimize children as opposed to adults (e.g., "child molesters" versus "rapists"), offenders who victimize males as opposed to females, or offenders who victimize strangers as opposed to relatives (i.e., extra-familial versus intra-familial). The term "crossover offender" is

used to refer to individuals who offend against more than one of these victim categories over the course of their criminal careers.

10.     The proportion of sexual offenders who are crossover offenders is an empirical question that numerous studies have addressed. The studies vary substantially along methodological lines. For example, some use only an official conviction as the definition of a "sexual offense" whereas others use the offender's self-report of illegal sexual behavior (typically communicated under the condition of confidentiality) sometimes in conjunction with polygraphy.  The particular study sample characteristics also vary (e.g., the use of incarcerated versus non-incarcerated sexual offenders; conducted in the United States or in the United Kingdom; etc.). Such variability in the literature makes it difficult to estimate the prevalence of crossover offenders at any given time or for any particular population.

11.     The typical approach to synthesizing a body of scientific literature is with meta-analysis, which utilizes all extant research to generate a numeric estimate of an effect size (e.g., the prevalence of crossover offending). Conducting a meta-analysis is complicated when there is a high degree of methodological heterogeneity (Lipsey & Wilson, 2001), as there most certainly is in the literature examining crossover offenders. Nonetheless, the general meta-analytic approach of thoroughly searching the research literature, enumerating the studies, and listing the study characteristics can be informative as it reflects a more representative picture of the state of literature bearing on a specific issue. This strategy was used to examine the scientific studies on crossover sexual offending.

### A. *Prevalence of crossover offenders*

12.     Any systematic search must specify the criteria for inclusion/exclusion of studies. To be included in the following analysis, studies must at least: 1.) be based on a sample of direct-

contact sexual offenders; 2.) report sexual offense/recidivism information; 3.) disaggregate the sample by at least one victim typology (e.g., child vs. adult victims); and 4.) include sufficient statistical information to calculate the percentage of crossover offenders.

13.     Numerous academic databases (e.g., PsycLit, ProQuest, Web of Science, GoogleScholar) were searched using a variety of terms (e.g., sex(ual) offender, crossover, mixed offend*, polymorphic, indiscriminate, specialist, specialization, typology, victim preference, versatility, rapist, child molest*, pedophil*, paraphilia, recidivate, recidivis*, reoffend, and re-offense) to locate potentially relevant articles. The reference section of potentially-relevant articles was also examined for additional studies. This process yielded approximately 84 potentially eligible studies. An examination of each of these studies revealed that 43 were ineligible per the criteria listed above,[1] thus leaving a final sample of 41 studies (as of May 24, 2018) involving over 32,000 sexual offenders.

14.     Only three studies explicitly provided the overall percentage of crossover offenders in the sample.[2] Cann et al. (2007) reported that 25% (330 of 1,345) of a sample of British sex offenders committed a crossover offense, Sim and Proeve (2010) reported that 63% (81 of 128) of a sample of Australian sex offenders committed a crossover offense, and Stephens

---

[1] Two manuscripts could not be obtained, 15 used duplicate samples (the most recent or most detailed study was used), 9 only compared "generalists" (e.g., any type of crime) and "specialists" (only sex crimes but no victim typologies), 5 excluded crossover offenders from their sample, 7 did not contain enough information to compute crossover frequencies, 5 only compared contact and noncontact crossover or focused only on noncontact sexual offenses.

[2] Some studies examine more than one type of crossover offending (e.g., victim age and gender) but do not report the number of possible cases that cross multiple categories. Therefore, it is not possible to know what number of sex offenders crossed one or multiple categories. If the number of multiple category crossovers is high (and it could be up to 25%; see Cann et al., 2007, page 155) and this fact is not taken into account, then the "overall" percentage of crossover offenders would be inflated. It would also be misleading to include in the "overall" crossover percentage studies that only examine a single category, since that number would then confound different types of crossover from different studies. For all of these reasons, the table reports only the values from the original study and does not pool across studies to derive an estimate of the "overall" percentage of crossover offenders.

et al. (2016) reported that 41% (311 of 751) of men referred to a sexual behavior clinic in

Canada were crossover offenders. Thus, these three studies collectively suggest that

approximately one-in-three sexual offenders are crossover sexual offenders (i.e., 722/2,224 =

32.5%).

      15.     The other studies focus on specific types of crossover offending (e.g., victim

gender). All of the studies appear in Table 1 (below) along with the relevant crossover

percentages. Empty table cells reflect a lack of information in the original study.

Table 1.
*Crossover Rates by Study (number of offenders)*

| Study | Gender | Age | Relationship |
|---|---|---|---|
| Abel et al., 1988 | 20% (112) | 42.6% (239) | 23.3% (131) |
| Elliott, Browne, & Kilcoyne, 1995 | 28% (25) | 7.7% (7) | 8.8% (8) |
| English et al., 2003 | 29% (52) | 33% (59) | 37.2% (67) |
| Guay et al., 2001 | 10.7% (19) | 28.1% (50) | 28.7% (49) |
| Heil, Ahlmeyer, & Simons, 2003 | 21.7% (106) | 41.7% (204) | 39.9% (195) |
| Wilcox & Sosnowski, 2005 | 7.1% (1) | 28.6% (4) | 42.9% (6) |
| O'Connell, 1997 | 17.3% (22) | 22.8% (29) | 26.8% (34) |
| Lussier et al., 2007 | 11.2% (62) | 27.5% (152) | |
| Cooley-Towell et al., 2000 | 29% (52) | 33% (59) | |
| Weinrott & Saylor, 1991 | | 20.2% (20) | 32.2% (32) |
| Blanchard et al., 1999 | 25.4% (172) | | |
| Smallbone & Wortley, 2004 | | | 17.9% (37) |
| Cann, Friendship & Gozna, 2007 | 9% (121) | 7.8% (105) | 14.1% (189) |
| Kleban et al., 2012 | 8.7% (69) | 11.3% (89) | 15.5% (122) |
| Sim & Proeve, 2010 | 21.9% (28) | 46.1% (59) | 25.8% (33) |
| Tewksbury, Jennings, & Zgoba, 2012 | 2.6% (13) | | |
| Stephens et al., 2016 | 13% (98) | 35% (263) | 11% (83) |
| Woodhams & Labuschagne, 2012 | 0 (0) | 40.9% (9) | 22.7% (5) |
| Bourke & Hernandez, 2008 | 33.5% (52) | 56.8% (88) | |

6

| | | | |
|---|---|---|---|
| Levenson, Becker, & Morin, 2008 | 22% (78) | 26% (94) | |
| Lasher, McGrath, & Cumming, 2015 | | 22% (18) | 24.4% (20) |
| Emerick & Dutton, 1993 | 43.3% (29) | | 41.7% (28) |
| Brown et al., 2015 | | 5.6% (40) | |
| Leroux et al., 2016 | | 13.8% (22) | |
| Vess & Skelton, 2010 | | 5.6% (136) | |
| Grubin & Maden, 2006 | | 0.7% (1) | |
| Hall & Proctor, 1987 | | 1.2% (4) | |
| Hood et al., 2002 | | 7.4% (12) | |
| Michaud & Proulx, 2009 | | 13.4% (62) | |
| Olver et al., 2007 | | 16.7% (45) | |
| Parent, Guay, & Knight, 2011 | | 10.7% (54) | |
| Quinsey, Rice, & Harris, 1995 | | 6.7% (12) | |
| Greaves, 2010 | | 27.7% (53) | |
| Howard, Barnett, & Mann, 2014 | | 3.1% (464) | |
| Stephens et al., 2017 | | 36% (26) | |
| Lovell et al., 2017 | 6.7% (2) | | 28.3% (15) |
| Joyal, Carpentier, & Martin, 2016 | | 7.7% (27) | |
| Stephens, Seto, Goodwill, & Cantor, 2016 | | 33.4% (748) | |
| Day, Darwinkel, & Vess, 2017 | | | 10.4% (162) |
| Rice & Knight, 2018 | | 15.4% (139) | |
| Williams et al. 2016 | 17.5% (26) | 18.8% (28) | 9.4% (14) |
| **Mean** | **15.56%** | **11.28%** | **17.88%** |

16.     It is important to reiterate that summary statistics can be misleading when they are based on studies with a high degree of heterogeneity. That said, the mean rate of victim-gender crossover (i.e., male and female victims) is 16%; the mean rate of victim-age crossover (i.e., adult and child victims) is 11%; and the rate of victim-relationship crossover (i.e., intra- and extra-familial victims) is 18%. Again, these are rough estimates in that they are based on studies with very different parameters. Still, these estimates are informative; they suggest that anywhere

from approximately 1-in-10 to 1-in-5 sexual offenders will engage in some specific type of crossover recidivism.

   **B. *Predicting crossover offenders and their relative risk***

   17.     Attempts to prospectively discern crossover offenders from non-crossover offenders have been sparse. I could locate only two studies published in peer-review journals that directly attempt to predict whether or not an offender is a crossover offender. The findings in these studies are somewhat mixed. A study by Cann et al. (2007) used multinomial regression models with panoply of variables to predict whether a known sexual offender would offend against victims of a different gender, age, or relationship from his previous victim. Although some meager relationships were detected, "robust models were not produced for any of the three types of crossover behavior examined [i.e., victim gender, age, or relationship]" (p. 158). In other words, the statistical models could not reliably discern crossover offenders from non-crossover offenders. On the other hand, Levenson et al (2008) found that having a major mental illness and a victim less than age 6 could predict victim gender crossover (i.e., both male and female victims). The study by Levenson et al (2008) did not examine victim age crossover (i.e., both child and adult victims) or victim relationship crossover (i.e., related or unrelated victims).

   18.     Crossover offenders appear to pose a higher risk than non-crossover offenders. For instance, Cann et al. (2007) report STATIC-99 scores—the most widely used actuarial instrument for the purpose of assessing sexual recidivism (Jackson & Hess, 2007; Chevalier et al., 2015)—for crossover offenders (25% of the sample) and non-crossover offenders:

**Table 1.** Static-99 risk of reconviction for crossover and non-crossover samples

| Risk band (score) | % (n) of crossover sample (n = 330) | % (n) of non-crossover sample (n = 1,015) |
|---|---|---|
| Low | 17.0 (56) | 46.5 (472) |
| Moderate low | 25.5 (84) | 27.8 (282) |
| Moderate high | 24.8 (82) | 16.0 (162) |
| High | 32.7 (108) | 9.8 (99) |

Source: Cann et al., 2007, page 155.

19.     Notice that nearly one third of the crossover offenders were classified to the "high risk" category of the STATIC-99 compared to about 10% of the non-crossover offenders. On the other hand, nearly half of the non-crossover offenders scored in the "low risk" category compared to about 20% of the crossover offenders.  Although it is true that crossover offenders are more likely to receive higher risk scores than non-crossover offenders, a high risk score does not indicate that an individual is (or is necessarily even more likely to be[3]) a crossover offender.

20.     It is important to note that this finding is based on a single sample of British sexual offenders who were released from prison in the 1990s. Whether or not this finding generalizes to American sexual offenders is unknown; however, virtually all studies find that crossover offenders score at least as high and typically higher on scientific risk assessment instruments than non-crossover offenders (e.g., Oliver et al., 2007; Jackson & Richards, 2007; Parent et al., 2011; Kleban et al., 2012; but see Sim & Proeve, 2010). I have never seen a study which finds that crossover offenders are deemed less risky than non-crossover offenders by an actuarial instrument.

---

[3] The table appended above (Table 1 from Cann et al., 2007) above reports that there are 207 individuals in the high risk category, of which 108 (52%) are crossover offenders and 99 (48%) are non-crossover offenders. Thus, given a "high risk" designation, an individually is almost equally likely to be a crossover offender as a non-crossover offender.

9

### C. *Implications for ASORCNA*

21.     The empirical research suggests that crossover sexual offenders are not uncommon. For instance, the data indicate that approximately 1 in 10 crossover offenders victimize both adults and children. Similarly, up to approximately 1 in 5 repeat offenders will victimize both a relative and a non-relative. These empirical findings undermine the tacit implication that because none of the plaintiffs victimized children or relatives, *ipso facto* their risk of doing so nil. More generally, because the index-offense victim type may not reflect the exclusive victim preference of the offender, regulatory efforts predicated on the characteristics of the index victim could be misguided.

### Section II. "Individualized Assessments" of Registrants

22.     The Second Amended Complaint (SAC) asserts:  "ASORCNA does not provide for individualized assessments of registrants. Without regard to whether registrants were convicted of crimes involving minors or children, ASORCNA prohibits registrants from living or spending a single night with certain minor relatives." (SAC at §145)  The argument implicitly made here (and in other places, e.g., SAC at § 319) is that an "individualized assessment" could prove that Plaintiffs pose no risk of sexually victimizing children and therefore they should be allowed to cohabitate with minors. This argument is specious for at least two reasons.

23.     First, no risk assessment instrument can prospectively discern crossover offenders from non-crossover offenders, as noted in § 17 above. There are instruments that can assess the risk of sexual recidivism generally, but none of these instruments predict the risk of victimizing a particular type of victim (e.g., a related minor vs a non-related adult victim). At the moment, there is simply no scientific way to make an "individual assessment" of the likelihood that an individual is a crossover offender.

24.     Second, and more generally, the argument conflates descriptive and normative judgments, which are inherently non-scientific value judgments. It is important consider the role that the risk of crossover offending plays in relation to legal decision making, which implicitly combines scientific and value judgments. Delineating these judgments will make clear the types of questions that can be legitimately answered by a scientific, individualized risk assessment and the types of questions that must be answered by a legal decision maker.

**A.** *Descriptive vs. normative judgments*

25.     An analogy to weather forecasting may prove useful in elucidating the distinction between descriptive and normative judgments (Monahan & Steadman, 1996). Suppose a meteorologist uses a variety of sources of information to forecast the likelihood of rainfall in the upcoming weekend.  This information includes weather records of the same weekend in previous years, current atmospheric pressure, and weather in neighboring jurisdictions. Based on this information, the meteorologist estimates that there is a 40% chance of rainfall on Saturday.  One might refer to this a *descriptive judgment* because it describes the likelihood of some event occurring.

26.     Does the 40% chance of rainfall mean that people should alter their plans on Saturday? The answer is, "it depends on what the weekend plans are." If one plans to go bowling indoors, this likelihood of rain would probably not be cause to modify the outing. However, if one plans to have an outdoor picnic, then a 40% chance of rain might cause serious reconsideration. One might refer to this a *normative judgment* in that it involves contextual considerations (e.g., bowling or picnic) as well as risk tolerances (e.g., 40% chance of rain is too much risk to tolerate for a picnic).

27.    More generally, it is important to recognize that the descriptive judgement informs but does not impel the normative judgment.  There is also a clear division of labor between the meteorologist who seeks to provide the most accurate estimate of rainfall occurring and the forecast-consumer who seeks to make an informed decision about the weekend's plans. The meteorologist, acting as a meteorologist, brings no special expertise to bear on the normative judgment, nor is the meteorologist vested with the authority to determine what the weekend plans will be.

28.    The distinction between descriptive and normative judgments has long been recognized in the context of violence risk assessment (e.g., Morse, 1978; Monahan & Wexler, 1978). Indeed, it was argued that mental health professionals should not make "predictions of dangerousness" precisely because "dangerousness" is a normative judgement (e.g., how dangerous is sufficiently dangerous?), not a descriptive or scientific one (Schopp & Quattrocchi, 1995). The field consequently underwent a paradigm shift in which "predictions of dangerousness" were eschewed and replaced by forecasts of harmful behavior, commonly referred to as "risk assessments" (Monahan & Steadman, 1994). This paradigm shift not only conceptually unconfounded the descriptive and normative judgments, it also lead to a voluminous research literature exploring various scientific approaches to making descriptive judgments.

29.    It is important to reemphasize that the normative judgement is not constrained by the descriptive judgment. Even a 1% chance of harmful behavior could be sufficient to occasion liberty deprivation if so determined by a legally-empowered decision maker, and many in fact do for the purposes of psychiatric civil commitment and commitment as a sexually violent predator. For instance, when asked "what is the lowest likelihood of violence to others" that would be

sufficient to authorize civil commitment, several state judges responded that a 1% likelihood was sufficient (Monahan & Silver, 2003). Similarly, over half of a sample of Texas jurors responded affirmatively to the question "If there was a 1% chance that an offender would commit a new sex crime, would you say that he was likely to commit a new sex crime?" (Knighton et al., 2014).

30.    In summary, whether a given risk level is sufficient to justify a liberty deprivation (e.g., the minor cohabitation rule) is a normative (value) judgment that cannot be answered by an individualized risk assessment. This value judgment is the responsibility of a legally-empowered decision maker. With regard to ASORNCA, this decision maker is the Alabama legislature, which has decided to regulate sexual offenders based on their predicate offense and without regard to their risk of victimizing a specific type of victim. In other words, the fact that all sex offenders are subject to the minor cohabitation rule implies that any risk of crossover offending by offenders with adult victims is too great to bear.  This decision cannot be invalidated by appealing to the use of individualized risk assessments. Just as the meteorologist cannot dictate what the appropriate weekend plans should be, nor can an individualized risk assessment dictate whether or not an individual should be subject to the minor cohabitation rule of ASORNCA.

## DATA AND INFORMATION RELIED UPON

31.    I relied upon the data, documents, and references listed in Exhibit B to reach these opinions.  My opinions are based upon my education, training, research, attendance at and participation in psychology and legal conferences, and my ongoing review of the relevant literature.

**EXHIBITS TO BE USED AT TRIAL**

32.    I would expect to use and/or refer to at trial all documents listed in Exhibit B.  As new materials and data become available, I may supplement the list of exhibits that I may use at trial.

**COMPENSATION**

33.    I am being compensated $350.00 per hour for all tasks.  I do not expect my total compensation to exceed $37,000.

**PREVIOUS EXPERT TESTIMONY**

34.    I have testified as an expert witness at trial or by deposition in the previous 4 years in the following matters:

- United States v. Donald Fell (Case No. 5:01-cr-12-01). U.S. District Court for the District of Vermont. Expert testimony. (November, 2016).
- Jane Doe v. Transocean Offshore Deepwater Drilling et al. State of Texas. Deposition. (October, 2017).
- In the matter of Titus Kittrell (Case no. 2017 DEL 997). Superior Court of the District of Columbia – Family Court Juvenile Division. Expert testimony. (March, 2018).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Signed on May 28, 2018.

_____
NICHOLAS SCURICH, PH.D.

14

# Exhibit A

Curriculum Vitae

# Nicholas Scurich

Department of Psychology & Social Behavior
Department of Criminology, Law & Society
University of California
Irvine, California 92697

## Education

Ph.D. Psychology, University of Southern California, May, 2012.
*Dissertation:* The Dynamics of Reasonable Doubt
*Advisor:* Richard S. John

M.A. Psychology, University of Southern California, December, 2009.

B.A. Psychology, University of Southern California, *Cum Laude*, May, 2007.

## Work Experience

Department of Psychology & Social Behavior (50%), University of California-Irvine,
Associate Professor, July 2016-
Assistant Professor, July 2012-2016

Department of Criminology, Law & Society (50%), University of California-Irvine,
Associate Professor, July 2016-
Assistant Professor, July 2012-2016

Professor, by courtesy, School of Law, University of California-Irvine, February 2014-

## Awards and Honors

Saleem Shah Early Career Award, American Psychological Association (Division 41) and
American Academy of Forensic Psychology, March, 2015.

Rising star award, Association for Psychological Science, March, 2013.

PhD Achievement Award, USC (university-wide competition), May, 2012.

Oscar M. Ruebhausen Travel Grant to Yale Law School, November, 2010.

Mental Health Law Fellow, Saks Institute for Mental Health Law, Ethics and Policy, Gould
School of Law, 2010-11.

USC College of Letters, Arts and Sciences College Merit Fellowship, 2007-12.

USC Undergraduate Symposium for Scholarly and Creative Work in Social Sciences, Honorable Mention, 2007.

Departmental Honors in Psychology, 2007.

## Publications

### Journal Articles, Peer-Reviewed (* = graduate student)

J47.  Baucum, M.*, **Scurich, N.**, & John, R.S. (in press). Lay judgments of the probable cause standard. <u>Law, Probability, and Risk</u>

J46.  Garrett, B., Mitchell, G, & **Scurich, N.,** (in press). Comparing categorical and probabilistic fingerprint evidence. <u>Journal of Forensic Sciences</u>

J45.  Grady, B.*, Reiser, L.*, Garcia, R.*, Konu, C.*, & **Scurich, N.,** (in press). Impact of gruesome photographic evidence on legal decisions: A meta-analysis. <u>Psychiatry, Psychology and Law</u>

J44.  **Scurich, N.,** (in press). Styles of argumentation in judicial opinions (legitimating judicial decisions). <u>Annual Review of Law and Social Science</u>

J43.  Krauss, D.A., Gongola, J.*, **Scurich, N.**, Busch, B.* (in press) Mental state at time of offense in the hot tub: An empirical examination of concurrent expert testimony in an insanity case. <u>Behavioral Sciences & Law</u>

J42.  **Scurich, N.,** (in press). The case against categorical risk estimates. <u>Behavioral Sciences & Law</u>

J41.  **Scurich, N.,** (2018). What do experimental simulations tell us about the effect of neuro/genetic evidence on jurors? <u>Journal of Law and the Biosciences, 5(1), 204-207.</u>

J40.  Teitchner, J.*, & **Scurich, N.** (2017). On informing jurors of potential sanctions. <u>Law & Human Behavior, 41</u>(6), 579-587.

J39.  **Scurich, N.**, & Appelbaum, P.S., (2017). Behavioral genetics in criminal court. <u>Nature Human Behaviour, 1</u>, 772-774.

J38.    Thompson, W.C., **Scurich, N.,** Dioso-Villa, R.*, & Velazquez, B.* (2017). Evaluating negative forensic evidence: When do jurors treat absence of evidence as evidence of absence?. Journal of Empirical Legal Studies, 14(3), 569-591.

J37.    Dickerson, K.*, Linder, S.*, Quas, J., & **Scurich, N.** (2017). When is neglect, neglect? It depends on who you ask. Child Maltreatment, 22(3), 256-264.

J36.    Renner, M. *, Newark, C. *, Bartos, B.J.*, McCleary, R., & **Scurich, N.** (2017). Length of Stay for 25,791 California Patients Found Incompetent to Stand Trial. Journal of Forensic and Legal Medicine, 51, 22-26.

J35.    **Scurich, N.**, & John, R.S. (2017). Jurors' presumption of innocence. Journal of Legal Studies, 46, 187-206.

J34.    Gongola, J.*, Krauss, D.A., & **Scurich, N.** (2017). Life without parole for juvenile offenders: Public sentiments. Psychology, Public Policy, and Law 23(1), 96-104.

J33.    Gongola, J.*, **Scurich, N.**, & Quas, J., (2017). Deception detection in children: A meta-analysis. Law & Human Behavior 41(1), 44-54.

J32.    Bartos, B.J.*, Renner, M. *, Newark, C. *, McCleary, R., & **Scurich, N.** (2017). Characteristics of forensic patients in California with Dementia/Alzheimer's Disease. Journal of Forensic Nursing, 13(2), 77-80.

J31.    Greenspan, R.*, & **Scurich, N.,** (2016). The interdependence of perceived confession voluntariness and case evidence. Law & Human Behavior 40(6), 650-659.

J30.    Dunbar, A.*, Kubrin, C.E., & **Scurich, N.,** (2016). The threatening nature of "rap" lyrics. Psychology, Public Policy, and Law 22(3), 280-292.

J29.    **Scurich, N.**, Gongola, J.*, & Krauss, D.A., (2016). The biasing effect of the "Sexually Violent Predator" label on legal decisions. International Journal of Law and Psychiatry, 47, 109-114.

J28.    **Scurich, N.**, & Appelbaum, P.S., (2016). The blunt-edged sword: Genetic explanations of misbehavior neither mitigate nor aggravate punishment. Journal of Law and the Biosciences, 3(1), 140-157.

J27.    Ridinger, G.*, John, R.S., McBride, M., & **Scurich., N.** (2016). Attacker deterrence and perceived risk in a Stackelberg security game. Risk Analysis 36(8), 1666-1681.

J26.    **Scurich, N.**, Nguyen, K.*, & John, R.S. (2016). Quantifying the presumption of innocence. Law, Probability, and Risk, 15(1), 71-86.

J25.    **Scurich, N.**, & Monahan, J. (2016). Evidence-based sentencing: Public openness and opposition to using gender, age, and race as risk factors for recidivism. Law & Human Behavior, 40(1), 36-41.

J24.    **Scurich, N.** (2015). The effect of numeracy and anecdotes on the perceived fallibility of forensic science. Psychiatry, Psychology & Law, 22(4), 616-623.

J23.    **Scurich, N**., Krauss, D.A., Reiser, L.*, Garcia, R.* & Deer, L.* (2015). Venire jurors' perceptions of adversarial allegiance. Psychology, Public Policy, and Law, 21(2), 161-168.

J22.    Hilton, N.Z., **Scurich, N.,** & Helmus, L.M.* (2015). Communicating the risk of violent and offending behavior: Review and introduction to this special issue. Behavioral Sciences & the Law, 33(1), 1-18.

J21.    Appelbaum, P.S., **Scurich, N.,** & Radd, R. (2015). Effects of behavioral genetic evidence on perceptions of criminal responsibility and appropriate punishment. Psychology, Public Policy, and Law, 21(2), 134-144.

J20.    Singh, J.P., Yang, S., Mulvey, E.P., **Scurich, N.**, et al. (2015). Reporting guidance for violence risk assessment predictive validity studies: The RAGEE statement. Law & Human Behavior, 39(1), 15-22.

J19.    **Scurich, N.,** & Shniderman, A.* (2014). The selective allure of neuroscientific explanations. PLoSONE, 9(9), 1-6.

J18.    **Scurich, N.** & Krauss, D.A. (2014). The presumption of dangerousness in sexually violent predator commitment proceedings. Law, Probability, and Risk, 13, 91-104.

J17.    Appelbaum, P.S., & **Scurich, N.** (2014). Impact of behavioral genetic evidence on the adjudication of criminal behavior. Journal of the American Academy of Psychiatry & the Law, 42(1), 91-100.

J16.    Krauss, D.A. & **Scurich, N.** (2014). The impact of case factors on jurors' decisions in a sexual violent predator hearing. Psychology, Public Policy, and Law, 20(2), 135-145.

J15.    **Scurich, N.** & John, R.S. (2014). Perceptions of randomized security schedules. Risk Analysis, 34(4), 765-770.

J14.    Simon, D., & **Scurich, N.** (2013). The effect of legal expert commentary on lay judgments of judicial decision making. Journal of Empirical Legal Studies, 10(4), 799-816.

J13.    **Scurich, N.** & John, R.S. (2013). Mock jurors' use of error rates in DNA database trawls. Law & Human Behavior, 37(6), 424-431.

J12.    **Scurich, N.** & Krauss, D.A. (2013). The effect of adjusted actuarial risk assessment on mock-jurors' decisions in a sexual predator commitment proceeding. Jurimetrics Journal, 53, 395-413.

J11.    Krauss, D.A., & **Scurich, N.** (2013). Risk assessment in the law: Legal admissibility, scientific validity, and some disparities between research and practice. Behavioral Sciences & the Law, 31(2), 215-229.

J10.    **Scurich, N.** (2013). Questioning child witnesses. The Jury Expert, 25(1), 12-16.

J9.     Lyon, T.D., **Scurich, N.**, Handmaker, S., & Blank, R. (2012). How did you feel? Increasing child sexual abuse witnesses' production of evaluative information. Law & Human Behavior, 36(5), 448-457.

J8.    **Scurich, N.**, & John, R.S. (2012). A Bayesian approach to the group versus individual prediction controversy in actuarial risk assessment. Law & Human Behavior, 36(3), 237-246.

J7.    Lyon, T.D., Ahern, E.C, & **Scurich, N.** (2012). Interviewing children vs. tossing coins: Accurately assessing the diagnosticity of children's disclosures of abuse. Journal of Child Sexual Abuse, 21, 19-44.

J6.    **Scurich, N**., Monahan, J., & John, R.S. (2012). Innumeracy and unpacking: Bridging the nomothetic/idiographic divide in violence risk assessment. Law & Human Behavior, 36(6), 548-554.

J5.    **Scurich, N.**, & John, R.S. (2012). Prescriptive approaches to communicating the risk of violence in actuarial risk assessment. Psychology, Public Policy, and Law, 18(1), 50-78.

J4.    Simon, D., & **Scurich, N.** (2011). Lay judgments of judicial decision-making. Journal of Empirical Legal Studies, 8(4), 709-727.

J3.    **Scurich, N.**, & John, R.S. (2011). Trawling genetic databases: When a DNA match is *just* a naked statistic. Journal of Empirical Legal Studies, 8(s1), 49-71.

J2.    **Scurich, N.** & John, R.S. (2011). The effect of framing actuarial risk probabilities on involuntary commitment decisions. Law & Human Behavior, 35(2), 83-91.

J1.    **Scurich, N.**, & John, R.S. (2010). The normative threshold for psychiatric civil commitment. Jurimetrics Journal, 50(4), 425-452.

## Book Chapters, Peer-Reviewed

BC2.    **Scurich, N.** (2016). The assessment of violence risk. In J.P. Singh, S. Bjorkly, & S. Fazel, (eds.) International perspectives on violence risk assessment (pp. 3-15). New York: Oxford University Press.

BC1.    **Scurich, N.** (2016). Structured risk assessment and legal decision making. In M. Miller and B.H. Bornstein (eds.) Advances in psychology and law (pp 159-183). American Psychological Association.

## Law Review Articles

LR6.    **Scurich, N.** (2017). Juvenile Murderers and "National Consensus." Harvard Law and Policy Review Online, 12, 1-7.

LR5.    Garrett, B., Krauss, D.A., & **Scurich, N.** (2017). Capital jurors in an era of death penalty decline. Yale Law Journal Forum, 126, 417-430.

LR4.    **Scurich, N.** (2015). Criminal justice policy preferences: Blackstone ratios and the veil of ignorance. Stanford Law & Policy Review (Online), 26, 23-35.

LR3.    Simon, D., & **Scurich, N.** (2013). Judicial overstating. Chicago-Kent Law Review, 88(2), 411-431.

LR2.    **Scurich, N.** & John, R.S. (2012). Constraints on restraints: A Signal Detection analysis of the use of mechanical restraints on adult psychiatric inpatients. <u>Southern California Review of Law and Social Justice, 21</u>(1), 75-107.

LR1.    **Scurich, N.** (2010). Interpretive arguments of forensic match evidence: An evidentiary analysis. <u>Dartmouth Law Journal, 8</u>(2), 31-47.

## Conference Proceedings

**Scurich, N.**, Hoang, K.,* & John, R.S. (2015). Jurors' presumption of innocence: Impact on cumulative evidence evaluation and verdicts. Conference for Empirical Legal Studies (CELS).

## Technical Reports

Burns, W.J., Dillon-Merrill, R., John, R.S., & Scurich, N. (2016). Dynamic aviation risk management solutions (DARMS): Research study to demonstrate a proof-of-concept. Commissioned by the United States Department of Homeland Security (BOA: HSHQDC-15-J-00375). Classified document. Authorship determined alphabetically.

## Funding

| | | | | | |
|---|---|---|---|---|---|
| NIH - National Institutes of Health / 1P50HG007257-01 | Co-PI | $113,720 (Direct) | 8/1/2013 | 8/1/2016 |
| Department of Homeland Security / BOA: HSHQDC-15-J-00375 | PI | $51,014 (Direct) | 8/1/2015 | 2/2/2016 |
| Undergraduate Research Opportunities Program (UROP) | Faculty Sponsor | $1,500 (Direct) | 1/9/2015 | 6/30/2015 |
| Undergraduate Research Opportunities Program (UROP) | Faculty Sponsor | $1,000 (Direct) | 1/9/2015 | 6/30/2015 |
| State of California, Dept. of State Hospitals | Co-PI | $392,300 (Total) | 1/1/2015 | 6/1/2016 |
| University of California Consortium on Law and Social Science | PI | $15,000 (Direct) | 6/1/2016 | 12/1/2016 |
| Department of Homeland Security / 2017-ST-061-QA0001 | PI | $494,393 (Direct) | 10/1/2017 | 10/1/2019 |
| Center for Statistics and Applications in Forensic Science (CSAFE) | Co-PI | $35,163 (Direct) | 4/1/2018 | 8/1/2018 |

## Invited Colloquium Presentations

University of California Los Angeles, Anderson School of Management (April, 2017)

Center for Law and Social Science (CLASS), USC Gould School of Law (August, 2016)

Istanbul Bilgi University, Department of Psychology (May, 2016)

Columbia University Medical Center, Workshop on Genes, Brains, and Responsibility (May, 2015)

American Psychology—Law Society Conference, Saleem Shah Address (March, 2015)

University of California—Irvine, Center for Psychology & Law, Views by two on the insanity defense with Dr. Park Dietz (February, 2015)

University of Chicago School of Law, Workshop on Judicial Behavior (November, 2012)

Chicago-Kent College of Law, the Supreme Court and the American Public Symposium (November, 2012)

Information Sciences Institute, Behavioral Game Theory Symposium (September, 2012)

USC Gould School of Law, Symposium on Mechanical Restraints (March, 2012)

USC Gould School of Law, Child-interviewing seminar (March, 2010)

## Professional Trainings

California Attorneys for Criminal Justice & California Public Defenders Association's Capital Case Defense Seminar, Monterey (February, 2018)

Department of Homeland Security, Washington DC (September, 2017).

Transportation Security Authority, Washington DC (December, 2015).

National Association of Criminal Defense Lawyers (NACDL)—Forensic College, Cardozo Law School (June, 2015).

California Board of Parole Psychologists, Forensic Assessment Division (October, 2014)

## Technical Briefings/Testimony

Burns, W.J., Dillon-Merrill, R., John, R.S., & Scurich, N. Modeling uncertainty: Inputs to a DARMs game theoretical approach to passenger screening.  (Authorship determined alphabetically.) Presentation to executives at the Transportation Security Authority, Washington

DC (March, 2016). Testimony provided to the U.S. Government Accountability Office (GAO) (August, 2016).

United States v. Donald Fell (Case No. 5:01-cr-12-01). U.S. District Court for the District of Vermont. Expert testimony on statistics and survey methodology for a change of venue request. (November, 2016).

State of Washington v. Allen Eugene Gregory (Case no. 88086-7). Washington State Supreme Court. Provided a written evaluation and response to interrogatories about an empirical study of the use of the death penalty in Washington State. (July, 2017).

Jane Doe v. Transocean Offshore Deepwater Drilling et al. State of Texas. Deposition. (October, 2017).

In the matter of Titus Kittrell (Case no. 2017 DEL 997). Superior Court of the District of Columbia – Family Court Juvenile Division. Expert testimony on violence risk assessment. (March, 2018).

## Refereed Research Presentations

Scurich, N. (October, 2017). Behavioral genetics and judgments of culpability. Paper presentation at the American Academy of Psychiatry and Law conference, Denver, CO.

Shaw, E.V.*, Scurich, N. & Faigman, D.L. (March, 2017). Too disabled to die: Intellectual disability in capital cases. Paper presented at the American Psychology-Law Society Conference, Seattle, WA.

Baucum, M.,* John, R.S., & Scurich, N. (March, 2017). Lay perceptions of the probable cause standard. Paper presented at the American Psychology-Law Society Conference, Seattle, WA.

Gongola, J.*, Krauss, D., & Scurich, N. (March, 2017). Life without parole for juvenile offenders: Public sentiments. Paper presented at the American Psychology-Law Society Conference, Seattle, WA.

Linder, S.*, Dickerson, K.*, Scurich, N. & Quas, J. (March, 2017). Lay perceptions of child neglect: Holding mothers and fathers accountable. Poster presented at the American Psychology-Law Society Conference, Seattle, WA.

Teitcher, J.*, & Scurich, N. (February, 2017) Criminal punishment: Are jurors 'under the influence'? Paper presented at the Bayesian Research Conference, Fullerton, CA.

John, R.S., & Scurich, N. (February, 2017) Prior expectations of future evidence. Paper presented at the Bayesian Research Conference, Fullerton, CA.

John, R.S., & Scurich, N. (November, 2016). The influence of priors during criminal investigation on posterior likelihood of guilt and verdict. Poster presented at the Psychonomic Society annual meeting, Boston, MA.

John, R.S., & Scurich, N. (November, 2016). The influence of priors during criminal investigation on posterior likelihood of guilt and verdict. Poster presented at the Society for Judgment and Decision Making annual meeting, Boston, MA.

Gongola, J.*, Scurich, N. & Quas, J. (March, 2016). Detecting deception in children: A meta analysis. Paper presented at the American Psychology-Law Society Conference, Atlanta, GA.

Gongola, J.*, & Scurich, N. (March, 2016). Effects of the putative confession instruction on perceptions of child veracity. Paper presented at the American Psychology-Law Society Conference, Atlanta, GA.

Reiser, L.*, & Scurich, N. (March, 2016). Jurors' (lack of) sensitivity to false positive evidence regarding DNA identifications. Poster presented at the American Psychology-Law Society Conference, Atlanta, GA.

Dunbar, A.*, Kurbin, C., & Scurich, N. (March, 2016). The influence of rap music stereotypes on inferences of criminal threat. Paper presented at the American Psychology-Law Society Conference, Atlanta, GA.

John, R.S., & Scurich, N. (March, 2016). Jurors' presumption of innocence: Impact on cumulative evidence evaluation and verdicts. Paper presented at the American Psychology-Law Society Conference, Atlanta, GA.

John, R.S., & Scurich, N. (December, 2015). Individual risk assessment for terrorism. Paper presented at the Society for Risk Analysis Conference, Arlington, VA. Symposium on: Aviation security with dynamic risk management.

Scurich, N. (November, 2015). Quantifying the presumption of innocence. Paper presented at the Conference for Empirical Legal Studies, Washington University School of Law School.

Reiser, L. * & Scurich, N. (March, 2015). The impact of narrative consistency on jurors' utilization of DNA error rates. Poster presented at the American Psychology-Law Society Conference, San Diego, CA.

Reiser, L.*, Garcia, R. J. *, Deer, L., Scurich, N., Krauss, D. A. (March, 2015). An empirical examination of venire jurors' perceptions of adversarial allegiance. Paper presented at the American Psychology-Law Society, San Diego, CA

Greenspan, R.L. * & Scurich, N. (March, 2015). The non-independence of perceived voluntariness of confessions. Poster presented at the American Psychology-Law Society Annual Meeting, San Diego, CA.

John, R. S., Nguyen, K.*, & Scurich, N. (March, 2015) Quantifying presumption of innocence. Paper presented at the Bayesian Research Conference, Fullerton, CA.

Reiser, L. * & Scurich, N. (February, 2015). Narrative vs. numeracy in jurors' utilization of DNA evidence. Poster presented at the Society for Personality and Social Psychology Conference, Long Beach, CA.

Scurich, N. & Krauss, D.A. (March, 2014). The presumption of dangerousness in sexually violent predator commitment proceedings. Paper presented at the American Psychology and Law Society Conference, New Orleans, LA.

Javorka, M.*, Cluff, A.*, Jensen, A.*, Krauss, D., & Scurich, N. (March, 2014). Legal and extra-legal factors' influence on SVP civil commitment verdicts.  Poster presented at the American Psychology and Law Society Conference, New Orleans, LA.

John, R. S. & Scurich, N. (December, 2013). Public perceptions and trade-offs related to randomized security schedules. Paper presented at the Society for Risk Analysis annual meeting, Baltimore, Maryland.

Scurich, N. (November, 2013). The presumption of innocence and the involuntary bookmaker. Paper presented at the Conference for Empirical Legal Studies, University of Pennsylvania Law School.

John, R. S., Scurich, N., & Lee, R.* (November, 2013).  The good, the bad, and the ugly: Quantifying presumption of innocence in relation to criminal stereotypes and types of crime. Poster presented at the Society for Judgment and Decision Making, Toronto, Canada.

Scurich, N. (September, 2013). Judicial overstating. Paper presented at Socio-legal workshop, UCI School of Law.

Krauss, D.A., & Scurich, N**.** (August, 2013). Risk assessment in the law: Legal admissibility, scientific validity, and some disparities between research and practice. Paper presented at the American Psychological Conference, Honolulu, HI.

Scurich, N. (June, 2013). A normative model of violence risk communication. Symposium presentation at the Canadian Psychological Association Conference, Quebec City, Quebec, Canada.

John, R. S. & Scurich, N. (June, 2013). Public perceptions of randomized security strategies. Paper presented at the Workshop on Human Behavior and Security (SHB-2013), Los Angeles, CA.

Scurich, N. & Krauss, D.A. (March, 2013). The effect of adjusted actuarial risk assessment on mock jurors' decisions in a sexual predator commitment proceeding. Paper presented at the American Psychology and Law Society Conference, Portland, OR.

Scurich, N. (February, 2013) Here's a number, use it maybe. Paper presented at Bayesian Research Conference, Fullerton, CA.

John, R. S. & Scurich, N. (February, 2013).  Randomized security: A deal too good to be true. Paper presented at the Bayesian Research Conference, Fullerton, California.

Simon, D., & Scurich, N. (November, 2012) Lay judgments of legal decision-making: The ineffectiveness of legal expert opinions. Paper presented at the Conference for Empirical Legal Studies, Stanford Law School.

John, R. S., Scurich, N. & Scotti, A.* (November, 2012). The effects of database type and forensic laboratory error rates on the probative value of DNA evidence in a cold case. Poster presented at the Society for Judgment and Decision Making, Minneapolis, MN.

Scurich, N., Monahan, J., & John, R.S. (March, 2012) Innumeracy and unpacking: Bridging the nomothetic/idiographic divide in violence risk assessment. Paper presented at the American Psychology and Law Society Conference, San Juan, Puerto Rico.

Scurich, N. & John, R.S. (March, 2012) Constraints on restraints: A Signal Detection analysis of the use of mechanical restraints on adult psychiatric inpatients. Paper presented at the American Psychology and Law Society Conference, San Juan, Puerto Rico

Scurich, N. (January, 2012) I'm not quite sure what doubt means. Paper presented at Bayesian Research Conference, Fullerton, CA.

Scurich, N., & Lyon, T.D. (April, 2011) How did you feel? Increasing child sexual abuse witnesses production of evaluative information. Paper presented at the Western Psychological Association conference. Los Angeles, CA.

Scurich, N. (March, 2011) How "cold hit" DNA matches affect the perception of guilt and the interpretation of non-genetic evidence. Poster presented at the American Psychology and Law Society Conference, Miami, FL.

Scurich, N. (January, 2011) DNA database trawls: Frequentists, Bayesians, and jurors. Paper presented at the Bayesian Research Conference, Fullerton, CA.

Scurich, N., & Simon, D. (November, 2010) Lay judgments of judicial decisions. Paper presented at the Conference for Empirical Legal Studies, Yale Law School.

John, R.S, & Scurich, N. (November, 2010) Trawling genetic databases: When a DNA match is *just* a naked statistic. Paper presented at the Conference for Empirical Legal Studies, Yale Law School.

Scurich, N. (November, 2010) Genetic database trawls and the expectation of corroborating evidence: An account of the Wells Effect. Paper presented at the Society for Judgment and Decision Making, St. Louis, MO.

Scurich, N., Handmaker, S., Blank, R., & Lyon, T.D. (March, 2010) Eliciting evaluative information from child witnesses in sexual abuse prosecution: The effects of question type. Paper presented at American Psychology and Law Society Conference, Vancouver, Canada.

Scurich, N. (January, 2010) Dangerous decisions come from within. Paper presented at Bayesian Research Conference, Fullerton, CA.

Scurich, N. (November, 2009) Actuarial risk assessment, risk communication and involuntary civil commitment decisions. Poster presented at the Society for Judgment and Decision Making, Boston, MA.

Scurich, N., & John, R. (March, 2009) Formal psychiatric civil commitment decisions. Paper presented at American Psychology and Law Society Conference, San Antonio, TX.

Scurich, N. (January, 2009) Bayes says you're probably crazy. Paper presented at Edwards Bayesian Research Conference, Fullerton, CA.

Scurich, N. (May, 2007) Applying values to actuarial predictions of violence. Poster presented at Stanford Undergraduate Psychology Conference, Palo Alto, CA.

## Teaching Experience

PSB193e/CLS105: Psychology and Law (undergraduate)
SE195: Field Study (undergraduate)
PSB266/CLS275: Psychology and Law (graduate seminar)
PSB100/CLS100: Forensic Psychology (undergraduate)
P201: Advanced Research Methods (graduate)
P222: Forensic Assessment (graduate)

## Professional Affiliations

American Psychology-Law Society, 2009-
Society for Judgment and Decision Making, 2009-
Society for Empirical Legal Studies, 2009-
Western Psychological Association, 2011-

## Editorial Experience

Editorial board member:
Law & Human Behavior, 2013-
Behavioral Sciences & the Law, 2017-

Guest editor:
Behavioral Sciences & the Law (special issue on risk communication, 2015)

Ad hoc reviewer for:
National Science Foundation
American Psychology-Law Society
Oxford University Press
Worth Publishers

Criminal Justice & Behavior
Journal of Legal Studies
Child Abuse & Neglect
Sexual Abuse: A Journal of Research and Treatment
Behavioral Sciences & the Law
Law & Human Behavior
Journal of Experimental Social Psychology
Memory
Law, Probability, and Risk
PLoSONE
Psychology, Crime & Law

Clinical Psychological Science
Psychology, Public Policy, & Law
Justice Quarterly
Translational Issues in Psychological Science
BioMedCentral: Public Health
Jurimetrics Journal
Journal of the American Medical Association
European Psychologist
Journal of Experimental Criminology
Journal of Empirical Legal Studies
Journal of Experimental Child Psychology
Journal of Forensic Sciences
Behavior Genetics
Journal of Threat Assessment and Management
International Journal of Forensic Mental Health

# Exhibit B

Abel, G. G., Becker, J. V., Cunningham-Rathner, J., Mittelman, M., & Rouleau, J. L. (1988). Multiple paraphilic diagnoses among sex offenders. *Journal of the American Academy of Psychiatry and the Law Online*, *16*(2), 153-168.

Blanchard, R., Watson, M. S., Choy, A., Dickey, R., Klassen, P., Kuban, M., & Ferren, D. J. (1999). Pedophiles: Mental retardation, maternal age, and sexual orientation. *Archives of Sexual Behavior*, *28*(2), 111-127, doi: 10.1023/A:1018754004962.

Bourke, M. L., & Hernandez, A. E. (2009). The 'Butner Study' redux: A report of the incidence of hands-on child victimization by child pornography offenders. *Journal of Family Violence*, *24*(3), 183-191, doi: 10.1007/s10896-008-9219-y.

Brown, A. R., Dargis, M. A., Mattern, A. C., Tsonis, M. A., & Newman, J. P. (2015). Elevated Psychopathy Scores Among Mixed Sexual Offenders Replication and Extension. *Criminal Justice and Behavior*, *42*(10), 1032-1044, doi: 10.1177/0093854815575389.

Cann, J., Friendship, C., & Gozna, L. (2007). Assessing crossover in a sample of sexual offenders with multiple victims. *Legal and Criminological Psychology*, *12*(1), 149-163, doi: 10.1348/135532506X112439.

Chevalier, C. S., Boccaccini, M. T., Murrie, D. C., & Varela, J. G. (2015). Static-99R reporting practices in sexually violent predator cases: Does norm selection reflect adversarial allegiance?. *Law and Human Behavior, 39*(3), 209-218. Doi. rg/10.1037/lhb0000114

Cooley-Towell, S., Pasini-Hill, D., & Patrick, D. (2000). The value of the post-conviction polygraph: The importance of sanctions. *Polygraph*, *29*(1), 6-19.

Day, A., Darwinkel, E., & Vess, J. (2017). The characteristics of registered sexual offenders in an Australian jurisdiction. *Journal of Investigative Psychology and Offender Profiling, 14*(2), 120-132.

Elliott, M., Browne, K., & Kilcoyne, J. (1995). Child sexual abuse prevention: What offenders tell us. *Child Abuse & Neglect*, *19*(5), 579-594, doi: 10.1016/0145-2134(95)00017-3.

Emerick, R. L., & Dutton, W. A. (1993). The effect of polygraphy on the self-report of adolescent sex offenders: Implications for risk assessment. *Annals of Sex Research*, *6*(2), 83-103, doi: 10.1007/BF00849301.

English, K., Jones, L., Patrick, D., & Pasini-Hill, D. (2003). Sexual offender containment. *Annals of the New York Academy of Sciences*, *989*(1), 411-427, doi: 10.1111/j.1749-6632.2003.tb07322.x.

Greaves, C. L. (2010). Progression towards sexual re-offence: Detailing the offence cycle and contributing factors in high-risk sexual offenders (Doctoral dissertation).

Grubin, D., & Madsen, L. (2006). Accuracy and utility of post-conviction polygraph testing of sex offenders. *The British Journal of Psychiatry*, *188*(5), 479-483, doi: 10.1192/bjp.bp.105.008953.

Guay, J. P., Proulx, J., Cusson, M., & Ouimet, M. (2001). Victim-choice polymorphia among serious sex offenders. *Archives of Sexual Behavior*, *30*(5), 521-533, doi: 10.1023/A:1010291201588.

Hall, G. C. N., & Proctor, W. C. (1987). Criminological predictors of recidivism in a sexual offender population. *Journal of Consulting and Clinical Psychology*, *55*(1), 111-112, doi: 10.1037/0022-006X.55.1.111.

Heil, P., Ahlmeyer, S., & Simons, D. (2003). Crossover sexual offenses. *Sexual Abuse: A Journal of Research and Treatment*, *15*(4), 221-23, doi: 10.1023/A:1025031325230.

Hood, R., Shute, S., Feilzer, M., & Wilcox, A. (2002). Sex Offenders Emerging from Long-Term Imprisonment: A Study of Their Long-term Reconviction Rates and of Parole Board

Members' Judgements of Their Risk. *British Journal of Criminology*, *42*(2), 371-394, doi: 10.1093/bjc/42.2.371.

Howard, P. D., Barnett, G. D., & Mann, R. E. (2014). Specialization in and within sexual offending in England and Wales. *Sexual Abuse: A Journal of Research and Treatment*, *26*(3), 225-251, doi: 10.1177/1079063213486934.

Jackson, R. L., & Hess, D. T. (2007). Evaluation for civil commitment of sex offenders: A survey of experts. *Sexual Abuse, 19*, 425– 448.

Joyal, C. C., Carpentier, J., & Martin, C. (2016). Discriminant factors for adolescent sexual offending: On the usefulness of considering both victim age and sibling incest. *Child Abuse & Neglect, 54*, 10-22.

Knighton, J. C., Murrie, D. C., Boccaccini, M. T., & Turner, D. B. (2014). How likely is "likely to reoffend" in sex offender civil commitment trials?. Law and human behavior, 38(3), 293-304. doi org/10.1037/lhb0000079

Kleban, H., Chesin, M. S., Jeglic, E. L., & Mercado, C. C. (2012). An exploration of crossover sexual offending. *Sexual Abuse: A Journal of Research and Treatment*, *25*(5), 427-443, doi: 10.1177/1079063212464397.

Lasher, M. P., McGrath, R. J., & Cumming, G. F. (2015). Sex offender modus operandi stability and relationship with actuarial risk assessment. *Journal of Interpersonal Violence*, *30*(6), 911-927, doi: 10.1177/0886260514539757.

Leroux, E. J., Pullman, L. E., Motayne, G., & Seto, M. C. (2016). Victim age and the generalist versus specialist distinction in adolescent sexual offending. *Sexual Abuse, 28*(2), 79-95.

Levenson, J. S., Becker, J., & Morin, J. W. (2008). The relationship between victim age and gender crossover among sex offenders. *Sexual Abuse: A Journal of Research and Treatment*, *20*(1), 43-60, doi: 10.1177/1079063208314819.

Lipsey, M.W. and D.B. Wilson (2001). *Practical Meta-analysis.* Thousand Oaks: Sage

Lovell, R., Luminais, M., Flannery, D. J., Overman, L., Huang, D., Walker, T., & Clark, D. R. (2017). Offending patterns for serial sex offenders identified via the DNA testing of previously unsubmitted sexual assault kits. *Journal of Criminal Justice, 52*, 68-78.

Lussier, P., Leclerc, B., Cale, J., & Proulx, J. (2007). Developmental pathways of deviance in sexual aggressors. *Criminal Justice and Behavior*, *34*(11), 1441-1462, doi: 10.1177/0093854807306350.

Monahan, J., & Wexler, D. B. (1978). A definite maybe: Proof and probability in civil commitment. *Law and Human Behavior, 2*, 37–42. doi:10.1007/BF01047500

Monahan, J., & Steadman, H. J. (1994). Violence and mental disorder: Developments in risk assessment. University of Chicago Press.

Monahan, J., & Steadman, H. J. (1996). Violent storms and violent people: How meteorology can inform risk communication in mental health law. *American Psychologist, 51*(9), 931-938.

Monahan, J., & Silver, E. (2003). Judicial decision thresholds for violence risk management. *International Journal of Forensic Mental Health, 2*, 1–6.

Morse, S. J. (1978). Crazy behavior, morals, and science: An analysis of mental health law. *Southern California Law Review, 51*, 527–654.

Michaud, P., & Proulx, J. (2009). Penile-response profiles of sexual aggressors during phallometric testing. *Sexual Abuse: A Journal of Research and Treatment*, *21*(3), 308-334, doi: 10.1177/1079063209342073.

O'Connell, M. A. (1997). Using polygraph testing to assess deviant sexual history of sex offenders. (Doctoral dissertation).

Olver, M. E., Wong, S. C., Nicholaichuk, T., & Gordon, A. (2007). The validity and reliability of the Violence Risk Scale-Sexual Offender version: assessing sex offender risk and evaluating therapeutic change. *Psychological Assessment*, *19*(3), 318-329, doi: 10.1037/1040- 3590.19.3.318

Parent, G., Guay, J. P., & Knight, R. A. (2011). An assessment of long-term risk of recidivism by adult sex offenders: One size doesn't fit all. *Criminal Justice and Behavior*, *38*(2), 188-209, doi: 10.1177/0093854810388238.

Quinsey, V. L., Rice, M. E., & Harris, G. T. (1995). Actuarial prediction of sexual recidivism. *Journal of Interpersonal Violence*, *10*(1), 85-105, doi: 10.1177/088626095010001006.

Rice, J., & Knight, R. A. (2018). Differentiating adults with mixed age victims from those who exclusively sexually assault children or adults. *Sexual Abuse*, 1-21.

Schopp, R. F., & Quattrocchi, M. R. (1995). Predicting the present: Expert testimony and civil commitment. *Behavioral Sciences and the Law, 13*, 159–181. doi:10.1002/ bsl.2370130203

Sim, D. J., & Proeve, M. (2010). Crossover and stability of victim type in child molesters. *Legal and Criminological Psychology*, *15*(2), 401-413, doi: 10.1348/135532509X473869.

Smallbone, S. W., & Wortley, R. K. (2004). Onset, persistence, and versatility of offending among adult males convicted of sexual offenses against children. *Sexual Abuse: A*

*Journal of Research and Treatment*, *16*(4), 285-298, doi: 10.1023/B:SEBU.0000043324.12709.4f.

Stephens, S., Seto, M. C., Goodwill, A. M., & Cantor, J. M. (2016). The relationships between victim age, gender, and relationship polymorphism and sexual recidivism. *Sexual Abuse: A Journal of Research and Treatment*, doi: 10.1177/1079063216630983.

Stephens, S., Reale, K. S., Goodwill, A. M., & Beauregard, E. (2017). Examining the role of opportunity in the offense behavior of victim age polymorphic sex offenders. *Journal of Criminal Justice, 52*, 41-48.

Tewksbury, R., Jennings, W. G., & Zgoba, K. M. (2012). A longitudinal examination of sex offender recidivism prior to and following the implementation of SORN. *Behavioral Sciences & the Law*, *30*(3), 308-328, doi: 10.1002/bsl.1009.

Vess, J., & Skelton, A. (2010). Sexual and violent recidivism by offender type and actuarial risk: Reoffending rates for rapists, child molesters and mixed-victim offenders. *Psychology, Crime & Law*, *16*(7), 541-554, doi: 10.1080/10683160802612908.

Weinrott, M. R., & Saylor, M. (1991). Self-report of crimes committed by sex offenders. *Journal of Interpersonal Violence*, *6*(3), 286-300, doi: 10.1177/088626091006003002.

Wilcox, D. T., & Sosnowski, D. E. (2005). Polygraph examination of British sexual offenders: A pilot study on sexual history disclosure testing. *Journal of Sexual Aggression*, *11*(1), 3-25, doi: 10.1080/13552600410001667797.

Williams, M. W. M., Blackwood, K., van Rensburg, J., Jones, D. T., & Calvert, S. W. (2016). From known to stranger crossover: A retrospective study of child sex offenders released into the community. *Sexual Offender Treatment, 11*(1), 1-14.

Woodhams, J., & Labuschagne, G. (2012). South African Serial Rapists the Offenders, Their

Victims, and Their Offenses. *Sexual Abuse: A Journal of Research and Treatment*, *24*(6),

544-574, doi: 10.1177/1079063212438921.