IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN DOE 1, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-606-WKW |
| | ) | [WO] |
| STEVEN T. MARSHALL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' motion for an award of attorney's fees and costs. (Doc. # 166.) For the reasons below, the court will award $362,200.41 in attorney's fees and $6,075.98 in costs.

## I. BACKGROUND

This case involved a number of constitutional challenges to the Alabama Sex Offender Registration and Community Notification Act (ASORCNA). It started in August 2015 as a putative class action with eight plaintiffs (Does 1–8). (Doc. # 1.) The court denied a motion for a preliminary injunction (Docs. # 17, 32) and granted permission to amend the complaint (Doc. # 38). The November 2015 First Amended Complaint added Doe 9 as a Plaintiff and dropped the claims by Does 2, 4, 5, 6, and 8. (Doc. # 39.) Plaintiffs withdrew their motion for class certification. (Doc. # 40.)

Defendants moved to dismiss the First Amended Complaint for failure to state

a claim (Doc. # 43), and in March 2016, the court granted that motion in part (Doc. # 51). In August 2016, Plaintiffs filed a Second Amended Complaint and added Doe 10 as a Plaintiff. (Doc. # 81.) Defendants moved to dismiss the Second Amended Complaint for failure to state a claim. (Doc. # 87.) While that motion was pending, ASORCNA was substantially amended, *see* Ala. Act No. 2017-414, and Plaintiffs sought leave to file a Third Amended Complaint. (Doc. # 119.) In March 2018, the court partially granted the motion to dismiss the Second Amended Complaint. (Doc. # 125.) At the same time, it denied the motion for leave to file the Third Amended Complaint. (Doc. # 125.) Plaintiffs later sought leave to "supplement" the claims in their Second Amended Complaint and to add more Plaintiffs. (Docs. # 132, 134.) That motion was largely denied. (Doc. # 137.)

Plaintiffs raised a number of unsuccessful claims in their various complaints. The court dismissed substantive due process challenges to the 2,000-foot residency exclusion zone (Doc. # 51, at 39; *see* Doc. # 1, at 37; Doc. # 39, at 32) and the 2,000-foot employment exclusion zone (Doc. # 51, at 43; *see* Doc. # 1, at 38; Doc. # 39, at 33). It dismissed claims by Does 1 and 9 that the minor-cohabitation rule violates their right to family association. (Doc. # 51, at 40; *see* Doc. # 1, at 37; Doc. # 39, at 32.) It dismissed vagueness challenges to reporting requirements (Doc. # 125, at 29–33; *see* Doc. # 81, at 48) and to the 2,000-foot residency exclusion zone (Doc. # 125, at 28; *see* Doc. # 81, at 48). It dismissed a claim that ASORCNA violates the

"irrebuttable presumption" doctrine. (Doc. # 125, at 24; *see* Doc. # 81, at 45.) It dismissed individual-capacity claims. (Doc. # 125, at 50; *see* Doc. # 81, at 51.) And it denied leave to add "stigma plus" claims. (Doc. # 137, at 10–12; *see* Doc. # 134-1, at 25, 32.)

Thus, when the parties moved for summary judgment in the summer of 2018 (Docs. # 139, 147, 154), there were only four remaining claims (*see* Doc. # 138). Count One was a substantive due process claim by Does 3 and 7 against the minor-cohabitation rule. Count Two was a void-for-vagueness challenge to the residency and employment exclusion zones. Count Four was an as-applied compelled speech challenge to the branded-identification requirement. And Count Five was a First Amendment overbreadth challenge to the internet-use reporting requirements.

In February 2019, the court granted summary judgment for Defendants on Counts One and Two. At the same time, it granted summary judgment for Plaintiffs on Counts Four and Five, declaring:

> The branded-identification requirement in Alabama Code § 15-20A-18 is unconstitutional under the First Amendment of the United States Constitution to the extent that it has been applied by the State of Alabama; and
>
> The internet-use reporting requirements in Alabama Code §§ 15-20A-7(a)(9), 15-20A-7(a)(18), and 15-20A-10(e)(1) are facially overbroad in violation of the First Amendment of the United States Constitution.

(Doc. # 165, at 1–2.) *See generally Doe 1 v. Marshall*, 367 F. Supp. 3d 1310 (M.D. Ala. 2019). No party filed a timely appeal.

Plaintiffs now move for an award of attorney's fees and costs under 42 U.S.C. § 1988. (Doc. # 166.) Throughout this case, Plaintiffs have been represented by one attorney: Joseph McGuire. Mr. McGuire claims an hourly rate of $295 or $425, and he seeks compensation for 1,515.8 hours. Thus, Mr. McGuire seeks a fee of either $447,161 or $644,215. (Doc. # 175, at 33; Doc. # 179, at 4, 7.) In addition, Plaintiffs claim $17,041.02 on their Bill of Costs. (Doc. # 176.) Defendants respond that Mr. McGuire's hourly rate should be $225, that 339.9 of his hours are not compensable, and that the court should reduce the fee award by at least two-thirds. They also argue that only $2,077.80 in costs are taxable. (Doc. # 178, at 4, 8, 14–15.)

## II. ANALYSIS

Though most of their claims were dismissed, Plaintiffs prevailed on their First Amendment challenges to ASORCNA's internet-use reporting requirements and its branded-identification requirement. *See Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (defining "prevailing party"). The court will therefore award Plaintiffs "a reasonable attorney's fee" and "costs." 42 U.S.C. § 1988; Fed. R. Civ. P. 54(d). The question is what constitutes a "reasonable" fee and what "costs" can be taxed.

A. **Reasonable Attorney's Fee**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Once this

4

"lodestar" amount is calculated, other considerations may lead the court to lower the fee award. *See id.* at 434.

1. ***Reasonable Hourly Rate***

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under this standard, $295 is a reasonable hourly rate for Mr. McGuire.

The court assumes that the "relevant legal community" is the State of Alabama as a whole. *See Gay Lesbian Bisexual Alliance v. Sessions*, 930 F. Supp. 1492, 1495 (M.D. Ala. 1996). The relevant market is usually "the place where the case is filed," *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994), and Plaintiffs did not have to go outside Montgomery to find an attorney who was willing and able to take their case, *see ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). But Defendants do not object to using statewide rates, and the court will use them here.

Mr. McGuire claims an hourly rate of $295 — or, alternatively, up to $425. (Doc. # 175, at 15.) Plaintiffs "bear[] the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299. Either "direct evidence of charges by lawyers under similar circumstances"

5

or "opinion evidence" will suffice. *Id.*; *see Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (per curiam). "The weight to be given to opinion evidence," however, "will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Norman*, 836 F.2d at 1299. Awards in similar cases are relevant evidence, but they do not control. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000) (per curiam). Instead, the awarded rate must be "based on an analysis of the skills . . . which were exhibited by the attorney in the case at bar." *Norman*, 836 F.2d at 1301.

Mr. McGuire provides no evidence about the rates he charges paying clients. *See Dillard*, 213 F.3d at 1354 (calling that evidence "powerful, and perhaps the best, evidence of [an attorney's] market rate"). He instead relies on declarations from three attorneys: James Blacksher, Larry Menefee, and Bobby Segall. (Docs. # 175-4, 175-5, 175-6.) But those declarations do little to establish the market rate for attorneys with skills, experiences, and reputations "reasonably comparable" to Mr. McGuire's skill, experience, and reputation. *Norman*, 836 F.2d at 1299.

According to Mr. Blacksher, "the prevailing hourly rates of lawyers practicing in Alabama federal courts as of 2017 ranged from $300 to $550 per hour." (Doc. # 175-4, at 5.) He opines that Mr. McGuire should be awarded an hourly rate "nearer the top of the prevailing range" because of his "unique expertise" in this area of law.

6

(Doc. # 175-4, at 5.) But Mr. Blacksher does not refer to the skills, experiences, or reputations of other lawyers. That is, he "fails to provide different rate structures for newly minted attorneys and seasoned advocates." *Hart v. Guardian Credit Union*, 870 F. Supp. 2d 1300, 1307 (M.D. Ala. 2012) (finding a declaration was conclusory when it asserted a range "from $350.00 to $550.00 per hour for skilled attorneys"). In addition, Mr. Blacksher bases his "$300 to $550 per hour" range on declarations filed by other attorneys in *Alabama Legislative Black Caucus v. Alabama*. But declarations in that case asserted that the market rate starts at $250 an hour, not $300. No. 12-cv-691, Docs. # 358-7, 358-9, 358-12 (M.D. Ala. filed July 1, 2017). For these reasons, Mr. Blacksher's declaration does not support Mr. McGuire's claim to $425 an hour, which Mr. McGuire apparently calculated as the average of $300 and $550 an hour. (*See* Doc. # 179, at 3 & n.2.)

Mr. Menefee similarly opines that, for Mr. McGuire, $295 an hour is "on the low side of reasonable." (Doc. # 175-5, at 4.) He also asserts that "Mr. Blacksher's Declaration describes a range of hourly rates for federal civil litigation that is much closer to what I understand to be customary in this area." (Doc. # 175-5, at 4.) And he "believe[s] the State of Alabama has hired lawyers at $295 or more per hour on a number of occasions in recent years." (Doc. # 175-5, at 5.) But these are conclusory statements, and they do not give information about the rate differences for new and seasoned attorneys. And while the State offered Mr. Menefee $300 an hour in 2011,

7

that was when he had forty years' experience. (Doc. # 175-5, at 4.)

Mr. Segall also concludes that "$295 per hour is reasonable and well within the range of fees charged by attorneys in the Montgomery area for work of similar difficulty and involving statutes of similar complexity." (Doc. # 175-6, at 3.) This is based on his knowledge of Mr. McGuire's skill, ability, and experience — as well as on his view of the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The declaration lacks any additional details. *See Norman*, 836 F.2d at 1299.

So in addition to this opinion testimony, the court turns to "its own experience and knowledge concerning the rates charged by lawyers of similar skill in similar lawsuits in the same market area." *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1254 (M.D. Ala. 2000) (citing *Norman*, 836 F.2d at 1303); *see Davis v. Nat'l Med. Enters.*, 253 F.3d 1314, 1322 n.12 (11th Cir. 2001) (noting that "a district court is itself an expert on the question of fees, and may consider its own knowledge and experience in making a fee award"). The court finds that $295 is a reasonable hourly rate.

This case involved complex, difficult, and novel legal questions. Litigating solo required a degree of skill above what would be normally expected of an attorney in his first few years of practice. And Mr. McGuire was significantly limited in his ability to take on other clients and cases when he took on this case. At the same

8

time, however, Mr. McGuire has just eight years' legal experience. When this case began, he had just four years' legal experience. Nevertheless, the court finds that Mr. McGuire exhibited skills normally found in attorneys with ten or more years of practice. Based on these factors, $295 an hour is a reasonable rate.[1] This is more than the $225 hourly rate that the court awarded Mr. McGuire last year. *McGuire v. Murphy*, 285 F. Supp. 3d 1272, 1287 (M.D. Ala. 2018).

## 2. *Reasonable Number of Hours*

The next step in calculating the lodestar is determining how many hours were "reasonably expended" on the litigation. *Norman*, 836 F.2d at 1301. This requires the exercise of "billing judgment" to exclude "excessive, redundant or otherwise unnecessary" hours. *Id.* (quoting *Hensley*, 461 U.S. at 434, 437). "Hours that are

---

[1] This is confirmed by recent fee awards. *See, e.g.*, *ADTRAV Corp. v. Duluth Travel, Inc.*, No. 14-cv-56, 2018 WL 447417, at *24 (N.D. Ala. Jan. 17, 2018) (finding $260 an hour reasonable for an attorney with seventeen years' experience); *Morrison v. Veale*, No. 14-cv-1020, 2017 WL 6388960, at *5 (M.D. Ala. Dec. 14, 2017) (finding $325 an hour reasonable for an attorney with seventeen years' experience); *Wells Fargo Bank, Nat'l Ass'n v. 2R, Inc.*, No. 16-cv-779, 2017 WL 2857713, at *6 (M.D. Ala. May 11, 2017) (finding $250 an hour reasonable for an attorney with nearly twenty years' experience); *Hayden v. Vance*, No. 15-cv-469, 2016 WL 4157362, at *5 (M.D. Ala. June 28, 2016) (finding $300 an hour reasonable for an attorney with seventeen years' experience and $225 an hour reasonable for an attorney with eight years' experience); *United States v. All State Metals, Inc.*, No. 14-mc-3674, 2016 WL 3360950, at *3 (M.D. Ala. May 16, 2016) (finding $265 an hour reasonable for an attorney with ten years' experience and $200 an hour reasonable for an attorney with six years' experience); *Smith v. Neighborhood Rest. Partners Fla. Two, LLC*, No. 14-cv-918, 2016 WL 1544743, at *5 (M.D. Ala. Mar. 28, 2016) (finding $250 an hour reasonable for an attorney with fifteen years' experience); *see also Weekes-Walker v. Macon Cty. Greyhound Park, Inc.*, 31 F. Supp. 3d 1354, 1360 (M.D. Ala. 2014) ("In the Middle District of Alabama, skilled lawyers with twenty years or more experience may expect to receive $300 an hour, lawyers with ten years or more experience may receive between $200 and $250 an hour, and associates may expect to receive $150–185 an hour.").

not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (cleaned up).

Mr. McGuire performed 1,994.1 hours of legal work for Plaintiffs during this litigation. He submits documentation for 1,572.1 hours. He seeks fees for 1,515.8 hours. (Doc. # 175-1, at 4; Doc. # 175-2, at 24; Doc. # 179-1, at 1.) Defendants ask the court to subtract another 339.9 hours. (Doc. # 178, at 8.) But because "the fee documentation is voluminous," there is no need for an hour-by-hour analysis of Mr. McGuire's records. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

Instead, the court reduces the number of claimed hours by ten percent. *See Hepsen v. J.C. Christensen & Assocs.*, 394 F. App'x 597, 600 (11th Cir. 2010) (per curiam) (reducing claimed hours by a percentage) (citing *Loranger*, 10 F.3d at 783). This is based on the court's observations over the course of litigation and a review of the record. For example, there were multiple corrected, supplemental, and duplicative filings and arguments. Those filings required more work than reasonably necessary. Mr. McGuire billed for hours drafting motions that he never filed. (*See* Doc. # 175-2, at 12, 17.) And some of Mr. McGuire's time entries make it hard to determine whether his hours were reasonably expended.[2] Reducing the number of

---

[2] For example, Mr. McGuire spent 67.8 hours analyzing data on homeless and incarcerated ASORCNA registrants. (Doc. # 175-2, at 17.) He does not explain those hours in his declaration, and none of his claims were based on homelessness or incarceration. The explanation he offers in his brief (Doc. # 179, at 6) is not evidence of whether those hours were reasonably expended. *See*

claimed hours (1,515.8) by ten percent corrects for overbilling and leads to 1,364.22 compensable hours. That is reasonable under the circumstances.

### 3. *Reduction for Partial Success*

An hourly rate of $295 multiplied by 1,364.22 hours equals a lodestar amount of $402,444.90. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam). But because Plaintiffs prevailed on only a few of their many claims, the lodestar amount will be reduced. *Hensley*, 461 U.S. at 434; *Bivins*, 548 F.3d at 1352. A ten percent reduction is appropriate here.

To be sure, the court's judgment vindicates First Amendment rights for sex offenders statewide. That is meaningful relief. *See Norman*, 836 F.2d at 1302 ("The vindication of a constitutional right is important even if only a small amount of money is involved. Further, vindication of class-wide rights are generally more significant than relief granted for an isolated violation of constitutional rights.") (citation omitted). The court considers that public benefit. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001). But "enforcement of a constitutional right [does] not foreclose a reduction in the lodestar amount," *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987), and Plaintiffs' limited success requires a reduction here.

---

*Barnes*, 168 F.3d at 436 ("Unsupported assertions in a brief cannot substitute for evidence in the record.").

Plaintiffs prevailed on their First Amendment claims, but they did not prevail on any others. Many were dismissed for failure to state a claim, and the court granted summary judgment for Defendants on others. The unsuccessful claims were largely unrelated to the First Amendment claims. They raised different legal theories and relied on different facts. And when litigation was over, the court did not strike down any employment or residency restrictions.

For example, Plaintiffs claimed that the minor-cohabitation rule violated the right to family association. They also brought void-for-vagueness challenges to the residency and employment exclusion zones. But those legal theories have nothing in common with First Amendment overbreadth and compelled speech. In addition, most of the discovery was about unsuccessful claims. Depositions of various family members and law-enforcement officers did not affect the First Amendment analysis. When Plaintiffs moved for summary judgment on their First Amendment claims, they cited just fragments of two depositions. (Doc. # 140, at 5–8.) They responded to summary judgment on those claims by citing only one of their two experts. (Doc. # 159, at 17.)

For these reasons, the court reduces the lodestar amount by ten percent. This is not a mathematical determination but is based on Plaintiffs' overall success. *See Hensley*, 461 U.S. at 435–36 & n.11; *cf. Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing

perfection."). Plaintiffs' success was not excellent — it was partial and limited. Awarding the full lodestar amount would be excessive in relation to Plaintiffs' diminished relief. A ten percent reduction is no greater than necessary to prevent an excessive fee. This results in an attorney's fee award of $362,200.41 for Mr. McGuire.

**B.** **Bill of Costs**

Federal Rule of Civil Procedure 54(d)(1) allows Plaintiffs to recover "costs" in addition to attorney's fees. *See Arcadian Fertilizer, L.P. v. MPW Indus. Servs.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (per curiam). But "absent explicit statutory or contractual authorization," Plaintiffs can only recover costs that are listed in 28 U.S.C. §§ 1821 and 1920. *Id.* (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)); *see Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017).

The Supreme Court made this clear in *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873 (2019). That case involved the Copyright Act, which gives courts the discretion to award "full costs." 17 U.S.C. § 505. The lower courts used that statute to award costs not listed in 28 U.S.C. §§ 1821 or 1920. *Rimini St.*, 139 S. Ct. at 876. The Supreme Court unanimously reversed, announcing a "clear rule" in the process: "A [federal] statute awarding 'costs' will not be construed as authorizing an award of litigation expenses beyond the six categories listed in §§ 1821 and 1920, absent

an explicit statutory instruction to that effect." *Id.* at 878. Despite the phrase "full costs," the Court held that the Copyright Act did not enlarge the definition of "costs." Instead, it incorporated the definition from §§ 1821 and 1920. That was true without reference to the Copyright Act's history. *See id.* at 879 (stating that "courts should not undertake extensive historical excavation to determine the meaning of costs statutes") (citing *Crawford Fitting*, 482 U.S. at 445).

Plaintiffs argue that 42 U.S.C. § 1988 allows them to recover "all reasonable expenses incurred in case preparation [or] during the course of litigation," with "the exception of routine office overhead normally absorbed by the practicing attorney." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). But that statute says only that courts may award "a reasonable attorney's fee *as part of the costs*." 42 U.S.C. § 1988(b) (emphasis added). "This language simply adds reasonable attorney's fees . . . to the list of costs" in 28 U.S.C. §§ 1821 and 1920. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006) (interpreting a similar provision). It does not allow the court to otherwise disregard the definition of "costs" in §§ 1821 and 1920. *Id.*; *see W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991) (stating that the Court was "aware of no authority to support the counterintuitive assertion" that "costs" in § 1988 "has a different and broader meaning" than the definition in § 1920) (cleaned up).

So under the "clear rule" announced in *Rimini Street*, 139 S. Ct. at 878, taxable

costs are limited to the expenses listed in §§ 1821 and 1920. "This limit must be observed despite 'the disparity between economic reality and statutory imperative.'" *Primo v. State Farm Mut. Auto. Ins. Co.*, 661 F. App'x 661, 667 (11th Cir. 2016) (per curiam) (quoting *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 463 (11th Cir. 1996)). The court may tax the following under 28 U.S.C. § 1920:

(1)   Fees of the clerk and marshal;

(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)   Fees and disbursements for printing and witnesses;

(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)   Docket fees under section 1923 of this title; [and]

(6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The witness fees and disbursements mentioned in § 1920(3) are detailed in § 1821. *See Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039 (11th Cir. 2001) (per curiam). That section provides that "a witness in attendance . . . before any person authorized to take his deposition pursuant to any rule or order of a court of the United States" may receive $40 a day plus certain transportation costs. 28 U.S.C. § 1821(a)(1).

As a result, Plaintiffs cannot tax the $4,958.34 in expert witness fees for Dr.

15

Karl Hanson and Mr. Peter Wagner. (Doc. # 173-5, at 16.) "None of the categories of expenses listed in § 1920 can reasonably be read to include fees for services rendered by an expert employed by a party in a nontestimonial advisory capacity." *Casey*, 499 U.S. at 87; *see Crawford Fitting*, 482 U.S. at 442. Neither Dr. Hanson nor Mr. Wagner testified in any proceedings, and neither was court-appointed. Thus, their fees cannot be taxed as costs. Nor can their fees be counted as attorney's fees. *Casey*, 499 U.S. at 102; *Wyatt ex rel. Rawlins v. Sawyer*, 67 F. Supp. 2d 1331, 1356 (M.D. Ala. 1999).

Similarly, Plaintiffs cannot tax $2,743.44 for mileage. (Doc. # 175-3, at 16.) Those transportation expenses were not for witness testimony; they were for meeting Plaintiffs and prospective litigants. (*See* Doc. # 175-2, at 3–7, 10–12.) That is not taxable under §§ 1821 and 1920. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002); *Eagle Ins. Co. v. Johnson*, 982 F. Supp. 1456, 1460 (M.D. Ala. 1997), *aff'd*, 162 F.3d 98 (11th Cir. 1998).

Finally, Plaintiffs cannot tax $3,263.26 paid to Mr. McGuire's legal assistant for 43.5 hours of overtime work. (Doc. # 175-3, at 16, 23.) That amount is "part of overhead" and is not taxable. *Corsair Asset Mgmt. v. Moskovitz*, 142 F.R.D. 347, 352 (N.D. Ga. 1992). Plaintiffs do not claim attorney's fees for the assistant's work, which was almost entirely clerical. *See Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982) ("[Paralegal] expenses are separately recoverable only as part

16

of a prevailing party's award for attorney's fees and expenses, and even then only to the extent that the paralegal performs work traditionally done by an attorney. Otherwise, paralegal expenses are separately unrecoverable overhead expenses."); *Black v. M.G.A., Inc.*, 51 F. Supp. 2d 1315, 1324–25 (M.D. Ala. 1999).[3]

Plaintiffs' Bill of Costs totals $17,041.02 (Doc. # 176), but $10,965.04 are not taxable. Thus, Plaintiffs may recover $6,075.98 in costs under Federal Rule of Civil Procedure 54(d)(1).

### III. CONCLUSION

For the reasons above, it is ORDERED that Plaintiffs' motion for attorney's fees and costs (Doc. # 166) is GRANTED in part and DENIED in part as follows: Plaintiffs are awarded $362,200.41 as a reasonable attorney's fee for Attorney Joseph McGuire and $6,075.98 in taxable costs. The remaining requests are denied.

DONE this 5th day of August, 2019.

/s/ W. Keith Watkins<br>UNITED STATES DISTRICT JUDGE

---

[3] Defendants challenge $4,840.49 spent on eight depositions. (Doc. # 178, at 15; *see* Doc. # 175-3, at 4.) Whether the costs of a deposition are taxable turns on "whether the deposition was wholly or partially 'necessarily obtained for use in the case.'" *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000) (quoting *Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 337 (5th Cir. Unit B June 1981)); *see* 28 U.S.C. § 1920(2). If the costs "were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *E.E.O.C.*, 213 F.3d at 620 (cleaned up). Defendants argue the cost of eight particular depositions "should not be taxed as costs because they were either not relied on by Plaintiffs or were relevant only to claims on which Defendants prevailed." (Doc. # 178, at 15.) But they do not show that the depositions were not "related to" issues "present in the case at the time" when they were taken. *E.E.O.C.*, 213 F.3d at 621 (citation omitted); *see In re Fundamental Long Term Care, Inc.*, 753 F. App'x 878, 882 (11th Cir. 2019) (per curiam). Thus, these costs are taxable.